1   Raj V. Abhyanker, California SBN 233284
2   raj@legalforcelaw.com
    LEGALFORCE RAPC WORLDWIDE, P.C.
3   1580 W. El Camino Real, Suite 10
    Mountain View, CA 94040
4   Telephone:  (650) 965-8731
5   Facsimile:   (650) 989-2131
6
7   Attorneys for Defendant,
    Mando International, LLC
8
9                  **UNITED STATES DISTRICT COURT**
                   **CENTRAL DISTRICT OF CALIFORNIA**
10
11  NEUROCENTRIA, INC., a                  Case No.
12  California corporation,                CV-25-cv-05871-FLA-JPR
    THREOTECH LLC, a Nevada
13  limited liability company,             Hon. Judge Fernando L.
14                                         Aenlle-Rocha
    Plaintiffs,
15
                                           **ANSWER,**
16  v.                                     **AFFIRMATIVE**
                                           **DEFENSES, AND**
17  MANDO INTERNATIONAL, LLC               **COUNTERCLAIMS FOR**
18  d/b/a KAPPA NUTRITION LABS, a          **DECLARATORY**
    Texas limited liability company        **RELIEF, PATENT**
19                                         **INVALIDITY, FRAUD ON**
20  Defendant and Counterclaimant          **THE USPTO, UNFAIR**
                                           **COMPETITION, FALSE**
21  NEUROCENTRIA, INC., a                  **ADVERTISING, AND**
22  California corporation,                **FALSE DESIGNATION**
    THREOTECH LLC, a Nevada               **OF ORIGIN UNDER THE**
23  limited liability company,             **LANHAM ACT (15 U.S.C.**
24  AIDP, INC., a California corporation,  **§ 1125)**
    GUOSONG LIU, an individual, and
25  FEI MAO, an individual,                **JURY TRIAL DEMANDED**
26
27  Counter-Defendants.
28

                                  1
                  ANSWER AND COUNTERCLAIMS
                  CASE NO.: CV-25-cv-05871-FLA-JPR

1. Defendant Mando International LLC ("Kappa"), by and through undersigned counsel, hereby answers the Complaint of Plaintiffs Neurocentria, Inc. and ThreoTech LLC (collectively, "ThreoTech"), asserts affirmative defenses and counterclaims, as follows:

**Answer to the Complaint**

2. **Jurisdiction:** Kappa admits that Plaintiffs' patent-infringement claims arise under federal patent law such that subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338(a). Kappa lacks knowledge sufficient to admit or deny the citizenship of each Plaintiff, but admits that Neurocentria, Inc. is a California corporation and ThreoTech LLC is a Nevada limited liability company (as pleaded). Kappa denies any suggestion that it has consented to personal jurisdiction in California, and denies that it has any continuous or systematic contacts with California. Kappa further denies that it has committed acts in California that would subject it to personal jurisdiction for this action. To the extent the Complaint's jurisdictional allegations imply otherwise, they are denied.

3. **Venue:** Kappa denies that venue is proper in the Central District of California. Kappa is a Texas limited liability company, organized and existing under the laws of the State of Texas, with its principal and sole place of business located near Dallas, Texas - specifically in Frisco, within the Northern District of Texas. Kappa previously maintained a mailing address associated with "Kappa Nutrition" at 78 Cheswood Manor Drive, The Woodlands, Texas 77382; however, that location is no longer active and does not serve as Kappa's headquarters. Kappa's current and only corporate headquarters is in Frisco, Texas.

4. Kappa has no offices, operations, property, or employees in California, and

ANSWER AND COUNTERCLAIMS
CASE NO.: CV-25-cv-05871-FLA-JPR

it does not conduct business in the Central District of California in any meaningful or systematic way. Kappa does not reside in California for purposes of the patent venue statute and does not have a "regular and established place of business" in this District within the meaning of 28 U.S.C. § 1400(b). Any incidental sales of Kappa's products that may have reached California were made solely through nationwide e-commerce channels and not through any physical presence, targeted advertising, or other forum-directed activities. Accordingly, venue is improper in this District under both 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391. However, in the interest of judicial economy and to allow this case to proceed on the merits without further delay, Defendant hereby Answers this Complaint, while expressly preserving all objections to venue.

5. **Parties:** Kappa lacks sufficient information to admit or deny the specific corporate status and principal places of business of Neurocentria, Inc. or ThreoTech LLC as alleged in the Complaint, and therefore denies the same. Kappa denies being known as "Kappa Nutrition" as a legal entity, but admits that "Kappa Nutrition Labs" is a brand name under which Kappa's products have been marketed. To the extent the Complaint refers to "Kappa Nutrition" as the defendant, Kappa responds on its own behalf, clarifying that it is the proper defendant and that no separate legal entity "Kappa Nutrition" exists. Kappa denies that it or any "Kappa" entity is a citizen of or resident in California.

6. **General Allegations:** Paragraphs 8-9 of the Complaint describe Magtein and magnesium L-threonate's purported properties. Kappa lacks knowledge or information sufficient to form a belief as to the truth of allegations regarding the efficacy or chemical qualities of magnesium L-threonate (including whether it

increases brain synaptic density or improves memory as claimed) and therefore denies the allegations in those paragraphs. Kappa admits that magnesium L-threonate is one form of magnesium that has been studied for cognitive health, but denies any implication that this is unique to Plaintiffs' products or that any such benefits are proprietary to Plaintiffs.

7.   Kappa admits the allegations in Paragraph 10 of the Complaint to the extent that Neurocentria, Inc. is listed as the assignee on certain U.S. patents relating to magnesium L-threonate, including U.S. Patent Nos. 8,637,061; 8,142,803; 8,178,132; 8,178,118; and 8,163,301 ("the Asserted Patents"). Kappa further admits that those patents were issued by the U.S. Patent and Trademark Office on the dates indicated on their face. Kappa lacks knowledge as to the remaining allegations in Paragraph 10 (for example, characterizing the scope of "various uses" covered by the patents) and therefore denies any remaining allegations.

8.   Kappa admits, on information and belief, that ThreoTech LLC claims to be the exclusive licensee of the Asserted Patents and the owner of certain U.S. trademark registrations for "Magtein" (U.S. Reg. Nos. 4,618,052 and 6,255,878, as referenced in Paragraph 11). Kappa lacks knowledge of the details of those trademark registrations (including their exact goods/services or current status) and thus denies any allegations in Paragraph 11 beyond the existence of the cited registrations.

9.   **License Agreement and Termination:** Kappa admits the allegations in Paragraph 12 that on or about August 29, 2022, Kappa (through its Kappa Nutrition brand) entered into a written Trademark License Agreement with ThreoTech (the "Agreement"), granting Kappa the right to use ThreoTech's

Magtein mark in connection with selling products containing the Magtein ingredient purchased from ThreoTech. Kappa admits that the Agreement speaks for itself and contains certain terms regarding quality control and other obligations. Kappa denies any implication that it materially breached the Agreement. Kappa admits that ThreoTech provided a notice of termination of the Agreement on July 15, 2024 (Paragraph 13) pursuant to a claimed failure to abide by certain terms, but denies that any legitimate grounds for termination existed.

10. Kappa admits that Paragraph 14 accurately quotes and paraphrases certain terms of the Agreement, including that Kappa was permitted a 6-month sell-off period through January 15, 2025 to sell remaining Magtein-containing product, after which Kappa was contractually obligated to cease selling products containing Magtein or magnesium L-threonate (or otherwise infringing the Magtein Patents). Kappa admits that it received written correspondence from ThreoTech on or about November 4, 2024 and January 10, 2025 purporting to remind Kappa of its post-termination obligations (Paragraph 15). Kappa avers that it wound down its sales of any remaining Magtein-based inventory during the sell-off period. Kappa further avers that after January 15, 2025, it did not sell any product containing ThreoTech's Magtein ingredient or any magnesium L-threonate supplied by ThreoTech.

11. **Kappa's New Trademark Filings:** Kappa admits the allegations in Paragraph 16 that on November 4, 2024, it filed four U.S. trademark applications with the USPTO for new marks related to magnesium L-threonate supplements -- specifically: **MAGBRAIN L-THREONATE**, **MAGNESIUM L-THREONATE PLUS**, **MAGBRAIN MAGNESIUM L-THREONATE**, and **L-THREONATE**

**PLUS** (the "Magbrain Marks"). These applications were filed shortly after Kappa received ThreoTech's notice of termination, as Kappa prepared to rebrand its product line without any use of the Magtein name. Kappa affirmatively states that its Magbrain Marks were chosen to describe and brand its own magnesium supplement formulas, and not to mislead consumers. Kappa denies the insinuation in Paragraph 16 that filing these applications was an act of bad faith; to the contrary, developing its own brand was a necessary and lawful step once ThreoTech ended the license.

12. Kappa denies the allegations in Paragraph 17 that its pursuit of the Magbrain Marks demonstrates a "willful decision to infringe" ThreoTech's intellectual property. Kappa denies that it has infringed any rights of ThreoTech whatsoever. Kappa specifically denies that it had any intent to confuse customers or to misuse ThreoTech's patents or trademarks. Kappa's selection of the Magbrain-related names was done in good faith to emphasize the brain health aspects of its product and the inclusion of magnesium L-threonate equivalent ingredients, without referencing ThreoTech's Magtein branding. The Magbrain Marks are plainly different from "Magtein" in appearance, sound, and meaning, and Kappa's products are clearly identified as its own. Kappa further avers that a detailed analysis of the relevant Sleekcraft factors confirms there is no likelihood of confusion between Kappa's marks and ThreoTech's Magtein mark, as explained in Affirmative Defense 5 below. Any allegation that Kappa *intended* to infringe or confuse (or that it actually infringed any patent or mark) is expressly denied.

13. **Alleged "Patent Infringement" by Kappa:** Kappa admits that its website (kappanutrition.com) contains statements about the company's philosophy of

providing natural, high-quality health products (Paragraph 18). Kappa avers that these statements are truthful and reflect Kappa's focus on natural ingredients. Kappa denies any remaining allegations in Paragraph 18 to the extent they imply inconsistency or wrongdoing.

14. Kappa denies the allegations in Paragraph 19 that it violated ThreoTech's demands or "continued in selling products it knows…infringe the Magtein Patents." Specifically, Kappa denies that it *knew* of any infringement, as Kappa does not infringe (see below). Kappa admits that it continued to sell a magnesium supplement after January 15, 2025, but denies that this product contains Magtein, and denies that it infringes any valid patent rights of ThreoTech.

15. Kappa denies Paragraph 20's allegation that it sold "the same Magnesium L-Threonate 3-in-1 Advanced Complex" as before. Kappa's current product is based on a different composition that does not include the magnesium threonate compound. Kappa therefore denies that its "non-licensed product" is the same as ThreoTech's licensed product in any infringing sense. Kappa admits that both the licensed Magtein product and Kappa's current product were marketed as providing approximately 280 mg of elemental magnesium per serving (2 capsules for women) and 420 mg for men (3 capsules). However, Kappa's current product achieves this magnesium content using a distinct formula. Kappa denies any remaining allegations in Paragraph 20 and specifically denies that its current product is covered by any claim of ThreoTech's patents.

16. To the extent not expressly admitted above, Kappa denies all allegations in the Complaint. Kappa specifically denies that it has infringed, contributorily infringed, or induced infringement of any of the Asserted Patents, and denies that

ANSWER AND COUNTERCLAIMS
CASE NO.: CV-25-cv-05871-FLA-JPR

ThreoTech is entitled to *any* relief in this action.

17. **Responses to Counts I--X (Patent Infringement Claims):** Kappa incorporates its answers above into each count. Kappa denies the allegations in Count I (direct infringement of the '061 Patent) that it has made, used, sold, or imported any product infringing U.S. Patent No. 8,637,061. Kappa denies Count II (contributory infringement of the '061 Patent) and specifically denies that it sold any component especially made for use in an infringing product -- Kappa's own product is non-infringing and has substantial non-infringing uses. Kappa similarly denies the allegations in Counts III and IV (direct and contributory infringement of the '803 Patent), Counts V and VI (direct and contributory infringement of the '132 Patent), Counts VII and VIII (direct and contributory infringement of the '118 Patent), and Counts IX and X (direct and contributory infringement of the '301 Patent). Kappa denies that it has infringed (either directly or indirectly) *any* claim of the Asserted Patents, whether literally or under the doctrine of equivalents. As detailed in Kappa's counterclaims below, each of the Asserted Patents requires the presence of *magnesium threonate* in the accused composition or method, yet Kappa's accused products contain no magnesium threonate whatsoever.

18. Accordingly, at least one essential claim limitation is absent, and no claim of the Magtein Patents can be met by Kappa's products. Kappa further denies that any alleged infringement by Kappa was willful or deliberate, and denies that ThreoTech has suffered any cognizable harm. Any allegation in Counts I--X that has not been specifically admitted is hereby denied.

19. **Prayer in Complaint:** Kappa denies that ThreoTech is entitled to any of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the relief requested in its Prayer for Relief, including injunctive relief, damages, fees, or any other relief. Kappa respectfully requests that the Court deny all such relief and enter judgment in Kappa's favor for the reasons set forth herein.

## AFFIRMATIVE DEFENSES

20. Without assuming any burden of proof that would otherwise rest on Plaintiffs, Kappa asserts the following affirmative defenses. Kappa reserves the right to amend or supplement these defenses as additional information becomes available.

21. **Improper Venue (Fed. R. Civ. P. 12(b)(3)):** Venue is improper in the Central District of California. Kappa does not "reside" in this District for patent venue purposes, nor does it have a regular and established place of business here (as required by 28 U.S.C. § 1400(b)). Kappa is a resident of Texas only. It has no offices or permanent presence in California. All alleged acts of infringement by Kappa (which are denied in any event) occurred outside California. However, in the interest of judicial economy and to allow this case to proceed on the merits without further delay, Defendant hereby Answers this Complaint, while expressly preserving all objections to venue.

22. **Failure to State a Claim:** The Complaint fails to state a claim upon which relief can be granted to the extent it attempts to plead indirect patent infringement (contributory infringement) without alleging requisite facts. For example, ThreoTech has not plausibly alleged the absence of substantial non-infringing uses for any component sold by Kappa, as required by 35 U.S.C. § 271(c). Likewise, any claim of induced infringement (though not explicitly pleaded) would fail for

lack of allegations of specific intent. Moreover, ThreoTech's complaint (Counts I--X) relies on formulaic recitations of the patent claims and generalized accusations, which do not meet the pleading standards of Rule 8. Kappa asserts this defense to preserve all rights, although ThreoTech's deficiencies may be cured in part by the clarifications in this Answer and the non-infringement facts established herein.

23. **Invalidity of Patents:** The asserted claims are invalid under 35 U.S.C. § 101 because they are directed to a naturally occurring product (magnesium L-threonate) and its natural effects on human physiology, without distinctly claiming any inventive concept to transform those natural phenomena into patent-eligible inventions.   The asserted patents are invalid, including for anticipation, obviousness, and/or failure to satisfy 35 U.S.C. §§ 101 and 112. (See Counterclaims.)

24. **Unclean Hands / Patent Misuse / Inequitable Conduct.** Plaintiffs' conduct bars or limits equitable relief and renders enforcement improper. (See Counterclaims.)

25. **Non-Infringement of Patents:** The complaint lumps five different patents together and asserts that Kappa's "Magnesium L-Threonate 3-in-1 Advanced Complex" capsules infringe them, but provides virtually no factual detail as to how the product meets the specific limitations of any asserted claim. Each count for "Direct Infringement" merely repeats prior paragraphs and then baldly asserts that by "importing, manufacturing, offering to sell, and/or selling" its MgT product, Kappa "has resulted in the direct infringement" of the patent. The complaint does not identify which patent claims are allegedly infringed (aside

from referencing "one or more claims"), nor does it attempt to map any element of any claim to any feature of the accused product. The only arguably factual allegation is that Kappa allegedly sells a magnesium supplement along with L-threonate that provides certain amounts of elemental magnesium per capsule serving.

26. But nowhere do Plaintiffs explain how that translates to infringement of the specific claim language of the patents-in-suit. Simply naming a product and reciting that it infringes does not state a plausible claim, especially where the technology (neurological treatment using a specific chemical compound) is more complex than a simple gadget. Additionally, a glaring deficiency pervades the complaint: for three of the five patents, the independent claims are method-of-use claims (methods of treating cognitive or metabolic conditions by administering magnesium threonate). Kappa is not alleged to perform any of the steps of these treatment methods. Kappa is a manufacturer and supplier of dietary supplements; it does not diagnose patients, administer pills to them, or monitor their cognitive or metabolic health.

27. Yet the complaint tries to hold Kappa liable for direct infringement of method claims simply because it sells a product that customers might use to practice the method. That theory is not legally tenable as a claim of direct infringement. We next examine each patent in turn to illustrate the affirmative defenses and the absence of any plausible infringement allegation.

**The '061 Patent (U.S. Patent No. 8,637,061) – No Facts Showing the Accused Product is a "Dosage Form" as Claimed**

28. The '061 patent is titled "Magnesium compositions and uses thereof for

neurological disorders." Its independent claim 1 is a composition claim, reciting: "A dosage form formulated for oral administration to a Subject comprising magnesium threonate, wherein the dosage form comprises at least 10 mg magnesium threonate, and wherein the dosage form is a solid, semi-solid, semi-liquid, or a gel.". The claim is indefinite under 5 U.S.C. § 112(b) and § 101 at least because it includes the indefinite term "or". In any event, the claim requires a dosage containing magnesium L-threonate above a specified minimum amount (10 mg). On its face, this claim could encompass a pill or capsule that includes magnesium threonate as an active ingredient. However, the complaint never actually alleges that Kappa's "3-in-1 Advanced Complex" capsules contain magnesium L-threonate in a dosage form meeting these criteria. Plaintiffs simply assume it, based on the product's name, but they plead no supporting facts.

29.For example, they do not state how much magnesium threonate is in each Kappa capsule, or whether the product's magnesium content even comes from magnesium threonate as opposed to other magnesium compounds. The complaint vaguely references that Kappa's product provides "280 mg of elemental magnesium (2 capsules 1,502 mg) and 420 mg elemental magnesium (3 capsules)", but it does not connect this to the claim requirement of at least 10 mg of magnesium threonate. (Notably, "280 mg elemental magnesium" may correspond to a much larger amount of magnesium threonate salt but the complaint never clarifies the composition of those 1,502 mg of capsule contents.) In short, Plaintiffs leave it entirely to conjecture that Kappa's product is in fact a "dosage form" with magnesium threonate as claimed.

**The '803 Patent (U.S. Patent No. 8,142,803) – Method of Treatment Not**

**Performed by Defendant**

30. The '803 patent claims methods of treating neurological disorders using magnesium threonate. Claim 1 exemplifies the scope: "A method of ameliorating the effects of a neurological disorder, the method comprising administering to a subject in need for supplementing a magnesium-containing compound (MCC) in an amount that is effective to ameliorate the effects of said neurological disorder, wherein the MCC comprises magnesium threonate.". In plain terms, this claim covers a therapeutic method - giving a person who has a neurological disorder an effective dose of magnesium threonate to alleviate the disorder's effects. By definition, direct infringement of this claim would require someone to actually administer the magnesium threonate to a patient or subject. Kappa is not a doctor or healthcare provider; it is a company selling bottled capsules on the retail market. There is no allegation that Kappa ever personally treats patients with its product. Therefore, on the face of the complaint and the patent, Kappa cannot be a direct infringer of claim 1 (or the other independent claims of the '803 patent, which are similarly drawn to methods for therapeutic or prophylactic treatment).

31. Plaintiffs appear to recognize this, as their '803 patent count is pleaded in the alternative as a mix of direct and "contributory" infringement. First, they plead direct infringement by sale of the product - a theory that is legally flawed because selling a product is not practicing a method. Then they plead contributory infringement under 35 U.S.C. § 271(c), alleging that Kappa sells a product especially made for infringing use. To state a contributory infringement claim, however, Plaintiffs needed to allege (1) that the product has no substantial non-infringing uses, and (2) that Kappa sold it with knowledge of the patent and

that the product was especially made or adapted for infringing the method. The complaint does not allege either element with any facts.

**The '132 Patent (U.S. Patent No. 8,178,132) – No Specificity as to "Food Composition" or Effective Amount Limitations**

32. The '132 patent, entitled "Magnesium-containing food compositions," contains independent claims directed to nutritional compositions with magnesium threonate. For example, claim 1 covers: "A food composition comprising a food carrier and magnesium threonate.". Claim 8 is a similar composition with magnesium threonate present in an "effective amount" to modulate cognitive function in a subject, plus a food carrier. Claim 16 claims "[a] food supplement comprising magnesium threonate and a food additive agent.". In simpler terms, the patent covers putting magnesium threonate into various food or supplement forms (beverages, solid foods, snack bars, etc., as elaborated in dependent claims) in amounts effective to achieve cognitive benefits.

33. Plaintiffs again fail to articulate how Kappa's accused product meets these claim requirements. It does not specify what, if any, food-based carrier or additive is present in Kappa's capsules. The complaint provides no ingredient list or description of the product's makeup.

34. More fundamentally, claim 8 and others require the magnesium threonate to be present in an "effective amount" to modulate cognitive function or memory. The complaint does allege that Kappa's product provides 280 mg elemental magnesium in a two-capsule serving, but it never connects this to cognitive effects or to the notion of an "effective amount." There is no allegation that, for instance, consuming Kappa's recommended dose results in improved memory or that it falls

within a dosage range taught by the patent to be effective. Without such linkage, Plaintiffs have not plausibly alleged that the accused product, as sold, meets the claim limitation of containing an "amount effective" to achieve the claimed result.

35. Simply pointing out the magnesium content is not enough. No facts suggest that Kappa's product contains the requisite quantity of MgT per unit or per day to satisfy the claim. This omission is especially critical given that "effective amount" is a functional claim element; pleading infringement of it demands some factual context (e.g., what the effective amount is and that the product provides it), which is completely lacking here.

**The '118 Patent (U.S. Patent No. 8,178,118) – Method of Enhancing Cognitive Function Not Attributable to Defendant**

36. The '118 patent is another method-of-use patent, titled "Magnesium compositions and uses thereof for cognitive function." Its independent claims mirror those of the '803 patent in format, but focused on cognitive enhancement rather than general neurological disorders. Claim 1 is representative: "A method of enhancing cognitive function comprising administering to a subject a magnesium-containing compound (MCC) in an amount that is effective to enhance cognitive function, wherein the MCC comprises magnesium threonate.". Other independents include claim 7 (method of maintaining cognitive function) and claim 13 (method of treating cognitive dysfunction prophylactically or therapeutically) – all of which require administering magnesium threonate to a subject for a cognitive benefit.

37. For the same reasons discussed with the '803 patent, Kappa cannot directly infringe these method claims by merely selling its supplement. There is no

allegation (nor could there be) that Kappa administers magnesium threonate to any subject. The individuals who might perform the administering step are the customers who buy the product and consume it, or perhaps their healthcare providers if instructed - but not the seller. Thus, as a matter of law, Kappa's sale of capsules is not direct infringement of a method that must be carried out by a person upon themselves or another.

38. Recognizing this, Plaintiffs again lean on indirect infringement in name but without substance. They plead that Kappa had notice of the '118 patent and that its continued sales would "lead to" infringement if customers use the product as recommended. However, they do not allege that Kappa specifically encouraged customers to use the product in a manner that satisfies the patent. There is no indication that Kappa's product instructions tell users to take the product for a month or to get their magnesium levels measured - highly unlikely for a retail supplement.

**The '301 Patent (U.S. Patent No. 8,163,301) – Method of Treating Metabolic Disorders Not Plausibly Infringed or Encouraged by Defendant**

39. The '301 patent is titled "Magnesium compositions and uses thereof," and its independent claims focus on metabolic disorders (such as diabetes or magnesium deficiency conditions). Claim 1 recites: "A method of ameliorating an effect of a metabolic disorder comprising administering to a subject in need for supplementing a magnesium-containing compound in an amount that is effective to ameliorate said effect of the metabolic disorder, wherein the magnesium-containing compound comprises magnesium threonate." Claim 6 similarly covers therapeutic treatment of a magnesium deficiency-caused

metabolic disorder by administering magnesium threonate for at least 15 days.

40. Once again, these are method claims requiring administration of MgT to a patient with a metabolic disorder. The allegations in the complaint do not make out a plausible case that Kappa is liable for infringing them. Kappa's accused product is marketed as a brain health supplement (per Plaintiffs' own descriptions of Magtein's uses for cognitive and mood benefits). There is no allegation that Kappa markets it as a treatment for metabolic disorders like diabetes, obesity, or the like. There is also no allegation that Kappa (or anyone under its control) has administered the product to individuals with metabolic disorders to ameliorate their condition. Thus, as with the prior method patents, direct infringement by Kappa is implausible on its face - Kappa doesn't perform the claimed method, period.

41. Moreover, nowhere do Plaintiffs allege that Kappa's product instructions or advertising promote an infringing use - i.e., using magnesium threonate to treat or mitigate a metabolic disease. If anything, magnesium L-threonate is typically associated more with cognitive benefits than with metabolic ones, and Plaintiffs have not pointed to any representation by Kappa to the contrary. Likewise, contributory infringement is not plausibly pled because, as with the other method patents, the product has substantial non-infringing uses (general supplementation), and Plaintiffs have not alleged otherwise.

42. Finally, it bears noting that the complaint does not even clearly identify what "metabolic disorder" or "effect" thereof is at issue. The '301 patent's claims encompass a broad range of metabolic conditions (the patent itself mentions diabetes as one example). The complaint gives no indication which condition

Kappa's sales supposedly relate to. This deficiency alone makes the claim implausible, because if Plaintiffs cannot articulate which use of the product allegedly infringes.

**The Asserted Patents Claim Unpatentable Subject Matter Under 35 U.S.C. § 101**

43. Even if the complaint had adequately pled infringement (it has not), dismissal would still be proper because the patent claims at issue are invalid under § 101 as a matter of law.

44. It is a fundamental tenet of patent law that "laws of nature, natural phenomena, and abstract ideas" lie beyond the bounds of patent-eligible subject matter. The Claims are directed to a natural phenomenon or law of nature. Stripping away verbiage, they claim that magnesium L-threonate can be used to improve cognitive function or treat certain health conditions. That is a discovery about how the natural world works – magnesium threonate elevates brain magnesium levels and in turn has beneficial neurological effects (as the patents discuss in scientific detail). It is fundamentally a natural phenomenon or law of nature: the human body's cognitive or metabolic performance improves when a certain chemical (MgT) is present at sufficient levels. When viewing the claim elements as an ordered combination, the conclusion is the same: the claims describe nothing more than the natural use of a natural compound. A patient has a condition; you give them magnesium threonate; their condition improves (per the natural law discovered). That is the entire concept.

45. A glaring deficiency pervades the complaint: for three of the five patents, the independent claims are method-of-use claims (methods of treating cognitive or

metabolic conditions by administering magnesium threonate). It is black-letter law that a method claim is directly infringed only by one who performs each step of the claimed method.  Kappa is not alleged to perform any of the steps of these treatment methods. Kappa is a manufacturer and supplier of dietary supplements; it does not diagnose patients, administer pills to them, or monitor their cognitive or metabolic health.

46. The complaint does not allege that Kappa (or anyone acting on its behalf) performs the claimed treatment methods. Selling a supplement for consumer use is not the same as practicing a patented method of treating neurological or metabolic disorders, and Plaintiffs plead no facts bridging that gap. As a result, the direct infringement claims for the method patents are facially deficient. While Plaintiffs also gesture at indirect infringement (contributory infringement), those allegations are equally unsupported – the complaint does not allege facts showing that Kappa had the requisite knowledge or specific intent, nor that the accused capsules have no substantial non-infringing use aside from the patented methods. Without support, it speculates that "if Kappa Nutrition's customers consume the Infringing Product as recommended by Kappa Nutrition" (Compl. ¶36), a questionable statement that fails to plead the required elements of inducement or contributory liability.

47. Moreover, even aside from the complaint's pleading deficiencies, the patents themselves suffer fundamental legal defects that make any claim of infringement unsustainable. The asserted claims are invalid under 35 U.S.C. § 101 because they are directed to a naturally occurring product (magnesium L-threonate) and its natural effects on human physiology, without distinctly

claiming any inventive concept to transform those natural phenomena into patent-eligible invention

48. Kappa has not infringed and does not infringe any valid claim of the Asserted Patents, either directly or indirectly, literally or under any equivalence theory. As noted, each independent claim of the Asserted Patents includes, as a necessary element, a magnesium L-threonate compound or the use of magnesium threonate. Kappa's accused products do not contain magnesium threonate -- the products are formulated without that ingredient. Therefore, at least one claim limitation from every asserted independent claim is missing in Kappa's products, and no claim of the Magtein Patents can be infringed. Because there is no direct infringement by Kappa or its customers, Kappa cannot be liable for indirect infringement either. ThreoTech's own allegations acknowledge that Kappa's current product is *not* sourced from ThreoTech and is sold under different marks, indicating it is a different formulation. In sum, Kappa's products do not fall within the scope of the Asserted Patents. Kappa is entitled to judgment in its favor on all patent claims, and to a declaratory judgment of non-infringement as pleaded below.

49. **Authorization / License (Patent and Trademark Estoppel):** ThreoTech's claims are barred in whole or in part by license and estoppel. ThreoTech gave Kappa a contractual right to sell off its remaining Magtein-containing product through January 15, 2025. To the extent ThreoTech seeks damages or relief for any sales by Kappa during that authorized sell-off period, such sales were expressly licensed and cannot constitute infringement of any patent or trademark. Moreover, ThreoTech's conduct in licensing and then terminating supply estops it

from now asserting that every sale of a magnesium L-threonate supplement is forbidden. ThreoTech permitted Kappa to enter the market for such supplements (under license) and has benefited from those sales; it cannot suddenly reverse course and claim that Kappa's continuation in the same market (with a non-infringing product) is unlawful. Any claim for willful or enhanced damages is particularly barred for the period during which Kappa operated with ThreoTech's consent.

50. **No Likelihood of Trademark Confusion:** To the extent ThreoTech alleges or implies that Kappa's use of its Magbrain family of marks infringes ThreoTech's Magtein trademark, such allegations are unfounded. Kappa asserts that its marks do not create any likelihood of confusion with the Magtein marks under the Sleekcraft factors (*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)). In particular:

51.**Strength of ThreoTech's "Magtein" Mark:** The term Magtein appears to be a coined or fanciful name for a magnesium L-threonate ingredient. While it is a registered mark, its strength is limited to the niche market of dietary supplements (specifically magnesium nootropic supplements). It is not a household name or a famous mark. Furthermore, "Magtein" derives from the descriptive root "Mag-" (evoking magnesium) and thus has some suggestive or descriptive character in context. Its overall strength is at most minimal in the supplement industry.

52.**Similarity of the Marks:** Kappa's marks (MAGBRAIN L-THREONATE, MAGNESIUM L-THREONATE PLUS, MAGBRAIN MAGNESIUM L-THREONATE, and L-THREONATE PLUS) are visually and aurally distinct from "Magtein." The only common substring is "Mag," which is a common prefix

referring to magnesium (a feature also present in many third-party supplement names). Magtein is a single invented term ending in "-tein," whereas Magbrain is a compound of "Mag" and "Brain," clearly invoking brain health. The inclusion of "L-Threonate" and "Plus" in Kappa's marks further differentiates them and emphasizes the product's contents, not any brand source. In short, Magbrain and Magtein look and sound different and create different commercial impressions.

53. **Degree of Consumer Care:** Dietary supplement purchasers are often educated consumers who pay attention to product details, especially for a specialized brain-health supplement. Magnesium L-threonate supplements are not impulse buys; they are relatively premium products often accompanied by technical information. Consumers are thus likely to exercise a high degree of care, reading labels to check for dosage, ingredients, and the source of the product. This high degree of care reduces any chance that a buyer would mistake "Magbrain L-Threonate" for "Magtein," particularly when the packaging prominently identifies the manufacturer or brand (Kappa/Kappa for Magbrain products, vs. "Magtein" labeled as an ingredient by ThreoTech's licensees).

54. Considering all the Sleekcraft factors, Kappa's use of its Magbrain and related marks is not likely to cause confusion among the relevant consuming public. Therefore, to the extent ThreoTech is indirectly asserting a trademark infringement or unfair competition claim, such claim is without merit. Kappa's branding is a fair and descriptive use of terms identifying the product's nature and intended benefit (magnesium for the brain), and does not infringe ThreoTech's trademark rights.

55. **Unclean Hands and Patent Misuse:** ThreoTech is attempting to enforce

its intellectual property in a manner that constitutes misuse and comes to the Court with unclean hands. As detailed above, ThreoTech is using its patents (and the threat of trademark claims) not for legitimate protection of innovation or brand, but as tools to *suppress competition* from a domestic rival offering a lawful alternative product. By demanding that Kappa abstain from selling *any* magnesium L-threonate supplement; even one that does not use ThreoTech's ingredient and arguably falls outside the literal patent claims, ThreoTech seeks to broaden its monopoly beyond the lawful scope. ThreoTech's conduct (including leveraging a trademark license to impose a non-compete on Kappa and then suing on patents to the same effect) is inequitable and violative of public policy. These actions constitute patent misuse or, at a minimum, render any equitable relief inappropriate. Accordingly, ThreoTech's claims for injunctive relief or other equitable remedies are barred by the doctrine of unclean hands. (Any additional affirmative defenses revealed during discovery are hereby reserved.)

## **COUNTERCLAIMS**

56. ThreoTech's aggressive assertion of long-expired and fraudulently obtained patents has created a substantial controversy requiring declaratory relief. Kappa files these counterclaims to clarify its rights and to prevent further abuse of process."

57. Defendant/Counterclaim-Plaintiff Mando International LLC ("Kappa") asserts the following Counterclaims against Plaintiffs/Counterclaim-Defendants Neurocentria, Inc., ThreoTech LLC (collectively, "ThreoTech"), AIDP, Inc. (AIDP), Guosong Liu, and Fei Mao (collectively "Inventors"):

58. Additional party and counter-defendant, AIDP is a corporation organized and existing under the laws of the State of California and doing business in the State of California. Upon information and belief, at all relevant times, AIDP has held by assignment all rights, title, and interest in the below-described patents and trademarks. AIDP's principal place of business is located at 19535 East Walnut Drive South, City of Industry, California 91748. AIDP is the exclusive distributor of Magtein based on the representations on its bottles (Ex 1).



**Ex. 1**

59. Additional party and counter-defendant, Guosong Liu is a listed inventor on the five patents asserted in this case, and upon information and belief, is an individual and resident of California.

60. Additional party and counter-defendant, Fei Mao is a listed co-inventor on the five patents asserted in this case, and upon information and belief, is an individual and resident of California.

61. **Counterclaim Common Allegations:** ThreoTech has accused Kappa of infringing five U.S. patents related to magnesium L-threonate (the Magtein

Patents). An actual, immediate controversy therefore exists between the parties as to whether Kappa's products infringe those patents. This Court has subject matter jurisdiction over these counterclaims under 28 U.S.C. §§ 1331, 1338(a), and 2201 (the Declaratory Judgment Act). Venue is proper for these counterclaims in whatever court has proper venue of the original complaint (though Kappa maintains that is not the Central District of California). For purposes of these counterclaims, Kappa incorporates by reference the factual statements in the Answer and Affirmative Defenses above.

**Fraud on the U.S. Patent and Trademark Office (Omission of a True Co-Inventor).**

62. Upon information and belief, Plaintiffs and the named inventors on the Asserted Patents intentionally and fraudulently omitted Dr. Inna Slutsky-then a postdoctoral researcher at the Massachusetts Institute of Technology (MIT) from 2002 to 2005 - as a co-inventor of the alleged magnesium L-threonate (Magtein) compound. Dr. Slutsky was the postdoctoral researcher referenced by Plaintiff Fei Mao in his 2018 University of Oregon interview, in which he expressly described an accidental discovery by his business partner's postdoc, who "found that neurons communicated much more intensively" when exposed to higher magnesium concentrations. Dr. Slutsky was that researcher, and her experimental work directly led to the conception of magnesium L-threonate's purported cognitive effects.

**Public Disclosure and Prior Art (2002–2004).**

63. The magnesium L-threonate compound was publicly disclosed long before any of the asserted patents were filed. Publications from 2002 (Gao Sheng-Li, et

al.) and a 2004 MIT-related article described magnesium threonate compositions and their effects on neural activity. In addition, a Neuron journal article in 2010 authored by Slutsky et al. further confirmed the compound's properties. Thus, Plaintiffs' patents are invalid and expired, as the claimed subject matter was publicly known more than twenty years ago.

**Admissions of Prior Disclosure by Plaintiffs' Own Filings.**

64. The U.S. Patent Application No. 2022/0054537 A1, entitled "Magnesium-L-Threonate and Neurotransmitter Compositions and Related Methods," on which Guosong Liu is a coinventor, acknowledged that MIT scientists, including Slutsky et al., first contributed magnesium L-threonate. The Background of that application cites the Neuron (2010) publication and expressly attributes to Dr. Slutsky and her colleagues. Plaintiffs' own statements therefore admit prior art and contradict their current assertion of exclusive inventorship.

**Plaintiffs' Prior Admissions in Litigation.**

65. In prior litigation involving AIDP, Inc., ThreoTech LLC, and other licensees (e.g., *AIDP, Inc. v. Teraputics Group, Inc.*, No. 18-cv-6334 (E.D.N.Y. filed Nov. 7, 2018), the defendants successfully argued that magnesium L-threonate had been in the public domain since 2002. Those filings and related settlements - reported publicly and available reflect that Plaintiffs' claimed "Magtein" compound was not novel and had already been disclosed in prior Chinese publications. Plaintiffs' current assertion of enforceable patent rights directly contradicts those prior judicial admissions.

## CAUSES OF ACTION OF COUNTERCLAIMS

**Count I: Declaratory Judgment of Non-Infringement of U.S. Patent No.**

**8,637,061 ("'061 Patent")**

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc.)*

66. Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

67. ThreoTech has asserted the '061 Patent against Kappa. The '061 Patent (Exhibit A to the Complaint) is entitled "Magnesium compositions and uses thereof for neurological disorders." Claim 1 of the '061 Patent requires a dosage form comprising magnesium threonate (at least 10 mg of magnesium threonate in the composition). Kappa's accused products do *not* contain magnesium threonate in any amount -- Kappa uses no magnesium L-threonate compound in its formulation. Accordingly, Kappa's products lack an essential element of every claim of the '061 Patent. Kappa's making, using, or selling of its products therefore does not infringe any claim of the '061 Patent, either directly or indirectly. A judicial declaration of non-infringement is necessary to resolve this dispute. Kappa seeks a declaratory judgment that it has not infringed and is not infringing, directly or indirectly, any claim of the '061 Patent.

68. Upon information and belief, Plaintiff ThreoTech LLC's claims of patent infringement center on the inclusion and use of "magnesium threonate" as a key compositional element in the accused products. However, Defendant Mando International LLC does not use magnesium threonate in any of its branded formulations, including those sold under the names MAGBRAIN L-THREONATE, MAGNESIUM L-THREONATE PLUS, MAGBRAIN MAGNESIUM L-THREONATE, and L-THREONATE PLUS.

69. The reason for this is because the final molecular structure of Defendant's products is materially distinct from the molecular structure of magnesium

threonate. The accused formulations do not include magnesium threonate, either chemically or structurally. To the contrary, Defendant's formulations are composed of a proprietary plant-based, non-synthetic L-threonate biocomplex derived from naturally occurring sources, developed to promote bioavailability through an alternative mechanistic pathway unrelated to magnesium threonate chemistry.

70. By contrast, magnesium threonate as described in the asserted patents is a synthetic compound not found in nature, and is typically manufactured through chemical synthesis involving L-threonic acid and magnesium salts. Defendant's formulations are non-synthetic and do not involve any such compound or process. Thus, they fall outside the scope of each asserted independent claims which requires, expressly or inherently, the presence and functionality of magnesium threonate. Accordingly, there can be no literal infringement, nor any infringement under the doctrine of equivalents, as the fundamental ingredient and mechanism of action materially differs from the claimed inventions in the asserted patents.

71. AIDP, Inc. claims rights under the same patents and has participated in their assertion through joint enforcement agreements and prior litigation. Accordingly, an actual controversy exists between Kappa and AIDP regarding these patents.

**Count II: Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,142,803 ("'803 Patent")**

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc.)*

72. Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

73. ThreoTech has asserted the '803 Patent (Exhibit B to Complaint) against Kappa. The '803 Patent is also directed to magnesium compounds for

neurological or cognitive benefits. For example, Claim 1 of the '803 Patent is a method claim requiring administration of a magnesium-containing compound "wherein the [compound] comprises magnesium threonate." Kappa's products do not contain magnesium threonate and thus do not meet this claim limitation (or its equivalent) in any asserted claim of the '803 Patent. ThreoTech's infringement allegations as to the '803 Patent are therefore unfounded. Kappa respectfully requests a declaratory judgment that it has not infringed and does not infringe any claim of the '803 Patent.

74. AIDP, Inc. claims rights under the same patents and has participated in their assertion through joint enforcement agreements and prior litigation. Accordingly, an actual controversy exists between Kappa and AIDP regarding these patents.

**Count III: Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,178,132 ("'132 Patent")**

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc.)*

75. Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

76. ThreoTech has asserted the '132 Patent (Exhibit C to Complaint) against Kappa. The '132 Patent relates to magnesium-containing food compositions. Claim 1 of the '132 Patent is directed to "A food composition comprising a food carrier and magnesium threonate." Kappa's products are dietary supplements (which may be considered "food compositions" or nutraceuticals), but they do not include magnesium threonate as an ingredient. Because Kappa's products have zero magnesium threonate, they cannot literally infringe any claim that requires the presence of magnesium threonate. Nor has Kappa indirectly infringed the '132 Patent, as there is no direct infringement by anyone. A real and justiciable

controversy exists due to ThreoTech's allegations. Kappa seeks a declaratory judgment that it does not infringe any claim of the '132 Patent.

77. AIDP, Inc. claims rights under the same patents and has participated in their assertion through joint enforcement agreements and prior litigation. Accordingly, an actual controversy exists between Kappa and AIDP regarding these patents.

**Count IV: Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,178,118 ("'118 Patent")**

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc.)*

78. Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

79. ThreoTech has asserted the '118 Patent (Exhibit D to Complaint) against Kappa. The '118 Patent is directed to methods of enhancing cognitive function by administering a magnesium-containing compound. Critically, Claim 1 of the '118 Patent requires that the magnesium-containing compound "comprises magnesium threonate." As with the other patents, the presence of magnesium threonate is a necessary element of every claim at issue. Kappa's products, however, contain no magnesium threonate. ThreoTech cannot identify any use of magnesium threonate by Kappa or its customers that would satisfy the claim requirements of the '118 Patent. Therefore, Kappa has not infringed and is not infringing the '118 Patent. A declaratory judgment of non-infringement is warranted to remove the cloud of uncertainty over Kappa's product line.

80. AIDP, Inc. claims rights under the same patents and has participated in their assertion through joint enforcement agreements and prior litigation. Accordingly, an actual controversy exists between Kappa and AIDP regarding these patents.

**Count V: Declaratory Judgment of Non-Infringement of U.S. Patent No.
8,163,301 ("'301 Patent")**

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc.)*

81. Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

82. ThreoTech has asserted the '301 Patent against Kappa. The '301 Patent relates to methods of treating metabolic disorders by administering magnesium threonate (Exhibit E to Complaint). For example, Claim 1 recites a method of ameliorating a metabolic disorder "wherein the magnesium-containing compound comprises magnesium threonate." Kappa's products do not use or contain magnesium threonate, and Kappa does not practice any method involving magnesium threonate. Consequently, Kappa's activities do not infringe any claim of the '301 Patent. ThreoTech's contrary assertions are incorrect. Kappa is entitled to a declaratory judgment that it has not infringed and does not infringe any claim of the '301 Patent.

83. AIDP, Inc. claims rights under the same patents and has participated in their assertion through joint enforcement agreements and prior litigation. Accordingly, an actual controversy exists between Kappa and AIDP regarding these patents.

**Count VI: Declaratory Judgment of No Trademark Infringement**

*(Against Neurocentria, Inc., Threotech LLC)*

84. Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

85. ThreoTech's Complaint stops short of pleading a formal cause of action for trademark infringement, but it insinuates that Kappa's use of the Magbrain Marks violates ThreoTech's rights in the Magtein mark (see Complaint ¶¶ 16--17).

ThreoTech's counsel has also, on information and belief, threatened trademark action in correspondence. Kappa therefore seeks, in an abundance of caution, a declaratory judgment that its use of MAGBRAIN L-THREONATE, MAGNESIUM L-THREONATE PLUS, MAGBRAIN MAGNESIUM L-THREONATE, L-THREONATE PLUS, and any other Kappa mark incorporating "Mag" or "L-Threonate," does not infringe or unfairly compete with ThreoTech's "Magtein" trademarks. As set forth in detail in Affirmative Defense 5, there is no likelihood of confusion between Kappa's marks and the Magtein mark under the governing legal factors. The parties are already before the Court on related claims, and a clear determination of trademark rights will facilitate the parties' business decisions going forward.

86. Therefore, to the extent a case or controversy exists on this issue, Kappa requests a declaratory judgment that its Magbrain Marks and related branding do not violate ThreoTech's trademark rights (and that ThreoTech is not entitled to enjoin Kappa's use of those marks).

### Count VII: Declaratory Judgment Of No Breach Of Contract
*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc.)*

87. Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

88. Plaintiffs Neurocentria, Inc. and ThreoTech LLC (collectively, "ThreoTech") have asserted, both in correspondence and in their pleadings, that Kappa breached the Trademark License Agreement dated August 29, 2022 ("the Agreement") governing use of the Magtein mark.

89. Kappa denies that it has breached the Agreement in any respect. Kappa

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

fully complied with its contractual obligations, including the six-month sell-off period through January 15, 2025, as expressly permitted under the Agreement.

90. Kappa lawfully wound down its sales of Magtein-branded products during that period, ceased all further use of the Magtein name thereafter, and properly transitioned to its own independent product line under the "Magbrain" branding. Any post-termination sales were of non-Magtein formulations and therefore outside the scope of the Agreement.

91. To the extent ThreoTech purports to interpret the Agreement as prohibiting all sales of any magnesium L-threonate products by Kappa after termination, such an interpretation is contrary to the plain language of the contract, which granted only a limited trademark license, not an exclusivity or non-compete obligation.

92. An actual and justiciable controversy exists between the parties as to whether Kappa breached the Agreement. Kappa seeks a judicial declaration under 28 U.S.C. § 2201 that: (a) Kappa fully complied with the Agreement; (b) Kappa did not breach any term or obligation therein; (c) ThreoTech's termination was improper and ineffective to restrict lawful post-license activity; and (d) Kappa owes no damages or further performance under the Agreement.

93. To the extent AIDP claims rights or enforcement authority under the Agreement, Kappa seeks a declaration that it has not breached any such rights.

54. Such a declaration is necessary and appropriate to clarify the parties' rights and obligations under the Agreement and to prevent further baseless allegations of breach.

**Count VIII – Declaratory Judgment Of Patent Invalidity**

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc., Guosong Liu, Fei Mao)*

55. Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

56. The asserted claims are invalid under 35 U.S.C. § 101 because they are directed to a naturally occurring product (magnesium L-threonate) and its natural effects on human physiology, without distinctly claiming any inventive concept to transform those natural phenomena into patent-eligible inventions.

57. Rather, they add only generic steps like formulating it into a capsule or food, or administering it to a patient, which are conventional activities.

58. They use vague qualitative phrases (e.g., "method of enhancing cognitive function" (Dkt 1-3, Ex. D, 118' Patent, claim 1) or "method of ameliorating an effect of a metabolic disorder", (Dkt 1-5, Ex. E, 301' Patent, claim 1) without objective boundaries, and they purport to cover a vast range of medical conditions without adequate description in the specification of how to achieve those outcomes across the full scope.

59. Each asserted "Magtein" patent claims subject matter that was publicly disclosed and obvious long before the alleged invention date.

60. Publications from 2002 (Gao Sheng-Li et al.) and 2004 (MIT) and the Neuron (2010) article by Slutsky et al. describe magnesium L-threonate compositions and their neurological effects.

61. Because these references anticipate or render obvious the claimed inventions, and because the specifications fail to satisfy §§ 101 and 112 requirements, the patents are invalid.

62. AIDP has asserted or authorized assertion of the invalid patents against Kappa and others. Kappa therefore seeks a declaration of invalidity binding AIDP.

63. Inventors Liu and Mao are proper parties to this claim because they are identified as inventors and have ownership or enforcement rights under 35 U.S.C. § 262.

64. An actual controversy exists. Kappa seeks a declaration that U.S. Patent Nos. 8,637,061; 8,142,803; 8,178,132; 8,178,118; and 8,163,301 are invalid and unenforceable.

## Count IX– Inequitable Conduct / Fraud on the USPTO

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc., Guosong Liu, Fei Mao)*

65. Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

66. Plaintiffs and the named inventors intentionally omitted Dr. Inna Slutsky, a true co-inventor whose work at MIT (2002–2005) led to the discovery of magnesium L-threonate's properties.

67. They further withheld prior-art publications and falsely represented exclusive inventorship to the USPTO to obtain issuance of the asserted patents.

68. These omissions and misrepresentations were material and made with intent to deceive the Office.

69. AIDP, Inc., as a joint enforcer and commercial partner, had knowledge of these omissions yet continued asserting the patents, aiding and abetting inequitable conduct.

70. Liu and Mao knowingly and intentionally omitted Dr. Inna Slutsky as a co-inventor and withheld material prior art in violation of their duty of candor under 37 C.F.R. § 1.56.

71. Accordingly, all asserted patents are unenforceable for inequitable conduct

and fraud on the USPTO. Kappa seeks a declaration of unenforceability and an award of its attorneys' fees under 35 U.S.C. § 285.

## Count X – Unfair Competition Under California Business & Professions Code § 17200

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc., Guosong Liu, Fei Mao)*

72. Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

73. Plaintiffs engaged in unlawful, unfair, and fraudulent business acts by: (a) asserting expired and fraudulently obtained patents; and (b) misrepresenting Kappa's lawful Magbrain products as infringing these expired and fraudulently obtained patents.

74. These acts violate the policy of open competition embodied in Cal. Bus. & Prof. Code § 17200 et seq.

75. AIDP's use of the Magtein mark and enforcement of invalid patents constitute unlawful and unfair business practices under §17200.

76. Liu and Mao, as controlling officers of Neurocentria and ThreoTech, personally participated in and approved the use of false patent claims to mislead the marketplace.

77. Kappa seeks injunctive relief restraining Plaintiffs from continuing such conduct, restitution of monies wrongfully obtained, and recovery of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## Count XI – False or Misleading Advertising under 15 U.S.C. § 1125(a)(1)(B) (Lanham Act)

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc., Guosong Liu)*

94. Kappa realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

95. Defendants Neurocentria, Inc., ThreoTech LLC, and AIDP, Inc., acting individually and in concert, and under the direction and authorization of Guosong Liu, have made and disseminated false and misleading statements of fact in commercial advertising and promotion concerning the composition, origin, and regulatory status of their Magtein products.

96. Specifically, Defendants have advertised and labeled Magtein products as "Manufactured in the USA," despite Certificates of Analysis identifying China as the country of origin for the active ingredient Magnesium L-Threonate Hydrate (Ex 2).



ANSWER AND COUNTERCLAIMS
CASE NO.: CV-25-cv-05871-FLA-JPR

**Ex. 2**

97. Defendants have also represented in marketing that Magtein is Generally Recognized as Safe ("GRAS")-approved by the FDA and compliant with GRAS Notice No. 499, even though the products currently being sold materially differ in composition, concentration, and manufacturing origin from the formulation described in that filing.

98. Such statements are false and misleading, and were made with the intent to deceive consumers, distributors, and regulators concerning the true source, nature, and regulatory status of Magtein.

99. These false statements were made in commercial advertising and promotion distributed throughout the United States, including through online advertisements, product labeling, distributor materials, and national marketing campaigns.

100. The misrepresentations are material because consumers and distributors rely upon claims of "Manufactured in the USA" origin (Ex. 1, 3) and GRAS-approved regulatory compliance as indicators of quality, safety, and legitimacy when purchasing dietary supplements.



**Ex 3**

101.  The products were and continue to be sold in interstate commerce, and the false representations have diverted sales and goodwill away from Kappa's competing Magbrain products.

102.  As a direct and proximate result of these false and misleading statements, Kappa has suffered and continues to suffer loss of customers, market share, and reputation, and has incurred attorneys' fees and other damages in responding to Defendants' unlawful conduct.

103.  Defendant Guosong Liu, in his personal capacity and as the founder, CEO, and signatory of the FDA GRAS Notice No. 499, directly participated in and authorized the dissemination of the false and misleading statements described herein (Ex 4, Ex. 5). Liu's personal involvement subjects him to individual liability under 15 U.S.C. § 1125(a). *Id.*



**Ex. 4**



**Ex. 5**

104.  Defendants' actions constitute false or misleading advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

105.  Defendants' conduct was willful, knowing, and intentional, justifying an award of enhanced or treble damages under 15 U.S.C. § 1117(a).

**Count XII – False or Misleading Advertising under 15 U.S.C. § 1125(a)(1)(B) (Lanham Act)**

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc., Guosong Liu)*

106.  Kappa realleges and incorporates by reference all preceding paragraphs

as though fully set forth herein.

107.    Defendants Neurocentria, Inc., ThreoTech LLC, and AIDP, Inc., acting under the direction, approval, and participation of Guosong Liu, have marketed and sold dietary supplement products containing Magnesium L-Threonate Hydrate (Magtein) using false designations of origin and misleading claims of domestic manufacture.

108.    On their packaging, labeling, websites, and promotional materials, Defendants represent that Magtein and related formulations are "Manufactured in the USA"

109.    In truth and fact, the active ingredient and substantial portions of Magtein are synthesized, processed, and sourced in China, as reflected in Certificates of Analysis identifying China as the Country of Origin for the raw material used in Magtein. (Ex. 1, 3)

110.    By falsely claiming that Magtein is made or manufactured in the United States (Ex. 2), Defendants have misled consumers and distributors as to the geographic origin and manufacturing source of their products.

111.    The false designation of origin was made knowingly and willfully to enhance the commercial appeal of Magtein and to capitalize on consumer preference for domestically produced supplements.

112.    The misrepresentation of origin is likely to cause confusion, mistake, or deception among consumers and distributors regarding the true source, sponsorship, or approval of Magtein products, and constitutes false designation of origin under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

113.    These acts occurred in interstate commerce, through widespread online

advertising, national retail channels, and product distribution throughout the United States.

114.    Defendant Guosong Liu, in his personal capacity and as the founder, CEO, and signatory of the FDA GRAS Notice No. 499, directly participated in and authorized the dissemination of the false and misleading statements described herein. Liu's personal involvement subjects him to individual liability under 15 U.S.C. § 1125(a).

115.    As a direct and proximate result of these false and misleading representations, Kappa has suffered loss of sales, customer goodwill, and competitive position, and continues to be damaged by Defendants' unlawful conduct.

116.    Defendants' conduct was willful, deliberate, and in bad faith, warranting the imposition of treble damages, attorneys' fees, and other enhanced relief under 15 U.S.C. § 1117(a).

**Count XIII – Abuse of Process / Declaratory Relief for Exceptional Case Fees**

*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc., Guosong Liu, Fei Mao)*

117.    Kappa repeats and realleges the preceding paragraphs, and incorporates by reference all preceding paragraphs as though fully set forth herein.

118.    Plaintiffs, AIDP, and their founder Guosong Liu made and disseminated materially false and misleading statements of fact in commercial advertising regarding the origin, composition, and FDA-GRAS compliance of Magtein products, in violation of 15 U.S.C. § 1125(a)(1)(B).

119.    Such conduct has forced Kappa to incur substantial fees responding to motions later conceded or rendered moot.

120.   Plaintiffs' pursuit of objectively baseless patent and contract claims constitutes litigation misconduct warranting a declaration that this is an "exceptional case."

121.   AIDP, in coordination with Neurocentria and ThreoTech, engaged in serial enforcement actions to harass competitors, including Kappa, and is jointly responsible for abuse of process

122.   Liu and Mao, acting as controlling officers, knowingly authorized frivolous and duplicative filings, including the baseless enforcement of expired patents, to burden Kappa.

123.   Kappa seeks an award of its reasonable attorneys' fees, costs, and any further sanction the Court deems appropriate under 35 USC § 285, § 1117, § 1927, and the Court's inherent authority.

## **PRAYER FOR RELIEF OF COUNTERCLAIMS**

124.   Kappa respectfully requests that the Court enter judgment in Kappa's favor on all Counterclaims, and specifically declare the following:

a.  That Kappa has not infringed and is not infringing any claim of U.S. Patent Nos. 8,637,061; 8,142,803; 8,178,132; 8,178,118; or 8,163,301;

b.  Declare that each of the foregoing patents is invalid, unenforceable, and void under 35 U.S.C. §§ 101, 102, 103, and 112;

c.  Declare that Plaintiffs engaged in inequitable conduct and fraud on the U.S. Patent and Trademark Office by omitting a true co-inventor, Dr. Inna Slutsky, and concealing known prior art, rendering all asserted patents unenforceable;

d. That ThreoTech take nothing by its patent-infringement claims and that all such claims be dismissed with prejudice;

e. That Kappa's use of its "Magbrain" family of marks does not infringe or violate any trademark rights of ThreoTech (to the extent this issue is justiciable);

f. That Kappa fully complied with all terms of the Trademark License Agreement dated August 29, 2022, and did not breach that Agreement in any respect;

g. That the Court declare ThreoTech's purported termination of the Agreement ineffective to prohibit Kappa's lawful post-license conduct or future use of non-Magtein formulations;

h. Declare that Plaintiffs' assertion of expired or fraudulently obtained patents and withdrawn pleadings constitutes abuse of process and exceptional case conduct under 35 U.S.C. § 285 and 15 U.S.C. § 1117;

i. Declare that Defendants' advertising and promotional statements concerning Magtein, including "Manufactured in the USA" constitute false and misleading statements of fact and false designations of origin under 15 U.S.C. § 1125(a);

j. Require Defendants to disclose the true country of origin of all Magtein ingredients and formulations in any future advertising, labeling, or sales material;

k. Order corrective advertising and public notification, at Defendants' expense, to remedy the effects of prior false and misleading claims, including notices to distributors, retailers, and consumers;

l.  Issue injunctive relief under Cal. Bus. & Prof. Code § 17200, restraining Plaintiffs from further unfair or deceptive acts, including false infringement allegations and misuse of patent or trademark rights;

m. Award punitive damages for Plaintiffs' willful, malicious, and oppressive conduct in misusing intellectual property and initiating bad-faith litigation;

n.  Award restitution and disgorgement of any profits wrongfully obtained through Plaintiffs' unfair competition and false infringement assertions;

o.  Declare this case exceptional under 35 U.S.C. § 285, 15 U.S.C. § 1117, and 28 U.S.C. § 1927, and award Kappa all reasonable attorneys' fees, expert fees, and litigation costs incurred as a result of Plaintiffs' misconduct and repeated procedural reversals; and

p.  Impose appropriate sanctions under the Court's inherent authority for Plaintiffs' vexatious and dilatory conduct, including their November 11, 2025 withdrawal (Dkt. 53) after months of unnecessary briefing.

Dated: November 12, 2025          Respectfully submitted,
                                  LEGALFORCE RAPC WORLDWIDE P.C.


                                  /s/ Raj V. Abhyanker
                                  Raj V. Abhyanker
                                  Attorney for Defendant:
                                  Mando International, LLC

1

## JURY TRIAL DEMAND

2

     Plaintiff hereby requests a jury trial for all causes of action alleged in these

3

Counterclaims.

4

5

6

7

Dated: November 12, 2025      Respectfully submitted,
                        LEGALFORCE RAPC WORLDWIDE P.C.

8

9

10

                        /s/ Raj V. Abhyanker

11

                        Raj V. Abhyanker
                        Attorney for Defendant:

12

                        Mando International, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER AND COUNTERCLAIMS
CASE NO.: CV-25-cv-05871-FLA-JPR