Sang Dang, Esq. (SBN 214558)
sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John W. Cox
(Admitted *Pro Hac Vice*)
John.Cox@btlaw.com
Lauren U. Baker
(Admitted *Pro Hac Vice*)
Lauren.Baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile: 404-264-4033

Jeffrey Gavenman
(Admitted *Pro Hac Vice*)
jgavenman@schulmanbh.com
Jeremy Schulman
(Admitted *Pro Hac Vice*)
jschulman@schulmanbh.com
James Schaller
(Admitted *Pro Hac Vice*)
jschaller@schulmanbh.com
HUGHES HUBBARD & REED
1775 I STREET, N.W., 6th Floor
Washington, D.C. 20006
Telephone: 240-962-4618
Facsimile: 240-356-8558

Attorneys for Plaintiffs NEUROCENTRIA, INC. and THREOTECH LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC., a California corporation, and THREOTECH LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION, a Texas limited liability company,<br><br>Defendants. | Case No. 2:25-cv-05871-FLA-JPR<br><br>Judge: Hon. Fernando L. Aenlle-Rocha<br><br>**JOINT CLAIM CONSTRUCTION STATEMENT PURSUANT TO SECTION 3(C) OF THE COURT'S PATENT STANDING ORDER (DKT. 33)** |

Pursuant to Section 3(c) of the Court's Patent Standing Order dated September 29, 2025 (Dkt. 33) and the Court's Scheduling and Trial Order dated September 24, 2025 (Dkt. 32), Plaintiffs Neurocentria, Inc. and ThreoTech LLC (collectively, "Plaintiffs") and Defendant Mando International, LLC d/b/a Kappa Nutrition ("Defendant") hereby submit this Joint Claim Construction Statement for U.S. Patent No. 8,637,061 (the "'061 Patent").

The parties dispute the proper construction of certain terms appearing in the asserted claims (claims 1, 3-7, 13-14, and 17-19) of the '061 Patent. The sections below identify the parties' respective positions regarding the proposed construction of claim terms from the '061 Patent.

## Agreed Upon Constructions

The parties have not reached agreement on the construction of any claim terms. As set forth below, Plaintiffs do not agree that any claim terms require formal construction or that a claim construction hearing is necessary. Defendants disagree and submit that the Court's construction is necessary to resolve disputed issues of claim scope; if Plaintiffs contend otherwise, the parties should be able to stipulate that no genuine dispute exists as to the scope of the identified terms.

## Disputed Constructions

In accordance with Section 3(c) of Dkt. 33, attached hereto as **Exhibit A** is a table setting forth the ten (10) claim terms which are disputed. The terms are:

- "magnesium threonate"
- "dosage form";
- "formulated for oral administration";
- "at least 10 mg magnesium threonate";
- "solid, semi-solid, semi-liquid, or a gel";
- "elemental magnesium";
- "nutritionally active agent";

1

- "dietary supplement";
- "providing magnesium supplementation"; and
- "Disease terms (e.g., 'ADHD,'" 'Parkinson's disease,' 'anxiety')".

The parties' respective positions regarding the disputed claim constructions are set forth below.

<u>Plaintiffs' Statement Regarding Disputed Constructions.</u> On December 8, 2025—i.e., the date that the parties' proposed terms for construction were due (Dkt. 27-1)—Plaintiffs identified a single term for construction, "magnesium threonate" from Claims 1, 3-7, 13-14, 17-18, and 19 of the '061 Patent.[1] Mando did not serve its proposed terms for construction until December 19, 2025—11 days later. On December 19, Mando identified a single claim term from the '061 Patent for construction, "magnesium threonate," and proposed that the term be given its plain and ordinary meaning.

On January 19, Plaintiffs served their Preliminary Claim Constructions pursuant to Section 3(b) of the Court's Patent Standing Order (Dkt. 33) identifying a single term for construction, "magnesium threonate" from Claims 1, 3-7, 13-14, 17-18, and 19 of the '061 Patent. Plaintiffs proposed that the term be given its plain and ordinary meaning. Because a person of ordinary skill in the art would understand the meaning of the term "magnesium threonate" from the intrinsic evidence (*e.g.*, the specification and claims of the '061 Patent), Plaintiffs

---

[1] On December 8, 2025, Plaintiffs also identified claim terms from U.S. Patent No. 8,142,803, U.S. Patent No. 8,178,132, U.S. Patent No. 8,178,118, and U.S. Patent No. 8,163,301 for construction. On December 23, 2025, the parties entered a joint stipulation dismissing without prejudice causes of action and certain counterclaims related to U.S. Patent No. 8,142,803, U.S. Patent No. 8,178,132, U.S. Patent No. 8,178,118, and U.S. Patent No. 8,163,301, which the Court granted on January 8, 2026 (Dkt. 89). Because those causes of action were dismissed, Plaintiffs have not offered any proposed constructions for terms from U.S. Patent No. 8,142,803, U.S. Patent No. 8,178,132, U.S. Patent No. 8,178,118, and U.S. Patent No. 8,163,301.

believe that no formal construction of this claim term is required and reliance on any extrinsic evidence would be improper. *See Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence." (citation omitted)); *see also Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 130 F.4th 1372, 1383 (Fed. Cir. 2025) (noting that a court "need not consider this extrinsic evidence for claim construction where, as here, the intrinsic evidence is clear and unambiguous" (citation omitted)).

On January 19, Defendant served its Preliminary Claim Constructions identifying—for the first time—its ten (10) terms from the '061 Patent for construction, along with Defendant's proposed construction for each.[2] Plaintiffs objected to Defendant's January 19 disclosure of additional claim terms for construction as untimely and prejudicial. During the parties' January 22 meet and confer, Defendant did not provide any excuse for its delay in disclosing its proposed terms for construction, which were due nearly two months ago. Defendant's delay in disclosing its proposed terms for construction has prejudiced Plaintiffs, who relied on Defendant's December 19 disclosure of a single claim term—with a proposed plain and ordinary meaning—in providing Plaintiffs' proposed constructions and identifying intrinsic and extrinsic evidence to support the same. As a result, Plaintiffs believe that Defendant should be prohibited from putting forth constructions for any claim terms other than "magnesium threonate" and from offering any construction for "magnesium threonate" other than plain and ordinary meaning. Plaintiffs further reserve the right to seek sanctions against counsel for Defendant pursuant to Section 3(g) of the Court's Patent Standing

---

[2] Defendant, in its December 19 disclosure, proposed giving the term "magnesium threonate" its plain and ordinary meaning. In its January 19 disclosure, which Plaintiffs did not receive until January 20, Defendant proposed giving the term "magnesium threonate" a different construction.

Order (Dkt. 33 at 15) based on Defendant's failure to make a good faith effort to narrow the instances of disputed terms for construction.

Plaintiffs further do not believe that any of Defendant's proposed claim terms require construction. To the extent a construction is required, Plaintiffs propose that the claim terms identified by Defendant on January 19—including "magnesium threonate"—be given their plain and ordinary meaning. Because the intrinsic evidence is clear and unambiguous, Defendant's reliance on extrinsic evidence to construe its proposed claim terms is unnecessary and improper. *See Seabed*, 8 F.4th at 1287 ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence." (citation omitted)); *see also Regeneron*, 130 F.4th at 1383 (noting that a court "need not consider this extrinsic evidence for claim construction where, as here, the intrinsic evidence is clear and unambiguous" (citation omitted)).

Plaintiffs reserve their right to rely on intrinsic evidence to determine the plain and ordinary meaning of "magnesium threonate" and the other claim terms identified by Defendant. Defendant has indicated its intention to rely on expert declarations. Plaintiffs reserve their right to rely on extrinsic evidence, including expert testimony, as rebuttal.

Finally, Plaintiffs vehemently dispute Defendant's characterization of the procedural posture of this case in "Defendant's Statement Regarding Disputed Constructions" section below. Not only is Defendant's characterization grossly inaccurate and wholly unsupported by the record, but it goes well beyond the proper scope of this Joint Claim Construction Statement. Rather than rebut and correct each one of Defendant's points, Plaintiffs respectfully incorporate by reference their Renewed Notice of Motion and Motion for Leave to File First Amended Complaint (the "Renewed Motion") filed concurrently herewith (ECF No. 94), which details the procedural posture of this case. And, since Defendant

4

references below the case it initiated on December 15, 2025 in the Northern District of California, Plaintiffs specifically incorporate by reference their Motion to Dismiss filed in that action on January 13, 2026, and which is attached to the Renewed Motion. *See* ECF No. 94-23.

At no point did Plaintiffs indicate an intent to abandon their patent claims in favor of "non-patent theories" and at no point could Defendant believe that no claims construction was forthcoming. Plaintiffs reluctantly agreed that the patent claims *could be* brought in Texas to accommodate Defendant's objection to jurisdiction in California only to be whiplashed by Defendant filing its counterclaims in this action seeking declaratory judgments of patent non-infringement and invalidity (ECF No. 55) on the very patents that Defendant was arguing belonged in Texas. At no point in this case could Defendant possibly believe that "no patent claim construction would be necessary" as its own counterclaims, filed the very next day after Plaintiffs acquiesced to Defendant's insistence that the patent claims be brought in Texas, would *necessarily* require construction of the asserted patent issues.

Finally, Defendant's suggestion that Plaintiffs withdrew claims in response to Defendant's Rule 11 correspondence is simply false, as will be more thoroughly argued in Plaintiffs' forthcoming response to Defendant's Rule 11 Motion. Plaintiffs have sought leave to amend their complaint and remove certain patent claims since November 21, 2025 (ECF No. 64). Defendant opposed Plaintiffs' attempt to amend their complaint to remove such claims (ECF No. 65). Plaintiffs ended up stipulating with Defendant that both parties would withdraw certain claims on January 8, 2026, including certain of Plaintiffs' patent claims and certain of Defendant's mirror-image declaratory-judgment claims. *See* ECF No. 87. The assertion that Plaintiffs withdrew certain claims in response to Defendant's Rule 11 notice letter is simply false.

In any event, regardless of Defendant's revisionist account of the procedural posture of this case, the Court's Patent Standing Order and claim-construction schedule have been in effect throughout this case. Defendant never sought to amend those deadlines and cites no order, agreement, or authority relieving it of its obligation to comply with the deadlines sent forth in the Patent Standing Order.

Defendant's Statement Regarding Disputed Constructions.

Plaintiffs' effort to portray any slight timing dispute in the claim-construction exchanges as prejudicial ignores the procedural context Plaintiffs themselves created. On November 11, 2025, Plaintiffs expressly represented to the Court and Defendant that they intended to withdraw Plaintiffs' patent infringement claims "to streamline the pending issues for the Court" and stated that, although they disagreed with Defendant's venue position, they found it "acceptable" for the patent claims to be litigated in Texas. (Dkt. 53). This representation reasonably signaled that no patent claim construction would be necessary in this action (or, at minimum, that patent-claim issues might be mooted), particularly given Plaintiffs' stated intent to proceed instead with non-patent theories.

That uncertainty was reinforced by Plaintiffs' subsequent course of conduct regarding amendment. As reflected in Defendant's opposition to Plaintiffs' second motion for leave to amend (Dkt. 65), Plaintiffs missed the Rule 15(a)(1) amendment window, pursued serial amendment efforts, and sought to amend months into the case in ways that materially shifted the case's posture. Critically, Plaintiffs' second leave motion was "fatally undermined" by Plaintiffs' own contradictory representations: after telling the Court in Dkt. 53 that the revised amended complaint would remove all patent claims, Plaintiffs' proposed amended complaint then did "the opposite" by reasserting the same patent

infringement counts. Defendant explained that this was not a minor discrepancy but a direct reversal of Plaintiffs' stated reason for withdrawing their prior motion and that it prejudiced Defendant after Defendant had already answered and filed counterclaims in reliance on the operative patent-only pleading.

Against that backdrop, Plaintiffs' claim of prejudice from any modest delay in identifying disputed terms is overstated. Plaintiffs cannot fairly claim reliance on a stable, settled patent-claim posture when (i) Plaintiffs publicly indicated they would remove all patent claims and litigate them elsewhere, and (ii) Plaintiffs then oscillated by reintroducing patent claims notwithstanding that representation. To the extent Plaintiffs seek to convert these circumstances into a basis to bar Defendant from presenting otherwise proper constructions, that request is disproportionate: the remedy for any genuine scheduling concern is a practical procedure to resolve disputed scope, not a one-sided preclusion of claim-construction positions (particularly where Plaintiffs' own filings created ambiguity as to whether patent-claim construction would be needed in this forum at all).

Defendant also notes (based on the docket) that a sanctions motion is pending (Dkt. 93), which Defendant contends is supported by the same pattern of contradictory positions and late-stage litigation maneuvering described above (Defendant's reference is to the existence and pendency of the motion, not an adjudication on the merits). This is directly relevant to Plaintiffs' attempt to minimize the significance of claim construction and to portray Defendant's conduct as sanctionable or prejudicial. In that motion, Defendant explains that Plaintiffs were served with a detailed Rule 11 notice letter on December 22, 2025 identifying multiple, independent defects in Plaintiffs' asserted patent theories including lack of legal support under 35 U.S.C. §§ 101, 102, 103, and 112 and demanding withdrawal within the safe-harbor period. The safe-harbor period

expired January 12, 2026; while Plaintiffs withdrew four of five asserted patents, they continued to litigate the remaining '061 Patent without correction or evidentiary support after notice.

As Dkt. 93 further explains, Plaintiffs' continuing assertion of the '061 Patent rests on a factual premise that magnesium L-threonate does not occur naturally and that only Plaintiffs' proprietary formulation can produce the claimed biological effects. Defendant placed Plaintiffs on notice that this premise is incorrect, and after notice obtained independent expert declarations confirming that magnesium L-threonate occurs naturally through ordinary biological and metabolic processes and that magnesium ions and threonate combine in vivo regardless of whether they are pre-bonded prior to ingestion. Defendant submitted those expert declarations solely to demonstrate the absence of evidentiary support for Plaintiffs' continued factual contentions after notice, not to adjudicate patent validity on the merits at this stage. Plaintiffs offered no contrary evidence or explanation for persisting.

Accordingly, Defendant's point is not that the Court should decide the merits of validity within the claim-construction statement, but that Plaintiffs' continued pursuit of the '061 Patent has already been placed at issue through a pending Rule 11 motion because it allegedly lacks a good-faith factual and legal basis after notice. That posture further undercuts Plaintiffs' effort to manufacture "prejudice" from a modest timing dispute over claim-construction exchanges, particularly where Plaintiffs have repeatedly shifted positions on whether any patent claims would remain in this case at all.

Finally, there is a related trademark/Lanham/unfair-competition action pending in the Northern District of California, *Mando International, LLC v. AIDP, Inc. et al.*, Case No. 3:25-cv-10682-TLT, which further underscores why Plaintiffs' shifting positions on what claims belong in which forum should not be

8

leveraged to manufacture "prejudice" arguments over claim-construction procedure in this case.

### Claim Term Significance

The parties disagree whether construction of certain claim terms is necessary for resolution of infringement or validity issues in this case. In accordance with Section 3(c) of Dkt. 33, the parties' respective positions are set forth below.

Plaintiffs' Statement Regarding Claim Term Significance. Plaintiffs do not believe that construction of any claim terms from the '061 Patent will be significant to the case, at least because each term is clear and unambiguous from the intrinsic evidence and should be given its plain and ordinary meaning, or that any factual findings regarding claim construction are necessary for resolution of the ultimate issues of infringement or invalidity.

Defendant's Statement Regarding Claim Term Significance. Defendants agree that many claim terms may ultimately be applied according to their plain and ordinary meaning as understood by a person of ordinary skill in the art in view of the intrinsic record. However, Plaintiffs' assertion that claim construction will not be significant, and that no factual findings are necessary, overstates the issue. Claim construction is required where the parties dispute the scope of a claim term and that dispute may affect the infringement and/or invalidity analyses.

Here, the parties' disagreements regarding the meaning and scope of certain limitations of the '061 Patent will materially impact whether the accused products meet the asserted claims and whether the prior art teaches the claimed limitations. In particular, the asserted claims use terminology that implicates (1) product composition and minimum content requirements ("magnesium threonate," "at least 10 mg magnesium threonate," "elemental magnesium"); (2)

9

product form and route of administration ("dosage form," "formulated for oral administration," "solid, semi-solid, semi-liquid, or a gel"); (3) the nature of the claimed product and its intended use ("nutritionally active agent," "dietary supplement," "providing magnesium supplementation"); and (4) disease-related limitations (e.g., "ADHD," "Parkinson's disease," "anxiety").

These issues are not academic. The meaning and scope of these terms will determine whether the accused products fall within the claims (including whether the claims require particular chemical forms, measurements, or minimum amount) and will also affect the proper comparison to the prior art and related invalidity theories. To the extent Plaintiffs contend that "plain and ordinary meaning" resolves these disputes, Plaintiffs should identify the meaning they intend to apply. Otherwise, Defendants' proposed constructions provide the clarity needed to resolve the parties' concrete disputes and to streamline the case.

More generally, labeling disputed scope issues as "plain meaning" does not eliminate the need for construction where the parties apply different understandings in view of the specification and prosecution history. If Plaintiffs maintain that construction is unnecessary, the parties should be able to stipulate either (i) that the disputed terms have the meanings set out in Defendants' proposed constructions, or (ii) that there is no dispute as to the scope of those terms.

Defendant contends that Plaintiffs' proposed constructions improperly expand the scope of the '061 Patent by (1) conflating distinct chemical compounds; (2) ignoring dosage measurement conventions; (3) attempting to encompass naturally occurring substances in violation of 35 U.S.C. § 101; and (4) reading generalized wellness products into claims directed to specific formulations and methods.

Defendants' proposed constructions are firmly grounded in the plain

language of the claims, the intrinsic record, and well-established extrinsic sources reflecting the understanding of a person of ordinary skill in the art at the time of the invention, as well as interpretations by their retained Experts Dr. Sara Adams and Dr. Naveen Ziari. Plaintiffs' infringement contentions improperly expand the scope of the asserted claims by conflating distinct chemical compounds, dosage concepts, and intended uses that the '061 Patent expressly differentiates.

Nothing in the claims or specification supports Plaintiffs' attempt to read incidental ingredients, generalised wellness products, or speculative physiological effects into the asserted limitations. Accordingly, the constructions set forth above reflect the proper scope of the claims and provide a clear framework for resolving the parties' disputes. Defendants reserve all rights to supplement or amend its constructions and supporting evidence as discovery proceeds and as Plaintiffs' positions are further clarified as permitted by the Patent Standing Order and/or by leave of Court.

Lastly, Defendants believe that each claim is '061 Patent is invalid on the basis of prior art older than 20 years old and on the basis of attempting to claim a naturally occurring compound in violation of 35 U.S.C. §101 and related statutes. *See* Decl. of Ziari and Adams.

## Claim Construction Hearing

The parties disagree whether a claim construction hearing is necessary in this case. In accordance with Section 3(c) of Dkt. 33, the parties' respective positions are set forth below.

Plaintiffs' Statement Regarding Claim Construction Hearing. Because Plaintiffs believe that no claim terms require construction, and in view of Defendant's untimely change in proposed constructions, Plaintiffs do not believe that a claim construction hearing is necessary. At this time, Plaintiffs do not intend to call any witnesses at the claim construction hearing but reserve the right

to do so, including but not limited to expert testimony in rebuttal. At this time, Plaintiffs do not request any factual findings from the Court related to claim construction.

Defendant's Statement Regarding Claim Construction Hearing. Defendants disagree that no claim terms require construction or that a claim construction hearing is unnecessary. The parties have genuine disputes regarding the scope of multiple limitations of the '061 Patent, and resolution of those disputes will materially affect infringement and invalidity. A claim construction hearing will assist the Court in resolving the parties' competing interpretations based on the intrinsic record and, where appropriate, limited extrinsic evidence regarding how a person of ordinary skill in the art would understand the disputed terms.

Defendants may call witnesses at a claim construction hearing, including expert testimony as necessary to address (among other issues) the meaning of disputed chemical and measurement terms and the understanding of a person of ordinary skill in the art. In addition, given that Defendant has a pending Rule 11 sanctions motion relating to Plaintiffs' continued assertion of factual contentions regarding the '061 Patent after formal notice, Defendants anticipate that the Court may benefit from an orderly claim construction record (rather than Plaintiffs' attempt to avoid construction while reserving a unilateral right to later offer rebuttal expert testimony).

Defendants therefore request that the Court make the factual findings necessary to resolve the parties' claim-scope disputes to the extent such findings are implicated by the constructions adopted.

Defendant relies on expert testimony from Dr. Sara Adams, Ph.D. (pharmacology / formulation science) and Dr. Naveen Ziari, Ph.D. (chemistry / biochemical compounds).

12

Both of Defendants' experts address (1) the chemical distinctness of magnesium L-threonate; (2) proper interpretation of dosage quantities; (3) distinctions between elemental magnesium and compound mass; and (4) pharmaceutical formulation conventions at the time of the invention.

Defendant expects to call the following witnesses to testify at the claim construction hearing:

| Witness | Subject Matter |
|---|---|
| Dr. Sara Adams | Pharmaceutical formulations, dosage forms |
| Dr. Naveen Ziari | Chemical composition, elemental vs. compound magnesium |

* * *

Dated: January 23, 2026          **LEGALFORCE RAPC WORLDWIDE P.C.**

/s/ Raj Abhyanker
Raj Abhyanker
Attorney for Defendant: Mando International, LLC

Dated: January 23, 2026          **HUGHES HUBBARD & REED LLP**

/s/ Jeffrey S. Gavenman
Jeffrey S. Gavenman
Attorney for Plaintiffs: Neurocentria, Inc., and Threotech LLC

13

Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John Schaeffer (SBN 138331)
  jshaeffer@foxrothschild.com
Jeff Grant (SBN 218974)
  jgrant@foxrothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone:   310-598-4150
Facsimile:   310-556-9828

Attorneys for Plaintiffs
NEUROCENTRIA, INC. and THREOTECH LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC., a California corporation, and THREOTECH LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION, a Texas limited liability company,<br><br>Defendant. | Case No. 2:25-cv-05871-FLA-JPR<br><br>**SUPPLEMENTAL DECLARATION OF SANG DANG IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>Hearing:   October 31, 2025<br>Time:      1:30 p.m.<br>Crtm.:     6B, 6th Floor<br>Judge:     Hon. Fernando L. Aenlle-Rocha |

SUPP. DECLARATION OF SANG DANG I/S/O MOTION FOR LEAVE TO FILE FAC

## SUPPLEMENTAL DECLARATION OF SANG DANG

I, SANG DANG, declare as follows:

1.    I am an attorney duly licensed to practice before all of the courts in the State of California and the United States District Court for the Central District of California. I am a Partner of Fortis, LLP ("Fortis"), counsel of record for Plaintiffs Neurocentria, Inc. and ThreoTech LLC (collectively, "Plaintiffs" or "ThreoTech") in the above-entitled matter

2.    I make this Supplemental Declaration in support of Plaintiffs' Motion for Leave to File First Amended Complaint. I have personal knowledge of the facts stated herein and if called as a witness, will be able to testify competently to such facts, except as to those alleged on information and belief, and as to those facts, I believe them to be true.

3.    I have reviewed the Opposition of Defendant Mando International, LLC d/b/a Kappa Nutrition ("Kappa Nutrition") (Dtk. 35), and I am responding to a false statement that Kappa Nutrition has attributed to Fortis during our meet-and-confer communications with Mr. Abhyanker. In particular, Kappa Nutrition, through Mr. Abhyanker, claims that "Plaintiffs' own correspondence confirms that they were aware of the venue defect and had voluntarily agreement to withdraw or transfer this action. . . . [¶] Plaintiffs' attempt to amend while venue remains contested and after having indicated in writing that they would not pursue venue here is improper." (Dkt. 35, at ECF page 5:25-6:18.) Plaintiffs' correspondence says no such thing. At most, I indicated that ThreoTech's motion for leave to amend does not somehow constitute an attempt to submit a sur-reply or otherwise re-open Defendant's pending motion to dismiss and/or transfer.

4.    Indeed, Exh. 1 to my declaration in support of Plaintiffs' Motion for Leave to File a First Amended Complaint (Dkt. 34-21, at ECF page 8) explicitly states that ThreoTech's its "first amended complaint will include additional material and

CERTIFICATE OF SERVICE

information to address the following issues: 1. Issues related to venue brought up in your pending motion to transfer venue and/or dismiss in the alternative. . . ."

5. At no point did anyone at Fortis subsequently indicate that ThreoTech's proposed FAC would not contain new venue-related facts. Nor did we indicate that ThreoTech would not continue to pursue and/or defend its position that the Central District of California is the proper venue for the present case, as Kappa Nutrition falsely claims. It is also worth noting that the new venue-related allegations in the proposed FAC are completely consistent with arguments and supporting evidence ThreoTech advanced (and continues to advance) in its Opposition (Dkt. 24) to Defendant's pending motion to dismiss and/or transfer venue.

6. On page 6 of its Opposition (Dkt. 35), Kappa Nutrition attributes the following legal proposition and quotation to *In re In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007) (*In re DRAM*):

> Courts consistently hold that amendment should not proceed where it would "circumvent a pending dispositive motion addressing threshold jurisdictional issues." (Dkt. 35, at ECF page 6:10-13 (quoting *In re DRAM*)).

7. Our review of the *In re DRAM* decision reveals no such quote, or anything remotely similar. Our office also conducted a Lexis search for the above-quoted language in all federal and state cases, and we could not find such language in any published or unpublished decision.

8. I have personally reviewed time-entries on our firm's billing software for ThreoTech, and Mr. Picariello and I have spent a total of 4.6 hours responding to Kappa Nutrition's false quotation, including additional briefing. As a result, ThreoTech has incurred a total of $2,340.00.

///

///

///

CERTIFICATE OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on October 17, 2025, at Costa Mesa, California.

/s/ Sang Dang
Sang Dang

CERTIFICATE OF SERVICE

# CERTIFICATE OF SERVICE

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626.  On January 23, 2026, I served the following document(s):

**JOINT CLAIM CONSTRUCTION STATEMENT PURSUANT TO SECTION 3(C) OF THE COURT'S PATENT STANDING ORDER (DKT. 33)**

on the parties stated on attached service list

| | |
|---|---|
| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

☐   **BY COURT'S CM/ECF SYSTEM.**  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.

☒   **BY E-MAIL.**  By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

☐   **(STATE)**   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒   **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 23, 2026, at Costa Mesa, California.

/S/ SALVATORE PICARIELLO
Salvatore Picariello

CERTIFICATE OF SERVICE