Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994


John W. Cox
  (Admitted *Pro Hac Vice*)
  John.Cox@btlaw.com
Lauren U. Baker
  (Admitted *Pro Hac Vice*)
  Lauren.Baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile: 404-264-4033

Jeffrey Gavenman
  (Admitted *Pro Hac Vice*)
  jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
  (Admitted *Pro Hac Vice*)
  jeremy.schulman@hugheshubbard.com
James Schaller
  (Admitted *Pro Hac Vice*)
  jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I STREET, N.W., 6th Floor
Washington, D.C. 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs NEUROCENTRIA, INC. and THREOTECH LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION,<br><br>    Defendant/Counterclaimant<br><br>    v.<br><br>NEUROCENTRIA, INC., THREOTECH LLC, GUOSONG LIU AND FEI MAO,<br><br>    Counter-Defendants. | Case No. 2:25-cv-05871-FLA-JPR<br><br>**PLAINTIFFS' OPPOSITION TO MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**<br><br>Hearing:    March 6, 2026<br>Time:    1:30 p.m.<br>Courtroom: 6B, 6th Floor<br>Judge:    Hon. Fernando L. Aenlle-Rocha |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     Background facts ..............................................................................................3

III.    ARGUMENT ....................................................................................................5

      A.      Kappa's Motion is Procedurally Improper...............................................5

            1.      Kappa Ignored the Mandatory Rule 11 Procedures...................5

            2.      Kappa Did Not Comply with Local Rule 7-3 ...........................7

      B.      Kappa's Motion Fails on the Merits........................................................9

            1.      Kappa is Wrong on the Law .......................................................9

            2.      Kappa is Wrong on the Facts....................................................12

      C.      This Court Should Award Sanctions Against Kappa and/or
           Its Counsel Pursuant to Its Inherent Powers ........................................15

IV.     CONCLUSION.................................................................................................19

PLAINTIFFS' OPPOSITION TO MOTION FOR SANCTIONS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998) ..................................................1, 5, 6

*Brady Constr. Innovations, Inc. v. California Expanded Metal Co.,* No. CV 07-217 AHS, 2007 WL 9705998 (C.D. Cal. Sept. 25, 2007) ......................11

*Calco v. Ossur Americas, Inc.*, No. SACV 22-01-971-CJC, 2024 WL 694369 (C.D. Cal. Jan. 19, 2024) ..................................................................8, 9

*Cerelux Ltd. v. Yue Shao*, No. CV 17-02909-MWF, 2017 WL 4769459 (C.D. Cal. June 9, 2017) .........................................................................................9

*China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, No. CV 02-5493 LGB JWJX, 2003 WL 21982477, at *13 (C.D. Cal. Mar. 12, 2003) ......................................................................................................................14

*GovernmentGPT Inc., Plaintiff, v. Axon Enter. Inc., Defendant.*, No. CV-24-01869-PHX-SMB, 2025 WL 4080457 (D. Ariz. Apr. 3, 2025)....................15

*Martin v. Tradewinds Beverage Co.,* No. 16-CV9249 PSG (MRW), 2018 WL 6074526 (C.D. Cal. Mar. 13, 2018).............................................................9

*Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338 (Fed. Cir. 2019).......................................................................................................12

*Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336 (9th Cir. 1988)................9

*Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004).....9, 10, 11

*Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772 (9th Cir. 2001)...........................5, 6

**Statutes and Rules**

C.D. Cal. L.R. 11-9 ..........................................................................................17

C.D. Cal. L.R. 7-3 ......................................................................... *passim*

C.D. Cal. L.R. 83-7 .........................................................................17, 18, 19

- ii -

Fed. R. Civ. P. 11 ................................................................ *passim*

Lanham Act ...........................................................................4

**Miscellaneous**

Sun, Q., et al., *Neuropharmacology* (2016) 108 .......................................13

Thomas, M., et al., *Food & Chem. Tox.* (1983) 21(4) ............................................13

Turck, D., et al., *Eur. Food Safety Authority J.* (2024) 22(3):8619 ........................12

PLAINTIFFS' OPPOSITION TO MOTION FOR SANCTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Neurocentria, Inc. ("Neurocentria") and ThreoTech LLC ("ThreoTech" and, collectively with Neurocentria, "Plaintiffs") respectfully submit this Opposition (the "Opposition") to the Motion for Sanctions Under Federal Rule of Civil Procedure 11 (the "Motion") filed by defendant Mando International, LLC d/b/a Kappa Nutrition Labs ("Kappa") and in support thereof respectfully state as follows:

## I.    INTRODUCTION

As a threshold matter, Kappa's Motion must be denied because Kappa failed to comply with the mandatory procedural prerequisites governing sanctions motions in this District. Kappa simply did not serve the Motion on Plaintiffs prior to filing it and, as such, deprived the Plaintiffs of the 21-day "safe-harbor" period after service as mandated by Rule 11(c)(2) of the Federal Rules of Civil Procedure. Instead, Kappa merely sent an advance warning letter, which is wholly insufficient under Rule 11(c)(2). Kappa also failed to comply with Local Rule 7-3, by refusing to meet and confer with Plaintiffs' counsel regarding the Motion and omitting the required meet-and-confer declaration from its Motion. These are not technicalities. They are express, mandatory prerequisites to seeking sanctions, and general motions practice in this District. Because Kappa failed to satisfy them, the Motion must be denied without reaching the merits. *See*, *e.g.*, *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998).

Should the Court reach the merits of Kappa's Motion, the Motion has none, and, in fact is itself sanctionable. Kappa's Motion is grounded in intentional dishonesty. In the face of a claim for patent infringement on a patent that was duly issued over a decade ago, Kappa attempts to argue that the science underlying the duly-issued patent is so baseless that Plaintiffs' assertion of a claim for infringement of that patent is frivolous. It would be charitable to call that a difficult argument to make. But Kappa does not even really attempt to support that argument. It fails to identify any objectively false or

- 1 -

PLAINTIFFS' OPPOSITION TO MOTION FOR SANCTIONS

baseless facts in the Complaint or in the patent. Kappa does not cite to any peer-reviewed literature, recognized scientific treatises, or other objective authority supporting Kappa's scientific theory. Instead, it appears that Kappa relies solely on opinions that were: (1) written by the two experts Kappa retained for this matter; and (2) generated exclusively for this litigation. Simply put, Kappa has absolutely no independent, objective support for its scientific claims.[1] Kappa is merely advocating for a different perspective on the relevant science, not presenting objective evidence of frivolousness by Plaintiffs. Notably, a dispute over science is not sanctionable misconduct, but a veritable fact dispute that is a staple of garden-variety complex litigation.

At its core, Kappa's Motion is an attempt to litigate and/or bolster its invalidity counterclaim. Such procedural maneuver is wholly improper. "Rule 11 motions … should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, [or] to increase the costs of litigation." Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend. (cleaned up). This is the exact type of conduct in which Kappa is engaging, and it must stop.[2]

---

[1] If Kappa had some objective scientific support, a reasonable litigant would be expected to cite to such objective scientific support. In its Rule 11 Letter (defined below), Kappa does not cite any such support. Similarly, in its Motion, aside from referencing the experts' barebones reports, Kappa does not cite any authorities in support of its scientific positions. Moreover, it is entirely unclear on what scientific authority the Rule 11 Letter was based, as Kappa only obtained its "independent expert declarations" "[f]ollowing service of the Rule 11 notice[.]" Motion, ¶ 14.

[2] Throughout this litigation, Plaintiffs have repeatedly pointed out Kappa's proclivity for grossly misstating facts and advancing legal positions that lack merit and/or evidentiary support. See, e.g., Plaintiffs' Renewed Motion for Leave to File First Amended

- 2 -

For all the foregoing reasons, and the reasons stated in this Opposition, Plaintiffs respectfully request that the Court deny Kappa's Motion.

## II.    BACKGROUND FACTS

1.    On June 27, 2025, Plaintiffs filed a complaint (the "Complaint") against Kappa to commence the above-captioned action. The Complaint asserted patent-infringement claims against Kappa with respect to five of Plaintiffs' patents. ECF No. 1.

2.    On October 3, 2025, Plaintiffs filed a motion for leave to file an amended complaint (the "Initial Motion for Leave"). ECF No. 34.

3.    Shortly thereafter, Plaintiffs retained new counsel.

4.    On November 11, 2025, Plaintiffs filed a notice withdrawing the Initial Motion for Leave (the "Withdrawal Notice"). ECF No. 53. In the Withdrawal Notice, Plaintiffs indicated that they planned to seek amendment to assert different claims than those proposed in their Initial Motion for Leave. *See* ECF No. 53, ¶ 7.

5.    On November 12, 2025, Kappa filed its original counterclaims (the "Original Counterclaims"). ECF No. 55. Importantly, the Original Counterclaims were mirror-images of Plaintiffs' claims and other claims Plaintiffs had indicated they wanted to bring and, in fact, have moved the Court for leave to include in this action. As relevant to the present Motion, Kappa asserted five declaratory-judgment counterclaims of non-infringement, each corresponding to one of the five infringement claims in the Complaint. *See* ECF No. 55, pp. 26-31 (the "Non-Infringement Counterclaims").

6.    On November 21, 2025, Plaintiffs filed their Revised Motion for Leave to File First Amended Complaint (the "Revised Motion for Leave"). ECF No. 64. In the

Complaint ("Renewed Motion for Leave") (ECF No. 94) and the Reply in Support of the Renewed Motion for Leave (ECF No. 102).

- 3 -

Revised Motion for Leave, Plaintiffs sought leave to file a proposed first amended complaint (the "FAC") that would add claims for Lanham Act false advertising, unfair competition, and breach of contract. *See*, *e.g*., ECF No. 64 at 15.

7. As relevant to the present Motion, in the FAC, Plaintiffs no longer asserted infringement claims as to four out of the five patents originally asserted in the Complaint (hereinafter, the "Withdrawn Claims"). The only patent for which Plaintiffs sought infringement for was U.S. Patent No. 8,637,061 (the "'061 Patent").

8. On November 25, 2025, Kappa filed its opposition to the Revised Motion for Leave (the "Opposition to Revised Motion"). ECF No. 65. In its Opposition to Revised Motion, Kappa opposed the filing of the FAC because, among other grounds, the pleadings were "closed" and "set." ECF No. 65, ¶¶ 10-11.

9. On December 15, 2025, Kappa filed its amended counterclaims (the "Amended Counterclaims"). ECF No. 70. The Amended Counterclaims reasserted the Non-Infringement Counterclaims with no changes.

10. On December 22, 2025, counsel for Kappa sent counsel for Plaintiffs a letter with the subject matter "Rule 11 Letter, LegalForce RAPC Worldwide v. LegalForce, Inc. CV-25-cv-05871-FLA-JPR (C.D. Cal.)" (the "Rule 11 Letter"). *See* Exhibit A to the Declaration of Raj Abhyanker submitted in support of the Motion (the "Abhyanker Decl.").

11. In the Rule 11 Letter, Kappa summarily claimed that the factual underpinnings of Plaintiffs' claims were wrong, without citing to a single source.

12. Moreover, in the Rule 11 Letter, Kappa demanded that Plaintiffs "either dismiss this action with prejudice or cause counsel to withdraw from representation in this matter." *See* Abhyankar Decl., Exhibit A at 3.

13. On December 23, 2025, Plaintiffs and Kappa filed a joint stipulation wherein Plaintiffs affirmatively dismissed the Withdrawn Claims from the Complaint

- 4 -

and Kappa dismissed the mirror-image Non-Infringement Counterclaims from the Amended Counterclaims (the "Original Stipulation of Dismissal"). ECF No. 80.

14.    On January 8, 2026, the Court struck the Original Stipulation of Dismissal for failure to comply with certain Local Rules pertaining to signatures. ECF No. 85. On the same day, on January 8, 2026, the parties filed an updated stipulation (*see* ECF No. 87). The Court approved this updated stipulation (the "Stipulation of Dismissal") on the same day, on January 8, 2026. ECF No. 89.

15.    On January 19, 2026, Kappa filed the Motion. ECF No. 93. Kappa filed the Motion with the Court without first furnishing a copy to the Plaintiffs as required by the Federal Rules of Civil Procedure, or complying with the meet and confer obligations imposed by the Local Rules in this District.

## III.    ARGUMENT

### A.    Kappa's Motion is Procedurally Improper

#### 1.    Kappa Ignored the Mandatory Rule 11 Procedures

Rule 11 "provides ***strict*** procedural requirements for parties to follow when they move for sanctions under Rule 11." *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 788 (9th Cir. 2001) (emphasis added). Failure to follow proper procedure prescribed by Rule 11(c)(2) is fatal to a sanctions motion. *See*, *e.g.*, *id.* (overturning an award of sanctions for failing to follow the mandatory service procedures of Rule 11); *see also Barber*, 146 F.3d at 710 (same).

To comply, Kappa "was required to serve its Rule 11 ***motion*** on the plaintiffs with a demand for retraction of the allegedly offending allegations, and then to allow the plaintiffs at least twenty-one days to retract the pleading before filing the motion with the court." *Radcliffe*, 254 F.3d at 788–89 (citing what is now Fed. R. Civ. P. 11(c)(2))

- 5 -

(emphasis added).[3] "It is the ***service of the motion*** that gives notice to a party and its attorneys that they must retract or risk sanctions." *Id.* at 789 (emphasis added); *see also* Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend. ("The [21-day] 'safe harbor' period ***begins to run only upon service of the motion***.") (cleaned up and emphasis added).

Here, as Kappa plainly admits, it served Plaintiffs only with a "notice letter." *See* Motion, ¶ 10 ("… [O]n December 22, 2025, Defendant served Plaintiffs and their counsel with a formal Rule 11 notice letter"). Kappa did not serve its Motion on Plaintiffs at the time it served its Rule 11 Letter, or at any point before it filed its Motion with the Court. Such informal warnings are not adequate under established Ninth Circuit precedent. *See e.g. Barber*, 146 F.3d at 710 (stating that the "[r]ule ***requires*** service of a motion," and that the service requirement "was deliberately imposed, with a recognition of the likelihood of other warnings.") (emphasis added); *see also Radcliffe*, 254 F.3d at 789 (citing *Barber*, 146 F.3d at 710, and stating that "informal warnings to the plaintiffs threating to seek Rule 11 sanctions … did not satisfy the strict requirement that a motion be *served* on the opposing party twenty-one days prior to filing.") (emphasis in original).

Because Kappa did not follow the proper procedures, Kappa's Motion must be denied. *See e.g. Radcliffe*, 254 F.3d at 788 (Because defendant "did not serve the plaintiffs with the motion in advance of filing and thus did not comply with the twenty-one day advance service provision … [defendant] was not entitled to obtain an award from the plaintiffs").

---

[3] The *Radcliffe* court cites to "Rule 11(c)(1)(A)" which is now Rule 11(c)(2). *Cf.* Current version of Rule 11 *with* version of Rule 11 at the time *Radcliffe* was decided attached hereto as <u>Exhibit 1</u>. All relevant provisions are materially similar.

- 6 -

## 2. Kappa Did Not Comply with Local Rule 7-3

Independently, the Motion should be denied because Kappa failed to comply with L.R. 7-3 and the procedural orders entered in this case. Specifically, Kappa neither meaningfully met and conferred with Plaintiffs regarding Kappa's proposed Motion, nor included a certification of compliance with L.R. 7-3. As such, and as explicitly provided by relevant authority, this Court should deny the Motion.

Local Rule 7-3 provides, in relevant part, that:

> [C]ounsel contemplating the filing of any motion must first contact opposing counsel to **discuss thoroughly**, preferably in person, the substance of the contemplated motion and any potential resolution. The conference must take place in person, by telephone, or via video conference at least 7 days prior to the filing of the motion. ***If the parties are unable to reach a resolution that eliminates the necessity for a hearing, counsel for the moving party must include a declaration, under penalty of perjury, that sets forth at a minimum the date(s) the conference took place and the position of each party with respect to each disputed issue that will be the subject of the motion. <u>Failure to include such a declaration may result in the motion being denied.</u>***

L.R. 7-3 (emphasis added). This policy is similarly reflected in the Standing Order entered by the Court in this case on July 16, 2025 (ECF No. 16) ("<u>Civil Standing Order</u>"):

> Counsel must comply with Local Rule 7-3, which requires counsel to engage in a prefiling conference "to discuss thoroughly ... the substance of the contemplated motion and any potential resolution." Counsel shall discuss the issues to a sufficient degree that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the court. Counsel shall resolve minor procedural or other nonsubstantive matters during the conference … ***The Notice of Motion must include a statement of compliance with Local Rule 7-3. <u>The court may strike or deny a motion if counsel fail to meet and confer in good faith</u>***.

Civil Standing Order at 6 (emphasis added). Finally, this requirement is also stated in the scheduling order entered by the Court in this case on September 24, 2025 (ECF No. 32) (the "<u>Scheduling Order</u>"). Specifically, the Scheduling Order states that "[t]he

- 7 -

parties are ***required*** under Local Rule 7-3 to meet and confer to attempt to resolve disputes before filing a motion." Scheduling Order at 7 (emphasis added).

Kappa has utterly failed to comply with L.R. 7-3. First, as evidenced by the very documents attached to its Motion, counsel for Plaintiffs was seeking to have a meet and confer about the allegations in the Rule 11 Letter, but Kappa's counsel vehemently refused by unequivocally (and incorrectly) stating that "Rule 11 does not require a response, a meet and confer, or agreement by the responding party as a precondition to filing." Abhyanker Decl., Exhibit D at 2. Second, and not surprisingly (because no meet and confer occurred), counsel for Kappa did not include a L.R. 7-3 Statement of Compliance as provided for by the Local Rules. Such bad-faith and willfully uncooperative behavior should not be tolerated or rewarded.

"Compliance with the Local Rules is not optional." *Calco v. Ossur Americas, Inc.*, No. SACV 22-01-971-CJC, 2024 WL 694369, at *1 (C.D. Cal. Jan. 19, 2024) (citations omitted). "In particular, Local Rule 7-3 is not 'just a piece of petty pedantry put down to trip up lawyers' or 'mere formalism simply there' for lawyers to 'check off' … Rather, it serves important functions to help secure the just, speedy, and inexpensive determination of every action and proceeding … The purpose of Local Rule 7-3 is to help parties reach a resolution and eliminate the necessity for a hearing, which in turn promotes judicial economy and the administration of justice." *Id.* (cleaned up).

Kappa's failure to comply with L.R. 7-3 is particularly significant here where Kappa's Rule 11 theory is based not on any objective misconduct but rather on an entirely subjective scientific theory that Plaintiffs vehemently dispute (*see* Section III.B.2, *infra*). Had Kappa complied with the Local Rules and engaged in a meaningful meet and confer, Plaintiffs would have explained the good-faith basis for asserting their patent claims, and the parties perhaps could have avoided motions practice entirely. Instead, Kappa refused to discuss or serve its baseless Motion before filing it. Plaintiffs

PLAINTIFFS' OPPOSITION TO MOTION FOR SANCTIONS

are now expending time and resources opposing it, and this Court will similarly expend its time and resources ruling on a frivolous Motion.

Kappa's failure to comply with the requirements of L.R. 7-3 warrants a denial of the Rule 11 Motion. *See* L.R. 7-3 ("Failure to include such a declaration may result in the motion being denied"); *see also* Civil Standing Order at 6 ("The Notice of Motion must include a statement of compliance with Local Rule 7-3. The court may strike or deny a motion if counsel fail to meet and confer in good faith"); *Martin v. Tradewinds Beverage Co.,* No. 16-CV9249 PSG (MRW), 2018 WL 6074526, at *4-5 (C.D. Cal. Mar. 13, 2018) (denying motion for failure to comply with L.R. 7-3); *Calco v. Ossur Americas, Inc.*, 2024 WL 694369, at *1 (same); *Cerelux Ltd. v. Yue Shao*, No. CV 17-02909-MWF, 2017 WL 4769459, at *1 (C.D. Cal. June 9, 2017) (same).

As such, Plaintiffs respectfully request that the Court deny Kappa's Motion for failure to comply with L.R. 7-3.

### B.    Kappa's Motion Fails on the Merits

#### 1.    Kappa is Wrong on the Law

Even if Kappa had complied with all the procedural requirements of Rule 11 and the Local Rules, Kappa's Motion still fails because it is objectively meritless.

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). As such, Rule 11 sanctions are reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Id.* at 1344. "The Ninth Circuit defines a frivolous claim or pleading for Rule 11 purposes as one that is legally or factually 'baseless' ***from an objective perspective*** and made without a reasonable and competent inquiry." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004) (cleaned up and emphasis added).

- 9 -

Here, Kappa does not, and indeed cannot, show that the factual premise underpinning Plaintiffs' patent claims is incorrect from an *objective* perspective, as Kappa's entire argument rests on *Kappa's* own subjective and incorrect scientific theory. *See* Motion, ¶¶ 13-15. And even then, Kappa itself does not cite to any sources–not in its Rule 11 Letter,[4] not in the Motion itself, and not in the Abhyanker Decl. –as evidence that Kappa's understanding of the science is the "established scientific understanding" (Opp., ¶ 17).[5] Instead, Kappa relies on the declarations of two experts that Kappa hired to provide opinions on the matter for this very litigation–opinions that often use identical language and are wholly without objective support. Such utterly biased support cannot serve as the basis for Rule 11 allegations, *especially* because established scientific literature–as cited in Section III.B.2, *infra*–refutes the scientific conclusions arrived at by Kappa's purported experts. Kappa fails to show that Plaintiffs' claims were factually baseless from an objective perspective.

For the reasonable and competent inquiry prong, within the patent context that prong requires "at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc.*, 360 F.3d at 1300-01; *see also id.* at 1302 ("[T]he key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis."). Plaintiffs conducted such an infringement analysis, as evidenced by the detailed factual allegations regarding infringement in the

---

[4] Remarkably, Kappa appears to admit that it did not have any scientific support at the time it sent the Rule 11 Letter, as Kappa notes that it only obtained its purported scientific support–its "independent expert declarations"–"[f]ollowing service of the Rule 11 notice." Motion, ¶ 14.

[5] To be clear, Kappa cites to *no* sources for any of its pronouncements on law and fact (other than reference to the experts' opinions), let alone sources that support its position.

- 10 -

Complaint and the FAC. By way of example, the FAC sets forth the results of laboratory testing of Kappa's products—which the Plaintiffs conducted months before this action was filed and attached the results as an exhibit to the FAC—which revealed the products' composition and provided the factual basis for Plaintiffs' infringement allegations. *See* ECF No. 94-1, ¶¶ 71–73; *see also* ECF No. 94-12.

Finally, for purposes of a Rule 11 motion in patent cases, the question is not whether plaintiffs' factual assertions are "correct" (and, to be clear, in this case, they are) but rather whether such factual assertions were frivolous when made. *See Q-Pharma, Inc.* 360 F.3d at 1301; *cf. Brady Constr. Innovations, Inc. v. California Expanded Metal Co.,* No. CV 07-217 AHS, 2007 WL 9705998, at *2 (C.D. Cal. Sept. 25, 2007) (In a case where the Court ultimately determined a patent invalid, court nevertheless refusing to impose Rule 11 sanctions because the claim "was not disingenuous or without basis."). And here, the claims were not, and are not, frivolous, as evidenced by, amongst other things, the objective scientific facts set forth in Section III.B.2, *infra*.

Moreover, Plaintiffs and their counsel were wholly entitled to believe that their patents were valid "in light of the statutory presumption of validity .… as well as the licenses that several companies took under the patent." *Q-Pharma,* 360 F.3d at 1301 (rejecting defendant's argument that plaintiff should have known that its patent was invalid prior to filing suit. The court found that plaintiff had "legal and factual bases for believing the patent to be valid[]" because of the statutory presumption of validity and because of the licenses that plaintiff issued based on the patent); *see also* 35 U.S.C. § 282. Here, Plaintiffs' patents are valid because, among other reasons: (i) the existing science supports Plaintiffs' claims; (ii) the USPTO issued the patents in the first place (and thus there is a presumption of validity); and (3) Plaintiffs have licensed their patents to numerous third parties, ***including Kappa***, who profited from the license for years.

- 11 -

Simply put, Plaintiffs' claims were not frivolous when made and are not frivolous now. Kappa fails to present evidence to the contrary.

Even if Kappa had a good faith basis to disagree with the science underpinning Plaintiffs' patent infringement claim (it does not), such issues would properly be resolved through the usual adversarial process. Instead, for inappropriate reasons (*see* Section III.C, *infra*), Kappa filed this Motion, which is a wholly improper vehicle to challenge non-frivolous claims. Again, Rule 11 sanctions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend. Kappa's Motion is meritless and should be denied.

### 2. Kappa is Wrong on the Facts

Kappa's Motion and supporting documentation are factually incorrect. As an initial matter, the Asserted Claims[6] are not "directed to" natural phenomena. *See, e.g., Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338 (Fed. Cir. 2019) (finding analogous method and product claims patent eligible).

> **1**. A dosage form formulated for oral administration to a subject comprising magnesium threonate, wherein the dosage form comprises at least 10 mg magnesium threonate, and wherein the dosage form is a solid, semi-solid, semi-liquid, or a gel.

The '061 Patent at cl. 1. The basis for Kappa's Motion—its argument that "[m]agnesium L-threonate occurs naturally in the human body" (ECF No. 93-4 at ¶ 7; *see also* ECF No. 93-3 at ¶ 52)—is both divorced from the language of the Asserted Claims and scientifically incorrect.

---

[6] The term "Asserted Claims" refers to the claims asserted from the '061 Patent in this action.

- 12 -

Magnesium threonate is a compound made by combining magnesium with threonic acid. The intrinsic evidence makes that clear. *See, e.g.*, the '061 Patent at cl. 1 (*supra*); *id*. at 26:17-22, Ex. 1; *see also* Turck, D., et al., *Eur. Food Safety Authority J.* (2024) 22(3):8619; UK Advisory Comm. of Novel Foods & Processes, Magnesium L-Threonate (Magtein®) Additional Information Discussion Paper ("UKAdCommPaper") dated April 19, 2023 [available at https://acnfp.food.gov.uk/MagnesiumL-Threonate%28Magtein%C2%AE%29AdditionalInformationDiscussionPaper (last visited Feb. 12, 2026)]. Magnesium threonate does not occur naturally in the human body but is synthesized in a laboratory or manufacturing facility, regardless of the source of magnesium or threonate. *See, e.g.*, the '061 Patent at Ex. 1; UKAdCommPaper; *see also infra*. While magnesium and threonic acid are both present in the human body, the concentration of each is so low that the chemical reaction required to form magnesium threonate (the salt of magnesium and threonic acid) does not occur spontaneously in human physiology.

Specifically, the average adult human body (80kg) naturally contains about 25 grams of magnesium, mostly in bone, muscles, and soft tissues, with <1% present in the blood. *See* Case, D.B., et al., *Molecules* (2020) 25(15):3365. In the body, magnesium is typically present as the divalent cation $Mg^{2+}$, both as free ions and bound to proteins and other molecules, not as elemental magnesium. *Id.* Moreover, any free ions are highly hydrated, particularly in the blood. *Id.* Threonic acid is a minor metabolic byproduct of vitamin C (ascorbic acid) and does not accumulate in significant quantities in the body; it is rapidly processed and excreted. Thomas, M., et al., *Food & Chem. Tox.* (1983) 21(4), 449-452. As a result, its concentration in blood and tissues is extremely low and not routinely measured. *See* Wang H., et al., *J. Chromatogr. B* (2006) 13; 834(1-2):155-62; *see also* Sun, Q., et al., *Neuropharmacology* (2016) 108: 426-439 ("plasma threonate concentration was

- 13 -

approximately 20 μM").

Across the large volume and highly complex environment of the human body, the low concentrations of endogenous magnesium and threonate preclude them from naturally associating to form the claimed magnesium threonate salt. *See supra.* Moreover, because magnesium threonate is highly soluble (*i.e.,* 54.9 mg/mL; *see, e.g.*, DrugBank for magnesium L-threonate [available at https://go.drugbank.com/salts/DBSALT001545 (last visited Feb. 12, 2026[7])]), magnesium threonate could not be detected in the body except as disparate ions.

Kappa provides <u>no</u> proof to the contrary (let alone clear and convincing evidence to support a merits determination on validity or sufficient to support Kappa's Motion). The conclusory opinions of Kappa's two "experts" that "[m]agnesium L-threonate occurs naturally in the human body" (ECF No. 93-4 at ¶ 7; *see also* ECF No. 93-3 at ¶ 52) are directly contradicted by the actual evidence, which shows that magnesium threonate does not naturally occur in the human body. Accordingly, Plaintiff's infringement and validity positions are well supported (*see* ECF No. 94-1 at, *e.g.*, ¶¶ 44-61 and 69-106; *see also Nat. Alternatives*, 918 F.3d 1338; ECF No. 1), and Kappa's Motion is baseless.

---

[7] An average adult has roughly 5L of blood, about 80% of which is water. Because of its high solubility (54.9 g/L), magnesium threonate could not form in the body until the amount reached almost 275 grams (*i.e.*, 54.9 g/L in 5L), an extreme amount compared to endogenous (or even dietary supplemented) magnesium and/or vitamin C. Indeed, 275 grams of magnesium threonate is the equivalent of 22.5 grams of magnesium, more than 50 times the recommended daily value of 0.420 grams. *See* https://www.fda.gov/media/135301/download (last visited Feb. 12, 2026). Twenty-two and ½ grams of magnesium would be severely toxic and potentially fatal. Even so, a small percentage of supplemental magnesium and/or vitamin C would not lead to association of magnesium and threonate ions, or formation of magnesium threonate in the body.

- 14 -

### C. This Court Should Award Sanctions Against Kappa and/or Its Counsel Pursuant to Its Inherent Powers

Under the Court's inherent powers, the Court should sanction Kappa for its conduct. "Under its inherent powers, the Court may award attorneys' fees as sanctions where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc*., No. CV 02-5493 LGB JWJX, 2003 WL 21982477, at *13 (C.D. Cal. Mar. 12, 2003) (cleaned up).

Here, with the Motion, Kappa has acted in bad faith, vexatiously, wantonly, and for oppressive reasons. First, Kappa adamantly refused to meet and confer with Plaintiffs' counsel prior to filing the Motion. *See* Abhyanker Decl., Exhibit D at 2. Second, Kappa once again misstates and mischaracterizes the "facts," as pointed out by Plaintiffs numerous times before.[8] It is beyond ironic that Kappa is seeking Rule 11 sanctions for Plaintiffs allegedly bringing claims that lack factual support when, in the Motion, Kappa relies on flagrant misrepresentations of fact in a feeble attempt to make its point. In the Motion, Kappa implies, in bad faith, that Plaintiffs withdrew the Withdrawn Claims ***because of*** Kappa's Rule 11 Letter (and thus further implying that Plaintiffs implicitly conceded that their claims did not have merit). Motion, ¶¶ 7; 11; 18. This is not a mischaracterization or a stretching of the truth. It is a flagrant lie. Plaintiffs

---

[8] *See* FN 2. It is also worth noting that Courts in other cases and Districts have started taking note of Kappa's counsel's proclivity for falsehoods. *See GovernmentGPT Inc., Plaintiff, v. Axon Enter. Inc., Defendant*., No. CV-24-01869-PHX-SMB, 2025 WL 4080457, at *2 (D. Ariz. Apr. 3, 2025) (noting that the basis of the sanctions the Court imposed against Kappa's present counsel was for "Mr. Abhyanker's **inundation of the docket with filings asserting incredible allegations without factual support**.") (emphasis added); *see also LEGALFORCE RAPC WORLDWIDE P.C., Plaintiff, v. MH SUB I, LLC, Defendant.*, No. C 24-00669 WHA, 2025 WL 3675365, at *12 (N.D. Cal. Dec. 18, 2025) (Court noting that a certain factual misrepresentation to the Court by Mr. Abhyanker was "not a half truth; this was a no truth.").

- 15 -

have been seeking to amend the Complaint to omit the Withdrawn Claims for months, as evidenced not only by the procedural history of this case,[9] but also by the very correspondence attached to the Motion. *See* Abhyanker Decl., Exhibit D at 2 (Plaintiffs' counsel stating, on January 10, 2026, that "since you sent your email/letter, the parties have filed a stipulation dismissing most of the patent claims in this case. Of course, as you know, and as we pointed out to you when you first raised this issue on our phone call, we had been trying to amend the complaint to remove those claims for over a month, and it was your own decision to oppose our motion for leave to amend that was standing in the way of those efforts."). To suggest that Plaintiffs withdrew the Withdrawn Claims because of Kappa's Rule 11 Letter is simply false.

Moreover, Kappa's bad-faith conduct is plainly evident by the fact that Kappa cites to no independent, objective source to support its alleged "established scientific understanding" (Opp., ¶ 17). Kappa cites no authority to support its claims in its Rule 11 Letter. And only after sending the Rule 11 Letter did Kappa retain its experts – again, an entirely biased source of information – who provided opinions that are contrary to established scientific literature. *See* Section III.B.2, *supra*.

In addition, Kappa's bad faith is evident by the very relief Kappa seeks. As an alternative to wholly withdrawing the remaining patent claim, Kappa bizarrely requests that counsel withdraw from representation. Abhyanker Decl., Exhibit A at 3 ("Accordingly, Defendant demands that Plaintiffs, within the Rule 11 safe-harbor period, either dismiss this action with prejudice or cause counsel to withdraw from representation in this matter"). The request for counsel to withdraw from representation has nothing to do with remedying an allegedly defective filing. It is an attempt to

---

[9] The Revised Motion for Leave was filed on November 21, 2025. ECF No. 64. Kappa served its Rule 11 Letter on December 22, 2025.

PLAINTIFFS' OPPOSITION TO MOTION FOR SANCTIONS

leverage Rule 11 as a litigation weapon–aimed not at curing some defect, but at intimidating opposing counsel and disrupting representation. This extraordinary demand confirms that the Motion is not directed at correcting any allegedly frivolous conduct, but at exerting strategic pressure. This is not permitted.

Rule 11 was enacted to deter abuse of the judicial process (*see*, *e.g.*, Fed. R. Civ. P. 11(c)(4)), not reward it. A Rule 11 motion predicated solely on retained experts' disagreement with the science underlying duly issued patents–and untethered from any objective showing of frivolousness–is a Rule 11 motion brought in bad faith. Moreover, Kappa's attempt to weaponize Rule 11 in order to litigate its invalidity defense/counterclaim–while bypassing Rule 11's procedural requirements and ignoring Plaintiffs' request for a meet and confer to discuss the merits of the Motion–reflects vexatious and oppressive conduct. As such, this conduct must be sanctioned.[10]

Plaintiffs respectfully submit that the Court should, under its inherent powers, impose sanctions against Kappa in the form of the attorneys' fees that Plaintiffs have had to expend in connection with this Motion, in an amount to be submitted for Court's review if such relief is granted.

This Court may also impose sanctions against Kappa for its conduct in connection with this Motion pursuant to Local Rule 83-7.[11] Local Rule 83-7 provides that:

---

[10] Notably, on January 28, 2026, counsel for Kappa sent a second letter threatening a Rule 11 motion to Plaintiffs' counsel. Such letter rests on equally feeble allegations and, if counsel for Kappa follows through on its threat to file it, the motion will provide another basis for sanctions against counsel for Kappa.

[11] Plaintiffs reserve the right to formally move for sanctions under L.R. 83-7 and/or Fed. R. Civ. P. 11 based on the conduct described in this Opposition and additional problematic conduct by Kappa's counsel. However, should the Court find it helpful in assessing the appropriate sanctions, Plaintiffs are also prepared to submit a formal motion for sanctions at this time.

- 17 -

PLAINTIFFS' OPPOSITION TO MOTION FOR SANCTIONS

> The violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to:
>
>> (a) monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless;
>>
>> (b) the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or
>>
>> (c) for any of the conduct specified in (a) and (b) above, such other sanctions as the Court may deem appropriate under the circumstances.

L.R. 83-7. First, L.R. 11-9 expressly permits the entry of sanctions pursuant to L.R. 83-7 for presenting a frivolous motion to the Court. *See* L.R. 11-9 ("The presentation to the Court of frivolous motions or opposition to motions (or the failure to comply fully with this rule) subjects the offender at the discretion of the Court to the sanctions of L.R. 83-7."). Plaintiffs have demonstrated herein that Kappa's Motion is frivolous, as it violates several procedural rules and is not based on any objective evidence, as required by the law. *See*, *e.g.*, Opposition at 1-2; 9-14, *supra*. Such conduct was willful, grossly negligent, and/or reckless because Kappa wholly ignored both basic procedural rules and the controlling law with respect to Rule 11 motions, and specifically within the context of patent cases. Rather than attempting to demonstrate that Plaintiffs' claims were objectively frivolous, Kappa relied exclusively on litigation-generated expert opinions disputing the science underlying the patents. That is not the stuff of well-founded Rule 11 Motions–that is a merits argument. A reasonable attorney conducting even the most basic legal research would have recognized the procedural requirements of Rule 11, L.R. 7-3, the Civil Standing Order, and the Scheduling Order, and that Rule 11 requires objective proof of allegedly frivolous filings. Filing a sanctions motion while ignoring all the procedural requirements and the governing legal standard–particularly when demanding dismissal of a claim with prejudice or withdrawal of counsel–reflects, at a minimum, reckless disregard for the law. Such conduct burdens the Court and forces the

- 18 -

opposing party to incur unnecessary expense responding to a motion that never should have been filed

In addition, L.R. 83-7 sanctions may be imposed for failure to comply with Local Rules. Here, Kappa's counsel failed to comply with L.R. 7-3 and such failure was done *at the very least* in bad faith. Counsel for Plaintiffs attempted to meet and confer with Kappa about the Motion, and Kappa refused this request outright. Abhyanker Decl., Exhibit D at 2 ("Rule 11 does not require a response, a meet and confer, or agreement by the responding party as a precondition to filing"). And, what is more, Kappa bemoans in its Motion that "Plaintiffs have offered no contrary evidence and no explanation for continuing to assert the remaining patent" (Motion, ¶ 15), when Kappa *itself* did not provide Plaintiffs with an opportunity to do so at a L.R. 7-3 meet and confer. This duplicity should not be countenanced, and Kappa's flouting the local rules should be sanctioned with, at the very least, the imposition of costs and attorneys' fees to Plaintiffs' counsel.

The Court may also enter monetary sanctions against Kappa pursuant to L.R. 83-7(a) because Kappa's behavior in failing to comply with L.R. 7-3 was grossly negligent and/or reckless. The parties have been engaging in L.R. 7-3 meet and confers throughout the entirety of this litigation, but Kappa chose to disregard entirely this District's Local Rules in connection with this particular Motion. It is unclear why Kappa failed to check the Local Rules prior to brazenly rejecting Plaintiffs' counsel's request for a meet and confer that Plaintiffs are entitled to under the Local Rules. Such conduct is grossly negligent and/or reckless.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) deny the Motion; (2) enter sanctions against Kappa; and (3) grant such and other further relief that is necessary and just.

- 19 -

Dated: February 13, 2026          HUGHES HUBBARD & REED, LLP

By:    /s/ Jeffrey Gavenman
Attorneys for Plaintiffs
Neurocentria, Inc. and ThreoTech LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,133 words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order (ECF No. 16).

Dated: February 13, 2026          By:    /s/ Jeffrey Gavenman
Counsel for Plaintiffs
Neurocentria, Inc. and ThreoTech LLC

- 20 -