Sang Dang, Esq. (SBN 214558)
   sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
   spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John W. Cox
   (Admitted *Pro Hac Vice*)
   John.Cox@btlaw.com
Lauren U. Baker
   (Admitted *Pro Hac Vice*)
   Lauren.Baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile: 404-264-4033

Jeffrey Gavenman
   (Admitted *Pro Hac Vice*)
   jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
   (Admitted *Pro Hac Vice*)
   jeremy.schulman@hugheshubbard.com
James Schaller
   (Admitted *Pro Hac Vice*)
   jake.schaller@ hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I STREET, N.W., 6th Floor
Washington, D.C. 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and THREOTECH LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC, <br><br> Plaintiffs/Counterclaim Defendants, <br><br> v. <br><br> MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION, <br><br> Defendant/Counterclaim Plaintiff <br><br> v. <br><br> AIDP, INC. <br><br> Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR <br><br> **PLAINTIFFS' REPLY TO DEFENDANT MANDO INTERNATIONAL, LLC'S RESPONSE TO ORDER TO SHOW CAUSE** |

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

LEGAL STANDARD.........................................................................................................4

ARGUMENT......................................................................................................................5

    I.      Dismissing Certain Counterclaims and Then Reasserting Them in
            the Northern District Action ...................................................................6

           A.     Respondents' Actions .................................................................6

           B.     Effect of Respondents' Actions ...................................................8

           C.     Respondents' Explanation ...........................................................9

           D.     Cost ........................................................................................9

    II.     The Anti-SLAPP Threat.........................................................................9

           A.     Respondents' Actions .................................................................9

            B.     Effect of Respondents' Actions ...................................................11

           C.     Respondents' Explanation ...........................................................11

           D.     Cost ........................................................................................13

    III.    Opposition to Amendment ......................................................................13

           A.     Respondents' Actions .................................................................13

            B.     Effect of Respondents' Actions ...................................................14

            C.     Respondents' Explanation ...........................................................14

            D.     Cost ........................................................................................14

    IV.    Kappa's Meritless Rule 11 Motion ..........................................................15

           A.     Respondents' Actions .................................................................15

            B.     Effect of Respondents' Actions ...................................................18

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

C.    Respondents' Explanation ............................................................... 19

D.    Cost .................................................................................................. 19

V.    Kappa's Motion to Strike Gavenman Declaration ..................................... 19

A.    Respondents' Actions ...................................................................... 19

B.    Effect of Respondents' Actions ...................................................... 21

C.    Respondents' Explanation ............................................................... 21

D.    Cost .................................................................................................. 21

VI.    Citing Language from Case that Does not Exist ....................................... 21

A.    Respondents' Actions ...................................................................... 21

B.    Effect of Respondents' Actions ...................................................... 22

C.    Respondents' Explanation ............................................................... 22

D.    Cost .................................................................................................. 22

CONCLUSION ............................................................................................................ 22

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barber v. Miller*,
   146 F.3d 707 (9th Cir. 1988) ............................................................................ 16

*In re DRAM Antitrust Litig.*,
   516 F.Supp.2d 1072 (N.D. Cal. 2007).............................................................. 22

*Goldwater Bank, N.A. v. Elizarov*,
   No. 5:21-cv-00616-JWH-SP, 2023 WL 4295255 (C.D. Cal. May 09,
   2023) ................................................................................................................. 19

*GovernmentGPT Inc. v. Axon Enter. Inc.*,
   No. CV-24-01869-PHX-SMB, 2025 WL 4080457, at *2 (D. Ariz.
   Apr. 3, 2025)....................................................................................................... 2

*Lahiri v. Universal Music & Video Distribution Corp.*,
   606 F.3d 1216 (9th Cir. 2010) ............................................................................ 5

*Lake v. Gates*,
   130 F.4th 1064 (9th Cir. 2025) ......................................................................... 13

*LegalForce RAPC Worldwide P.C. v. MH Sub I, LLC*,
   No. C 24-00669 WHA, 2025 WL 3675365, at *12 (N.D. Cal. Dec. 18,
   2025) ............................................................................................................... 2, 3

*Nextdoor, Inc. v. Abhyanker*,
   Case No. 12-cv-05667-EMC, 2021 WL 1263973 (N.D. Cal. April 6,
   2021) ............................................................................................................... 1, 3

*Operating Engineers Pension Trust v. A-C Co.*,
   859 F.2d 1336 (9th Cir. 1988) ......................................................................... 15

*Patelco Credit Union v. Sahni*,
   262 F.3d 897 (9th Cir. 2001) ........................................................................... 19

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
   115 F.3d 644 (9th Cir. 1997) ............................................................................. 6

*Radcliffe v. Rainbow Const. Co.*,
   254 F.3d 772 (9th Cir. 2001) ........................................................................... 16

iii

*Tervardanyan v. Creditors Fin. Grp. LLC*,
No. 2:12-CV-1223-SVW-FFM, 2012 BL 414539 (C.D. Cal. Nov, 19, 2012) ........................................................................................... 5

*Theodoropoulous v. County of Los Angeles*,
No. CV 12-07938 JGB (RZx), 2014 BL 492630, at *3 (C.D. Cal. Sept. 18, 2014) .................................................................................... 5, 6

**Statutes and Rules**

28 U.S.C. § 1927 ................................................................................. 1, 4, 5

Cal. Bus. & Prof. Code § 17200 ................................................................ 8

CD Cal. L.R. 11-9 ............................................................................... 1, 4

CD Cal. L.R. 7-3 ........................................................................ 16, 19, 20

CD Cal. L.R. 7-3 .................................................................................. 19

CD Cal. L.R. 83-7 ............................................................................ 1, 4, 19

CD Cal. L.R. 83-8 ................................................. CD Cal. L.R. 1, 4, CD Cal. L.R. 5

CD Cal. L.R. 83-8.1 ................................................................................. 5

CD Cal. L.R. 83-8.2 ................................................................................. 5

Fed. R. Civ. P. 11 ...........................................................................*passim*

Fed. R. Civ. P. 11(b) ............................................................................. 13

Fed. R. Civ. P. 11(c) ........................................................................... 1, 4

Fed. R. Civ. P. 11(c)(2) ........................................................................ 16

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

Plaintiffs/Counterclaim Defendants Neurocentria, Inc. ("Neurocentria") and ThreoTech LLC ("ThreoTech" and, collectively with Neurocentria, "Plaintiffs") hereby file this Reply to the Response to Order to Show Cause filed by Defendant/Counterclaim Plaintiff Mando International, LLC d/b/a Kappa Nutrition ("Kappa" or "Defendant"), and state as follows:

**PRELIMINARY STATEMENT**

On February 24, 2026, this Court ordered Kappa and its counsel, Raj Abhyanker ("Abhyanker" and, collectively with Kappa "Respondents"), to show cause, in writing, as to why they should not be sanctioned under Fed. R. Civ. P. 11(c) and the Court's inherent powers "for engaging in improper, harassing, and bad-faith conduct that has caused unnecessary delay and increased the cost of litigation needlessly." ECF 107 ("OSC"), pp. 3-4. While the Court set March 6, 2026 as the deadline for a response, Respondents filed their Response to Order to Show Cause ("Response") less than 12 hours after the Court issued its OSC. If the quick turnaround was meant to acknowledge the seriousness of the Court's OSC, the Response's content demonstrated just the opposite. In no way does the hastily prepared, less-than-six-page Response reasonably explain – let alone justify – the actions about which Plaintiffs have complained, which were the impetus for the Court's OSC.

As set forth in detail *infra*, Kappa and Abhyanker deserve to be sanctioned under Fed. R. Civ. P. 11(c) and the Court's inherent power – and 28 U.S.C. § 1927 and Local Rules 11-9, 83-7, and 83-8 – for filing frivolous papers, unreasonably multiplying the proceedings, and engaging in bad faith and generally vexatious conduct during this case. The Response barely puts up a fight. Regarding frivolous papers, Respondents baldly state that "[a]t the time filings were made, Defendant had a reasonable factual and legal basis to advance those positions, even if the Court ultimately disagreed." Response, ¶14. But there could be no possible factual or legal basis for claiming that Plaintiffs had run afoul of California's anti-SLAPP statute by suing *two of their own affiliates*,

1

particularly when Plaintiffs ***clearly had not sued those affiliates***. And there could be no factual or legal basis for filing a meritless Rule 11 motion without taking the proper procedural steps in advance of actually filing the motion – and then withdrawing it within hours of receiving Plaintiffs' opposition thereto.

Respondents attempt to avoid sanctions by claiming they did not act in bad faith and that any problems with their filings could be shrugged off as the result of "misunderstanding and imprecise drafting." Response ¶6. But the record and contemporaneous statements and actions belie that notion. Respondents have thrown gravel into the gears of justice and forced Plaintiffs to incur – unnecessarily – exorbitant fees while wasting considerable time and energy. And it has not just been the meritless filings; Respondents have abandoned positions and taken diametrically opposing ones when it suits their strategy of the moment; taken obstinate positions on issues of relatively minor consequence, only to later reverse course; and levied unfounded complaints about Plaintiffs' litigation tactics before (or immediately after) actually engaging in exactly such tactics.

The actions of Abhyanker in this lawsuit cannot be written off as an attorney simply pushing the bounds of zealous advocacy or responding in kind to rough-and-tumble litigation where both sides turn up the temperature. Rather, Abhyanker's vexatious and bad-faith litigation is the very hallmark of his strategy, as other courts have found. In *GovernmentGPT Inc. v. Axon Enter. Inc.*, the U.S. District Court for Arizona levied sanctions against Abhyanker because of his "inundation of the docket with filings asserting incredible allegations without factual support." No. CV-24-01869-PHX-SMB, 2025 WL 4080457, at *2 (D. Ariz. Apr. 3, 2025). The U.S. District Court for the Northern District of California in *LegalForce RAPC Worldwide P.C. v. MH Sub I, LLC*, found that a certain factual misrepresentation Abhyanker made to the Court was "not a half truth" but "a no truth."  No. C 24-00669 WHA, 2025 WL 3675365, at *12 (N.D. Cal. Dec. 18, 2025). And the Northern District, in *Nextdoor, Inc.*

2

*v. Abhyanker*, Case No. 12-cv-05667-EMC, 2021 WL 1263973 (N.D. Cal. April 6, 2021), granted Nextdoor's motion for immediate interim relief and to enforce a settlement agreement, after Abhyanker, six years after a stipulation and order for final judgment of the case, filed a motion for relief from obligations under the settlement agreement and (after it was denied) filed three separate lawsuits, six *ex parte* petitions for reexamination of Nextdoor patents, and a TTAB proceeding. In granting Nextdoor's motion, the court stated that "it is evident that Mr. Abhyanker knows no restraint. Given his litigious history, there is a realistic prospect that this proliferation will not stop on its own accord." *Id.* at *3-4.[1]

The same is true here. And while the Court should order that Respondents pay the reasonable attorneys' fees incurred by Plaintiffs in responding to numerous meritless filings and otherwise dealing with unnecessarily vexatious conduct, this alone is not enough. The admonitions of courts in the above-described cases did not curb Abhyanker's vexatious tendencies, as seen by his actions herein. Nor has the entry of the OSC stopped Abhyanker. As but one subsequent example, Abhyanker sent an ill-founded, proposed motion to stay this case to Plaintiffs' counsel at 3:22pm PT on March 6, 2026, seeking Plaintiffs' consent. Then, 11 minutes later, he sent another email,

---

[1] In the Declaration of Laurence F. Pulgram in Support of Nextdoor's Motion for Attorneys' Fees ("<u>Pulgram Decl.</u>"), counsel for Nextdoor made the following comment:

> As the Court is familiar, Mr. Abhyanker's approach often multiplies litigation. This includes by contesting even largely uncontestable points, filing and withdrawing duplicative and unnecessary motions, declining stipulations, spawning satellite litigations and administrative proceedings, and transmitting a burden of correspondence that can be ignored only at the client's peril – in short, engaging in practices that drive up fees.

Pulgram Decl., ¶ 15, attached as Exhibit 4 to the Declaration of Jeffrey Gavenman ("<u>Gavenman Decl.</u>"). Such comments apply equally here.

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

threatening to "promptly" notice the deposition of the widow of ThreoTech's CEO – who had died suddenly just days earlier – unless Plaintiffs consented to the motion to stay. *See* Gavenman Decl., Exhibits 5, 6. Abhyanker has also continued taking wildly unsupported positions and generally behaving in a vexatious, bad-faith manner. As such, Plaintiffs request, in addition to monetary sanctions, that the Court order either (1) that Kappa not be permitted to file any further offensive motions without leave of Court; or (2) that Kappa provide a bond in an amount to be set by the Court prior to filing further offensive motions to assure attorneys' fees would be available for any further sanctionable filings.

**LEGAL STANDARD**

The Court's OSC references Fed. R. Civ. P. 11(c) and the Court's inherent powers. Sanctions are appropriate under those provisions as well as Local Rules 83-7, 83-8, and 11-9, and 28 U.S.C. § 1927. Local Rule 83-7 states:

> [V]iolation of or failure to conform to any of these Local Rules may subject the offending party or counsel to:
>
> (a)  monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless;
> (b)  the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or
> (c)  for any of the conduct specified in (a) and (b) above, such other sanctions as the Court may deem appropriate under the circumstances.

L.R. 83-7. Furthermore, Local Rule 11-9 states: "The presentation to the Court of frivolous motions or oppositions to motions (or the failure to comply fully with this rule) subjects the offender at the discretion of the Court to the sanctions of L.R. 83-7."

In addition, L.R. 83-8 "augment[s] the inherent power of the Court to control vexatious litigation" in furtherance of the Court's policy "to discourage vexatious litigation and to provide persons who are subjected to vexatious litigation with security

against the costs of defending against such litigation and appropriate orders to control such litigation." L.R. 83-8.1. The rule permits the Court to order parties to provide security for potential costs that could be awarded and to "make such other orders as are appropriate to control the conduct of a vexatious litigant," including directing "the Clerk not to accept further filings from the litigant without payment of normal filing fees and/or without written authorization of a judge of the Court or a Magistrate Judge." L.R. 83-8.2. *See Tervardanyan v. Creditors Fin. Grp. LLC*, No. 2:12-CV-1223-SVW-FFM, 2012 BL 414539 at *2 (C.D. Cal. Nov. 19, 2012) ("This Court has an explicit policy of discouraging vexatious litigation in order 'to provide persons who are subjected to vexatious litigation with security against the costs of defending against such litigation and appropriate orders to control such litigation.'") (quoting L.R. 83-8).

Counsel who litigate vexatiously also are subject to sanction pursuant to 28 U.S.C. § 1927. "'An attorney who unreasonably and vexatiously 'multiplies the proceedings' may be required to pay the excess fees and costs caused by his conduct,' pursuant to 28 U.S.C. § 1927." *Theodoropoulous v. County of Los Angeles*, No. CV 12-07938 JGB (RZx), 2014 BL 492630, at *3 (C.D. Cal. Sept. 18, 2014) (quoting *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1218-19 (9th Cir. 2010)). In short, the Court has many tools to sanction Respondents for filing frivolous papers, bad faith conduct, and abusing the judicial process.

## ARGUMENT

Respondents claim that "[a]t all times," they have "acted in the good-faith belief that their filings were legally supported and procedurally appropriate," and that "any errors were matters of judgment or clarity, not bad faith or improper purpose." Response, ¶ 15. Not so. "A party demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order' or where it 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Theodoropoulous*, No. CV 12-07938 JGB (RZx), 2014 BL

492630 at *3  (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)). As will be explained *infra*, and contrary to the bald attempts in the Response to excuse their behavior, Respondents have delayed this litigation, advanced arguments they knew (or should have known) were entirely frivolous, and generally acted in bad faith in litigating this action.

Plaintiffs note that this Reply focuses on issues the Court identified in its OSC and several additional incidents and patterns of sanctionable conduct. But this in no way captures the full picture of Respondents' vexatious litigation, which infiltrates almost every motion, action, and communication, and is still ongoing with no sign of slowing down. Plaintiffs reserve the right to bring additional sanctions motions for other sanctionable conduct, including vexatious litigation tactics, discovery abuses, and untimely and shifting claim construction positions.

**I.    Dismissing Certain Counterclaims and Then Reasserting Them in the Northern District Action**

**A.    Respondents' Actions**

In what only can be described as the height of procedural gamesmanship, Respondents dismissed certain of the counterclaims they filed in this case and then re-packaged those claims as a new lawsuit in the Northern District of California – *Mando International, LLC d/b/a Kappa Nutrition Labs v. AIDP, Inc., et al.*, 3:25-cv-10682-TLT ("Northern District Action").

The timing of the withdrawal – and how it fit into the procedural history of this case – is telling. After Plaintiffs filed their initial complaint, Kappa moved to dismiss it on various grounds including improper venue. Kappa insisted Plaintiffs' patent claims could be heard only in Texas, and that this Court was an improper and inconvenient forum. *See*, *e.g.*, ECF 25, ¶10 (stating Kappa is "a small Texas-based supplement seller with no property or employees in California," and forcing it to litigate in California "on far-flung federal IP claims would impose a heavy burden"). Plaintiffs, eventually,

6

decided that – while they disagreed with Kappa's venue assessment – they would agree to litigate patent claims in Texas (while keeping other claims they sought to add via amendment here) to avoid unnecessary motions practice. However, almost immediately after Plaintiffs offered that concession on November 11, 2025, and indicated their intention to file a revised motion for leave to file amended complaint (*see* ECF 53), Kappa withdrew its motion to dismiss (ECF 54) and, on Nov. 12, 2025, filed an answer and its "Original Counterclaims" (ECF 55), submitting to this Court's jurisdiction. Notably, the Original Counterclaims included causes of action for Lanham Act false advertising (causes of action Plaintiffs were seeking to add), and declaratory judgments seeking declarations that Kappa had not breached a contract and had not infringed upon Plaintiffs' trademarks (as Plaintiffs were seeking to add breach of contract and trademark infringement claims).

On Nov. 21, 2025, Plaintiffs filed their revised motion requesting leave to file a first amended complaint. ECF 64. Four days later, Kappa filed an opposition (ECF 65) in which it argued Plaintiffs' motion should be denied because their proposed amended complaint would "convert a patent-only lawsuit into a multi-theory case involving Lanham Act claims, false advertising, expanded breach of contract theories, and reassert[] some patent counts." ECF 64, pp. 7-8. This argument was entirely baseless, given Kappa had, ***less than two weeks earlier***,[2] filed its Original Counterclaims, which included claims for Declaratory Judgment of No Trademark Infringement (Count VI); Declaratory Judgment of No Breach of Contract (Count VIII); Unfair Competition Under California Business & Professions Code § 17200 (Count X); and a pair of Lanham Act false advertising claims (Counts XI and XII). In other words, Kappa had

---

[2] This presents a good example of why Kappa's argument that mere confusion led to its baseless and false positions, is wholly unpersuasive. Here, Kappa only needed to recall its own just-filed counterclaims to know its position was false.

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

brought into this case – via its Original Counterclaims – the very causes of action (or mirror-images thereof) that Plaintiffs sought to add in their amended complaint.

After Plaintiffs explained the baseless, frivolous nature of Kappa's argument in their reply brief (ECF 67), Kappa attempted to support the argument *post hoc*, by dismissing the non-patent counterclaims from this case and filing them in a separate case. *See* ECF 71 ("Request for Notice"). But that action did not make Kappa's argument meritorious when it was presented to the Court.

After the Court denied Plaintiffs' motion for leave without prejudice (ECF 91), Plaintiffs filed a renewed motion for leave (ECF 94) on January 23, 2026. Kappa, in its opposition (ECF 99), made essentially the same argument it previously had made – that Plaintiffs were converting a patent-only lawsuit into something much bigger by "inject[ing] claims." Kappa added – with an astounding lack of self-awareness – that it would "be prejudiced if the court granted Plaintiffs leave to amend, because it will be forced to litigate the same issues before two different federal courts." ECF 99 at 8-9, 11. But, as this Court recognized in its OSC:

> Any duplication of effort, inefficiency, or prejudice, however, is of Defendant's own making as it is the party that chose to raise these issues first through counterclaims here, before dismissing those counterclaims and filing a separate action in the Northern District of California after Plaintiffs sought leave to file a First Amended Complaint and litigate those issues here. Defendant's argument is wholly frivolous and lacks merit.

OSC, pp. 2-3, n.3.

**B.    Effect of Respondents' Actions**

Because of Kappa's withdrawal of its Original Counterclaims and the filing of the Northern District Action, Plaintiffs had to: (1) move to dismiss, in part, the Amended Counterclaims (*see* ECF 84) after moving to dismiss, in part, the Original Counterclaims; (2) file a response to Defendant's Request for Notice (ECF 77); and (3) file a motion to dismiss Kappa's complaint in the Northern District Action and then a reply in support thereof of (*see* Gavenman Decl., Exhibits 7, 8). In addition, counsel for

8

Plaintiffs had multiple meet and confers with Abhyanker via email and orally about these inappropriate maneuvers.

### C.   Respondents' Explanation

Respondents contend they withdrew certain of their counterclaims from the instant case and inserted them in the Northern District Action "based on counsel's assessment, at the time, that separating patent claims from trademark and contract-related issues might promote clarity and efficient case management." Response, p. 1. They added that such decision was "a litigation strategy decision," and not one "to create duplication or inefficiency." *Id.*

As explained above, however, the procedural history makes clear that this is not true. Respondents' explanation **might** make sense if they had not expanded the case by filing their Original Counterclaims. But this "litigation strategy decision" to separate these causes of action into another case came only after Respondents attempted to claim it was Plaintiffs who were "inject[ing]" these claims into the instant case, and Plaintiffs highlighted the absurdity of such statement.

### D.   Cost

Dealing with Respondents' procedural gamesmanship cost Plaintiffs $236,543.00. *See* Overall Breakdown of Fees, attached as Exhibit 1 to the Gavenman Decl.; SBH Fee Breakdown, attached as Exhibit 2 to the Gavenman Decl., pp. 1-5; HHR Fee Breakdown, attached as Exhibit 3 to the Gavenman Decl., pp. 1-6; Exhibit A to the Declaration of John W. Cox ("Cox Decl."), which is being filed contemporaneously herewith, p. 1; and Exhibit A to the Declaration of Salvatore Picariello ("Picariello Decl."), which is being filed contemporaneously herewith, pp. 1-2.

## II.   The Anti-SLAPP Threat

### A.   Respondents' Actions

In its opposition to Plaintiffs' Renewed Motion for Leave to File First Amended Complaint (ECF 94), Kappa asserted that Plaintiffs' proposed amended complaint ran

9

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

afoul of California's anti-SLAPP statute. Kappa's "theory" was that, after Kappa had sued two entities – AIDP, Inc. ("AIDP") and Magceutics, Inc. ("Magceutics") – in the Northern District Action, Plaintiffs sought to add those parties as defendants in this case as a retaliatory measure. *See* ECF 99, ¶39.

This was, of course, madness. Plaintiffs did not actually seek to add AIDP and Magceutics as defendants and, moreover, such would not have made any sense as those entities ***are affiliates of Plaintiffs***, and undersigned counsel was representing AIDP in the Northern District Action. As the Court stated, Kappa "remains the only entity against which claims are asserted in the FAC," and Respondents "brought AIDP, Inc., Guosong Liu, and Fei Mau into this action as Crossclaim Defendants (erroneously identified as Counterclaim Defendants)." OSC, p. 3, n.4 (internal citations omitted).

Incredibly, Respondents did not limit this ridiculous argument to their opposition to Plaintiffs' Renewed Motion for Leave. On the day he filed the opposition on behalf of Kappa, Abhyanker also sent a "Rule 11 Safe Harbor Notice" letter to counsel for Plaintiffs threatening a ***second*** motion pursuant to Fed. R. Civ. P. 11.[3] *See* Gavenman Decl., ¶ 24; Exhibit 9 to Gavenman Decl. Incredibly, Kappa stated Plaintiffs' Renewed Motion for Leave to file a First Amended Complaint

> violate[d] Rule 11(b)(1) because it is being presented for improper purposes – namely, to retaliate against AIDP and Magceutics for being named as defendants in the Northern District of California action and to harass Kappa with duplicative litigation. The Motion also violates Rule 11(b)(2) because the proposed amendment is not warranted by existing law – it is futile, as the claims are already pending in another federal court, and the claims against AIDP and Magceutics are subject to dismissal under California's anti-SLAPP statute.

---

[3] On January 19, 2026, Respondents filed a (first) motion pursuant to Fed. R. Civ. P. 11 that is described in Section III, *infra*.

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

Exhibit 9 to Gavenman Decl. The entirety of the seven-page letter is factually and legally baseless.

## B.    Effect of Respondents' Actions

Respondents' ridiculous, counter-factual claim that Plaintiffs sued their own affiliates in violation of California's Anti-SLAPP statute required Plaintiffs to address such claim – and threats of sanctions – in their reply in support of their Renewed Motion for Leave to File Amended Complaint.

## C.    Respondents' Explanation

Respondents' explanation for why they erroneously claimed Plaintiffs had added affiliates as defendants in the proposed FAC is baseless to the point that it deserves its own sanction. As a preliminary matter, Respondents address this issue under the subheading "Corporate Structure Clarification" (*see* Response, p. 2), as if some issue regarding the corporate form of certain entities led Respondents to believe that Plaintiffs had sued their affiliates. Respondents state:

> The confusion regarding AIDP and Magceutics arose from overlapping references in prior pleadings, counterclaims, and related litigation filings, including the fact that those entities had been named in Defendant's counterclaims and were subjects of related disputes. In opposing amendment, Defendant's briefing conflated issues concerning necessary parties and related corporate entities with the narrower question of which parties were formally named in the proposed FAC.

Response, ¶7. Taken at face value, this explanation actually raises concerns about Abhyanker's ability to litigate this action. Somehow confusing the parties to this case is, at best, negligent. But threatening Rule 11 sanctions on that confused understanding is nothing short of reckless. After all, "the narrower question of which parties were formally named in the proposed FAC" could have, and should have, been answered by a cursory look at the proposed FAC.

Respondents attempt to chalk up their "[c]onfusion" to "product labeling" and "overlapping naming conventions." *Id.*, ¶¶8-10. Even accepting the premise that these

related corporations are confusing and "overlapping," (who could possibly be expected to keep the identities of *four* different companies straight), such does not explain why Respondents believed Plaintiffs *had sued* AIDP and Magceutics. In fact, the related nature of these companies makes Respondents' confusion *less* understandable.

Furthermore, this is not just about Respondents "creat[ing] confusion," based upon a "lack of clarity" and "imprecision." *Id.*, ¶10. Respondents claimed Plaintiffs' proposed amended complaint would violate California's anti-SLAPP statute and, unbelievably, threatened "to file a special motion to strike under California Code of Civil Procedure § 425.16 *on behalf of*" Plaintiffs' affiliates, AIDP and Magceutics. ECF 99, ¶41 (emphasis added).

That this was not merely some clerical mistake or accidental oversight is clear. In fact, remarkably, in the very same brief, Kappa made other arguments premised on the fact that Magceutics and AIDP *were not* named as defendants in the FAC. *Id.*, ¶¶16 ("Neither AIDP nor Magceutics are parties to this case, and Plaintiff's proposed FAC does not add them."), 23. Further, counsel for Plaintiffs engaged Abhyanker on this subject via email and then during an in-person meet and confer. Gavenman Decl, ¶25. Specifically, counsel for the parties met in person on February 17, 2026, about a motion for sanctions Plaintiffs planned to file relating to Respondents' vexatious litigation and meritless filings (including the anti-SLAPP threat). *Id.* Counsel for Plaintiffs reiterated what he had included in his email, pointing out that Plaintiffs *had not* included AIDP and Magceutics in their proposed First Amended Complaint as defendants and that, moreover, such would be ridiculous because they were affiliates of Plaintiffs. *Id.* at ¶26. Abhyanker, however, doubled down, maintaining it was a "good argument," made in good faith. *Id.* at ¶27. And this was nearly three weeks after Abhyanker sent his Rule 11 letter. It was not until the Court's OSC that Abhyanker reversed his position. *Id.*

Finally, Respondents indicate Abhyanker "has implemented a verification process to ensure future factual representations regarding pleadings are cross-checked

12

directly against the operative draft." Response, ¶5. This sentence raises more questions than it answers. First, what is this "verification process?" Second, how did Abhyanker implement it in less than 12 hours after the filing of the OSC? Third, given a "verification process" is incumbent upon attorneys to begin with (*see* Fed. R. Civ. P. 11(b)), why did Abhyanker not have one in place already? Respondents' explanation for their Anti-SLAPP argument is entirely without merit and fails to refute that the filing at issue is legally and factually baseless from an objective perspective, as necessary to escape Rule 11 sanctions here. *See Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025) (noting Rule 11 employs "an objective standard of reasonableness").

### D.    Cost

Dealing with Respondents' unfounded claim that Plaintiffs had proposed suing their own affiliates is subsumed in the costs Plaintiffs incurred dealing with Respondents opposing their motions for leave to file an amended complaint. *See* Section III, *infra*.

## III.    Opposition to Amendment

### A.    Respondents' Actions

Plaintiffs retained new lead counsel in late October of 2025, while Plaintiffs' initial Motion for Leave to File First Amended Complaint (ECF 34) was pending. Plaintiffs' new counsel immediately informed Abhyanker that he and his colleagues were getting up to speed on the case and, as such, reserved the right to seek other and further amendment of the complaint once they had completed their analysis. Gavenman Decl., ¶29. Even though the last date for hearings on amending pleadings was not until December 26, 2025 – and, therefore, plenty of time remained for Plaintiffs to seek amendment – Abhyanker made clear that he would oppose any further motion for leave (as he had opposed the first motion for leave). *Id.* at ¶30. Abhyanker did this despite counsel for Plaintiffs informing him during multiple conversations of the Ninth

13

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

Circuit's liberal policy with respect to amendments (and Plaintiffs pointing out the same in their moving papers). *Id.* at ¶31.

Indeed, Respondents obstinately continued to oppose Plaintiffs' requests for leave to amend. The oppositions filed in response to Plaintiffs' revised motion for leave (ECF 64) and renewed motion for leave (ECF 94) were especially egregious. As explained in Section I, above, Respondents opposed the revised motion for leave because Plaintiffs' proposed amended complaint purportedly expanded the scope of the case (when Kappa already had done so itself). ECF 65. Then, after withdrawing those causes of action from the Original Counterclaims (following Plaintiffs pointing out the absurdity of Kappa's argument) and filing them as the Northern District Action, Respondents had the gall to oppose Plaintiffs' Renewed Motion for Leave on the basis that similar claims already were pending in the Northern District Action. ECF 99.

**B.    Effect of Respondents' Actions**

Because Kappa refused to consent to Plaintiffs' requests to amend the pleadings, Plaintiffs had to file several motions and replies in support thereof.

**C.    Respondents' Explanation**

Respondents claim they opposed Plaintiffs' motion for leave to amend based on their "understanding of Rule 15 standards and the procedural posture at the time." Response, ¶ 11. Specifically, they claimed that "allowing amendment while related claims were pending elsewhere could result in inefficiency and prejudice." *Id.* However, the Court has already determined that such argument is "wholly frivolous and lacks merit," as "any duplication of effort, inefficiency, or prejudice [] is of Defendant's own making…" OSC, p. 2.

**D.    Cost**

Dealing with Respondents' refusal to consent to Plaintiffs' proposed amended complaint cost Plaintiffs $94,483. *See* Exhibit 1 to Gavenman Decl.; Exhibit 2 to

14

Gavenman Decl, pp. 6-7; Exhibit 3 to Gavenman Decl., pp. 7-9; Exhibit A to the Cox Decl., p. 2, and Exhibit A to the Picariello Decl., p. 3.

## IV.    Kappa's Meritless Rule 11 Motion

### A.    Respondents' Actions

Respondents filed a Fed. R. Civ. P. 11 Motion (ECF 93) against Plaintiffs, which, because it was entirely frivolous, "is itself subject to the requirements of [Rule 11] and can lead to sanctions." Fed. R. Civ. P. 11, 1993 Advisory Comm. Notes. As a preliminary matter "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Yet Respondents have invoked it casually – and without adherence to its procedural guardrails.

Indeed, Respondents' Rule 11 Motion was improper before even reaching its (lack of) merit. Respondents filed the motion without first serving it on Plaintiffs and then waiting 21 days, as required by Fed. R. Civ. P. 11(c)(2). Rather, Abhyanker sent a letter to Plaintiffs, which he indicated in his Declaration in Support of Kappa's Motion for Sanctions "expressly invoked Rule 11." ECF 93-1, ¶ 5. Of course, merely "invok[ing]" Rule 11 is not enough, considering the rule's "strict procedural requirements." *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 788 (9th Cir. 2001). Indeed, Kappa was required to serve the ***motion*** rather than an "informal warning." *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1988). *See also* Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend. ("The [21-day] 'safe harbor' period ***begins to run only upon service <u>of the motion</u>***.") (cleaned up and emphasis added).

Respondents also failed to comply with Local Rule 7-3, the Court's Standing Order (ECF 16), and the Court's Scheduling Order (ECF 32). Specifically, in violation of all three, Abhyanker did not meaningfully meet and confer with Plaintiffs regarding Kappa's proposed motion. First, as evidenced by documents attached to the Motion for Sanctions, counsel for Plaintiffs sought to meet and confer about the allegations in the

Rule 11 Letter, but Kappa's counsel vehemently refused by unequivocally (and incorrectly) stating that "Rule 11 does not require a response, a meet and confer, or agreement by the responding party as a precondition to filing." Exhibit D to Abhyanker Declaration (ECF 93-5). The Court should not tolerate such bad-faith and willfully uncooperative behavior. Second, counsel for Kappa did not include a L.R. 7-3 Statement of Compliance as required by the Local Rules.

Respondents' failure to comply with L.R. 7-3 was particularly significant given their Rule 11 theory was based not on any objective misconduct but rather on a fundamental failure to understand the applicable law and an entirely subjective scientific theory that Plaintiffs vehemently disputed. Had Kappa complied with the Local Rules and engaged in a meaningful meet and confer, Plaintiffs would have explained the good-faith basis for asserting their patent claims, and the parties perhaps could have avoided motions practice.[4]

The Rule 11 Motion also was objectively meritless. First, and unsurprisingly, Respondents misrepresented the facts. They claimed that after serving their "Rule 11 notice letter …, Plaintiffs subsequently withdrew" causes of action relating to four of the five patents at issue in the Original Complaint. ECF 93, ¶¶6-7. The implication – that Plaintiffs withdrew these claims **because of** Kappa's Rule 11 Letter (and, thus, implicitly conceded their claims did not have merit) – is not a mischaracterization or a stretching of the truth; it is a lie. *Id.* at ¶¶7; 11; 18. Plaintiffs had been seeking to amend their Complaint to omit claims relating to those particular patents for months, as

---

[4] Notably, counsel for Plaintiffs also pointed out that Respondents' letter did not fulfill Rule 11's notice requirements. *See* Email exchange attached as Exhibit D to the Declaration of Raj Abhyanker in support of Kappa's Rule 11 Motion (ECF 93-5) ("Abhyanker Decl.") (counsel for Plaintiffs stating: "[A]s you must know, your purported Rule 11 Notice is wholly defective. If you were to, as you suggest in your email, file for sanctions 'without further notice,' we would, of course, seek sanctions against you for doing so in contravention of the clear requirements of Rule 11.")

16

evidenced not only by the procedural history of this case,[5] but also by the very correspondence attached to Respondents' Rule 11 Motion. *See* Abhyanker Decl. (ECF 93-1), Exhibit D at 2 (Plaintiffs' counsel stating, on January 10, 2026, that "since you sent your email/letter, the parties have filed a stipulation dismissing most of the patent claims in this case. Of course, as you know, and as we pointed out to you when you first raised this issue on our phone call, we had been trying to amend the complaint to remove those claims for over a month, and it was your own decision to oppose our motion for leave to amend that was standing in the way of those efforts."). To suggest that Plaintiffs withdrew these claims **because of** Kappa's Rule 11 Letter is patently false.

In addition, Respondents were unable to show that the factual premise underpinning Plaintiffs' patent claims was incorrect from an *objective* perspective, as Kappa's entire argument rests on *Kappa's* own subjective and incorrect scientific theory. *See* Rule 11 Motion, ¶¶13-15. Further, Respondents failed to cite any sources as evidence that Kappa's understanding of the science is the "established scientific understanding" and relied instead on the declarations of two experts paid by Kappa to provide opinions on the matter for this very litigation. Plaintiffs explained the substantive issues with Kappa's Rule 11 Motion in detail in their Opposition to the Rule 11 Motion (ECF 103), which they incorporate herein by reference. It obviously was persuasive. **Less than five hours** after filing the stinging Opposition, Respondents withdrew their Rule 11 Motion. Such withdrawal was not (according to Respondents) because of the merit of Plaintiffs' Opposition and the Rule 11 Motion's lack thereof; rather, they claimed – seemingly with a straight face – they (suddenly) were concerned about "judicial economy" and "unnecessary expenditure of judicial and party resources on collateral matters." *See* Notice of Withdrawal of Rule 11 Motion (ECF 104).

---

[5] The Revised Motion for Leave was filed on November 21, 2025. ECF 64. Kappa served its Rule 11 Letter on December 22, 2025.

17

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

Respondents' Rule 11 Motion was frivolous, violated several procedural rules, and was not based on any objective evidence, as required by law. *See*, *e.g.*, Opposition to Rule 11 Motion at 1-2; 9-14. Such conduct was willful, grossly negligent, or at a minimum reckless because Respondents wholly ignored both basic procedural rules and controlling law with respect to Rule 11 motions, and specifically within the context of patent cases. Rather than attempting to demonstrate that Plaintiffs' claims were objectively frivolous, Respondents relied exclusively on litigation-generated expert opinions disputing the science underlying the patents. That is not the stuff of well-founded Rule 11 Motions – that is an attempt at arguing the merits. A reasonable attorney conducting even the most basic legal research would have recognized the procedural requirements of Rule 11, L.R. 7-3, the Civil Standing Order, and the Scheduling Order, and that Rule 11 requires objective proof of allegedly frivolous filings.

## B.    Effect of Respondents' Actions

Respondents' filing of their Rule 11 motion forced Plaintiffs to incur unnecessary expense responding to a motion that never should have been filed.[6] Plaintiffs had to expend time attempting to engage Respondents for L.R. 7-3 purposes and then in preparing their opposition. Respondents forced Plaintiffs to undertake these unnecessary activities, which is sanctionable. *See Goldwater Bank, N.A. v. Elizarov*, No. 5:21-cv-00616-JWH-SP, 2023 WL 4295255, at *4 (C.D. Cal. May 09, 2023) ("Because Elizarov forced Goldwater to defend itself against an improper and legally baseless Rule 11 Motion, Elizarov opened the door to the instant imposition of an award to Goldwater of its costs and attorneys' fees."); *see also Patelco Credit Union v. Sahni*,

---

[6] In addition, L.R. 83-7 sanctions may be imposed for failure to comply with Local Rules. Here, Kappa's counsel failed to comply with L.R. 7-3 and such failure was done *at the very least* in bad faith. Counsel for Plaintiffs attempted to meet and confer with Kappa about the Motion, and Kappa refused this request outright.

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

262 F.3d 897, 913 (9th Cir. 2001) (imposing costs and attorneys' fees as counter-sanction for defendant filing improper sanctions motion).

### C.    Respondents' Explanation

Respondents devote just a sentence of their Response to their Rule 11 Motion: "Dkt. 104 withdrew Defendant's motion for sanctions prior to hearing and without adjudication in order to narrow issues and conserve judicial resources." Response, ¶ 13. This is farcical for the reasons explained above.

### D.    Cost

Responding to Respondents' Rule 11 Motion cost Plaintiffs $57,443.50. *See* Exhibit 1 to Gavenman Decl.; Exhibit 2 to Gavenman Decl, p. 8; Exhibit 3 to Gavenman Decl., pp. 10-11; Exhibit A to the Cox Decl., pp. 3-4 and Exhibit A to the Picariello Decl., p. 4.

## V.    Kappa's Motion to Strike Gavenman Declaration

### A.    Respondents' Actions

On December 3, 2025, Plaintiffs moved to partially dismiss Kappa's Original Counterclaims (*see* ECF 66). With the motion, Plaintiffs included a declaration from counsel detailing efforts to meet and confer. Abhyanker asserted that the declaration included confidential communications from a mediation in which the parties had engaged and indicated the declaration, along with all exhibits thereto (collectively, the "Material"), should be stricken.

As a preliminary matter, and in keeping with his record in this case, Abhyanker was wrong on the law. While the Material referenced a meeting between counsel that occurred on November 21, 2025 (the "November 21 Meeting"), it provided only meet-and-confer information required by L.R. 7-3 – the "date(s) the conference took place and the position of each party with respect to each disputed issue that will be the subject of the motion" (L.R. 7-3) – but specifically refrained from disclosing "the substance of those [November 21, 2025] conversations." Furthermore, the November 21 Meeting

19

was not a "mediation" within the meaning of any statute or federal common law, as there was no mediator or neutral third party in attendance; Fed. R. Evid. 408 did not apply; and California state evidentiary laws and rules did not apply either.

Most egregious, however, was that Abhyanker rejected the good-faith resolution suggested by Plaintiffs and their counsel. While disagreeing with Abhyanker, Plaintiffs and their counsel offered to redact selected portions of the statement that Abhyanker found problematic. *See* Declaration in Support of Plaintiffs' Opposition to Motion to Strike (ECF 82-1), ¶¶ 9-13. Respondents refused this compromise and indicated the only sufficient resolution would be striking the 7-3 Declaration entirely – along with its exhibits. *Id.* at ¶¶ 7, 10, 15. Despite Plaintiffs' offer to compromise – and their counsel explaining to Abhyanker why his motion was improper and destined to fail – Kappa filed its Motion to Strike on December 12, 2025. Notably, it did not cite any relevant authority supporting its central legal proposition. Three days later, Kappa withdrew its Original Counterclaims. Such had the further practical effect of mooting Kappa's Motion to Strike, and counsel for Plaintiffs requested Abhyanker withdraw it. Gavenman Decl., ¶38. Abhyanker refused, forcing Plaintiffs to incur the expense of filing an opposition. Kappa then filed a Reply in Support of its Motion to Strike, but the reply failed even to address the established caselaw Plaintiffs cited in their opposition. Such caselaw (*see* Opposition to Motion to Strike, ECF 82) demonstrates Respondents lacked a good-faith basis for bringing their motion.

The Court eventually denied the Motion to Strike as moot (as Plaintiffs indicated would happen), and Respondents then proposed the very solution Plaintiffs had been offering from the beginning – simple redaction of the portions of the declaration that were offensive to them. Gavenman Decl., ¶40 and Exhibit 10 thereto. Had Respondents acted reasonably at the outset, the parties could have avoided motions practice entirely.

20

**B.    Effect of Respondents' Actions**

Because of Respondents' Actions, Plaintiffs were forced to engage Abhyanker regarding the Motion to Strike, file an opposition thereto, and later negotiate redactions for a proposed Motion to Seal (ECF 97) filed on January 27, 2026.

**C.    Respondents' Explanation**

Kappa and Abhyanker provided no explanation for why they forced Plaintiffs to oppose their Motion to Strike before eventually agreeing to the solution Plaintiffs initially proposed.

**D.    Cost**

In discussing the declaration with Abhyanker, opposing the Motion to Strike, and negotiating redactions, Plaintiffs expended $28,972.00. *See* Exhibit 1 to Gavenman Decl.; Exhibit 2 to Gavenman Decl, pp. 9-10; and Exhibit 3 to Gavenman Decl., p. 12.

**VI.    Citing Language from Case that Does not Exist**

**A.    Respondents' Actions**

On October 3, 2025, Plaintiffs filed a Motion for Leave to File an Amended Complaint (ECF 34), and Kappa filed an Opposition (ECF 35) on October 8, 2025. As Plaintiffs pointed out in their Reply brief (ECF 36), Kappa's Opposition was notable for the following passage and case quotation:

> Courts consistently hold that amendment should not proceed where it would "circumvent a pending dispositive motion addressing threshold jurisdictional issues." *See*, *e.g.*, *In re DRAM Antitrust Litig.*, 516 F.Supp.2d 1072, 1084 (N.D. Cal. 2007).

Opposition (ECF 35) at ¶ 12. Neither this language nor anything resembling it appears in the *In re DRAM* case. And a search revealed that the Kappa's quoted language does not exist in any federal or state caselaw. Declaration of Sang Dang (ECF 36-1), ¶¶6-7. It seems clear – especially when considering some of Abhyanker's correspondence in this case – that Abhyanker employs Artificial Intelligence ("AI") in his litigation efforts,

PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

and that he used it for his opposition. AI appears to have hallucinated the language that Abhyanker cited.

### B.    Effect of Respondents' Actions

Respondents' use of AI-hallucinated case law forced Plaintiffs to address this issue in their reply in support of their motion for leave and to file an opposition (ECF 38) to Kappa's Motion to File Corrected Opposition (ECF 37).

### C.    Respondents' Explanation

Respondents attempted to shrug off this clearly sanctionable behavior with a Motion for Leave to File Corrected Opposition (ECF 37), in which they stated "[a]ll filings were prepared under counsel's supervision, personally reviewed, and filed in full compliance with Rule 11." ECF 37, pp. 2-3. Respondents continued: "All cited authorities were accurate. This motion is limited to correcting inadvertent proofreading and citation errors, specifically the removal of quotation marks that summarized rather than directly quoted language." *Id.* at p. 3.

But Respondents did not merely remove quotation marks – they also ***entirely removed the citation*** to the case in the proposed, corrected opposition. Respondents avoided, at the time, any potential repercussions from their apparent use of AI because when Plaintiffs withdrew their initial Motion for Leave to file an Amended Complaint (so they could file a revised version), the Court deemed moot both the initial Motion and Kappa's motion to file a corrected opposition.

### D.    Cost

The cost of dealing with Respondents' AI-hallucinated citation, is subsumed in the cost for dealing with Respondents opposing Plaintiffs' motions for leave.

### CONCLUSION

Respondents' vexatious actions have had significant consequences in this litigation. Guided by Abhyanker, whose reputation for bad-faith litigation tactics precedes him, Kappa has unnecessarily delayed this case (nearly 180 docket entries

22

across two cases, and the parties still are not through preliminary motions) and, in the process, significantly and improperly driven up Plaintiffs' costs. The Court should sanction Respondents, order them to pay $417,441.50 in attorneys' fees and costs, and enter an order that either Kappa may not file any offensive motions without leave of Court or that any such motion must be accompanied by a bond in an amount to be set by the Court.

Dated: March 20, 2026                    HUGHES HUBBARD & REED LLP


                                          By:  /s/ *Jeffrey Gavenman*
                                          Attorneys for Plaintiffs
                                          NEUROCENTRIA, INC. and THREOTECH
                                          LLC


## CERTIFICATE OF COMPLIANCE
        The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,985 words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order (ECF No. 16).


Dated: March 20, 2026                    **HUGHES HUBBARD & REED LLP**

                                         By: /s/ Jeffrey S. Gavenman
                                             Jeffrey S. Gavenman (admitted *pro hac vice*)

                                         *Counsel for Plaintiffs/Counterclaim Defendants*

23
PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

**CERTIFICATE OF SERVICE**

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626.  On March 20, 2026, I served the following document(s):

**PLAINTIFFS' REPLY TO DEFENDANT MANDO INTERNATIONAL, LLC'S RESPONSE TO ORDER TO SHOW CAUSE**

on the parties stated on attached service list

| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>    Raj V. Abhyanker<br>    raj@legalforcelaw.com | |
|---|---|

☒    **BY COURT'S CM/ECF SYSTEM.**  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.

     **BY E-MAIL.**  By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

☐    **(STATE)**        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒    **(FEDERAL)**    I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 20, 2026, at Costa Mesa, California.

/s/ SALVATORE PICARIELLO
Salvatore Picariello

1
CERTIFICATE OF SERVICE