Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:  (650) 965-8731
Facsimile:  (650) 989-2131

Attorneys for Defendant,
Mando International, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC., a California corporation, THREOTECH LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>V.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS, a Texas limited liability company<br><br>Defendant and Counterclaimant NEUROCENTRIA, INC., a California corporation, THREOTECH LLC, a Nevada limited liability company, and AIDP, INC., a California corporation.<br><br>Counter-Defendants. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>Hearing:  April 17, 2026<br><br>Time:  1:30 p.m.<br><br>Courtroom:  6B, 6th Floor<br><br>Hon. Fernando L. Aenlle-Rocha |

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

## TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................... 1

II. THE PARTIES' NARROWING OF ISSUES DEMONSTRATES GOOD FAITH..................................................................................5

III.  LEGAL STANDARD AND ARGUMENT.......................................5

A. Claim Construction Standard....................................................... 5

B. Prosecution History Estoppel....................................................... 6

C.  The Specification Defines 'Magnesium Threonate' as a Chemical Compound Distinguished from Mixtures.................................................7

D. Products of Nature Doctrine Applied to Chemical Compounds......................... 8

E. The '061 Patent Specification Teaches That Magnesium Threonate is a Naturally Occurring Composition of Matter - Funk Brothers Bars Patentability...................... 9

F. Applicants Conceded Magnesium Threonate Was Known - But the Dosage Form Was Novel.................................................................... 11

IV. PLAINTIFFS' CONSTRUCTION IS OVERBROAD AND IMPERMISSIBLE................................................................. 12

V. CONCLUSION....................................................................13

CERTIFICATE OF COMPLIANCE................................................ 15

# TABLE OF AUTHORITIES

## CASES

*Association for Molecular v. Myriad, Inc.*, 569 U.S. 576, 589 (2013)                      8

*Edwards Lifesciences Corp. v. St. Jude Med., Inc.*, C.D. Cal. Aug. 29, 2003      6, 7

*Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999)                    7

*Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333 U. S. 127, (1948)          7, 8, 9

*Integrated Technology. v. Rudolph, Inc.*,   734 F.3d 1352, 1360 (Fed. Cir. 2013)   6

*O2 Micro Int'l Ltd. v. Beyond.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)                  1

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)                          5, 9

*Jonsson v. Stanley Works*, 903 F.2d 812, 819 (Fed. Cir. 1990)                          7

## RULES

L.R. 11-6.1                                                                                          15

Patent Standing Order                                                                               5

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

## I.  INTRODUCTION

1.  Plaintiffs' position that "magnesium threonate" requires no construction is legally untenable. "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." See *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1362 (Fed. Cir. 2008). Leaving the term to "plain meaning" would improperly delegate a dispositive legal question to the jury. The dispute here is not semantic - it is substantive. Plaintiffs' construction would permit the term "magnesium threonate" to encompass mixtures of precursors and in vivo formations, while Defendant's construction limits the term to a specific, pre-formed ionic compound as understood by a person of ordinary skill in the art. That distinction directly affects infringement and validity and must be resolved at claim construction.

2.  The intrinsic record, however, requires the Court to elaborate on one critical distinction: what the term encompasses and what it means when the applicants acknowledge the compound occurs naturally in the human body. This distinction is not a limitation imported from the specification; it is drawn by the applicants themselves in the prosecution history and the specification.

3.  Defendant's proposed construction, as set forth in the Joint Claim Construction Statement (Dkt. 95), is reproduced below for context:

**A magnesium salt of threonic acid, including L-threonic acid magnesium that occurs naturally in the human body.**

4.  Consistent with the Joint Claim Construction Statement, and to clarify the

1
DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

scope of the term while eliminating ambiguity, Defendant respectfully requests that the Court adopt the following refined construction of "magnesium threonate":

> **A magnesium salt of threonic acid, including L-threonate, as understood by a person of ordinary skill in the art, referring to a pre-formed ionic salt compound, the chemical identity of which may occur naturally in the human body, and excluding mixtures of separate magnesium and threonate sources.**

5. This clarification is consistent with Defendant's previously disclosed construction and does not alter its position, but rather makes explicit what was already inherent in the definition of a magnesium salt as understood by a person of ordinary skill in the art.

6. Plaintiffs' reliance on the repeated use of the term "magnesium threonate" in the specification does not eliminate the need for construction. Repetition does not resolve ambiguity where the intrinsic record reveals a substantive dispute about scope. Here, the specification and prosecution history together raise a critical question - or instead encompasses mixtures or in vivo formation, which must be resolved by the Court.

7. This construction is supported by the specification's explicit teaching that magnesium threonate forms naturally in vivo through vitamin C metabolism. Specifically, detailed description of the 8,637,061 Patent ("'061 Patent") explicitly teaches that "*vitamin C is metabolized into the threonate ion in humans; therefore, ingestion of magnesium in a form which can be taken up by the body and vitamin C may result in the reconstitution of magnesium threonate in the body*." ('061 Pat. Col. 31, lines 5-9, ECF 110-2, emphasis added).

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

8. In addition, the detailed description of the '061 Patent goes on to state "*Another example of a substance which is metabolized to threonate in humans is ascorbate. Thus, in some embodiments of the present invention, magnesium ascorbate may be provided to a subject and this substance would be metabolized to magnesium and threonate in vivo.*" ('061 Pat. Col. 31, lines 9-13, ECF 110-2, emphasis added). [1]

9. The detailed description of the '061 Patent goes on to admit that there are many ways that magnesium threonate (a magnesium-counter-ion composition) in vivo because it says "*One of skill in the art will recognize that these examples are provided by way of illustration only and that other combinations of magnesium compounds and secondary compounds may result in the reconstitution of a magnesium-counter-ion composition in vivo.*" ('061 Pat. Col. 31, lines 13-18, ECF 110-2, emphasis added).

10. It is also supported by the prosecution history from the parent and continuation applications, which show the Examiner allowed the claims based on the dosage form limitation - confirming that the chemical compound 'magnesium threonate' was treated as prior art.

---

[1] Dr. Naveed Ziari, testifying at his March 17, 2026 deposition as someone with ordinary skill in pharmaceutical chemistry and formulation science - with a PhD in endocrinology (biochemistry focus) from the University of California at Berkeley opined that magnesium threonate should be construed as naturally present within the human body, even in the absence of supplementation' because vitamin C is metabolized into the threonate ion in humans and these ions combine to form magnesium threonate in vivo. (Also see *Declaration of Naveed Ziari*, Ph.D., Dkt. 95-3, to Joint Claim Construction Statement).

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

11. Specifically, the prosecution history of the continuation applications confirms that the applicants themselves distinguished their alleged invention from simple mixtures by asserting that any purported benefits arise from the compound itself, not from combining known components. In particular, the applicants stated:

"The unexpected effectiveness... is intrinsic to the compound magnesium threonate. This superior property is not observed by mixing magnesium and threonate from different salt complexes."

(Jan 12, 2012 in Reply to Final Office Action of August 1, 2011 in parent application U.S. Serial No 12/054,384 to which the '061 is a continuation (**Ex. 1**), and & (June 3, 2013 in Reply to Final Office Action of March 20, 2013 to the continuation of the '061 patent, U.S. Serial No 13/402,648) (**Ex. 2**)

12. Thus, the applicants expressly acknowledged that magnesium and threonate are known components and attempted to distinguish their claims based on alleged properties of the resulting compound - not on any new or distinct meaning of the term "magnesium threonate" itself.[2]

---

[2] Dr. Sara Adams, testifying at her March 18, 2026 deposition as someone with ordinary skill in pharmaceutical chemistry and formulation science, confirmed that magnesium threonate should be construed as a naturally occurring compound that forms in the human body through ordinary metabolic processes. Specifically, Dr. Adams testified that this natural formation is consistent with the specification's explicit description that 'vitamin C is metabolized into the threonate ion in humans' and that magnesium and threonate result in the reconstitution of magnesium threonate in the body.

Dr. Adams further testified that a POSITA in pharmaceutical chemistry would construe magnesium threonate as a pre-existing, naturally occurring chemical compound - not a novel composition created by the applicants. She explained that magnesium is metabolized in the body and threonate is an endogenous metabolite, confirming that both components exist naturally in human physiology and combine to form magnesium threonate through ordinary biochemical processes. (Also see

4
DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

13. Notably, the Examiner ultimately allowed the claims based on limitations relating to dosage form and administration, rather than any specialized or source-identifying meaning of the compound "magnesium threonate."

## II. THE PARTIES' NARROWING OF ISSUES DEMONSTRATES GOOD FAITH

14. On February 27, 2026, the parties jointly filed a Notice of Narrowed Issues (Dkt. 111), narrowing the sole disputed term to 'magnesium threonate' with the explicit consent of Plaintiffs' lead counsel. This narrowing occurred before the opening brief deadline and reflects good faith compliance with the Patent Standing Order. The parties have completed their substantive narrowing; the remaining question is what the term means, a question resolved by intrinsic evidence.

## III. LEGAL STANDARD AND ARGUMENT

### A. Claim Construction Standard

15. Claim construction requires understanding the term as understood by a person of ordinary skill in the art ('POSA') at the time of invention. The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

16. Here, the specification is dispositive. It explicitly teaches that magnesium

*Declaration of Sara Adams*, Ph.D., Dkt. 95-2, to Joint Claim Construction Statement).

5

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

threonate reconstitutes naturally in the human body through vitamin C metabolism ("*vitamin C is metabolized into the threonate ion in humans; therefore, ingestion of magnesium in a form which can be taken up by the body and vitamin C may result in the <u>reconstitution of magnesium threonate in the body</u>*." ('061 Pat. Col. 31, lines 5-9, ECF 110-2, emphasis added).

**B. Prosecution History Estoppel**

17. When an applicant makes a narrowing amendment during prosecution that is related to patentability, the applicant is presumptively estopped from recapturing the scope surrendered by that amendment. It presumptively applies when the applicant made a narrowing claim amendment related to patentability. A patentee bears the burden to rebut the presumptive application of prosecution history estoppel by establishing one of three exceptions by a preponderance of the evidence." *Integrated Technology Corp. v. Rudolph Technologies, Inc.*, 734 F.3d 1352, 1360 (Fed. Cir. 2013). The patentee bears the burden of rebutting this presumptive estoppel by establishing that: **(1)** the recaptured subject matter would have been unforeseeable at the time of the amendment; **(2)** the amendment's rationale bears no more than a tangential relation to the recaptured subject matter; or **(3)** some other circumstance suggests the patentee could not reasonably have been expected to describe the recaptured subject matter. *Id.*

18. "When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation." *Edwards Lifesciences Corp. v. St. Jude Med., Inc.*, No. CV 00-07091

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

CAS (AJWx) (C.D. Cal. Aug. 29, 2003); *see also Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999); *Jonsson v. Stanley Works*, 903 F.2d 812, 819 (Fed. Cir. 1990) (holding that statements made in prosecution history of patents issued from same parent application are "relevant to an understanding" the use of the same claim term in the related patents).

## C. The Specification Defines 'Magnesium Threonate' as a Chemical Compound Distinguished from Mixtures

19. Here, during prosecution of the parent application (No. 12/054,384) and the child continuation application (No. 14/132,980), which share the same specification and claim language as the '061 patent, the applicants made a controlling narrowing amendment that is binding on construction of the '061 patent. In the January 12, 2012 Amendment (Application No. 12/054,384) and the June 3, 2013 Amendment (Application No. 13/402,648), the applicants represented to the Patent Office: the "*unexpected effectiveness... is intrinsic to the compound magnesium threonate. This superior property is not observed by mixing magnesium and threonate from different salt complexes.*" This narrowing amendment explicitly distinguishes the claimed 'compound' from 'mixtures of magnesium and threonate from different salt complexes.' The amendment was made to overcome patentability rejections and was related to patentability.

20. Plaintiffs cannot satisfy any of the three exceptions: **(1)** mixtures of magnesium and threonate were foreseeable prior art at the time of the amendment; **(2)** the rationale for distinguishing 'compound' from 'mixtures' is directly on point to what subject matter was surrendered; and **(3)** the applicants could have but did

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

not describe mixtures as encompassed. Accordingly, Plaintiffs are presumptively estopped from recapturing the scope surrendered by the narrowing amendment - namely, that 'magnesium threonate' encompasses mixtures of separate magnesium and threonate sources.

21. This is the controlling intrinsic evidence. The applicants told the Patent Office, under a duty of candor, that magnesium threonate is a specific 'compound' whose properties are NOT shared by 'mixtures' of separate ions. This statement drew a bright-line distinction: the applicants were patenting a specific compound, not a concept or a mixture of ingredients. A POSITA would understand this statement as defining what 'magnesium threonate' means: a pre-formed ionic salt with distinct properties, not a collection of separate components.

22. Plaintiffs cannot repudiate this statement now. Having secured the patent on the representation that the compound is distinct from mixtures, Plaintiffs are estopped from arguing the term encompasses the very mixtures the applicants distinguished. This is not a limitation imported from the specification, it is the applicants' own characterization of their invention, binding upon claim construction.

**D. Products of Nature Doctrine Applied to Chemical Compounds**

23. This discussion is not presented to resolve patent eligibility, but to inform the proper scope of the claim term in light of the specification.

24. A "naturally-occurring" chemical compound is a product of nature and is not patent eligible merely because it has been isolated or discovered. Critically, "'laws

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

of nature, natural phenomena, and abstract ideas" lie beyond the domain of patent protection. *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013). *Id.* "Even brilliant discovery does not alone satisfy the §101 inquiry." *Id.* "Groundbreaking, innovative, or even brilliant discovery does not by itself satisfy the §101 inquiry." *Id.* (citing *Funk Brothers Seed Co. v. Kalo Inoculant Co., 333 U.S. 127 (1948)*).

**E. The '061 Patent Specification Teaches That Magnesium Threonate is a Naturally Occurring Composition of Matter - *Funk Brothers* Bars Patentability**

25. The '061 Patent specification explicitly describes the natural formation of magnesium threonate in the human body. The specification states: "*vitamin C is metabolized into the threonate ion in humans; therefore, ingestion of magnesium in a form which can be taken up by the body and vitamin C may result in the reconstitution of magnesium threonate in the body*" ('061 Patent, Col. 31, lines 5-9, ECF 110-2). This language establishes that magnesium threonate is a naturally occurring composition that forms in the human body through ordinary metabolic processes. The specification's own acknowledgment that the compound occurs naturally in the human body is dispositive under *Phillips*: the patent's scope cannot extend to a naturally occurring product.

26. Under the Supreme Court's decision in *Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127 (1948), this specification language reveals a fatal defect.

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

27. In *Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333 U. S. 127, 68 S. Ct. 440, 92 L. Ed. 588, 1948 Dec. Comm'r Pat. 671 (1948), this Court considered a composition patent that claimed a mixture of naturally occurring strains of bacteria that helped leguminous plants take nitrogen from the air and fix it in the soil. *Id.*, at 128-129, 68 S. Ct. 440, 92 L. Ed. 588. The ability of the bacteria to fix nitrogen was well known, and farmers commonly "inoculated" their crops with them to improve soil nitrogen levels. But farmers could not use the same inoculant for all crops, both because plants use different bacteria and because certain bacteria inhibit each other. *Id.*, at 129-130, 68 S. Ct. 440, 92 L. Ed. 588.

28. Upon learning that several nitrogen-fixing bacteria did not inhibit each other, however, the patent applicant combined them into a single inoculant and obtained a patent. *Id.*, at 130, 68 S. Ct. 440, 92 L. Ed. 588. The Court held that the composition was not patent eligible because the patent holder did not alter the bacteria in any way. *Id.*, at 132, 68 S. Ct. 440, 92 L. Ed. 588 ("There is no way in which we could call [the bacteria mixture a product of invention] unless we borrowed invention from the discovery of the natural principle itself"). His patent claim thus fell squarely within the law of nature exception.

29. The same principle applies here. The inventor's principal contribution (when at the Massachusetts Institute of Technology more than 20 years ago) was discovering that magnesium and a magnesium-counter-ion (e.g., threonate) combine naturally in the human body through vitamin C metabolism. But under *Funk Brothers*, "groundbreaking, innovative, or even brilliant discovery does not by itself satisfy the §101 inquiry." *Myriad*, 569 U.S. at 598. The applicants 'did not

"create or alter" (see *Myriad*, 569 U.S. at 598) magnesium threonate. They merely discovered that this naturally occurring composition forms in vivo.

30. *Funk Brothers* is not about whether a composition is technically a 'mixture' or a chemically bonded 'salt.' Funk Brothers holds that a naturally occurring composition of matter, whether it is bacteria combined in an inoculant, or magnesium ions combined with threonate ions - cannot be patented merely because the applicant discovered it and the discovery proves useful. The applicants learned that magnesium and threonate combine in the body. This is the discovery of a natural principle. But the "discovery of the natural principle itself'" cannot be the basis of a patent. See *Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333 U. S. 127, 68 S. Ct. 440, 92 L. Ed. 588, 1948 Dec. Comm'r Pat. 671 (1948).

31. The patent claims must be read consistently with this specification teaching. Defendant's construction appropriately reflects this reality: "magnesium threonate" refers to the pre-existing, naturally occurring chemical composition in the human body, the chemical identity of which is not the subject of patent protection.

**F. Applicants Conceded Magnesium Threonate Was Known - But the Dosage Form Was Novel**

32. In the October 6, 2014 Response in child continuation application (No. 14/132,980) to the '061 Patent, the applicants expressly conceded that "*Sheng Li discloses synthesis of an industrial form of magnesium threonate.*" (**Ex. 3**). The applicants did not argue that Sheng Li's compound was chemically different or that it was not 'magnesium threonate.' Their only distinction was that Sheng Li did not

demonstrate cognitive benefits. This admission is fatal to Plaintiffs' position: it establishes that 'magnesium threonate' has a settled, pre-existing meaning in the art, meaning so well-established that the applicants could not even argue *Sheng Li*'s compound was something other than 'magnesium threonate.'

33. The applicants explained that *Sheng Li*'s product was "unsuitable for oral administration due to benzene residue from the manufacturing process." **Ex. 3**. This is critical: the applicants distinguished *Sheng Li* based on manufacturing impurities, not on the chemical identity of the compound itself. They affirmed that Sheng Li's compound IS 'magnesium threonate,' just unsuitable as delivered.

## IV.    PLAINTIFFS'    CONSTRUCTION    IS    OVERBROAD    AND IMPERMISSIBLE

34. The applicants' statements during prosecution draw a clear and binding line: magnesium threonate is a "compound" with properties not shared by mixtures of magnesium and threonate from separate sources. Having relied on this distinction to secure allowance, Plaintiffs cannot now broaden the term to recapture the very mixtures they disclaimed. This is not an attempt to import limitations, but to enforce the applicants' own definition of their invention.

35. Furthermore, 'plain meaning' is not indefinite meaning. Chemistry has a precise vocabulary. In pharmaceutical chemistry, a 'salt' has a specific chemical definition: an ionic compound. A 'pre-formed salt' has an additional meaning: a salt that has been synthesized or otherwise brought into existence as a discrete entity. A 'mixture' has yet another meaning: two or more substances combined but not chemically bonded. The applicants told the Patent Office that 'magnesium

12
DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

threonate' is NOT a mixture. A POSITA would understand this distinction.

## V. CONCLUSION

36. Defendant's arguments do not ask the Court to resolve issues of invalidity, but rather to determine what the claim term means in light of the intrinsic record. While the specification's discussion of natural formation provides important context, Defendant's construction is grounded in claim scope—not patent eligibility—and is necessary to resolve the parties' dispute regarding what falls within the term. Defendant's construction is consistent with the Joint Claim Construction Statement. The reference to "naturally occurring threonate formed in the human body" does not expand the claim scope to include in vivo formation processes or mixtures of precursors. Rather, it reflects that the claimed compound - magnesium threonate - is a chemically defined ionic salt that may exist in nature. The claim term still refers to the compound itself, as a discrete chemical entity, consistent with the applicants' express distinction between the compound and mixtures during prosecution.

37. The Court should adopt Defendant's proposed construction: "'**A magnesium salt of threonic acid, including L-threonate, as understood by a person of ordinary skill in the art, referring to a pre-formed ionic salt compound, the chemical identity of which may occur naturally in the human body, and excluding mixtures of separate magnesium and threonate sources.**"

Dated: March 23, 2026                    Respectfully submitted,
                                         LEGALFORCE RAPC WORLDWIDE P.C.


                                         /s/_Raj Abhyanker_____
                                         Raj V. Abhyanker
                                         Attorney for Defendant and Counterclaimant:
                                         Mando International, LLC

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this responsive brief contains approximately 3266 words with footnotes, complying with L.R. 11-6.1 and the Patent Standing Order.

Dated: March 23, 2026

LEGALFORCE RAPC

WORLDWIDE P.C.


/s/ _Raj Abhyanker____

Raj V. Abhyanker
Attorney for Defendant

DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 2:25-cv-05871-FLA-MAR