Sang Dang, Esq. (SBN 214558)
 sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
 spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John Cox
(Admitted *Pro Hac Vice)*
 John.Cox@btlaw.com
Lauren U. Baker
(Admitted *Pro Hac Vice*)
 lauren.baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Rd NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile:  404-264-4033

Jeffrey Gavenman
(Admitted *Pro Hac Vice*)
 jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
(Admitted *Pro Hac Vice*)
 jeremy.schulman@hugheshubbard.com
James Schaller
(Admitted *Pro Hac Vice*)
 jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street, N.W., Suite 600
Washington, DC 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and THREOTECH LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>    v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION,<br><br>    Defendant/Counterclaim Plaintiff<br><br>    v.<br><br>AIDP, INC.,<br><br>    Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**PLAINTIFFS' OPPOSITION TO KAPPA'S MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT (ECF 119)** |

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   RELEVANT BACKGROUND FACTS ..................................................... 5

III.  ARGUMENT .............................................................................................. 8

      A.  Legal Standard ................................................................................ 8

      B.  The Court Should Deny the Motions Outright Because Kappa
          Failed to Comply With L.R. 7-3 ................................................... 8

      C.  This Court Has Personal Jurisdiction Over Kappa As To All of
          Plaintiffs' Claims ......................................................................... 10

          1.  Kappa Foreclosed Any Objection To This Court's Personal
              Jurisdiction When It Filed the ND Action ................................ 10

          2.  Kappa Affirmatively Consented to California's Jurisdiction ......... 12

      D.  Plaintiffs Have Standing to Assert the Intellectual Property Rights......... 14

          1.  Patent Rights ....................................................................... 14

          2.  Trademark Claims – ThreoTech Properly Pled Its Trademark
              Rights; Kappa's Extrinsic Evidence is Wholly Irrelevant and
              Does Not Support Kappa's Arguments........................................ 17

      E.  Breach of Contract Claim............................................................ 18

          1.  ThreoTech Plausibly Pleads Its Contract Rights ........................... 18

          2.  Kappa's Assertion that the TMLA is Void Contradicts its
              Own Counterclaims.................................................................. 20

      F.  Plaintiffs Have Stated a Claim for False Advertising .... **Error! Bookmark
          not defined.**

      G.  Kappa's Arguments as to Common Law Unfair Competition and
          UCL Claim (Counts IX-X) Fail ............................................... 22

IV.   CONCLUSION........................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) .............................................................................................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................8

*CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004) ..........13

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) .......................................................................................................22

*Correa v. Ford Motor Co.*, No. 2:23-CV-023 89-AB-PD, 2025 WL 2673627 (C.D. Cal. May 22, 2025) ....................................................................10

*In re Cybernetic Servs., Inc.*, 252 F.3d 1039 (9th Cir. 2001) ................................18

*Fine v. Kansas City Life Ins. Co.*, No. 2:22-CV-02071-SSS-PDx, 2024 WL 356463 (C.D. Cal. Jan. 25, 2024) ..........................................................8, 9

*Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991) ...............................................................................................10, 11

*Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213 (9th Cir. 2008) ........................................................................................................17

*Kirkpatrick v. Hubman*, No. CV 20-10161 FMO (SKx), 2021 WL 5247997, at *3 (C.D. Cal. May 24, 2021) ........................................................18

*Martin v. Tradewinds Beverage Co.*, No. 16-CV9249 PSG (MRW), 2018 WL 6074526 (C.D. Cal. Mar. 13, 2018) .................................................9

*Pilates Techs., LLC v. Guthy-Renker Corp.*, No. 2:10-CV-06401-JHN-PJW, 2011 WL 13134310 (C.D. Cal. Mar. 31, 2011) .................................19

*Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302 (Fed. Cir. 2005) ..........13

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ....................10

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

i

*Swit Elecs. Co. v. Litepanels LLC,* No. C-07-02645 JSW, 2007 WL 9812725 (N.D. Cal. Oct. 9, 2007)........................................................................11

*WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010) .................15, 16

**Statutes and Rules**

California Business & Professions Code § 17200 .......................................................6

Fed.R.Civ.P. 8(a)(2) .................................................................................................8

L.R. 7-3 ...........................................................................................................1, 2, 8, 9

L.R. 7-4 .........................................................................................................................9

Rule 12(b)(6) ...............................................................................................................22

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Neurocentria, Inc. ("Neurocentria") and ThreoTech LLC ("ThreoTech" and, collectively with Neurocentria, "Plaintiffs") respectfully submit this Opposition ("Opposition") to the Motion to Dismiss ThreoTech LLC's First Amended Complaint (ECF 119) ("Motion") and the memorandum in support (ECF 121) ("ThreoTechMemo") filed by defendant Mando International, LLC d/b/a Kappa Nutrition Labs ("Kappa") and in support thereof respectfully state as follows:

### I.      PRELIMINARY STATEMENT

While the Motion presents numerous arguments, not one establishes anything that comes even close to warranting dismissal of Plaintiffs' First Amended Complaint (the "FAC")[1] as to ThreoTech (or as to Neurocentria).[2] However, even before getting to the purported merits of the Motion, the Court should deny both it and the contemporaneously filed NRCTR Motion outright because Kappa failed to meet-and-confer with Plaintiffs within seven days prior to filing the Motions, as required by L.R. 7-3. As seen from the

---

[1] All capitalized terms not otherwise defined herein have the meaning ascribed to them in the FAC.

[2] Kappa filed two separate motions for one operative complaint, forcing Plaintiffs to respond to nearly fifty pages of arguments. This procedural move – which was not disclosed at the untimely meet-and-confer – is yet another example of Kappa manufacturing needless complexity that serves only to complicate Plaintiffs' efforts to litigate this case.  Nevertheless, Plaintiffs will respond to each motion in kind. Plaintiffs hereby explicitly incorporate by reference the arguments they make in their Opposition ("NRCTR Opposition") to Kappa's Motion to Dismiss Neurocentria, Inc.'s First Amended Complaint (ECF 118) ("NRCTR Motion") (collectively with Motion, the "Motions") and the memorandum in support ("NRCTRMemo") (ECF 124-2).

Declaration of Jeffrey Gavenman (the "Gavenman Decl."),[3] all of Kappa's counsel's excuses as to why it did not comply with L.R. 7-3 fail – Kappa appears simply to have forgotten to do so. *See, e.g.* Gavenman Decl., ¶¶ 3-5; 8-11. Kappa's counsel's representation that Kappa "attempted to initiate the meet-and-confer process on March 6, 2026" (ThreoTechMemo at 27; NRCTRMemo at 23) is false. Gavenman Decl., ¶¶ 8-9. Moreover, even if such were true, and a meet-and-confer had taken place on that day, it *still* would not have been timely. Because Kappa failed to comply with L.R. 7-3, this Court should deny the Motions outright.

To the extent this Court rules on purported merits of the Motion – the Motion has none. As a preliminary matter, this Court plainly has personal jurisdiction over Kappa as to both Plaintiffs and all claims, and any arguments to the contrary are baseless and sanctionable. Kappa expressly consented to the jurisdiction of this Court in November 2025, and, any conceivable doubt as to personal jurisdiction in California was wholly eliminated when Kappa itself invoked California forums by initiating litigation in the United States District Court for the Northern District of California (the "ND Action"). Personal jurisdiction is not a tactical switch Kappa may flip at its convenience.

Further, Kappa's centerpiece argument that underpins nearly every other argument in its Motion is based on a fundamental misreading of the FAC. Specifically, Kappa argues that Plaintiffs have not "plausibly established the ownership necessary for standing" as to the patent infringement claims and trademark-based claims (ThreoTechMemo, ¶ 21). Never mind that ownership is not the sole benchmark for standing to assert infringement claims, and that Plaintiffs sufficiently pled they possess the requisite rights for standing (*see infra*); Kappa's point of contention is that there is a

---

[3] The same Gavenman Decl. is being submitted in support of both this Opposition and the NRCTR Opposition, just as Kappa has submitted a single Declaration of Raj Abhyanker (the "Abhyanker Decl.") in support of its Motions.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

2

purported "confusion" as to true ownership rights. *See, e.g.* ThreoTechMemo, ¶ 39. But this "confusion" does not arise from the FAC at all – it is entirely of Kappa's own making.

First, Kappa's patent-standing argument is driven by its decision to treat ordinary, commonplace legal language as if it conclusively established a transfer of intellectual-property ownership. Specifically, when the FAC alleged that "ThreoTech holds by assignment all rights, title, and interest in the below-described patents" (FAC, ¶ 8), Kappa chose to construe that phrase to mean that ThreoTech has **ownership** of the '061 Patent, rather than the far more common contractual and legal-drafting meaning that ThreoTech is a holder of certain rights granted to it by another party. That interpretive choice is the sole source of the supposed "confusion" on which Kappa builds the vast majority of its arguments in the Motion.

Kappa then ties itself in knots trying to square its flawed interpretation of an allegation in the FAC with the consistent record that ThreoTech holds an exclusive license in the '061 Patent. We see Kappa grappling with why two alleged owners would be asserting patent rights (ThreoTechMemo, ¶ 29) and indignantly questioning why ThreoTech alleged in unrelated litigation that it was the exclusive licensee of the '061 Patent. ThreoTechMemo, ¶ 14; *see also id.,* ¶ 17 (remarking that an allegation in an unrelated pleading that "ThreoTech, though its assignor, Magceutics, is the owner by assignment of all rights, title, and interest" is "not the language of outright ownership"). Despite this tortured journey through Kappa's confused thoughts, Kappa ultimately keeps arriving back at the correct conclusion—that "***[t]he record presents a consistent*** and irreconcilable ***picture***. . . Neurocentria owns the '061 Patent; ThreoTech holds, at most, an exclusive license." ThreoTechMemo, ¶ 27 (emphasis added). Plaintiffs agree. The only thing "irreconcilable" here is Kappa's insistence on misreading commonplace legal language as a dispositive admission of patent ownership.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

3

Kappa's trademark-standing arguments also fail. Kappa cannot credibly dispute ThreoTech's enforceable trademark rights, so Kappa instead attempts to manufacture a pleading defect by dragging another party (AIDP, Inc. ("AIDP")) into the case and questioning AIDP's authority as to the trademarks at issue (the "Magtein Marks"). The FAC explicitly alleges that ThreoTech owns the Magtein Marks (FAC, ¶ 20), which is sufficient to establish standing at the pleading stage. Kappa never meaningfully disputes that fact. Instead, Kappa insists that Plaintiffs were required to plead an exhaustive narrative regarding AIDP's historical rights to the Magtein Marks. That demand is baseless. Neither Rule 8, nor *Twombly/Iqbal* and their progeny require a trademark owner to plead the entire chain-of-title as to a trademark's ownership. Furthermore, none of Kappa's arguments that purportedly negate AIDP's ability to license the Magtein Marks hold water. Simply put, Kappa's trademark-standing arguments provide no basis for dismissal.

Kappa's argument as to the breach of contract claim fails for similar reasons – Kappa simply requires Plaintiff to plead far more than is required under Rule 8 and *Twombly/Iqbal*. Here, ThreoTech alleges that it was the assignee of TMLA – nothing more is needed. Notably, however, Kappa's argument in the Motion that the TMLA is a void contract directly contradicts Kappa's demand for the Court to declare that it did not breach the TMLA – a declaratory judgment claim that Kappa has been asserting since November 2025.

Because the vast majority of Kappa's arguments are premised on an alleged standing defect that does not exist, the Motion must be denied. Its independent arguments also fail. First, as to the false advertisement claims (Counts VI-VIII) – Kappa bizarrely addresses allegations Plaintiffs did not make. In addition, Kappa's argument as to the common-law unfair competition and UCL claims (Counts IX–X) also fails

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

4

because Plaintiffs are permitted to assert those claims in addition to the other claims pleaded in the FAC.

In short, all of the arguments in Kappa's Motion fail and this Court should deny the Motion.

## II.    RELEVANT BACKGROUND FACTS

1.    On June 27, 2025, Plaintiffs filed a complaint (the "Complaint") against Kappa. (ECF 1). The Complaint asserted patent infringement claims relating to an ingredient known as Magtein® ("Magtein"), which is comprised of Magnesium L-Threonate.

2.    On August 6, 2025, Kappa filed its Motion to Dismiss the Complaint (the "Kappa MtD"). ECF  20.

3.    In the Kappa MtD, Kappa insisted that the patent claims must be litigated in Texas. ECF 20, p. 1, ¶ 4.  As such, as an alternative to dismissing the claims, Kappa sought to transfer the patent claims to the Northern District of Texas. *Id*., p. 2, ¶ 5.

4.    On October 3, 2025, Plaintiffs filed a motion for leave to file an amended complaint (the "October Motion"). ECF 34.

5.    In the October Motion, Plaintiffs sought leave to amend their complaint to formally add a breach of contract claim against Kappa for Kappa's failure to comply with its contractual obligations under the parties' August 29, 2022 Trademark License Agreement (the "TMLA").

6.    On October 8, 2025, Kappa filed an opposition to the October Motion. ECF 35. This opposition continued to challenge this Court's jurisdiction. ECF 35, ¶ 12.

7.    On November 11, 2025, Plaintiffs filed a notice withdrawing the October Motion (the "Withdrawal Notice"). ECF 53.

8.    In the Withdrawal Notice, Plaintiffs indicated that they planned to seek amendment to assert additional claims to those proposed in their October Motion,

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

5

including for violations of the Lanham Act and additional breaches of contract. ECF 53, ¶ 7. Plaintiffs further stated that, while they disagreed with Kappa's position regarding venue, in order to avoid further motions practice, they were willing to withdraw their patent infringement claims from this case so that those claims could be litigated in Texas (where Kappa had insisted such claims belonged). *Id*.

9. Several hours after Plaintiffs filed the Withdrawal Notice, Kappa withdrew the Kappa MtD and consented to jurisdiction in this case (the "Consent Notice"). ECF 54. In the Consent Notice, Kappa stated that it "now concedes to proceed in the Central District of California in the interest of judicial economy and efficiency. As a small business, Defendant cannot continue to sustain the burdens of fragmented litigation across multiple jurisdictions.[4] By withdrawing its motions and filing its Answer, ***Defendant accepts this District as the forum for resolution of the parties' remaining claims so that the case may move forward on the merits without further delay***." ECF 54, ¶ 9 (emphasis added).

10. Two hours after Kappa filed the Consent Notice, Kappa filed its original counterclaims (the "Original Counterclaims") against Plaintiffs and certain other parties. ECF 55.

11. Kappa's Original Counterclaims were: (1) Declaratory Judgment of Patent Non-Infringement; (2) Declaratory Judgment of No Trademark Infringement ("Trademark Infringement DJ"); (3) Declaratory Judgment of No Breach of Contract ("Contract DJ"); (4) Declaratory Judgment of Patent Invalidity; (5) Inequitable Conduct/Fraud on the USPTO ("USPTO Fraud Claim"); (6) Unfair Competition Under California Business & Professions Code § 17200 ("Kappa UCL Claim"); (7) two

---

[4] Of course the irony of this statement cannot be overstated, given that approximately one month later, Kappa voluntarily fragmented this litigation across multiple jurisdictions by commencing the ND Action.

Lanham Act false advertising claims; and (8) a count for "Abuse of Process/Declaratory Relief for Exceptional Case Fees."

12.     On November 21, 2025, Plaintiffs filed their second Motion for Leave to File First Amended Complaint ("November Motion"). ECF 64. In the November Motion, Plaintiffs sought leave to file the FAC that would add certain claims for Lanham Act false advertising, unfair competition, and breach of contract.

13.     On December 15, 2025, in an act that the Court has already characterized as "improper, harassing, and bad-faith conduct that has caused unnecessary delay and increased the cost of litigation needlessly," Kappa "dismissed certain counterclaims and reasserted them in a separate action brought in another district." ECF 107, p. 3-4. Specifically, Kappa dismissed the Trademark DJ, the Contract DJ, the Kappa UCL Claim, and its Lanham Act claims from this case and asserted those claims in a brand-new complaint ("ND Complaint") to commence the Northern District Action. Gavenman Decl., ¶ 16.

14.     Accordingly, Kappa filed amended counterclaims in this case, asserting only the Declaratory Judgment of Patent Non-Infringement, the Patent Invalidity DJ, and the USPTO Fraud Claim ("Amended Counterclaims"). ECF 70.

15.     On January 23, 2026, per the Court's invitation, Plaintiffs filed their renewed Motion for Leave to File First Amended Complaint ("January Motion"). ECF 94. On February 24, 2026, the Court entered an order granting the January Motion (the "Order") (ECF 107) and permitting Plaintiffs to file the FAC.

16.     Several hours after the Court entered the Order, on February 24, 2026, Kappa dismissed the ND Action. Gavenman Decl., ¶ 17.

17.     On February 26, 2026, Plaintiffs filed the FAC. ECF 110.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

7

18. On March 3, 2026, Kappa filed its Second Amended Counterclaims (the "SACC"). ECF 112. Relevant to this Opposition, Kappa reasserted its Contract DJ in the SACC.

19. On March 13, 2026, Kappa filed its Motions.

### III.  ARGUMENT

#### A.  Legal Standard

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To determine whether Plaintiffs have stated a claim, the Court looks to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under the *Twombly/Iqbal* standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556).

#### B.  The Court Should Deny the Motions Outright Because Kappa Failed to Comply With L.R. 7-3

The Court should deny the Motions outright, before even reaching the merits, because Kappa failed to meet and confer within the appropriate time provided for by the rules and this Court's procedural orders. Specifically, Kappa did not meet and confer with Plaintiffs within the requisite "7 days prior to the filing of the motion." L.R. 7-3. As such, this Court should deny the Motions. *See Fine v. Kansas City Life Ins. Co*., No. 2:22-CV-02071-SSS-PDx, 2024 WL 356463, at *2 (C.D. Cal. Jan. 25, 2024).

Local Rule 7-3 provides, in relevant part, that prior to the filing of any motion, counsel must meet and confer with opposing counsel and such "conference must take

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

8

place in person, by telephone, or via video conference at least 7 days prior to the filing of the motion." L.R. 7-3. Local Rule 7-4, in turn, provides that "[t]he Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8." L.R. 7-4. This policy is similarly reflected in the Civil Standing Order entered by the Court in this case on July 16, 2025 (ECF 16) ("CSO"), which states that "[t]he court may strike or deny a motion if counsel fail to meet and confer [pursuant to L.R. 7-3] in good faith." CSO at 6. In addition, the meet and confer requirement is stated in the scheduling order entered by the Court in this case on September 24, 2025 (ECF 32) at p. 7 (stating that "[t]he parties are required under Local Rule 7-3 to meet and confer to attempt to resolve disputes before filing a motion").

Kappa plainly did not comply with L.R. 7-3. It did not meet and confer with Plaintiffs' counsel until March 9, 2025 – three days before filing the Motions. Kappa's counsel's representation that Kappa "attempted to initiate the meet-and-confer process on March 6, 2026" (ThreoTechMemo at 27; NRCTRMemo at 23) is a lie. Gavenman Decl., ¶¶ 8-9. And, even if counsel had met and conferred on March 6, 2026, such conference would have taken place less than seven days before Kappa filed its Motions. The alleged explanations for non-compliance that are offered in the Abhyanker Decl. – including "previously scheduled international travel" and "substantial time-zone differences" (Abhyanker Decl., ¶ 7)—are *post-hoc* excuses and are flatly contradicted by counsel's extensive communications during this time. Indeed, during the very period when Kappa claims it was unable to meet and confer, Kappa's counsel was actively communicating with Plaintiffs' counsel about this case, including trying to meet and confer about other matters (but notably, not the Motions). Gavenman Decl., ¶¶ 3-5; 8-11.

Kappa's failure to comply with L.R. 7-3 should not be excused and warrants a denial of the Motions. *See* L.R. 7-3; L.R. 7-4; *Fine*, 2024 WL 356463, at *2 (denying a

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

9

motion because it was filed 3 days after the meet and confer); *Martin v. Tradewinds Beverage Co.,* No. 16-CV9249 PSG (MRW), 2018 WL 6074526, at *1-2 (C.D. Cal. Mar. 13, 2018) (same, except the motion was filed 4 days after the meet-and-confer); *Correa v. Ford Motor Co.,* No. 2:23-CV-023 89-AB-PD, 2025 WL 2673627, at *4 (C.D. Cal. May 22, 2025) (denying a motion because of, among other reasons, an untimely meet and confer).

### C. This Court Has Personal Jurisdiction Over Kappa As To All of Plaintiffs' Claims

None of Kappa's arguments regarding personal jurisdiction are persuasive. To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff need only to make a *prima facie* showing that personal jurisdiction is proper. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (internal citations omitted). "In determining whether [Plaintiffs have] met this burden, uncontroverted allegations in [Plaintiffs'] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiffs'] favor." *Id.* Here, there is no question this Court has personal jurisdiction over Kappa as to all of Plaintiffs' claims because Kappa fully submitted to personal jurisdiction in California when it instituted the ND Action. Even putting aside the ND Action, however, Kappa had already consented to personal jurisdiction in this forum as to all of Plaintiffs' claims against it and any claims that arise out of a common nucleus of facts.

### 1. Kappa Foreclosed Any Objection To This Court's Personal Jurisdiction When It Filed the ND Action

As this Court is well-aware, amidst the motion to dismiss briefing on Kappa's Original Counterclaims, Kappa voluntarily dismissed certain of its non-patent counterclaims and instituted the ND Action. By affirmatively filing the ND Action, Kappa purposefully availed itself of California as a forum and thus submitted to this

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

10

Court's jurisdiction. *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22-23 (1st Cir. 1991) (noting that personal jurisdiction "is a personal right" and "may be obviated by consent or otherwise waived," including through "submission implied from conduct" (internal citations omitted)).[5]

*Interpole* is directly on point. There, a defendant in Suit No. 1 challenged jurisdiction of the Court to enter judgment against him, but also instituted Suit No. 2 as a plaintiff in the same judicial district. The Court ruled that by instituting Suit No. 2 as a plaintiff, "we think it is inevitable that [defendant] surrendered any jurisdictional objections to claims that [plaintiff] wished to assert against it in consequence of the same transaction or arising out of the same nucleus of operative facts." *Interpole*, 940 F.2d at 23. Holding otherwise "would produce an unjust asymmetry, allowing a party. . .to enjoy the full benefits of access to a state's courts *qua* plaintiff, while nonetheless retaining immunity from the courts' authority *qua* defendant in respect to claims asserted by the very party it was suing." *Id.*

The same is true here. The claims Kappa asserted in the ND Action (most of which are back in this Court), and Plaintiffs' claims herein, are all premised on the parties' commercial relationship and the marketing and promotion of their respective products. Specifically, Kappa's claims in the ND Action arose from the same contractual relationship at issue in this case, concerned the same alleged intellectual-property disputes, and advanced mirror-image theories of liability. By filing the ND Action and availing itself of the benefits of California courts, Kappa waived any objection to this Court's personal jurisdiction over Plaintiffs' claims that all arise out of the same nucleus of operative facts as Kappa's claims in the ND Action. Kappa cannot have it both ways.

---

[5] *Interpole* has been cited by Courts in Ninth Circuit. *See e.g. Swit Elecs. Co. v. Litepanels LLC,* No. C-07-02645 JSW, 2007 WL 9812725, at *4 (N.D. Cal. Oct. 9, 2007).

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

11

### 2. **Kappa Affirmatively Consented to California's Jurisdiction**

Even if the ND Action did not exist, Kappa already had consented to personal jurisdiction in California as to the claims in this litigation. Specifically, at the outset of this case, when only patent claims were pending against Kappa, Kappa moved to dismiss for lack of jurisdiction, arguing that the patent claims must be tried in Texas. Yet, as soon as Plaintiffs agreed to litigate patent claims in Texas, Kappa abruptly reversed course and filed its Original Counterclaims to prevent its claims from leaving this Court. In the Consent Notice, Kappa specifically stated that it "now concedes to proceed in the Central District of California in the interest of judicial economy and efficiency. … By withdrawing its motions and filing its Answer, Defendant accepts this District as the forum for resolution of the parties' remaining claims so that the case may move forward on the merits without further delay." ECF 54, ¶ 9. That representation in the Consent Notice constituted express consent to personal jurisdiction in California as to "the parties' remaining claims." The "parties' remaining claims" clearly include the patent infringement claims, Plaintiffs' Lanham Act and breach of contract claims alluded to hours earlier in the Withdrawal Notice (ECF 53), and Kappa's Original Counterclaims, which were filed two hours after Kappa filed the Consent Notice.[6]

In yet another counterfactual, sanctionable argument, Kappa then argues that such consent "did not constitute blanket consent to jurisdiction over ThreoTech, a plaintiff who was not a party to that prior proceeding and who filed an entirely new amended complaint." ThreoTechMemo, ¶ 56. Yet, ThreoTech clearly was a party when the Consent Notice was filed (ECF 54), as it has been a party from the outset (*see* ECF 1). To complete the baselessness of its argument, Kappa also claims, in its NRCTRMemo,

---

[6] Given Kappa's explicit consent to jurisdiction, Kappa's argument regarding the proper patent venue (ThreoTechMemo, ¶ 3) is wholly irrelevant.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

12

that such consent does not apply to Neurocentria, because Neurocentria is a "different plaintiff," than the one to whom the consent applied. NRCTRMemo, ¶ 16. Of course, from the onset of this litigation through today, ThreoTech and Neurocentria have been, and still are, the only two plaintiffs in this case.

Even if Kappa's consent was limited to litigating the patent claims in California (rather than the "parties' remaining claims"), once personal jurisdiction exists as to "one claim, consideration of pendent personal jurisdiction is appropriate for the remaining claims." *CE Distribution, LLC v. New Sensor Corp*., 380 F.3d 1107, 1114 (9th Cir. 2004). "When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts." *Action Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1181 (9th Cir. 2004). In determining whether to exercise pendent jurisdiction, courts should consider "judicial economy, convenience and fairness to litigants." *Id.* Here (even if ND Action did not cement personal jurisdiction), it would be wholly appropriate to exercise pendent personal jurisdiction as to all the parties' claims here. Judicial economy, convenience, and fairness to litigants are factors that all weigh in favor of considering pendent jurisdiction – the claims arise out of the same operative facts and involve the same witnesses. Simply put, Kappa's consent to jurisdiction in this Court and the filing of its Original Counterclaims[7] (mirror-images of the claims in the

---

[7] Kappa's cited caselaw, which stands for the proposition that the filing of a counterclaim does not waive a party's objections to personal jurisdiction, is inapposite because Kappa not only affirmatively consented to this Court's jurisdiction by filing the Consent Notice, but also subsequently purposefully availed itself of California as a forum by requesting affirmative relief in the ND Action. *See e.g. Rates Tech. Inc. v. Nortel Networks Corp*., 399 F.3d 1302, 1308 (Fed. Cir. 2005). Indeed, the *Rates* court noted that "the filing of a counter-claim, cross-claim, or third-party demand does not operate as a waiver of an objection to jurisdiction … ***provided that the objection is not otherwise waived in the course of the litigation***." *Id.* (cleaned up and emphasis added).

FAC) demonstrate that Kappa consented to California's jurisdiction over all of Plaintiffs' claims.

### D.    Plaintiffs Have Standing to Assert the Intellectual Property Rights

In the FAC, Plaintiffs have properly alleged that they are the proper parties to enforce the intellectual property rights at issue. At the pleading stage, nothing more is required. Kappa's arguments fail, as they unjustifiably place a significantly higher pleading burden on Plaintiffs than is required.

#### 1.    Patent Rights

##### a.    Plaintiffs Plausibly Allege Relevant Rights

As Kappa plainly acknowledges, "[t]he record [i.e. the FAC and the exhibits thereto] presents a consistent . . .picture. . . Neurocentria owns the '061 Patent; ThreoTech holds, at most, an exclusive license." ThreoTechMemo, ¶ 27. Indeed, the FAC pleads that Neurocentria is the owner of the '061 Patent (FAC, ¶ 13). The FAC further pleads facts about the Master Collaboration Agreement (the "MCA") (ECF 110-4) and its Amendment (the "MCA Amendment") (ECF 110-5) through which ThreoTech obtained an exclusive license in the '061 Patent. FAC, ¶¶ 15-17. The MCA and the MCA Amendment are attached as exhibits to the FAC.

The MCA intended to establish a joint venture – Neuro Supplements, LLC ("SC LLC" in the MCA or "Neuro Supplements" herein) – to commercialize Magnesium L-Threonate as a finished product and ingredient outside China (MCA, Recitals), while providing for an orderly transition of AIDP's pre-existing ingredient business into that joint venture (MCA, § 8.4) as well as an affirmative transfer of ownership of the Magtein Marks to Neuro Supplements (MCA, § 6.3).

For reasons not relevant at this stage of the proceedings, the parties opted to create a different joint venture – ThreoTech – and amended the MCA to have ThreoTech take

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

14

the place of Neuro Supplements. *See* MCA Amendment, Recitals; *see also id.*, ¶ 2 ("ThreoTech shall stand in the place of Neuro Supplements and shall inherit and assume all rights, responsibilities, and obligations applicable to Neuro Supplements as set forth in the terms, limitations, and conditions of the MCA"). Thus, no later than October 24, 2024, ThreoTech was the holder of an "exclusive, non-transferable, sublicensable, royalty-free license under the Licensed IP. . ." MCA Amendment, 5, § 3. "Licensed IP" is defined in the MCA to include "Licensed Patents," which in turn includes the '061 Patent. *See* MCA, §§ 1.15, 1.17 and Exhibit A.

As such, as Plaintiffs alleged in the FAC and Kappa acknowledges in the Motion, Neurocentria owns the '061 Patent, and ThreoTech holds an exclusive license. *See e.g.* ThreoTechMemo, ¶ 27. At no point did Plaintiffs allege that ThreoTech *owned* the '061 Patent – any confusion as to Plaintiffs' respective rights as to the '061 Patent falls squarely on Kappa. *See, e.g.* Opposition at pp. 2-3, *supra*.

### b.    Plaintiffs Have Patent Standing

While Kappa seeks dismissal of the patent counts in their entirety, Kappa's argument regarding ownership offers no support as to why ***Neurocentria's*** claim for patent infringement should be dismissed. Indeed, it appears to concede that Neurocentria has standing to pursue those claims, as the owner of the asserted patent.

Kappa's argument regarding ThreoTech fares no better. Clearly, Kappa is confused as to both the facts and the law. Kappa insists that as an exclusive licensee, ThreoTech cannot sue for infringement, as only intellectual property ***owners*** can sue for infringement. *See, e.g.* ThreoTechMemo, ¶ 31. But this position is wholly unsupported, as ***shown even by the cases Kappa cites*** in its Motion. For example, the seminal case on patent standing cited by Kappa – *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010) specifically found that an exclusive licensee has constitutional standing to sue for patent infringement even if third parties retain limited rights to license the patent.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

15

*WiAV*, 631 F.3d at 1266-67. "If an exclusive licensee has the right to exclude others from practicing a patent, and a party accused of infringement does not possess, and is incapable of obtaining, a license of those rights from any other party, the exclusive licensee's exclusionary right is violated" and it will have standing to sue for infringement. *Id.*[8]

Here, via the MCA Amendment, ThreoTech holds an exclusive license as to the '061 Patent. *See, e.g.,* MCA Amendment, § 3. Kappa is incapable of obtaining such rights from any other party. As such, ThreoTech has standing to sue. To be sure, MCA Section 7.4 titled, "Enforcement of Licensed Patents Within the Field" explicitly allows ThreoTech (now standing in the shoes of Neuro Supplements) to initiate suit for patent infringement. MCA, § 7.4(b).

### c.    There Are No Contradictions in Other Lawsuits; Kappa's Other Arguments Fail

The allegations from the various lawsuits cited by Kappa are irrelevant and do not, in fact, contain any contradictory statements. The "contradictions" claimed by Kappa arise solely from its own erroneous interpretation of those allegations as asserting ThreoTech's affirmative ownership of the '061 Patents, which the Court should reject.

In addition, Kappa's use of the recent passing of ThreoTech's former CEO, Edward Lee, as a pawn in an argument[9] (*see* ThreoTechMemo, ¶ 18) is beyond the pale. Based only on rank speculation, Kappa believes that the entirety of a corporation's knowledge about its intellectual property rights is concentrated in one person. But to

---

[8] Per the *WiAV* decision, there is no requirement that ThreoTech "establish that the license conveys all substantial rights" as Kappa argues (ThreoTechMemo, ¶ 29). The *WiAV* Court specifically distinguished between the owner of the patent, the holder of all substantial rights, and an exclusive licensee. *WiAV*, 631 F.3d at 1264.

[9] This is not the first time since Mr. Lee's death that Kappa has done so. *See, e.g.,* Gavenman Decl., ¶¶ 6, 10.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

16

understand those rights, Kappa need only look to the MCA, the MCA Amendment, the Assignment, and any corporate records Plaintiffs may produce in discovery, which can easily be corroborated by other witnesses. Kappa's suggestion that such facts cannot be established without Mr. Lee is utterly divorced from reality.

## 2. Trademark Claims – ThreoTech Properly Pled Its Trademark Rights; Kappa's Extrinsic Evidence is Wholly Irrelevant and Does Not Support Kappa's Arguments

Kappa's arguments with respect to Plaintiffs' trademark claims also fail. The FAC adequately pleads that ThreoTech is the owner[10] of the Magtein Marks. FAC, ¶ 109. Indeed, Kappa plainly acknowledges the May 29, 2024 trademark assignment through which Neurocentria transferred ownership of the Magtein Marks to ThreoTech ("Assignment"). ThreoTechMemo, ¶ 34. That allegation of ownership is sufficient to establish standing at the pleading stage, and ThreoTech was not required to plead anything further to survive a motion to dismiss. *See, e.g., Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008).

Kappa's arguments regarding AIDP's rights are simply irrelevant. ThreoTech was certainly not required to plead "how AIDP's prior assignment was unwound" (ThreoTechMemo, ¶¶ 22; 49). Moreover, what AIDP may have alleged in unrelated litigation years ago is also irrelevant in light of the intervening and superseding events, including the execution of the MCA, the MCA Amendment and the Assignment.

---

[10] Kappa's reliance on a single use of the word "licensed" in the FAC does not support Kappa's claim that Plaintiffs failed to allege ThreoTech's ownership of the Magtein Marks. *See, e.g.*, FAC, ¶ 122 ("Because of the similarity of the Magbrain Marks to ThreoTech's *licensed* Magtein Marks…"). Read in context, the sentence merely refers to Magtein Marks that ThreoTech has the right to license to third parties – not to any absence of ownership. One out-of-context, isolated reference in a single paragraph cannot manufacture the trademark-ownership pleading defect Kappa invents.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

17

Finally, Kappa's reliance on the USPTO's lack of ownership recordation fares no better. The absence of any recorded ownership transfers prior to the Assignment does not suggest a defect in Plaintiffs' (or AIDP's) rights. As the Ninth Circuit has explained, "only transfers of ownership interests need to be recorded with the [US]PTO." *In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1052 (9th Cir. 2001). The Assignment was the first transfer of ownership of the Magtein Marks and it was thus recorded accordingly. Before the ownership in the Magtein Marks was transferred to ThreoTech, AIDP held an exclusive license in these marks,[11] not ownership rights. Thus, prior to the execution of the Assignment, ***there was nothing to record***. In short, the USPTO record says precisely what it should, and Kappa's argument is meritless.

### E.      Breach of Contract Claim

### 1.      ThreoTech Plausibly Pleads Its Contract Rights

ThreoTech properly pleads assignment of the TMLA (and thus the breach of contract claim). Specifically, the FAC pleads that "[o]n August 29, 2022, Kappa Nutrition executed a Trademark License Agreement ("TMLA")" (FAC, ¶ 1) and that pursuant to the TMLA, Kappa had to "fulfill several obligations, including purchasing the Magtein it would use in the licensed products it sold from AIDP, Inc. – ***which later assigned the rights and obligations under the TMLA to ThreoTech***." FAC, ¶ 3 (emphasis added); *see also* FAC, ¶ 179 ("ThreoTech (through assignment) and Kappa Nutrition entered into the TMLA").[12] At the pleading stage, this is sufficient to establish standing. *Kirkpatrick v. Hubman*, No. CV 20-10161 FMO (SKx), 2021 WL 5247997, at

---

[11] Such exclusive license is alluded to in the MCA. *See, e.g.* MCA, § 2.1(c).

[12] The FAC also pleads the other elements of a breach of contract claim – none of which Kappa challenges. But out of abundance of caution, the FAC pleads that the "TMLA is a valid contract supported by consideration" (FAC, ¶ 180), that Kappa breached the TMLA (FAC, ¶¶ 182-199), and ThreoTech was damaged as a result of such breach (FAC, ¶¶ 199-201).

*3 (C.D. Cal. May 24, 2021) (finding that plaintiff who had been assigned rights under the contracts at issue had adequately pled standing to bring such claim by alleging "his receipt of an assignment of the rights and interests to the contracts. . .which underlie the claim").

Kappa's attempts to impose extra pleading requirements are untethered from Rule 8 and unsupported by any authority. In particular, Kappa insists that Plaintiffs were required – *at the pleading stage* – to plead the historical rights and authority of ThreoTech's predecessor-in-interest, AIDP. But that is not what the law requires. *See, e.g. Pilates Techs., LLC v. Guthy-Renker Corp.*, No. 2:10-CV-06401-JHN-PJW, 2011 WL 13134310, at *3 (C.D. Cal. Mar. 31, 2011) (Court rejecting defendants' argument that detailed allegations of assignment were required, as the complaint alleged the predecessor-in-interest to plaintiff assigned its interest to plaintiff, and stating that "[n]othing more is required at the pleading stage").

Moreover, as addressed above, Kappa's supposed evidence does not even support Kappa's theory that AIDP had no rights to convey in the TMLA. *See* Section III.D.2, above. As alluded to in the MCA, AIDP had an exclusive license in the Magtein Marks (*see e.g.* MCA, § 2.1(c)) and thus could sub-license them to third parties like Kappa. But ThreoTech was not required to plead such granular details. In addition, Kappa's argument that standard contract language in the TMLA that AIDP "owns, or has been given the license to" the marks serves as some sort of admission as to ownership rights (*see* ThreoTechMemo, ¶ 50) is simply absurd.

Finally, Kappa demands that ThreoTech plead specifically that it had the authority to act when it sent certain letters (ThreoTechMemo, ¶ 52). But these letters do not make up the elements of a breach of contract action and thus ThreoTech was not required to plead anything beyond what it pled in the FAC – that ThreoTech was the assignee of a

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

valid contract (TMLA), that Kappa breached the TMLA and as a result of the breach ThreoTech suffered damages. *See, e.g.,* FN 12, *supra*. Nothing more is required.

## 2. Kappa's Assertion that the TMLA is Void Contradicts its Own Counterclaims

In its Motion, Kappa presents an argument that the TMLA was, in fact, void *ab initio* and thus there is nothing to enforce (ThreoTechMemo, ¶¶ 38; 50; 51).

First, Plaintiffs adequately alleged that the TMLA was a valid contract. *See* FAC, ¶180 ("TMLA is a valid contract supported by consideration"). Nothing more is required. Kappa's argument that the TMLA is void relies on facts and theories outside the pleadings and go to the merits,[13] not the adequacy of Plaintiffs' allegations.

In addition, this position directly conflicts with Kappa's repeated assertion of the Contract DJ – first in its Original Counterclaims, then in the ND Action, and most recently in the SACC, which was filed nine days prior to the Motion. For months, Kappa has affirmatively sought a declaration that "it has not breached the [TMLA] and that its post-termination sale of magnesium products under independent branding does not violate any surviving contractual obligation to ThreoTech." ECF 112, p. 48, ¶ 91. This position *necessarily* assumes the existence of a valid, enforceable agreement.

Either the TMLA exists (and Kappa's Contract DJ claim makes sense), or it never did (and Kappa's Contract DJ claim is baseless). Kappa's refusal to choose – while asking the Court to accept whichever version is most convenient in the moment – speaks volumes, and this argument should be rejected.

## F. Plaintiffs Have Stated a Claim for False Advertising

Kappa's arguments as to the false advertising claims in Counts VI-VIII are bizarre because Kappa attacks allegations that do not actually exist. Rather than addressing the

---

[13] For example, Kappa questions AIDP's authority to assign the TMLA in the first instance (ThreoTechMtD, ¶ 55). But this is a merits defense, not a pleading defect.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

20

distinct false advertising theories Plaintiffs plead, Kappa collapses all three claims into a single, monolithic theory of liability – cobbled together by mixing and matching allegations from different counts, stripping them of context, and supplementing them with factual premises of Kappa's own invention. The result is an argument directed not at Counts VI-VIII, but at a mythical false advertising claim Plaintiffs never asserted. By choosing to argue against this imaginary claim, Kappa's arguments necessarily fail.

Counts VI-VII do not allege that Kappa's advertising is false merely because it violates the TMLA, nor do these counts treat the TMLA – or the '061 Patent – as the exclusive benchmark for falsity. Instead, Counts VI-VII allege that no studies exist supporting the claims Kappa makes on its products. *See* FAC, ¶¶ 126-127 (as to the Non-Licensed Product) and FAC, ¶¶ 140-141 (as to the Plant-Based Product). This is a statement of fact, and in no way a "legal conclusion masquerading as a factual allegation" (ThreoTechMemo, ¶ 43). At the motion-to-dismiss stage, it must be accepted as true.

Moreover, Plaintiffs reference their own products in Counts VI-VII solely to provide context for what levels of Magnesium L-Threonate have been clinically proven to be effective, thereby reinforcing the plausibility of the allegations that Kappa's products – using substantially lower amounts – are not proven to confer the benefits Kappa advertises.

As for Count VIII, the falsity is predicated on Kappa representing to consumers that the Licensed Products conferred certain cognitive benefits, even though those products did not contain Magnesium L-Threonate at levels shown to be clinically effective. FAC ¶¶ 153–156. Although Count VIII concerns products sold pursuant to the TMLA, the falsity alleged is not based on the literal text or enforceability of the TMLA itself. Rather, the deception lies in Kappa advertising cognitive benefits while selling products at dosages for which no studies support efficacy.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO THREOTECH LLC

Finally, Plaintiffs do not rely on the '061 Patent as a basis for falsity in any of the false advertising counts. Kappa's effort to reframe the FAC as doing so is a distraction from what is actually alleged. Because Kappa's Motion is premised on a single, fabricated theory of false advertising – rather than the distinct claims Plaintiffs actually plead – it provides no basis for dismissal. Counts VI through VIII are properly pled under the Lanham Act, and Kappa's Motion must be denied.

### G.    <u>Kappa's Arguments as to Common Law Unfair Competition and UCL Claim (Counts IX-X) Fail</u>

Kappa's characterization of the UCL and common law unfair competition claims as "derivative" is not a basis for dismissal. As Kappa itself acknowledges, the UCL, through its "unlawful" prong, is designed to "borrow" from underlying violations. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999). This, of course, means that overlap with other causes of action is inherent in the statute. This is not a pleading defect, and Kappa offers no actual argument or any authority regarding why factual overlap with other claims renders a UCL or unfair competition claim dismissible. Nor does it engage with the statute's independent "unfair" and "fraudulent" prongs, which provide separate bases for liability. Simply put, Kappa has not articulated a valid basis for dismissal under Rule 12(b)(6) and its Motion should be denied.

### IV.    <u>CONCLUSION</u>

For all the foregoing reasons, this Court should deny the Motion.

Dated: March 27, 2026            HUGHES HUBBARD & REED, LLP

By: /s/ Jeffrey Gavenman

Attorneys for Plaintiffs
Neurocentria, Inc. and ThreoTech LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains **6,796** words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order (ECF No. 16).

Dated: March 27, 2026        By:    /s/ Jeffrey Gavenman

Counsel for Plaintiffs
Neurocentria, Inc. and ThreoTech LLC

# CERTIFICATE OF SERVICE

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626.  On March 27, 2026, I served the following document(s):

**PLAINTIFFS' OPPOSITION TO KAPPA'S MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT (ECF 119)**

on the parties stated on attached service list

| | |
|---|---|
| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

☒ **BY COURT'S CM/ECF SYSTEM.**  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.

**BY E-MAIL.**  By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

☐ **(STATE)**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)**  I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 27, 2026, at Costa Mesa, California.

/s/ SALVATORE PICARIELLO
Salvatore Picariello