Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John Cox
(Admitted *Pro Hac Vice)*
  John.Cox@btlaw.com
Lauren U. Baker
(Admitted *Pro Hac Vice*)
  lauren.baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Rd NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile:  404-264-4033

Jeffrey Gavenman
(Admitted *Pro Hac Vice*)
  jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
(Admitted *Pro Hac Vice*)
  jeremy.schulman@hugheshubbard.com
James Schaller
(Admitted *Pro Hac Vice*)
  jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street, N.W., Suite 600
Washington, DC 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and THREOTECH LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>    v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION,<br><br>    Defendant/Counterclaim Plaintiff<br><br>    v.<br><br>AIDP, INC.,<br><br>    Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**PLAINTIFFS' OPPOSITION TO KAPPA'S MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT (ECF 118)** |

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...................................................................... 1

II. RELEVANT BACKGROUND FACTS ......................................................... 3

III. ARGUMENT................................................................................................ 3

    A. Legal Standard................................................................................... 3

    B. The Court Should Deny the Motions Outright because Kappa Failed to Comply with L.R. 7-3 ........................................................................ 4

    C. This Court Has Personal Jurisdiction Over Kappa As To All of Plaintiffs' Claims ............................................................................... 5

        1. Kappa Foreclosed Any Objection To This Court's Personal Jurisdiction When It Filed the ND Action ...................................... 6

        2. Kappa Affirmatively Consented to California's Jurisdiction ........... 7

    D. There is No Question that Plaintiffs Have Standing to Enforce their Rights in the '061 Patent ................................................................... 9

    E. The Asserted Claims Are Patent Eligible................................................ 10

        1. The Asserted Claims Satisfy Step One ...................................... 10

        2. Step Two Further Confirms the Asserted Claims Are Patent Eligible ........................................................................................ 13

        3. The Preemption Doctrine Is Inapplicable to the Asserted Claims ......................................................................................... 14

    F. Plaintiffs Have Alleged Sufficient Facts to Put Kappa on Notice of Its Allegations of Direct and Indirect Infringement of the '061 Patent ......... 15

        1. The FAC Plausibly Alleges Direct Infringement (Count I)............ 15

        2. The FAC Plausibly Alleges Indirect Infringement (Counts II-III)................................................................................................ 17

        3. Kappa Relies on Evidence Outside the Pleading in Moving to Dismiss Counts I-III and Under Section § 101, Converting its Motion to Dismiss into a Premature Summary Judgment Motion ......................................................................................... 19

    G. Kappa's Arguments as to Counts VI-X Fail ........................................... 20

IV. CONCLUSION............................................................................................ 22

---

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. 12 Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018)...................................................................................17

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) ................................................................................................11, 12

*Adv. Steel Recovery, LLC v. X-Body Equip., Inc.*, No. 2:16-cv-00148-KJM-EFB, 2016 WL 4192439 (E.D. Cal. Aug. 9, 2016)............................22, 23

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012)...................................................................................21

*Alice Corp. Party Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ...................... *passim*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................6

*Ass'n for Molec. Path. v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013).......14, 15, 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).................................................6

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323 (Fed. Cir. 2012).................................................................................21

*Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320 (Fed. Cir. 2021) ...................................................................................................20

*BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) ..........21

*Calco v. Ossur Americas, Inc.*, No. SACV 22-01-971-CJC, 2024 WL 694369 (C.D. Cal. Jan. 19, 2024) ...............................................................8

*CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004) ..........11

*CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350 (Fed. Cir. 2019) ...................................................................................................23

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) ...................................................................16

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

i

*CRS, LLC v. BitArts Ltd.*, No. 05-0437L, 2005 WL 8172582 (W.D. Wash. July 25, 2005)............................................................................................22

*Diamond v. Diehr*, 450 U.S. 175 (1981).................................................15

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018)...........19

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) .....................13, 15

*Fine v. Kansas City Life Ins. Co.*, No. 222CV02071SSSPDX, 2024 WL 356463 (C.D. Cal. Jan. 25, 2024) ....................................................6, 8

*Gamevice, Inc. v. Nintendo Co., Ltd.*, No. 18-cv-01942-RS, 2018 WL 5310792 (N.D. Cal. Aug. 6, 2018).......................................................19

*Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991) ..............................................................................9, 10

*Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948 (S.D. Cal. 1996) ............18

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337 (Fed. Cir. 2008)..............................................................................14

*Intrepid Automation, Inc. v. 3D Sys.*, No. 24-cv-2262-AGS-DDL, 2025 WL 1940192 (S.D. Cal. July 15, 2025) ...............................................21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)................................................................................24

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995 (Fed. Cir. 2018) ................................................................................17

*Martin v. Tradewinds Beverage Co.,* No. 16-CV9249 PSG (MRW), 2018 WL 6074526 (C.D. Cal. Mar. 13, 2018).............................................8

*Mayo Collaborative Servs. v. Prometheus Lab'ys Inc.*, 566 U.S. 66 (2012)...........16

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007) ...........................18

*Mentone Sols. LLC v. Digi Int'l Inc.*, No. 2021-1202, 2021 WL 5291802 (Fed. Cir. Nov. 15, 2021)...............................................................16

*Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018) ...........................21

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

ii

*Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338 (Fed. Cir. 2019) ................................................................................13, 14, 17

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042 (Fed. Cir. 2016) ........................................................................................................13

*Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302 (Fed. Cir. 2005) ....11, 12

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) .......................8

*Sanofi v. Watson Labs. Inc.*, 875 F.3d 636 (Fed. Cir. 2017) ...................................21

*In re Seaborg*, 328 F.2d 996 (C.C.P.A. 1964) ........................................................14

*Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018).........................12

*Swit Elecs. Co. v. Litepanels LLC,* No. C 07-02645 JSW, 2007 WL 9812725 (N.D. Cal. Oct. 9, 2007).............................................................9

*XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-CV-03848-RS, 2017 WL 4551519 (N.D. Cal. Oct. 11, 2017)..................................................19

**Statutes and Rules**

35 U.S.C. § 101 .................................................................................... *passim*

35 U.S.C. § 103 .................................................................................15, 16

35 U.S.C. § 271(a) .............................................................................18, 20

35 U.S.C. § 271(b) .....................................................................................21

35 U.S.C. § 271(c) .....................................................................................20

California Business & Professions Code § 17200 ......................................5

Fed.R.Civ.P. 8(a)(2) ...........................................................................2, 6, 18

Fed. R. Civ. P. 12(d) .........................................................................22, 23

L.R. 7-3 ............................................................................................... *passim*

L.R. 7-4 ......................................................................................................7

Rule 56 ....................................................................................................22

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Neurocentria, Inc. ("Neurocentria") and ThreoTech LLC ("ThreoTech" and, collectively with Neurocentria, "Plaintiffs") respectfully submit this Opposition ("Opposition") to the Motion to Dismiss Neurocentria, Inc.'s First Amended Complaint ("Motion") (ECF 118) and the memorandum in support ("NRCTRMemo") (ECF 124-2) filed by defendant Mando International, LLC d/b/a Kappa Nutrition Labs ("Kappa") and in support thereof respectfully state as follows:

## I.    PRELIMINARY STATEMENT

Much like the companion Motion to Dismiss ThreoTech LLC's First Amended Complaint ("ThreoTech Motion") (ECF 119), the Motion fails to identify any legitimate basis for dismissing Plaintiffs' First Amended Complaint (the "FAC")[1] as to Neurocentria (and as to ThreoTech).[2] Even putting aside the merits, the Court should deny both because Kappa failed to meet-and-confer with Plaintiffs within seven days prior to filing the Motions, in violation of L.R. 7-3. As seen from the Declaration of

---

[1] All capitalized terms not otherwise defined herein have the meaning ascribed to them in the FAC.

[2] Kappa filed two separate motions for one operative complaint, forcing Plaintiffs to respond to nearly fifty pages of arguments. This procedural move – which was not disclosed at the untimely meet-and-confer – is yet another example of Kappa manufacturing needless complexity that serves only to complicate Plaintiffs' efforts to litigate this case. Nevertheless, Plaintiffs will respond to each motion in kind. Plaintiffs hereby explicitly incorporate by reference the arguments they make in their Opposition ("ThreoTech Opposition") to the ThreoTech Motion (collectively, with this Motion, the "Motions") and the memorandum in support ("ThreoTechMemo") (ECF 121).

---

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

1

Jeffrey Gavenman ("Gavenman Decl."),[3] all of Kappa's counsel's excuses as to why it did not comply with L.R. 7-3 fail – Kappa appears simply to have forgotten to do so. *See, e.g.* Gavenman Decl., ¶¶ 3-5; 8-11. Kappa's counsel's representation that Kappa "attempted to initiate the meet-and-confer process on March 6, 2026" (ThreoTechMemo at 27; NRCTRMemo at 23) is false. Gavenman Decl., ¶¶ 8-9. Moreover, even if such were true, and a meet-and-confer had taken place on that day, it *still* would not have been timely. Because Kappa failed to comply with L.R. 7-3, this Court should deny the Motions outright.

To the extent this Court rules on the purported merits of the Motion – the Motion has none. As a preliminary matter, this Court plainly has personal jurisdiction over Kappa as to both Plaintiffs and all claims and any arguments to the contrary are baseless and sanctionable. Kappa expressly consented to the jurisdiction of this Court in November 2025, and, any conceivable doubt as to personal jurisdiction in California was wholly eliminated when Kappa itself invoked California forums by initiating litigation in the United States District Court for the Northern District of California (the "ND Action"). Personal jurisdiction is not a tactical switch Kappa may flip at its convenience.

Further, the Motion fails at every turn. First, as more fully set forth in the ThreoTech Opposition, there is no confusion as to the ownership of the '061 Patent. Neurocentria owns the '061 Patent and has standing to enforce its rights.

Next, the FAC pleads patent-eligible claims under § 101 and sufficiently alleges direct and indirect infringement under Rule 8, and Kappa's contrary arguments rest on mischaracterizations of the asserted claims, misapplication of controlling law, and improper reliance on evidence outside the pleadings.

---

[3] The same Gavenman Decl. is being submitted in support of both this Opposition and the NRCTR Opposition, just as Kappa has submitted a single Declaration of Raj Abhyanker (the "Abhyanker Decl.") in support of its Motions.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

Finally, Neurocentria has standing to assert the claims in Counts VI-X. As to these claims, Kappa's motion "strategy" undermines the validity of all the arguments made as to these counts in both Motions. Specifically, Kappa's decision to argue only standing as to Neurocentria in the Motion and not the sufficiency of these claims (as it does in the ThreoTech Motion) creates a fundamental inconsistency – identical claims based on identical facts cannot simultaneously fail to state a claim as to one plaintiff, while apparently stating a claim as to the other (absent, of course, a plaintiff-specific deficiency not present here). Again, this inconsistency further undermines the already non-existent validity of Kappa's arguments.

## II.  RELEVANT BACKGROUND FACTS

Plaintiffs hereby fully incorporate the relevant background facts that are set forth in Section II of the ThreoTech Opposition as if fully set forth herein.

## III.  ARGUMENT

### A.  Legal Standard

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To determine whether Plaintiffs have stated a claim, the Court looks to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under the *Twombly/Iqbal* standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556).

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

3

**B.** **The Court Should Deny the Motions Outright because Kappa Failed to Comply with L.R. 7-3**

The Court should deny the Motions outright, before even reaching the merits, because Kappa failed to meet and confer within the appropriate time provided for by the rules and this Court's procedural orders. Specifically, Kappa did not meet and confer with Plaintiffs within the requisite "7 days prior to the filing of the motion." L.R. 7-3. As such, this Court should deny the Motions. *See Fine v. Kansas City Life Ins. Co.*, No. 2:22-CV-02071-SSS-PDx, 2024 WL 356463, at *2 (C.D. Cal. Jan. 25, 2024).

Local Rule 7-3 provides, in relevant part, that prior to the filing of any motion, counsel must meet and confer with opposing counsel and such "conference must take place in person, by telephone, or via video conference at least 7 days prior to the filing of the motion." L.R. 7-3. Local Rule 7-4, in turn, provides that "[t]he Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8." L.R. 7-4.  This policy is similarly reflected in the Civil Standing Order entered by the Court in this case on July 16, 2025 (ECF 16) ("CSO"), which states that "[t]he court may strike or deny a motion if counsel fail to meet and confer [pursuant to L.R. 7-3] in good faith." CSO at 6. In addition, the meet and confer requirement is stated in the scheduling order entered by the Court in this case on September 24, 2025 (ECF 32) at p. 7 (stating that "[t]he parties are required under Local Rule 7-3 to meet and confer to attempt to resolve disputes before filing a motion").

Kappa plainly did not comply with L.R. 7-3. It did not meet and confer with Plaintiffs' counsel until March 9, 2025 – three days before filing the Motions. Kappa's counsel's representation that Kappa "attempted to initiate the meet-and-confer process on March 6, 2026" (ThreoTechMemo at 27; NRCTRMemo at 23) is a lie. Gavenman Decl., ¶¶ 8-9. And, even if counsel had met and conferred on March 6, 2026, such conference would have taken place less than seven days before Kappa filed its Motions. The alleged explanations for non-compliance that are offered in the Abhyanker Decl. –

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

4

including "previously scheduled international travel" and "substantial time-zone differences" (Abhyanker Decl., ¶ 7)—are *post-hoc* excuses and are flatly contradicted by counsel's extensive communications during this time. Indeed, during the very period when Kappa claims it was unable to meet and confer, Kappa's counsel was actively communicating with Plaintiffs' counsel about this case, including trying to meet and confer about other matters (but notably, not the Motions). *See, e.g.* Gavenman Decl., ¶¶ 3-5; 8-11.

Kappa's failure to comply with L.R. 7-3 should not be excused and warrants a denial of the Motions. *See* L.R. 7-3; L.R. 7-4; *Fine*, 2024 WL 356463, at *2 (denying a motion because it was filed 3 days after the meet and confer); *Martin v. Tradewinds Beverage Co.,* No. 16-CV9249 PSG (MRW), 2018 WL 6074526, at *1-2 (C.D. Cal. Mar. 13, 2018) (same, except the motion was filed 4 days after the meet-and-confer); *Correa v. Ford Motor Co.*, No. 2:23-CV-023 89-AB-PD, 2025 WL 2673627, at *4 (C.D. Cal. May 22, 2025) (denying a motion because of, among other reasons, an untimely meet and confer).

## C.    This Court Has Personal Jurisdiction Over Kappa As To All of Plaintiffs' Claims

None of Kappa's arguments regarding personal jurisdiction are persuasive. To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff need only to make a *prima facie* showing that personal jurisdiction is proper. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (internal citations omitted). "In determining whether [Plaintiffs have] met this burden, uncontroverted allegations in [Plaintiffs'] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiffs'] favor." *Id.* Here, there is no question this Court has personal jurisdiction over Kappa as to all of Plaintiffs' claims because Kappa fully submitted to personal jurisdiction in California when it instituted

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

5

the ND Action. Even putting aside the ND Action, however, Kappa had already consented to personal jurisdiction in this forum as to all of Plaintiffs' claims against it and any claims that arise out of a common nucleus of facts.

### 1. Kappa Foreclosed Any Objection To This Court's Personal Jurisdiction When It Filed the ND Action

As this Court is well-aware, amidst the motion to dismiss briefing on Kappa's Original Counterclaims, Kappa voluntarily dismissed certain of its non-patent counterclaims and instituted the ND Action. By affirmatively filing the ND Action, Kappa purposefully availed itself of California as a forum and thus submitted to this Court's jurisdiction. *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22-23 (1st Cir. 1991) (noting that personal jurisdiction "is a personal right" and "may be obviated by consent or otherwise waived," including through "submission implied from conduct" (internal citations omitted)).[4]

*Interpole* is directly on point. There, a defendant in Suit No. 1 challenged jurisdiction of the Court to enter judgment against him, but also instituted Suit No. 2 as a plaintiff in the same judicial district. The Court ruled that by instituting Suit No. 2 as a plaintiff, "we think it is inevitable that [defendant] surrendered any jurisdictional objections to claims that [plaintiff] wished to assert against it in consequence of the same transaction or arising out of the same nucleus of operative facts." *Interpole*, 940 F.2d at 23. Holding otherwise "would produce an unjust asymmetry, allowing a party. . .to enjoy the full benefits of access to a state's courts *qua* plaintiff, while nonetheless retaining immunity from the courts' authority *qua* defendant in respect to claims asserted by the very party it was suing." *Id.*

---

[4] *Interpole* has been cited by Courts in Ninth Circuit. *See e.g. Swit Elecs. Co. v. Litepanels LLC,* No. C-07-02645 JSW, 2007 WL 9812725, at *4 (N.D. Cal. Oct. 9, 2007).

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

6

The same is true here. The claims Kappa asserted in the ND Action (most of which are back in this Court), and Plaintiffs' claims herein, are all premised on the parties' commercial relationship and the marketing and promotion of their respective products. Specifically, Kappa's claims in the ND Action arose from the same contractual relationship at issue in this case, concerned the same alleged intellectual-property disputes, and advanced mirror-image theories of liability. By filing the ND Action and availing itself of the benefits of California courts, Kappa waived any objection to this Court's personal jurisdiction over Plaintiffs' claims that all arise out of the same nucleus of operative facts as Kappa's claims in the ND Action. Kappa cannot have it both ways.

### 2. Kappa Affirmatively Consented to California's Jurisdiction

Even if the ND Action did not exist, Kappa already had consented to personal jurisdiction in California as to the claims in this litigation. Specifically, at the outset of this case, when only patent claims were pending against Kappa, Kappa moved to dismiss for lack of jurisdiction, arguing that the patent claims must be tried in Texas. Yet, as soon as Plaintiffs agreed to litigate patent claims in Texas, Kappa abruptly reversed course and filed its Original Counterclaims to prevent its claims from leaving this Court. In the Consent Notice, Kappa specifically stated that it "now concedes to proceed in the Central District of California in the interest of judicial economy and efficiency. … By withdrawing its motions and filing its Answer, Defendant accepts this District as the forum for resolution of the parties' remaining claims so that the case may move forward on the merits without further delay." ECF 54, ¶ 9. That representation in the Consent Notice constituted express consent to personal jurisdiction in California as to "the parties' remaining claims." The "parties' remaining claims" clearly include the patent infringement claims, Plaintiffs' Lanham Act and breach of contract claims alluded to

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

7

hours earlier in the Withdrawal Notice (ECF 53), and Kappa's Original Counterclaims, which were filed two hours after Kappa filed the Consent Notice.[5]

In yet another counterfactual, sanctionable argument, Kappa then argues that such consent "did not constitute blanket consent to jurisdiction over ThreoTech, a plaintiff who was not a party to that prior proceeding and who filed an entirely new amended complaint." ThreoTechMemo, ¶ 56. Yet, ThreoTech clearly was a party when the Consent Notice was filed (ECF 54), as it has been a party from the outset (*see* ECF 1). To complete the baselessness of its argument, Kappa also claims, in the NRCTRMemo, that such consent "cannot be bootstrapped into blanket consent to jurisdiction over a different plaintiff (Neurocentria) asserting different claims in a newly filed amended complaint." NRCTRMemo, ¶ 16. Of course, from the onset of this litigation through today, ThreoTech and Neurocentria have been, and still are, the only two plaintiffs in this case.

Even if Kappa's consent was limited to litigating the patent claims in California (rather than the "parties' remaining claims"), once personal jurisdiction exists as to "one claim, consideration of pendent personal jurisdiction is appropriate for the remaining claims." *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1114 (9th Cir. 2004). "When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004). In determining whether to exercise pendent jurisdiction, courts should consider "judicial economy, convenience and fairness to litigants." *Id.* Here (even if ND Action did not cement personal jurisdiction), it would be wholly appropriate to exercise pendent personal jurisdiction as to all the parties' claims here. Judicial economy, convenience, and fairness to litigants are factors that all weigh

---

[5] Given Kappa's explicit consent to jurisdiction, Kappa's argument regarding the proper patent venue (ThreoTechMemo, ¶ 3) is wholly irrelevant.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

8

in favor of considering pendent jurisdiction – the claims arise out of the same operative facts and involve the same witnesses. Simply put, Kappa's consent to jurisdiction in this Court and the filing of its Original Counterclaims[6] (mirror-images of the claims in the FAC) demonstrate that Kappa consented to California's jurisdiction over all of Plaintiffs' claims.

For avoidance of doubt, such pendent jurisdiction applies to Neurocentria as well. The Court in *Action Embroidery*, in adopting the doctrine of pendent jurisdiction, did not limit the doctrine to claims that were brought by the same plaintiffs. Instead, the focus was on whether the claims arise "out of the same nucleus of operative facts, not whether the claims belonged to the same plaintiffs." *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 860 (N.D. Cal. 2018), *reconsidered on other grounds*, 438 F. Supp. 3d 1017 (N.D. Cal. 2020).

Simply put, this Court has personal jurisdiction over Kappa as to all the claims of both Plaintiffs, and Kappa cannot credibly argue otherwise.

### D.    There is No Question that Plaintiffs Have Standing to Enforce their Rights in the '061 Patent

As more fully set forth in the ThreoTech Opposition, there is no confusion as to the ownership of the '061 Patent. The FAC pleads that Neurocentria owns the '061

---

[6] Kappa's cited caselaw, which stands for the proposition that the filing of a counterclaim does not waive a party's objections to personal jurisdiction, is inapposite because Kappa not only affirmatively consented to this Court's jurisdiction by filing the Consent Notice, but also subsequently purposefully availed itself of California as a forum by requesting affirmative relief in the ND Action. *See e.g. Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1308 (Fed. Cir. 2005). Indeed, the *Rates* court noted that "the filing of a counter-claim, cross-claim, or third-party demand does not operate as a waiver of an objection to jurisdiction … ***provided that the objection is not otherwise waived in the course of the litigation***." *Id.* (cleaned up and emphasis added).

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

9

Patent (FAC, ¶ 13) and thus has standing to enforce its rights. Kappa does not seriously challenge such right.

### E.    The Asserted Claims Are Patent Eligible

Kappa's § 101 arguments blatantly misread the Asserted Claims and fundamentally misunderstand the law. Plaintiffs have shown Kappa's characterization of the Asserted Claims is wrong (*see, e.g.*, ECF 116 at 9-14) and cited controlling caselaw confirming the patent eligibility of the Asserted Claims (*see, e.g.*, ECF 103 at 12, *citing, inter alia, Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338 (Fed. Cir. 2019); *see also* ECF 101 at 3 [same]). But Kappa has doubled-down.

### 1.    The Asserted Claims Satisfy Step One

#### a.    Kappa Mischaracterizes the Asserted Claims

The first step in assessing patent eligibility is to determine whether the claims are "directed to" a patent ineligible concept. *See Nat. Alternatives*, 918 F.3d at 1342 (citing *Alice Corp. Party Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014)). This step requires more than merely identifying a patent-ineligible concept that is somehow connected to the claim; it requires that the claim is "directed to" it. *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1047 (Fed. Cir. 2016); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). The '061 Patent is directed to dosage forms, including dietary supplements, comprising magnesium threonate, and methods of administering those dosage forms. Asserted Claim 1 reads:

> A **dosage form formulated for oral administration** to a subject comprising magnesium threonate, wherein the dosage form comprises **at least 10 mg magnesium threonate**, and wherein the dosage form is a solid, semi-solid, semi-liquid, or a gel.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

(ECF 110-2 at 65:27-31 (emphases added).)  The remaining Asserted Claims are directed to the **dosage form** of claim 1 itself (claims 3-7, 13, 19) or **methods of providing magnesium supplementation** comprising orally administering the **dosage form** of claim 1 (claims 14, 17-18). (*See id.* at 65:34-66:37.)

The '061 Patent, and the Asserted Claims in particular, are not directed to a natural substance or merely providing some undefined natural amount of magnesium threonate or amounts (natural or otherwise) of magnesium or threonate (threonic acid) but instead recite a "dosage form", "formulated for oral administration", and "at least 10 mg magnesium threonate" (*see id.*; all claims); "capsule" (claim 13); and "dietary supplement" (claim 19). Thus, the inquiry should end there. *See Nat. Alternatives*, 918 F.3d at 1342 (citing *Alice*, 573 U.S. at 217). But further analysis shows the complete futility of Kappa's position and confirms the patent eligibility of the Asserted Claims.

b.      Dosage Forms of Magnesium Threonate Are Patent Eligible

Determinatively, any theory – or mere attorney argument[7] - that magnesium threonate **could** form because both magnesium and threonic acid may be present in the body is **irrelevant** to whether the claims are invalid under 35 U.S.C. § 101. *See In re Seaborg*, 328 F.2d 996, 999 (C.C.P.A. 1964) (holding that undetectable amounts of a compound in the prior art do not anticipate claims to that compound). And even if magnesium threonate did occur in the body, "the fact that the active ingredient in [a]

---

[7] Kappa's citation to inventor testimony that allegedly "confirmed the central point under oath" (NRCTRMemo, ¶ 27) is of no moment. *See* § III.F.3, *infra*. First, inventor testimony related to patent claims is limited and cannot "confirm[] the central point" (*id.*, ¶ 27) of a § 101 challenge. *See, e.g., Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346-47 (Fed. Cir. 2008). Second, stating that "we did not invent the molecule" does not render patent ineligible claims directed to (i) the molecule, (ii) dosage forms comprising the molecule, or (iii) methods of administering such dosage forms.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

11

supplement is a molecule that occurs in nature and is consumed as part of the human diet [] does not alter [the] analysis" under step one. *Nat. Alternatives*, 918 F.3d at 1346 (holding patent eligible claims directed to dietary supplement dosage forms comprising naturally-occurring ingredients); *see also Ass'n for Molec. Path. v. Myriad Genetics, Inc.*, 569 U.S. 576, 590, 596 (2013) (holding method claims and applications using natural materials patent eligible).

While magnesium and threonic acid are both present in the human body, the endogenous concentration of each is so low that the chemical reaction required to form magnesium threonate does not occur spontaneously in human physiology. *See* ECF 103 at 13-14. In fact, magnesium threonate has never been detected as a substance in the body either under normal conditions or after supplementation of magnesium and threonate (or threonic acid). Kappa has not – and cannot – offer evidence to the contrary.

c.     Kappa Fails to Understand and Apply Applicable Law

Kappa's tortured application of § 101 is pervasive. *See, e.g.*, NRCTRMemo, ¶¶ 31-35. First, Kappa fails to follow the *Alice*/*Mayo* framework by isolating claim limitations. *See Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981) ("It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis."); *see also Alice*, 573 U.S. at 216-18 (cautioning that every substance will always be governed by scientific and physical laws, which are characteristics that should not categorically cause claims to be ineligible). In doing so, Kappa invites the Court to conduct a premature obviousness analysis under 35 U.S.C. § 103 (of individual claim limitations) instead of analyzing the claims as a whole under § 101. *See Enfish*, 822 F.3d at 1337 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."). Second, Kappa cherry-picks language from Supreme Court precedent and either misapplies that precedent or fails to apply it to the

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

12

Asserted Claims at all.[8]  Allowing the § 101 analysis to follow Kappa's truncated evaluation welcomes an improper finding of patent eligibility based on an abbreviated § 103 analysis that is devoid of the necessary evidentiary record.

Even Kappa's recasting of "the relevant question [u]nder *Myriad*" – according to Kappa, whether the claimed form imparts "markedly different characteristics" – confirms the Asserted Claims' patent eligibility: if magnesium threonate could be sourced *in vivo* (it cannot), including it in the claimed dosage form would render it markedly different from "the compound's natural state" (there is none). Simply put, "[t]he ionic chemistry of magnesium threonate in a capsule is [**not**] identical to what [**could theoretically**] form[] in vivo" (NRCTRMemo, ¶ 32 (emphasized text added)).

### 2. Step Two Further Confirms the Asserted Claims Are Patent Eligible

Because the Asserted Claims are not directed to patent ineligible subject matter under *Alice* step one, the Court "need not proceed to the second step of *Alice*." *Mentone Sols. LLC v. Digi Int'l Inc.*, No. 2021-1202, 2021 WL 5291802, at *6 (Fed. Cir. Nov. 15, 2021). Even assuming, *arguendo*, the Court reaches *Alice* step two, Kappa's motion still must be denied.

The second step under *Alice/Mayo* requires examining "the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (quoting

---

[8] For example, Kappa cites *Myriad* for the proposition that "a naturally occurring DNA segment is a product of nature and not patent eligible merely because it has been isolated." ECF 124-2 ¶ 28. The invalidated claims in *Myriad* were directed solely to isolated genes (i.e., naturally occurring material), not any dosage form or even a use of the isolated genes. Indeed, the Court noted that "[w]e **merely hold** that genes and the information they encode are not patent eligible under §101 **simply because** they have been isolated from the surrounding genetic material." *Id.* (emphases added). These fact-specific pronouncements are not relevant here. *Funk Bros.*, also cited by Kappa, issued before § 101 was enacted and relates to obviousness, not patent eligibility.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

*Mayo Collaborative Servs. v. Prometheus Lab'ys Inc.*, 566 U.S. 66, 72, 79-80 (2012)). This step is satisfied when the claim limitations "involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (citations omitted). Whether the claim limitations are well-understood, routine, and conventional is a question of fact, which should generally not be resolved at the motion to dismiss stage. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). But the facts also require denial here. Specifically, despite Kappa's conclusory arguments (NRCTRMemo, ¶¶ 31-38) and citations to inapposite cases, placing a substance – naturally occurring or synthetic – into a dosage form (e.g., a dietary supplement), is not a conventional activity. *See Nat. Alternatives*, 918 F.3d at 1349-50.

Kappa's motion is riddled with attorney argument that mischaracterizes the Asserted Claims and either misapplies or entirely ignores controlling law. The Asserted Claims satisfy 35 U.S.C. § 101 and Kappa's motion should be denied.

### 3. The Preemption Doctrine Is Inapplicable to the Asserted Claims

Kappa somehow argues that the Asserted Claims are not patent eligible because "virtually any magnesium supplement containing even trace amounts of magnesium combined with a threonate-forming agent would infringe a patent on a naturally occurring compound." NRCTRMemo, ¶ 35 (citing *Alice*, 573 U.S. at 216). Even if that is the preemption standard (it is not[9]), another (more) plausible reading of Claim 1 shows that pre-emption is not a concern here. *See M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) ("In the procedural posture of a motion to

[9] Preemption renders claims to fundamental scientific or technological concepts (e.g., natural phenomena), which would block all practical uses of that concept, patent ineligible. *See Alice*, 573 U.S. at 216. The Asserted Claims do not concern fundamental scientific or technological concepts but tangible dosage forms and uses thereof.

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts … in the plaintiff's favor.").

### F.  Plaintiffs Have Alleged Sufficient Facts to Put Kappa on Notice of Its Allegations of Direct and Indirect Infringement of the '061 Patent

As a threshold matter, claims for patent infringement are subject to the liberal pleading standard of Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Indeed, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend" – nothing more. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). Because Plaintiffs' allegations more than clear this low threshold, Kappa's motion to dismiss Counts I-III is easily denied. *See, e.g.*, *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 952 (S.D. Cal. 1996) ("The Rules do not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial, but only a statement sufficient to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (citation omitted)).

### 1.  The FAC Plausibly Alleges Direct Infringement (Count I)

Here, the FAC plausibly alleges each element of a claim for direct infringement under 35 U.S.C. § 271(a). The '061 Patent involves relatively simple technology (i.e., an oral dose of magnesium threonate and its use). The FAC identifies the accused products by name (Kappa's Magnesium L-Threonate 3 in 1 Advanced Complex product and its Magnesium L-Threonate Plant-Based product, together the "Infringing Products"), attaches photos of the Infringing Products, and recites statements from Kappa's website and Amazon listings describing the Infringing Products and their use. *See, e.g.*, FAC ¶¶ 75, 44-61. The FAC further alleges that Kappa has directly infringed

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

one or more claims of the '061 Patent by importing, manufacturing, offering to sell, and/or selling the Infringing Products. *Id.*, ¶ 75.

These factual allegations are more than sufficient to put Kappa on notice of Plaintiffs' claims. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding that the plaintiff's allegations were sufficient to put the defendant on "fair notice of infringement" where the complaint "specifically identified the three accused products . . . and alleged that the accused products meet 'each and every element of at least one claim'"); *Gamevice, Inc. v. Nintendo Co., Ltd.*, No. 18-cv-01942-RS, 2018 WL 5310792, at *3-4 (N.D. Cal. Aug. 6, 2018) (finding defendant stated a claim for direct infringement where the counterclaim "sufficiently describes the asserted patents, the accused product, and includes pictures … showing how the accessories practice the exemplary patent claims").

Tellingly, Kappa does not challenge the merits of these allegations. Instead, Kappa merely argues that Plaintiffs' "entire [direct] infringement allegation is a single Amazon marketing statement asserting that both products use the 'same trusted formula.'" NRCTRMemo, ¶¶ 40-41. But this ignores paragraphs 71-73 of the FAC, which compare the composition of the Infringing Products to the dosage form recited in Claim 1. It further ignores paragraphs 44-61, which recite statements taken from Kappa's website touting the dosage and uses of the Infringing Products. In no way are Plaintiffs' allegations limited to its statement that both products use the "same trusted formula."

Kappa's argument that "[a]n advertising slogan, without composition testing or technical analysis, does not plausibly establish that the Plant-Based Product satisfies every limitation of Claim 1" also misses the mark. *Id.*, ¶ 40. To the extent Kappa suggests that a patent owner must perform a "technical analysis" on every accused product to state a claim for direct infringement, it provides no legal support for that proposition, nor can it. *See XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-CV-03848-RS, 2017 WL 4551519, at *5 (N.D. Cal. Oct. 11, 2017) (noting that "a formal charting of patent claim

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

elements against each accused product is not always necessary"). Kappa is also wrong on the facts – the FAC *does* cite laboratory testing performed on at least the Non-Licensed Products to support Plaintiffs' allegations. *See* FAC, ¶ 71 (citing Exhibit K).[10]

### 2. The FAC Plausibly Alleges Indirect Infringement (Counts II-III)

#### a. Contributory Infringement (Count II)[11]

Plaintiffs' contributory infringement claim likewise meets the liberal pleading standards. The FAC alleges that Kappa knew or should have known of the '061 Patent (FAC ¶ 76), and knew or should have known that its importation, manufacturing, offering to sell, and sale of the Infringing Products infringes the '061 Patent (*id.*, ¶¶ 45, 87-91). Plaintiffs allege that the Infringing Products comprise components that "are not staple articles or commodities of commerce suitable for substantial noninfringing uses," are "specifically made or adapted to be sold as part of and/or with the Infringing Products," and "constitute a material part of the invention claimed in the '061 Patent." *Id.* ¶ 86. Plaintiffs further allege the requisite act of direct infringement. *Id.* ¶¶ 87-88.

The only argument Kappa advances in opposition is that "Kappa sells finished dietary supplement capsules, not components," and that its "products are sold for general magnesium supplementation … all of which are substantial noninfringing uses."

---

[10] Kappa's claim that the FAC fails to plead a "coherent theory of liability" because of a single typo in the header of Count I (referencing § 271(c) instead of 271(a)) is farcical. NRCTRMemo, ¶ 42. The body of Count I clearly states that Kappa "directly infringe[s] . . . under 35 U.S.C. § 271(a)," and the title of Count I is "Direct Infringement." FAC, ¶ 75.

[11] Contributory infringement under 35 U.S.C. § 271(c) requires proof of underlying direct infringement, as well as proof that (1) defendant had "knowledge of the patent in suit," (2) defendant had "knowledge of patent infringement," and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial noninfringing use. *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021).

---

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

NRCTRMemo, ¶ 43. Kappa ignores, however, that the Court must **presume** Plaintiffs' allegations are true at the pleading stage. To the extent Kappa disputes the **substance** of Plaintiffs' allegations, "this is a factual inquiry not suitable for resolution on a motion to dismiss." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018); *see also Intrepid Automation, Inc. v. 3D Sys.*, No. 24-cv-2262-AGS-DDL, 2025 WL 1940192, at *4 (S.D. Cal. July 15, 2025) (noting that there is a "good reason to allow a general allegation" regarding the non-staple nature of the accused products, which is that "a contrary position would essentially require plaintiffs to prove a negative without the benefit of discovery," which would be "an onerous requirement").

### b.    Induced Infringement (Count III)[12]

Plaintiffs have plausibly alleged induced infringement. Specifically, the FAC alleges that Kappa knew or should have known of the '061 Patent (FAC, ¶ 76) and that Kappa knew or should have known that its importation, manufacturing, offering to sell, and sale of the Infringing Products infringes the '061 Patent (*id.*, ¶ 100). The FAC alleges that Kappa specifically intends its customers to consume the Infringing Products in a way that infringes the '061 Patent. *Id.* ¶¶ 98, 102. The FAC further alleges an act of direct infringement by Kappa's customers. *See id.* ¶¶ 99, 102.

Kappa is flat wrong that the "FAC does not allege that Kappa performs the claimed method steps or exercises direction or control over consumers sufficient to attribute their conduct to Kappa" (NRCTRMemo, ¶ 45) nor does Kappa identify any

---

[12] Induced infringement under 35 U.S.C. § 271(b) requires proof of underlying direct infringement, as well as proof that (1) "defendant knew of the patent," (2) defendant knew or should have known that "the induced acts constitute patent infringement," and (3) defendant "possessed specific intent to encourage another's infringement." *Sanofi v. Watson Labs. Inc.*, 875 F.3d 636, 643-44 (Fed. Cir. 2017).

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

18

legal support imposing such a requirement at the pleading stage.[13] *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (noting that a plaintiff need not "prove its case at the pleading stage"). Plaintiffs' allegation that Kappa "aid[s], abet[s], direct[s], encourage[s], or otherwise induce[s] its customers' direct infringement of the 061 Patent" (FAC, ¶ 102), and identification of specific statements from Kappa's website instructing customers to consume the Infringing Products (*see, e.g.*, *id.*, ¶¶ 48-61) is more than sufficient at the pleading stage. *See, e.g.*, *CRS, LLC v. Bitarts Ltd.*, No. 05-0437L, 2005 WL 8172582, at *5 (W.D. Wash. July 25, 2005) (denying motion to dismiss induced infringement claim where the plaintiff alleged that all of the defendant's licensees and end users were direct infringers and that defendant induced others to infringe the asserted patents "via distribution and sales to resellers and end users of the accused products").

### 3. Kappa Relies on Evidence Outside the Pleading in Moving to Dismiss Counts I-III and Under Section § 101, Converting its Motion to Dismiss into a Premature Summary Judgment Motion

Kappa's motion is replete with references to materials outside the pleadings, including but not limited to, deposition testimony from one of the named inventors of the '061 Patent (NRCTRMemo, ¶¶ 10, 27); statements made during prosecution of the '061 Patent (*id.* at 17, ¶ 33); prior art cited during prosecution of the '061 Patent (*id.*, ¶ 34); and a pending reexamination of the '061 Patent (*id.*, ¶ 39).[14] Because Kappa relies

---

[13] Kappa cites *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007), but that case was expressly overruled in *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012).

[14] Kappa offers no cogent explanation for why a pending USPTO reexamination would justify dismissal of Plaintiffs' infringement claims, as courts have long held that reexamination does not bar enforcement. *See, e.g.*, *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988).

---

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

on evidence beyond the pleadings, its motion is converted to one for summary judgment under Rule 56. *See Adv. Steel Recovery, LLC v. X-Body Equip., Inc.*, No. 2:16-cv-00148-KJM-EFB, 2016 WL 4192439, at *3 (E.D. Cal. Aug. 9, 2016) (noting that if a court considers matters outside the pleadings, "the motion must be converted to one for summary judgment"); *see also* Fed. R. Civ. P. 12(d).

None of these materials are necessary to determine whether Plaintiffs have plausibly alleged claims for patent infringement (they have). To the extent these documents are relevant at all (Plaintiffs disagree), they go only to the **merits** of Kappa's non-infringement and/or invalidity arguments, which are "***factual issue[s] that cannot be resolved at the motion to dismiss stage***." *Adv. Steel Recovery*, 2016 WL 4192439, at *2 (emphasis added); *see also CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1360 (Fed. Cir. 2019) (finding that district court erred in converting motion to dismiss into summary judgment motion because "whether the Hrabel article actually disclosed those alleged novel trade secrets was a reasonably (indeed, hotly) disputed factual issue . . . and one that should not have been resolved adversely to Plaintiffs on a motion to dismiss"). This is especially the case considering Kappa cites the materials to draw inferences adverse to Plaintiffs, when all reasonable inferences should be drawn in **Plaintiffs'** favor at this stage. *See CODA Dev.*, 916 F.3d at 1360 n.7. The Court should therefore decline to consider these materials in ruling on Kappa's motion.[15]

### G.    <u>Kappa's Arguments as to Counts VI-X Fail</u>

Before addressing Kappa's argument that Neurocentria lacks standing to assert Counts VI–X, Plaintiffs must address a threshold inconsistency created by Kappa's decision to file two separate Motions attacking the singular FAC. As to ThreoTech, Kappa purports to test the sufficiency of Counts VI–X – however misguided that effort

---

[15] To the extent the Court is inclined to consider Kappa's cited materials, Plaintiffs request that they be given a reasonable opportunity to respond. *See* Fed. R. Civ. P. 12(d).

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

may be. As to Neurocentria, however, Kappa does not challenge the sufficiency of those same counts at all. Instead, it seeks dismissal solely on standing grounds. That framing *necessarily* assumes that if Neurocentria has standing (which it does), the FAC adequately states claims as to Neurocentria on the very same factual allegations. Kappa cannot coherently maintain that identical counts, based on identical facts, simultaneously fail to state a claim as to one plaintiff while stating a claim as to the other, absent a plaintiff-specific deficiency that Kappa never identifies. That internal tension further confirms the fallaciousness of Kappa's arguments, over and above the substantive failures identified in this Opposition and the ThreoTech Opposition.

As to the merits, Neurocentria has standing to assert the Lanham Act claims and unfair competition claims. Kappa's arguments are premised upon an incorrect understanding of the law. While Kappa appears to correctly summarize the two prongs of the *Lexmark* standing test, Kappa incorrectly – and without any support – asserts that the zone-of-interests requirement requires actual commercial competition. *See, e.g.,* NRCTRMemo, ¶ 47. But *Lexmark* explicitly rejected such a test. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014) (Court explicitly stating that it is declining to adopt any of the tests proposed by the parties and the *amici*, including the "categorical test permitting only direct competitors to sue for false advertising"). The correct requirement is that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.*, 572 U.S. at 132-133. Here, Plaintiffs did so allege such injury. *See* FAC, ¶ 137 (Alleging that Kappa's false advertising "has eroded ThreoTech's and Neurocentria's goodwill and diverted sales from ThreoTech to Kappa Nutrition").

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

21

## IV.   CONCLUSION

For all the foregoing reasons, this Court should deny the Motion.

Dated: March 27, 2026                    HUGHES HUBBARD & REED, LLP

By: /s/ Jeffrey Gavenman
Attorneys for Plaintiffs
Neurocentria, Inc. and ThreoTech LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains **6,783** words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order (ECF No. 16).

Dated: March 27, 2026          By:    /s/ Jeffrey Gavenman
Counsel for Plaintiffs
Neurocentria, Inc. and ThreoTech LLC

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.

22

## CERTIFICATE OF SERVICE

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626.  On March 27, 2026, I served the following document(s):

**PLAINTIFFS' OPPOSITION TO KAPPA'S MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT (ECF 118)**

on the parties stated on attached service list

| | |
|---|---|
| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

☒ **BY COURT'S CM/ECF SYSTEM.**  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.

☐ **BY E-MAIL.**  By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 27, 2026, at Costa Mesa, California.

/s/ SALVATORE PICARIELLO
Salvatore Picariello

---

PLAINTIFFS' OPP. TO KAPPA'S MTD FAC AS TO NEUROCENTRIA, INC.