Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:        (650) 965-8731
Facsimile:        (650) 989-2131


Attorney for Defendant,
Mando International, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

NEUROCENTRIA, INC., a
California corporation, and
THREOTECH LLC, a Nevada
limited liability company,

        Plaintiffs,

        v.

MANDO INTERNATIONAL, LLC
d/b/a KAPPA NUTRITION LABS,
a Texas limited liability company

        Defendant.

Case No. 2:25-cv-05871-FLA-MAR

**DEFENDANT MANDO
INTERNATIONAL, LLC'S
REPLY IN SUPPORT OF
RESPONSE TO ORDER TO
SHOW CAUSE**

Hearing**:**        April 17, 2026

Time:        1:30 p.m.

Courtroom:  6B, 6th Floor


Hon. Fernando L. Aenlle-Rocha

DEFENDANT'S REPLY IN SUPPORT OF RESPONSE TO ORDER TO SHOW CAUSE
Case No. 2:25-cv-05871-FLA-JPR

# TABLE OF CONTENTS

**I. INTRODUCTION** **1**

**II. ARGUMENT** **2**

A. The Core Opposition Raised Legitimate Arguments; the Errors Were Confined to a Secondary Section **2**

B. The Inconsistency in Section F Arose from the Brief's Extensive Discussion of These Entities Across Multiple Contexts **4**

**III. The Multi-Forum Strategy Plaintiffs Seek to Sanction Was First Proposed by Plaintiffs' Own Lead Counsel in a Sworn Declaration to This Court** **6**

**IV. Any Fee Award Must Be Limited to Fees Caused by the Specific Errors, Not the Entire Cost of the Amendment Dispute** **9**

A. Defendant believed Plaintiffs Missed Deadline to Amend as of Right **10**

B. Fees from the Northern District Action Are Not Recoverable **10**

C.  But-For Causation Limits Recovery to Incremental Costs **10**

D. The Withdrawn Motions Reflect Ordinary Litigation, Not a Pattern of Harassment **12**

**V. The Applicable Legal Standards Are Not Met** **14**

**VI. Mando Has Taken Prompt Corrective Action** **15**

**VII. Plaintiffs' Response Improperly Expands the Scope of the OSC** **16**

**VIII. CONCLUSION** **17**

## TABLE OF AUTHORITIES

**Cases**

*Cassel v. Superior Court*
 51 Cal. 4th 113 (2011) ...................................................................................... 20

*Chambers v. NASCO, Inc.*
 501 U.S. 32 (1991) ........................................................................................ 13

*Cooter & Gell v. Hartmarx Corp.*
 496 U.S. 384 (1990) ....................................................................................... 17

*Fink v. Gomez*
 239 F.3d 989 (9th Cir. 2001) ............................................................................ 18

*Foman v. Davis*
 371 U.S. 178 (1962) ...................................................................................... 6, 18

*Goodyear Tire & Rubber Co. v. Haeger*
 581 U.S. 101 (2017) ........................................................................................14

*Milhouse v. Travelers Commercial Insurance Co.*
 982 F. Supp. 2d 1088 (C.D. Cal. 2013) ............................................................. 20

*Operating Engineers Pension Trust v. A-C Co.*
 859 F.2d 1336 (9th Cir. 1988) .......................................................................... 6

*Semtek International Inc. v. Lockheed Martin Corp.*
 531 U.S. 497 (2001) ....................................................................................... 12

*Townsend v. Holman Consulting Corp.*
 929 F.2d 1358 (9th Cir. 1990) .......................................................................... 17

## **RULES**

L.R. 11-6.1                                                                                              19
Patent Standing Order                                                                                   19

## I. INTRODUCTION

1.  Defendant Mando International, LLC ("Mando") respectfully submits this Reply in support of its Response to the Court's February 24, 2026 Order to Show Cause ("OSC"). Mando takes this Court's concerns seriously, has taken corrective action, and submits this Reply with candor.

2.  Mando does not minimize the errors in its opposition to Plaintiffs' Renewed Motion for Leave to File First Amended Complaint (Dkt. 99). Section F of that brief, an aside to the core opposition--contained arguments about AIDP, Inc. and Magceutics, Inc. that were inconsistent with correct factual statements made three separate times in earlier sections of the same filing. The anti-SLAPP standing reservation in that section was also incorrect. Those errors were not a deliberate attempt to mislead: the same brief repeatedly and accurately stated that Plaintiffs' proposed FAC did not add AIDP or Magceutics, and Section F conflicted with those statements on its face. Counsel regrets the error and has implemented verification procedures to prevent recurrence.

3.  But Plaintiffs' Response (Dkt. 139) tells only half the story. Plaintiffs devote substantial briefing to characterizing Mando's filing of a separate action in the Northern District as sanctionable "forum-splitting." What Plaintiffs omit is that their own lead counsel, in a sworn declaration filed with this Court on November 21, 2025, a full month before Mando filed the Northern District action - described Plaintiffs' plan as "withdrawing patent infringement claims without prejudice so they could be re-filed in Texas." (Dkt. 64-21, Gavenman Decl. ⁋ 9.) That proposal dismissing certain claims here and refiling them in a different district is the same structural approach the Court's OSC identifies as Mando's first category of

1

potentially sanctionable conduct. If separating claims across districts is sanctionable bad faith, Plaintiffs conceived of it before Mando executed it.

4. Responsibility for a drafting error is not the same as liability for sanctions, and the scope of any sanction must be proportionate to the actual harm caused. Five points frame Mando's reply. First, Plaintiffs themselves proposed the same multi-forum litigation strategy they now seek sanctions for. Second, the errors occurred in a secondary section of an opposition that otherwise raised legitimate Rule 15 arguments that any party had the right to make. Third, Plaintiffs were not entitled to amend as of right; they missed their Rule 15(a)(1) deadline, so the fees they incurred seeking leave to amend were caused by their own procedural default, not by anything in Mando's opposition. Fourth, the Supreme Court requires but-for causation for fee awards, meaning only the incremental cost of addressing the specific erroneous arguments is recoverable. Fifth, no anti-SLAPP motion was ever filed; the standing statement was a conditional reservation that never materialized, required no adjudication, and consumed no judicial resources.

## II. ARGUMENT

### A. The Core Opposition Raised Legitimate Arguments; the Errors Were Confined to a Secondary Section

5. Before addressing the specific errors, it is important to distinguish them from the opposition as a whole. Mando's opposition to the Renewed Motion for Leave (Dkt. 99) spanned multiple sections. Sections A through E raised substantive Rule 15 arguments: that amendment would be futile because the same claims were pending in the Northern District; that Plaintiffs delayed six months

before seeking to add non-patent claims to a patent case; that Plaintiffs' procedural history, including TTAB filings three days before the original complaint, reflected strategic forum choices; that amendment would prejudice Mando through parallel litigation; and that the Court should await the Northern District's ruling on the pending motion to dismiss before permitting amendment.

6. Each of those arguments is a recognized basis for opposing a discretionary motion for leave to amend. "Leave to amend pleadings under Federal Civil Procedure Rule 15(a) should be freely given in the absence of any apparent or declared reason, such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or the futility of the amendment." See *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court ultimately disagreed with those arguments and granted Plaintiffs' motion. But a losing argument is not a frivolous one. See *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) ("The simple fact that an attorney's legal theory failed to persuade the district court "does not demonstrate that [counsel] lacked the requisite good faith in attempting to advance the law."). The entirety of the briefing on Sections A through E was ordinary adversarial litigation on a discretionary motion that Mando had every right to oppose.

7. The errors identified in the Court's OSC are confined to Section F of the opposition and the related standing reservation. Section F occupied approximately one page of a multi-page brief and was secondary to the core arguments. The standing reservation that Mando "reserves the right to file a special motion to strike under California Code of Civil Procedure § 425.16 on behalf of those

3

parties" was a single conditional sentence. No anti-SLAPP motion was ever filed. No briefing was required from Plaintiffs to oppose one. No judicial resources were expended evaluating one. The standing statement was a conditional reservation about a hypothetical future filing that never materialized.

**B. The Inconsistency in Section F Arose from the Brief's Extensive Discussion of These Entities Across Multiple Contexts**

8. Mando acknowledges that Section F of its opposition (Dkt. 99) contained arguments regarding AIDP, Inc. and Magceutics, Inc. that did not accurately reflect the proposed FAC and were inconsistent with correct statements made elsewhere in the same brief. Counsel accepts responsibility for this error and does not attempt to minimize it.

9. However, the circumstances in which the error arose bear directly on the question of intent. The opposition brief discussed AIDP and Magceutics extensively and accurately across multiple sections before Section F. Indeed, the brief's predominant and repeated characterization of these entities was correct:

10. In Section C, the opposition stated: "Critically, the Northern District Action includes parties not present in this case: AIDP, Inc., the actual counterparty to the Trademark License Agreement, and Magceutics, Inc., the entity that submitted the FDA GRAS Notice central to the fraud and false advertising claims. Neither AIDP nor Magceutics is a party to this case, and Plaintiffs' proposed FAC does not add them." (Dkt. 99, ¶ 16., emphasis added)

11. In Section B, the opposition stated: "Moreover, the Northern District Action includes essential parties that Plaintiffs' proposed FAC omits: AIDP, Inc. and

4

Magceutics, Inc. AIDP is the actual counterparty to the Trademark License Agreement, the very contract at issue in the breach of contract claims. Plaintiffs cannot adjudicate breach of that contract without AIDP before the Court. The Northern District is the proper forum for those claims because all necessary parties are present there." (¶ 23., emphasis added)

12. In Section C, the opposition again stated that Mando "filed the Northern District Action to provide a proper forum for the non-patent disputes, including all necessary parties (AIDP and Magceutics) and proper venue for the contract claims." (¶ 29, emphasis added)

13. Thus, three times in the same filing, counsel correctly stated that AIDP and Magceutics were not in the proposed FAC, and used that fact as a central argument for why the Northern District was the more appropriate forum. Section F then contained an argument that contradicted those prior statements. That internal inconsistency itself demonstrates that the error was not a deliberate attempt to mislead: the correct information appeared repeatedly in the same filing, and a reader of the full brief, including this Court, could identify the discrepancy on the face of the document. An attorney intending to deceive the Court would not undermine the deception three times in the same brief.

14. The opposition discussed these entities extensively throughout Sections A through E because they were genuinely relevant to the core arguments. AIDP was already a crossclaim defendant in this action (Dkt. 55 at 23,¶57), is the actual counterparty to the Trademark License Agreement, and is now a counterclaim Defendant in Mando's Second Amended Counterclaims. Magceutics, Inc. is the former corporate name of Plaintiff Neurocentria, Inc., the same California

corporation, renamed around 2015, as confirmed by Dr. Guosong Liu's deposition testimony. (Ex. B at 225, Dkt. 108-3) The Magceutics name continues to appear on current product labeling, on the Magceutics.com website (operated by ThreoTech since 2019), and in GRAS Notice No. 499. Dr. Liu himself uses "Magceutics" and "Neurocentria" interchangeably and acknowledged under oath that "there is, you know, some issue about the confusion in the name." (Ex. B at 262, Dkt. 108-3) Section F failed to maintain the distinction between these entities' roles in the broader dispute and their status in the proposed FAC. Counsel regrets the error and has implemented verification procedures to prevent recurrence.

15. With respect to the standing reservation, counsel's statement that Mando "reserves the right to file a special motion to strike under California Code of Civil Procedure § 425.16 on behalf of those parties", Mando acknowledges this was incorrect. Mando would not have had standing to bring such a motion on behalf of crossclaim defendants or entities affiliated with Plaintiffs, and the reservation should not have been made. But, significantly, this was a conditional reservation contingent on a hypothetical scenario (the Court granting leave to add those parties as defendants) that did not exist, because the proposed FAC did not add them. No anti-SLAPP motion was filed. No briefing schedule was triggered. No judicial resources were consumed. The reservation was an incorrect aside in a secondary section of the opposition, not a motion or filing that imposed costs or required adjudication.

**III. The Multi-Forum Strategy Plaintiffs Seek to Sanction Was First Proposed by Plaintiffs' Own Lead Counsel in a Sworn Declaration to This Court**

16. The Court's OSC identifies as its first category of potentially sanctionable

6

conduct Mando's "dismissing certain counterclaims and reasserting them in a separate action brought in another district." (Dkt. 107 at 3–4.) Plaintiff's Response devotes substantial briefing to this issue, characterizing it as "the height of procedural gamesmanship." But Plaintiffs omit a critical fact from their own record: Plaintiffs proposed the identical structural approach a full month before Mando executed it.

17. On November 21, 2025, Plaintiffs' lead counsel Jeffrey Gavenman filed a sworn declaration with this Court in support of Plaintiffs' Renewed Motion for Leave to File Amended Complaint. In that declaration, filed under penalty of perjury, Mr. Gavenman stated:

> 9. In particular, on November 11, 2025 at 4:18 p.m., I emailed Mr. Abhyanker to (a) inform him that Plaintiffs intended to submit their Notice in which they would seek leave to file a Revised Motion to File Amended Complaint; (b) identify the contemplated changes Plaintiffs planned to make, including withdrawing patent infringement claims without prejudice so they could be re-filed in Texas; and (c) ask Mr. Abhyanker if he would now consent to the filing of an amended complaint, given that "it will resolve the venue issue that [he] raised" and, if not, to propose times for a further meet-and-confer. A true and correct copy of this November 11, 2025 email is contained on pages 1-3 of an email string between me and Mr. Abhyanker, which is attached hereto as **Exhibit 2**.

18. (Dkt. 64-21, Gavenman Decl. ¶ 9; *highlight added*) describing Plaintiffs' plan as "withdrawing patent infringement claims without prejudice so they could be re-filed in Texas." (Id. ¶ 9.)

19. The underlying email, attached to the same declaration as Exhibit 2, is equally explicit:

7

> On Tue, Nov 11, 2025 at 4:18 PM Jeffrey Gavenman <jgavenman@schulmanbh.com> wrote:
>
> Raj,
>
> I write in regard to the above-captioned matter to let you know that we will be submitting to the Court a Notice of Withdrawal, indicating that we are withdrawing Plaintiffs' pending Motion for Leave to File Amended Complaint because we intend to file a new motion for leave to file an amended complaint. Having had some time to become familiar with this case, its issues, and the pleadings, we will seek to file a revised amended complaint that will not include the patent claims that are part of the current complaint (and the previously proposed amended complaint). We plan to withdraw those claims without prejudice so that they may be re-filed in Texas -- resolving the venue concern that you raised in your Motion to Dismiss. In addition to removing the patent claims, our new amended complaint will add claims against Kappa Nutrition for violations of the Lanham Act, as well as to set forth breaches of contract by Kappa Nutrition above and beyond what is identified in the prior proposed amended complaint.

20. That proposal dismissing certain claims in this Court and refiling them in a different district is structurally identical to the conduct the Court's OSC identifies as Mando's first category of potentially sanctionable behavior. Plaintiffs proposed separating patent claims (Northern District of Texas) from non-patent claims (this Court). Mando separated non-patent claims (Northern District of California) from patent claims (this Court). Both parties contemplated resolving this multi-front dispute across two federal forums. The only difference is that Plaintiffs first proposed their forum split, a full month before Mando filed the Northern District action on December 15, 2025. Those representations were made under oath to this Court, and defense counsel reasonably relied on them in assessing the procedural posture of the case.

21. Plaintiffs cannot credibly characterize as sanctionable bad faith a litigation strategy they themselves proposed under oath. If separating claims across districts to promote efficient case management is "the height of procedural gamesmanship" when Mando does it, it was gamesmanship when Plaintiffs' counsel proposed it to

8

this Court in a sworn declaration on November 21, 2025. This is not a case of one-sided misconduct. It is a case of two parties maneuvering over the optimal forum configuration for a complex, multi-front dispute. That is ordinary litigation, not sanctionable conduct.

22. Mando's Response explained that the Northern District filing reflected a strategic judgment to separate patent claims from trademark and contract issues. The Court disagreed. But disagreement with litigation strategy does not equal bad faith--particularly when the opposing party proposed the same structural approach first. The claims filed in the Northern District were not frivolous--they are the same claims this Court authorized Mando to assert as counterclaims. The Court's February 24, 2026 Order granted Mando leave to file Second Amended Counterclaims "regarding the same issues raised in the First Amended Complaint" and defined the permissible scope by reference to, among other things, "the action [Defendant] filed in the Northern District of California." (Dkt. 107 at 3.)

23. Mando filed its Second Amended Counterclaims on March 3, 2026, incorporating the Lanham Act, § 17200, fraud, declaratory judgment, and patent invalidity claims. These counterclaims are supported by Certificates of Analysis identifying Chinese origin for the primary active ingredient, product labeling claiming "Manufactured in the USA," import records reflecting third-country routing, and deposition admissions from both named inventors.

24. The Northern District action was dismissed without prejudice on the same day as this Court's Order. That designation is consistent with *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502–06 (2001), recognition that a dismissal "without prejudice" ordinarily does not bar reassertion of the same claim, whereas

a dismissal "on the merits" is not automatically but may be claim-preclusive. Because this Court simultaneously authorized Mando to assert those claims as counterclaims here, the without-prejudice designation reflects compliance with that directive, not an intent to refile elsewhere.

**IV. Any Fee Award Must Be Limited to Fees Caused by the Specific Errors, Not the Entire Cost of the Amendment Dispute**

**A. Defendant believed Plaintiffs Missed Deadline to Amend as of Right**

25. In view of this, Mando exercised that right. The act of opposing a discretionary motion for leave to amend is ordinary litigation conduct, not sanctionable behavior.

**B. Fees from the Northern District Action Are Not Recoverable**

26. Any fees Plaintiffs incurred litigating in the Northern District of California, Case No. 3:25-cv-10682-TLT, are not recoverable in this proceeding. This Court's inherent authority exists to address abuses affecting proceedings before it; "these powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Fees incurred in appearing, filing, or litigating before another district court and another judge fall outside that rationale. Moreover, Plaintiffs incurred those fees in a forum that their own counsel proposed splitting claims into, in a sworn declaration filed with this very Court. (Dkt. 64-21, Gavenman Decl. ¶ 9.)

## C. But-For Causation Limits Recovery to Incremental Costs

27. The Supreme Court has held that fee awards under the court's inherent authority must satisfy but-for causation: "a court may award only those fees that the innocent party would not have incurred in the absence of litigation misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017). The same principle constrains Rule 11 fee awards, "a district court may order a party to pay attorney's fees "directly resulting from" misrepresentations in pleadings, motions, and other papers " Fed. R. Civ. P. 11(c)(4).

28. Here, Plaintiffs would have incurred the vast majority of their motion-to-amend fees regardless of whether Mando's opposition contained the errors identified in the OSC. Plaintiffs had to prepare and file the motion because they missed their amendment deadline. They had to brief the Rule 15(a)(2) factors. They would have had to respond to Mando's Sections A through E regardless, because those sections raised legitimate arguments about futility, delay, prejudice, and parallel proceedings.

29. The only fees attributable to the specific errors are the incremental costs of responding to Section F's inconsistent characterization regarding AIDP and Magceutics and the anti-SLAPP standing reservation. Plaintiffs' reply brief (Dkt. 102) addressed these issues in Section D, spanning approximately two-and-a-half pages out of a fifteen-page reply. The time required to draft those pages, confirming the proposed FAC's contents, which Plaintiffs already knew, and pointing out the inconsistency with earlier statements in the same brief, represents

at most two to four hours of attorney time. No additional time was required to oppose an anti-SLAPP motion because no such motion was ever filed. At prevailing rates, the incremental fees attributable to the specific errors amount to approximately $2,000 to $5,000.

30. The equities reinforce this limitation. Just as the anti-SLAPP reservation was a statement that never ripened into a motion, Plaintiffs' own sworn representations about splitting this litigation across districts, specifically, their November 21, 2025 declaration to this Court describing a plan to "withdraw[] patent infringement claims without prejudice so they could be re-filed in Texas" (Dkt. 64-21, Gavenman Decl. ⊮ 9), and the underlying November 11, 2025 email to defense counsel proposing the same (Dkt. 64-23, Ex. 2) were representations that Mando detrimentally relied upon in structuring its own litigation approach, including the Northern District filing. The fees Mando incurred in reliance on those representations, preparing and filing the Northern District action, responding to Plaintiffs' motion to dismiss in that forum, and subsequently consolidating all claims here pursuant to this Court's Order, substantially exceed the $2,000 to $5,000 at issue. A fee award under these circumstances would compensate Plaintiffs for the consequences of a multi-forum litigation posture that their own counsel proposed first, in a sworn declaration to this Court. The equities do not support such an award.

**D. The Withdrawn Motions Reflect Ordinary Litigation, Not a Pattern of Harassment**

12

31. With respect to the specific docket entries referenced in the Court's Order (Dkts. 54, 70, and 104), Defendant respectfully clarifies the context of each withdrawal.

32. **Dkt. 54 - Jurisdictional Motions.** Dkt. 54 withdrew Defendant's preliminary jurisdictional and transfer motions after Plaintiffs amended their pleadings (Dkt. 53). Defendant's decision to proceed in this District, made in the interest of judicial economy to avoid further fragmentation of the litigation, did not waive, and expressly preserved, its personal-jurisdiction objection. That objection is now actively before this Court. On March 12-13, 2026, Mando filed separate motions to dismiss the First Amended Complaints of both ThreoTech LLC (Dkt. 121) and Neurocentria, Inc. (Dkt. 122) under Rule 12(b)(2), challenging personal jurisdiction on multiple independent grounds. An argument that is currently pending before this Court in two motions to dismiss was not frivolous when initially raised, and withdrawing the preliminary motion to pursue it through the proper procedural channel after Plaintiffs amended their pleadings is the opposite of gamesmanship.

33. **Dkt. 70 - Amended Counterclaims.** Dkt. 70 narrowed Defendant's counterclaims to focus on patent declaratory issues. That decision was made in light of Plaintiffs' own November 21, 2025 representation to this Court that they intended to withdraw their patent infringement claims from this action and refile them in Texas, while adding trademark and unfair competition claims here. (Dkt. 64-21, Gavenman Decl. ¶ 9.) If Plaintiffs intended to restructure this case as a non-patent action, it was reasonable for Mando to assess whether its own

13

non-patent counterclaims were better addressed in a separate proceeding - particularly one that included all necessary parties.

34. **Dkt. 104 - Withdrawal of Rule 11 Motion.** Dkt. 104 withdrew Defendant's Rule 11 motion for sanctions (Dkt. 93). Plaintiffs' opposition identified a procedural deficiency under Rule 11(c)(2)'s safe-harbor provision. Upon reviewing that opposition, Mando promptly withdrew the motion rather than persisting in a procedurally deficient filing. The substance of the underlying patent invalidity arguments is now squarely before this Court through Mando's Second Amended Counterclaims and pending Motion to Dismiss (Dkt. 122).

35. In each instance, the withdrawal or amendment occurred before adjudication on the merits and was undertaken to narrow issues, not to multiply proceedings. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990). Absent evidence of subjective bad faith which is absent here the fact that Plaintiffs may have incurred expenses before withdrawal does not transform ordinary litigation into sanctionable conduct.

**V. The Applicable Legal Standards Are Not Met**

36. Rule 11 sanctions require either that a filing was presented for an improper purpose or that the legal contentions therein were not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(2). The Ninth Circuit applies an objective standard: whether a reasonable attorney would have concluded the filing was warranted. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

"Sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001). "Recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994.

37. The opposition to the Renewed Motion for Leave, taken as a whole, raised legitimate arguments on a discretionary motion that Mando had every right to oppose. Sections A through E addressed futility, delay, prejudice, and parallel proceedings, recognized grounds under *Foman v. Davis*. The errors in Section F were confined to a secondary portion of the brief. The standing reservation was a conditional statement about a hypothetical future motion that was never filed and never required adjudication. No anti-SLAPP motion was brought; no briefing schedule was triggered; no judicial resources were consumed evaluating one. The errors did not alter the outcome the Court granted Plaintiff's motion to amend regardless. This does not rise to the level of bad faith, harassment, or objective unreasonableness.

**VI. Mando Has Taken Prompt Corrective Action**

38. On the same day as the Court's Order, Mando voluntarily dismissed the Northern District action in its entirety. (Resp. 2; Ex. A.) Mando acknowledged the errors in its prior briefing and accepted responsibility. (Resp. ¶¶ 5–7.) Mando filed Second Amended Counterclaims on March 3, 2026, consolidating all claims in this forum in compliance with the Court's Order. Counsel has implemented a

15

verification process to ensure future factual representations regarding pleadings are cross-checked against the operative documents.

## VII. Plaintiffs' Response Improperly Expands the Scope of the OSC

39. The Court's OSC enumerated four specific categories of conduct. (Dkt. 107 at 3–4.) Plaintiffs' Response seeks to expand the inquiry into matters the Court did not identify as sanctionable. Mando addresses these allegations in the accompanying Declaration of Raj Abhyanker, which provides the factual record on each point. In summary:

40. **Citation error (Dkt. 35):** The cited case is real. The error was misplaced quotation marks around counsel's own summary language, proactively corrected at Dkt. 37. The underlying motion was deemed moot. No party was prejudiced. (Abhyanker Decl. ¶¶ 2–5.)

41. **Rule 11 motion (Dkt. 93):** Directed at Plaintiffs' continued assertion of the '061 patent. The same invalidity arguments support Mando's pending Motion to Dismiss (Dkt. 122). Withdrawn upon identification of a safe-harbor procedural deficiency--not because the arguments lacked merit. (Abhyanker Decl. ¶¶ 6–9.)

42. **Deposition of Dr. Gu:** Routine discovery of a party's CEO. Mando expressed condolences upon Mr. Lee's passing, offered accommodation, and rescheduled to every date opposing counsel proposed--ultimately moving the

16

deposition from March to June. The correspondence refutes Plaintiffs' characterization. (Abhyanker Decl. ¶¶ 10–14.)

43. **Motion to Strike (Dkt. 66-1):** Mando filed its sealing request to protect mediation confidentiality after Plaintiffs publicly disclosed communications from the party's November 21, 2025, UCLA session, which occurred pursuant to this Court's ADR referral. California Evidence Code section 1119 broadly protects communications made for the purpose of, in the course of, or pursuant to, a mediation, and those protections are strictly enforced absent express waiver or a statutory exception. See *Cassel v. Superior Court*, 51 Cal. 4th 113, 124–27 (2011). Under Rule 501, in civil cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *See Milhouse v. Travelers Com. Ins. Co.*, 982 F. Supp. 2d 1088, 1105 n.10 (C.D. Cal. 2013). Characterizing Mando's effort to protect mediation confidentiality as sanctionable conduct inverts the equities. (Abhyanker Decl. ¶¶ 15–21.)

## VIII. CONCLUSION

44. Sanctions must be proportionate to the conduct, and fee awards must satisfy but-for causation. Plaintiffs would have incurred the vast majority of their motion-to-amend fees regardless of anything in Mando's opposition. The incremental cost of addressing the specific errors in Section F is approximately $2,000 to $5,000. And the multi-forum strategy that Plaintiffs ask this Court to sanction is one that Plaintiffs' own lead counsel proposed, under oath, to this very Court, a full month before Mando acted.

45. For the foregoing reasons, Defendant respectfully requests that the Court discharge the Order to Show Cause without sanctions. In the alternative, any sanction should be limited to incremental fees directly attributable to Section F, exclusive of fees Plaintiffs would have incurred regardless, fees from the Northern District, and fees for withdrawn motions.

46. Defendant acknowledges that Plaintiff's proposed FAC did not name AIDP, Inc.

Dated: March 27, 2026

Respectfully submitted,
LEGALFORCE RAPC WORLDWIDE P.C.

/s/ Raj V. Abhyanker__
Raj V. Abhyanker
Attorney for Defendant:
Mando International, LLC

18

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Mando International, LLC, certifies that this brief contains 4130 words, which complies with the word limit of L.R. 11-6.1.   In addition, the page length complies with Judge Rocha's standing order Section III on Motions - General Requirements, which states "Replies shall not exceed 4,200 words **or** fifteen (15) pages for handwritten briefs and briefs prepared using a typewriter."

Dated: March 27, 2026

Respectfully submitted,
LEGALFORCE RAPC WORLDWIDE P.C.


/s/ Raj Abhyanker
Raj V. Abhyanker
Attorney for Defendant:
Mando International, LLC

19