Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John W. Cox
  (Admitted *Pro Hac Vice*)
  John.Cox@btlaw.com
Lauren U. Baker
  (Admitted *Pro Hac Vice*)
  Lauren.Baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile: 404-264-4033

Jeffrey Gavenman
  (Admitted *Pro Hac Vice*)
  jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
  (Admitted *Pro Hac Vice*)
  jeremy.schulman@hugheshubbard.com
James Schaller
  (Admitted *Pro Hac Vice*)
  jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I STREET, N.W., 6th Floor
Washington, D.C. 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs NEUROCENTRIA, INC. and THREOTECH LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC,<br><br>    Plaintiffs,<br><br>        v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION,<br><br>    Defendant/Counterclaimant<br><br>        v.<br><br>NEUROCENTRIA, INC., THREOTECH LLC, GUOSONG LIU AND FEI MAO,<br><br>    Counter-Defendants. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF**<br><br>Hearing: TBD<br>Time: TBD<br>Courtroom: 6B, 6th Floor<br>Judge: Hon. Fernando L. Aenlle-Rocha |

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ......................................................................1

II. ARGUMENT...........................................................................................1

    A.    The Court Should Strike Kappa's New Proposed Construction. ...............................................................................1

    B.    The Intrinsic Evidence is Unambiguous and Controlling. ...................5

    C.    There is No Legal or Factual Support for Kappa's New Construction. ......................................................................................6

        1.    Kappa's New Construction Improperly Imports Limitations. ....................................................................................6

        2.    Kappa's Extrinsic Evidence, Including Expert Testimony, Should be Afforded No Weight............................8

        3.    Kappa's Prosecution History Estoppel Arguments are Unpersuasive and Irrelevant. ....................................................10

        4.    Kappa Again Attempts to Prematurely (and Improperly) Inject Section 101 Invalidity into Claim Construction. ........................................................................12

III. CONCLUSION...................................................................................14

PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agilent Techs., Inc. v. Affymetrix, Inc.*,
567 F.3d 1366 (Fed. Cir. 2009) ...............................................................................8

*Bancorp Servs., L.L.C. v Sun Life Assur. Co. of Canada (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012) .............................................................................13

*Biogen, Inc. v. Berlex Labs., Inc.*,
318 F.3d 1132 (Fed. Cir. 2003) .............................................................................12

*Callicrate v. Wadsworth Mfg., Inc.*,
427 F.3d 1361 (Fed. Cir. 2005) ...............................................................................6

*Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*,
No. 15-cv-02177-SI, 2016 WL 283478 (N.D. Cal. Jan. 25, 2016) ....................13

*Edwards Lifesciences Corp. v. St. Jude Med., Inc.*,
No. CV 00–07091 CAS, 2003 WL 25784357 (C.D. Cal. Aug. 29, 2003) ................................................................................................................11

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
192 F.3d 973 (Fed. Cir. 1999) ...............................................................................11

*Farstone Tech., Inc. v. Apple Inc.*,
No. 8:13-cv-1537-ODW, 2015 WL 857706 (C.D. Cal. Feb. 27, 2015)...............9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002)................................................................................................11

*Funk Brothers Seed Co. v. Kalo Inoculant Co.*,
333 U.S. 127 (1948)..........................................................................................12, 13

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
29 F.4th 1365 (Fed. Cir. 2022) ................................................................................8

*Grace Instrument Indus., LLC v. Chandler Instruments Co., LLC*,
57 F.4th 1001 (Fed. Cir. 2023) ................................................................................6

PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

*Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*,
  No. ED CV 17-01388-AB, 2019 WL 1950291 (C.D. Cal. Mar. 19,
  2019) ............................................................................................................4

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) ...............................................................6

*Jonsson v. Stanley Works*,
  903 F.2d 812 (Fed. Cir. 1990) ...............................................................11

*JVW Enters., Inc. v. Interact Accessories, Inc.*,
  424 F.3d 1324 (Fed. Cir. 2005) ...............................................................7

*Mantech Env't Corp. v. Hudson Env't Servs., Inc.*,
  152 F.3d 1368 (Fed. Cir. 1998) ...............................................................3

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .............................................................10

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
  8 F.4th 1285 (Fed. Cir. 2021) .................................................................8

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008) ...............................................................9

*Vistan Corp. v. Fadei USA, Inc.*,
  No. C 10-4862 JCS, 2012 WL 1496099 (N.D. Cal. Apr. 27, 2012) ...................8

*Werner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997)..................................................................................11

**Statutes**

35 U.S.C. § 101 ........................................................................4, 12, 13, 14

**Other Authorities**

Rule 702 ...................................................................................................9

- iii -

Plaintiffs Neurocentria, Inc. and ThreoTech LLC (collectively, "Plaintiffs") submit this Reply to Defendant Mando International, LLC d/b/a Kappa Nutrition Labs ("Kappa")'s Responsive Claim Construction Brief (Dkt. 143) and state as follows:

## I.   PRELIMINARY STATEMENT

Kappa's response moves the goal post again, advancing another new construction (its fourth), this one even more convoluted and divorced from the intrinsic evidence than the last. Kappa claims its construction resolves ambiguity and is consistent with its previous constructions—not true. For support, Kappa advances myriad arguments for the first time, which are neither factually nor legally supported, illustrating its kitchen sink approach to litigation. Kappa's untimely new construction also imports limitations from the specification and extrinsic evidence, which have no relation to—and in fact contradict—the language of the Asserted Claims and specification. Kappa's proffered "experts" were admittedly never asked to opine on claim construction, and their "opinions" are entitled to no weight. Kappa's prosecution history estoppel arguments are equally meritless and lack analysis. And Kappa again, now in the guise of claim construction, asks this Court to consider premature invalidity challenges.

At bottom, the Court should reject Kappa's proposed construction and give "magnesium threonate" its plain and ordinary meaning, which is the meaning a person of ordinary skill in the art would give the term based on the language of the Asserted Claims and the specification of the '061 Patent.

## II.   ARGUMENT

### A.   The Court Should Strike Kappa's New Proposed Construction.

Kappa readily admits that it offers yet another new construction in its responsive brief. Dkt. 143, ¶ 4. This is Kappa's fourth construction since Kappa served its first claim construction disclosure on December 19, 2025 (11 days late). Kappa claims its new construction is necessary to "clarify the scope of the term" and to "eliminat[e] ambiguity." *Id.* But Kappa does not identify any ambiguity needing resolution, nor does

- 1 -

Kappa explain how its new construction resolves that alleged ambiguity. These omissions are telling.

Kappa's claim that its new construction is "consistent with Defendant's previously disclosed construction and does not alter its position" is also patently false. *Id.*, ¶ 5. Indeed, the **only** commonality across Kappa's constructions is the phrase "magnesium salt of threonic acid" (highlighted below):

| 12/19/25 Construction (Dkt. 116-1 at 3) | 1/19/26 Construction (Dkt. 116-3 at 5) | 3/2/26 Construction (Dkt. 116-5 at 2-3) | 3/23/26 Construction (Dkt. 143, ¶ 4) |
|---|---|---|---|
| Plain and ordinary meaning. Magnesium threonate is a magnesium salt of threonic acid (for example, magnesium L-threonate), in which each magnesium cation is associated with two threonate anions. This term should be given its plain meaning as understood by a person of ordinary skill in the art, | A magnesium salt of threonic acid, including L-threonic acid magnesium that occurs naturally in the human body. | The magnesium salt of threonic acid, including L-threonate, as understood by a person of ordinary skill in the art. The term does not require that the magnesium-threonate association be synthetically manufactured, pre-isolated, or exist in any particular solid-state or crystalline form unless | A magnesium salt of threonic acid, including L-threonate, as understood by a person of ordinary skill in the art, referring to a pre-formed ionic compound, the chemical identity of which may occur naturally in the human body, and excluding mixtures of separate magnesium and threonate sources. |

- 2 -

| referring to the magnesium salt of threonic acid. | | expressly required by the intrinsic record. The construction of "magnesium threonate" is structural and chemical in nature and does not depend on the source of formation (e.g., synthetic preparation versus formation under aqueous or physiological conditions). | |

Kappa's March 23 construction injects multiple new limitations into "magnesium threonate" which, not only were they not previously disclosed, are even more untethered from the claims and specification than its previous constructions. *See Mantech Env't Corp. v. Hudson Env't Servs., Inc.*, 152 F.3d 1368, 1373 (Fed. Cir. 1998) (noting that the claims and specification are the "primary and more authoritative sources of claim construction" and "always must be considered and where clear must be followed." (citations omitted)); *see infra* Section II.C.1.

Kappa dumps other arguments into its brief for the first time, which are neither relevant to claim construction nor responsive to Plaintiffs' arguments. *See* Dkt. 116. For instance, Kappa argues that Plaintiffs are estopped from recapturing unspecified "claim

- 3 -

PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

scope" based on statements made during the prosecution of related patents (*see infra* Section II.C.3). Kappa further manufactures invalidity disputes under 35 U.S.C. § 101 that have no place in the claim construction analysis (*see infra* Section II.C.4).

Kappa's arguments are the epitome of a moving target. And there can be no justification for its late-breaking and evolving constructions. *PureCircle USA Inc. v. SweeGen, Inc.* is instructive. There, the defendants identified additional terms and altered their previous constructions after the court lifted a stay. No. SACV 18-01679-JVS (JDEx), 2020 WL 4258658, at *3 (C.D. Cal. July 2, 2020). The court struck the new constructions, finding defendants' actions "suggests that there is gamesmanship afoot" and was the "very **shifting sands and musical chairs approach** that the [Patent Local Rules] are designed to avoid." *Id.* at *3-4 (emphasis added); *see also id.* ("While no provision of the Patent Local Rules explicitly forbids a party from shifting its claim construction position, the rules strongly suggest that a party is not supposed to do so." (citation omitted)). The court further found that plaintiffs would be prejudiced if defendants were permitted to advance their new constructions "because it has incurred substantial fees and costs addressing Defendants' previous claim construction positions . . . and would be required to incur additional costs to repeat the same process for Defendants' change in position." *Id.* at *3; *see also Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, No. ED CV 17-01388-AB (KKx), 2019 WL 1950291, at *5 (C.D. Cal. Mar. 19, 2019) (noting that the local patent rules are "designed specifically to require parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction." (citation omitted)).

The same result is warranted here. Kappa has advanced at least four substantially different constructions in just three months. Each time, Plaintiffs have been forced to expend resources responding to Kappa's meritless arguments. Indeed, Plaintiffs deposed Kappa's proffered "experts," Dr. Ziari and Ms. Adams ("Kappa's Witnesses"), on March 17-18 in view of their declarations submitted in supposed support of Kappa's January

- 4 -

19 constructions. But Kappa has now backed away from those declarations. *See* Dkt. 143, ¶ 14 (arguing that the only remaining claim construction question is one "resolved by intrinsic evidence"); *id.*, ¶ 36 (proclaiming that "Defendant's arguments do not ask the Court to resolve issues of invalidity, but rather to determine what the claim term means in light of the intrinsic record"). In other words, Plaintiffs' efforts since December have been for naught.

The Court should strike Kappa's new construction and—as the applicable caselaw instructs (*see supra*)—hold Kappa to the construction it first proposed for "magnesium threonate": plain and ordinary meaning. Ultimately, the Court acting in its discretion may simply reject **all** of Kappa's constructions and adopt the plain and ordinary meaning of "magnesium threonate" as Plaintiffs propose.[1]

## B. The Intrinsic Evidence is Unambiguous and Controlling.

Kappa does not substantively dispute that a person of ordinary skill in the art ("POSA") would understand the meaning of the term "magnesium threonate" based on the language in the Asserted Claims and the specification. To the contrary, Kappa plainly acknowledges that "magnesium threonate" is "a magnesium-counter-ion composition." *See* Dkt. 143, ¶ 9 (citing '061 Patent at 31:13-18).

Plaintiffs do not disagree. The specification describes "magnesium threonate" as an example of a "magnesium-comprising component (MCC)." *See* '061 Patent at 3:7-15; *see also id.* at 3:53-55 ("In some embodiments, the magnesium containing compound comprises magnesium threonate."); 19:5-7 ("An example of a magnesium-containing

---

[1] Kappa's passing reference to the Joint Notice of Narrowed Issues for Claim Construction (Dkt. 143, ¶ 14)—to the extent it is intended to excuse Kappa's vexatious claim construction tactics—falls flat. The parties would not have needed to file the Joint Notice if Kappa had participated in the claim construction process (and, in particular, meet and confer calls) in good faith. Indeed, if Kappa had stuck with its initial plain and ordinary meaning construction of "magnesium threonate," the parties would not have needed to formally construe any claim terms. *See* Dkt. 116 at 10-11; Dkt. 116-2.

composition having these characteristics is one comprising magnesium threonate."). This understanding is consistent with the language of the Asserted Claims, which recite "[a] dosage form formulated for oral administration to a subject . . . , wherein the dosage form comprises at least 10 mg magnesium threonate . . ." (Claim 1). There is no evidence that the applicant acted as his own lexicographer and assigned any special definition to the term "magnesium threonate," nor is there any ambiguity in the Asserted Claims or specification that would require further construction. Put simply, a POSA would understand from the intrinsic evidence that the "magnesium threonate" claimed in the '061 Patent is a magnesium-containing composition or magnesium counter-ion compound. *See, generally,* Dkt. 116.

### C.   There is No Legal or Factual Support for Kappa's New Construction.

#### 1.   Kappa's New Construction Improperly Imports Limitations.

Even assuming Kappa's new arguments are timely or relevant (they are neither), they must be rejected because they are divorced from the claim language and specification. *See Grace Instrument Indus., LLC v. Chandler Instruments Co., LLC*, 57 F.4th 1001, 1008 (Fed. Cir. 2023) (noting that claim construction should "begin by considering the language of the claims themselves," which must "be read in view of the specification, of which they are a part"). Indeed, Kappa's brief does not reference the language of the Asserted Claims at all. *See Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (noting that claim construction "must begin and remain centered on" the claim language itself). Nor does Kappa meaningfully discuss the specification portions cited by Plaintiffs. *See* Dkt. 116 at 14-15.

It is "improper[]" to read "limitations from the specification into the claim." *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop." (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005))). And a court does "not import limitations into claims from examples

- 6 -

or embodiments appearing only in a patent's written description . . . unless the specification makes clear that the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive." *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (citations omitted). Yet that is what Kappa does, focusing on **one paragraph in a single column** in the 65-column specification to argue that "magnesium threonate" should be limited to a pre-formed compound of magnesium and threonate. *See* Dkt. 143, ¶¶ 7-9, 16, 25 (citing '061 Patent at 31:5-18). Kappa fails to explain why a POSA would look to only those portions of the specification (and nowhere else) to understand "magnesium threonate," nor does Kappa provide any compelling reason why a POSA would then import those limitations into the Asserted Claims. The answer is simple: they would not.

The absurdity of Kappa's argument is clear simply using Kappa's proposed construction in the context of Claim 1:

A dosage form formulated for oral administration to a subject comprising **[a magnesium salt of threonic acid, including L-threonate, as understood by a person of ordinary skill in the art, referring to a pre-formed ionic compound, the chemical identity of which may occur naturally in the human body, and excluding mixtures of separate magnesium and threonate sources,]** wherein the dosage form comprises at least 10 mg **[a magnesium salt of threonic acid, including L-threonate, as understood by a person of ordinary skill in the art, referring to a pre-formed ionic compound, the chemical identity of which may occur naturally in the human body, and excluding mixtures of separate magnesium and threonate sources,]** and wherein the dosage form is a solid, semi-solid, semi-liquid, or a gel.

This cannot be correct. *See Vistan Corp. v. Fadei USA, Inc.*, No. C 10-4862 JCS, 2012 WL 1496099, at *20-21 (N.D. Cal. Apr. 27, 2012) (rejecting construction that introduced additional elements into the claims, finding that defendants' proposed construction

- 7 -

"would add ambiguity to the claim language" and "render significant portions of the claim language superfluous" (citation omitted)); *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1378 (Fed. Cir. 2009) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." (citation modified)). Kappa's construction is not "grounded in claim scope" (Dkt. 143, ¶ 36) and must be rejected.

### 2. Kappa's Extrinsic Evidence, Including Expert Testimony, Should be Afforded No Weight.

Kappa's explanations for its new construction are contradictory. On one hand, Kappa argues that the construction of "magnesium threonate" can be "resolved by intrinsic evidence." Dkt. 143, ¶ 14; *id.*, ¶ 36 (proclaiming that Kappa's arguments ask the Court to "determine what the claim term means in light of the intrinsic record"). On the other hand, Kappa resorts to **extrinsic evidence**, such as supposed expert testimony and the prosecution history of other patents (*see infra* Section II.C.3). But "[i]f the meaning of a claim term is clear from the intrinsic evidence," **as it is here**, "there is no reason to resort to extrinsic evidence." *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) (citation omitted). This is especially true where the extrinsic evidence is "used to diverge significantly from the intrinsic evidence." *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022) (citation omitted).

The problems with Kappa's reliance on extrinsic evidence are two-fold. First, there is no ambiguity in the claim language or the specification regarding the plain and ordinary meaning of "magnesium threonate." *See* Section II.B; *see also* Dkt. 116. Thus, it is improper to consult extrinsic evidence in the first place.

Second, and as explained in Plaintiffs' opening brief (*see* Dkt. 116 at 19-23), Kappa's experts have not offered any opinions relevant to claim construction—a fact they readily admitted during their depositions. *See* Ex. A (Deposition Transcript of

- 8 -

Naveed Ziari) at 76:23-77:20 (testifying that "I'm not constructing any claims"); Ex. B (Deposition Transcript of Sara Adams) at 123:14-24 (testifying that she was "[n]ot directly construing [the claims], not – not me personally"); *see also id.* at 172:6-18 (testifying that her role is not to "interpret patent claims").[2] Indeed, Kappa's counsel repeatedly objected to questions during the depositions on the basis that claim construction is a "legal issue" and "not for experts directly." *See* Ex. A (Ziari) at 77:14-17, 79:6-13, 87:15-19, 98:13-20, 99:1-5; Ex. B (Adams) at 94:16-22.[3]

Even more fundamentally, Kappa has proffered no evidence that testimony from its "experts" could aid the Court in construing "magnesium threonate." First, there is no evidence that either of Kappa's Witnesses qualify as POSAs such that their testimony should be considered at all. Indeed, Kappa has not even defined what qualifications or experience a person of ordinary skill in the art would have. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008) ("[W]here an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a witness to testify on the issue who is not qualified as a technical expert in that art."); *see also Farstone Tech., Inc. v. Apple Inc.*, No. 8:13-cv-1537-ODW (JEMx), 2015 WL 857706, at *3 (C.D. Cal. Feb. 27, 2015) (noting that "the law does require that the expert be sufficiently qualified to construe the patent and understand the claimed invention as one with ordinary skill in the art of the relevant field" (citation omitted)). Kappa's claim, **without support**, that Kappa's Witnesses were deposed "as someone with ordinary skill" is not credible. Dkt. 143, ¶ 8

---

[2] All exhibits are to the Declaration of Lauren Baker, filed herewith.

[3] Kappa purports to summarize testimony from its experts (Dkt. 143, ¶ 8 n.1; *id.*, ¶ 12 n.2) but does not cite any actual testimony to support that construction (there is none), nor does it identify where in the expert declarations those opinions were offered (they were not).

PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

n.1; *see also id.*, ¶ 12 n.2; *see Phillips*, 415 F.3d at 1318 ("[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court").

Second, Kappa's Witnesses were engaged solely to opine on validity. *See* Ex. A at 86:4-88:4 (Ziari) (agreeing that he was engaged to focus on opinions relevant to validity or invalidity); Ex. B at 115:5-117:7 (Adams) (same). They were not engaged to opine on claim construction or the level of ordinary skill in the art. The Court should see Kappa's Witnesses for what they are: paid mouthpieces for the ever-evolving, litigation-driven theories concocted by Kappa's counsel.

### 3. Kappa's Prosecution History Estoppel Arguments are Unpersuasive and Irrelevant.

Kappa suggests "magnesium threonate" should be limited to some undefined "compound" rather than "mixtures of separate magnesium and threonate sources" based on statements made during prosecution of applications related to the '061 Patent because, according to Kappa, Plaintiffs gave up claim scope.[4] *See* Dkt. 143, ¶ 20. The Court can easily dispel these meritless arguments.

Fatally, Kappa presents this argument for the first time in its responsive brief. *See supra* Section II.A. Kappa did not cite or rely upon the prosecution history of the '061 Patent (or any other patent or application) in its December 19 or January 19 disclosures.[5] And Plaintiffs have never relied on the '061 Patent prosecution history to support its

---

[4] Kappa has not identified any arguments in Plaintiffs' brief to suggest that, in proposing "magnesium threonate" be given its plain and ordinary meaning, they are attempting to recapture claim scope, nor has Kappa articulated what Plaintiffs are purportedly seeking to recapture.

[5] On March 7—two days before Plaintiffs' opening brief was due—Kappa served its Supplemental Identification of Intrinsic Evidence purporting to identify references in the prosecution history of the '061 Patent and related patents that supported its January 19 construction of "magnesium threonate." *See* Dkt. 116-6. Because of its untimeliness, Plaintiffs did not address the substance of Kappa's proffered "supplemental evidence" in its opening brief but do now.

- 10 -

plain and ordinary meaning construction, so Kappa cannot claim that its argument is "responsive" to Plaintiffs' opening brief.

Kappa's untimeliness aside, its arguments fail for the more fundamental reason that they are both legally and factually inaccurate. Prosecution history estoppel applies, if at all, to preclude an applicant from re-capturing claim scope that was surrendered during prosecution by asserting that an accused product infringes under the doctrine of equivalents. In other words, prosecution history estoppel is a legal doctrine associated with **infringement**—not claim construction. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002) (noting that the doctrine of equivalents is limited by prosecution history estoppel, which "precludes a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent" (citation omitted)); *see also Werner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30 (1997) (referring to prosecution history estoppel "as a legal limitation on the doctrine of equivalents").[6] Whether an accused product that "encompasses mixtures of separate magnesium and threonate sources" (Dkt. 143, ¶ 20) infringes the '061 Patent under the doctrine of equivalents (a question which Plaintiffs have not and need not take a position on) is irrelevant to determining what a POSA would understand the term "magnesium threonate" to mean.

Kappa's conclusory statement that the '061 Patent's parent and continuation application "share the same specification and claim language of the '061 patent" is also

---

[6] Kappa's cited cases—*Edwards Lifesciences Corp. v. St. Jude Med., Inc.*, No. CV 00–07091 CAS (AJWx), 2003 WL 25784357 (C.D. Cal. Aug. 29, 2003); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999); and *Jonsson v. Stanley Works*, 903 F.2d 812, 819 (Fed. Cir. 1990)—all stand for the unremarkable proposition that statements made during prosecution are relevant to understanding the meaning of claim terms. Plaintiffs do not dispute this; but whether statements are "relevant" to understanding a claim term is entirely different to whether those statements are "binding" on the construction of claim terms in related patents.

- 11 -

PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

false. *Id.*, ¶ 19.[7] Tellingly, Kappa's brief neither recites the language of the claims in the related applications nor analyzes their similarities to the claims of the '061 Patent. Even if the language was the same (it is not), "arguments made in a related application **do not automatically apply** to different claims in a separate application." *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1139 (Fed. Cir. 2003) (emphasis added). Kappa has provided no basis to limit the scope of the term "magnesium threonate" in the claims of the '061 Patent based on statements made during prosecution, particularly of applications involving different claim language. Nor has Kappa provided any support for its argument that such statements would be "binding" upon construction of a term in a different, though related, patent (Dkt. 143, ¶ 22); because there is none.

### 4.    Kappa Again Attempts to Prematurely (and Improperly) Inject Section 101 Invalidity into Claim Construction.

Kappa's Section 101 arguments again miss the mark. Each time Kappa has prematurely alleged invalidity under Section 101, Plaintiffs have shown that Kappa's characterization of the Asserted Claims is wrong (*see, e.g.*, Dkt. 116 at 14-19) and cited controlling caselaw confirming the eligibility of the Asserted Claims (*see, e.g.*, Dkt. 103 at 16 (citing, *inter alia*, *Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338 (Fed. Cir. 2019)); Dkt. 101 at 4; Dkt. 147 at 15-19).[8] Nothing has changed.

Ignoring this, Kappa instead claims its arguments are "not presented to resolve patent eligibility, but to inform the proper scope of the claim term in light of the

---

[7] Kappa's statement that "[t]he amendment was made to overcome patentability rejections and was related to patentability" is likewise speculative and devoid of any analysis. Dkt. 143, ¶ 19.

[8] Kappa chiefly relies on *Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, (1948)—a 78-year-old case—to argue the '061 Patent is invalid under Section 101. But *Funk Brothers* was decided **before** 35 U.S.C. § 101 was enacted and evaluated the claims at issue under standards for obviousness, not patent eligibility. *See* Dkt. 147 at 18 n.8.

- 12 -

specification." Dkt. 143, ¶ 23; *see also id.*, ¶ 36 (arguing that "Defendant's construction is grounded in claim scope—not patent eligibility"). Not so. Throughout Kappa's brief, Kappa repeatedly argues that "magnesium threonate" is "a naturally occurring chemical compound [that] is a **product of nature and is not patent eligible**" (*id.*, ¶ 24), and "the '061 Patent specification teaches that magnesium threonate is a **naturally occurring composition of matter**" (*id.* at 12) (emphasis added). Kappa's entire construction is premised on this Court agreeing that the '061 Patent claims ineligible subject matter. *See id.*, ¶ 4 (construing "magnesium threonate" as "a magnesium salt of threonic acid . . . the chemical identity of which **may occur naturally in the human body**"). These are litigation-driven Section 101 arguments disguised as claim construction positions.

In any event, and as Plaintiffs have already explained, claim construction and invalidity are separate legal inquiries which, while related, need not be considered together. *See* Dkt. 116 at 22-23. To be sure, it is routine for courts to consider invalidity under Section 101 only **after** completing claim construction. *See, e.g.*, *Bancorp Servs., L.L.C. v Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-1274 (Fed. Cir. 2012) (noting that "it will ordinarily be desirable—and often necessary—to **resolve claim construction disputes prior to a § 101 analysis**, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter" (emphasis added)); *Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*, No. 15-cv-02177-SI, 2016 WL 283478, at *3 (N.D. Cal. Jan. 25, 2016) (declining to consider invalidity under Section 101 until after completing claim construction). The Court will already decide, *inter alia*, in response to Kappa's motion to dismiss (Dkt. 124-2), whether its Section 101 arguments have merit; if the Court rejects Kappa's Section 101 arguments (as it must), then it must also reject Kappa's proposed construction. In short, there is no reason to reach this issue now.

- 13 -

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court enter an order construing "magnesium threonate" according to its plain and ordinary meaning.

Dated: March 30, 2026                      HUGHES HUBBARD & REED LLP


                                           By:  /s/ *Jeffrey Gavenman*
                                           Attorneys for Plaintiffs
                                           NEUROCENTRIA, INC. and THREOTECH
                                           LLC


## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,124 words, which complies with this Court's Standing Order (ECF No. 16).

Dated: March 30, 2026                      HUGHES HUBBARD & REED LLP


                                           By:  /s/ *Jeffrey Gavenman*
                                           Attorneys for Plaintiffs
                                           NEUROCENTRIA, INC. and THREOTECH
                                           LLC

- 14 -

## CERTIFICATE OF SERVICE

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626.  On March 30, 2026, I served the following document(s):

**PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF**

on the parties stated on attached service list

| | |
|---|---|
| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

**BY COURT'S CM/ECF SYSTEM.**  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.

**BY E-MAIL.**  By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

☐    **(STATE)**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**(FEDERAL)**  I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 30, 2026, at Costa Mesa, California.

/s/ SALVATORE PICARIELLO
Salvatore Picariello

- 1 -