**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEUROCENTRIA, INC., a California corporation, THREOTECH LLC, a Nevada limited liability company, <br><br> Plaintiffs, <br><br> V. <br><br> MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS, a Texas limited liability company <br><br> Defendant and Counterclaimant <br><br> NEUROCENTRIA, INC., a California corporation, THREOTECH LLC, a Nevada limited liability company, and AIDP, INC., a California corporation. <br><br> Counter-Defendants. | Case No. CV-25-cv-05871-FLA-JPR <br><br><br> **DECLARATION OF RAJ ABHYANKER IN SUPPORT OF CLARIFYING DECLARATION OF SARA ADAMS** |

DECLARATION OF RAJ ABHYANKER IN SUPPORT OF CLARIFYING
DECLARATION OF SARA ADAMS
CASE NO.: CV-25-cv-05871-FLA-JPR

I, Raj V. Abhyanker, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and before this Court. I am counsel of record for Defendant Mando International, LLC d/b/a Kappa Nutrition Labs in the above-captioned action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I submit this declaration in support of the Clarifying Declaration of Sara Adams, Ph.D. ("Dr. Adams"), filed concurrently herewith, and in response to Plaintiffs' characterization of Dr. Adams's credentials and prior sworn statements.

3. Dr. Adams submitted a Declaration in support of Defendant's Joint Claim Construction Statement (ECF No. 95-2). That Declaration set forth her independent scientific opinions regarding the construction of "magnesium threonate" and related considerations. The Declaration was structured around scientific opinions, each grounded in Dr. Adams's review of the patent, prosecution history, and scientific literature.

4. The Clarifying Declaration filed concurrently herewith provides additional context regarding the distinction between academic approval and formal administrative conferral of the degree.

**A. Plaintiffs' March 30, 2026 Contentions and Dr. Adams's Clarification**

5. It was not until Plaintiffs' counsel Mr. Cox's email of yesterday, March 30, 2026 that Plaintiffs first identified with any specificity the particular statement they contend was false and the basis for that contention. Prior to that date, Plaintiffs had made general requests for Cambridge correspondence, but had not identified which statement in Dr. Adams's declarations they contended was false, which Cambridge

DECLARATION OF RAJ ABHYANKER IN SUPPORT OF CLARIFYING DECLARATION OF SARA ADAMS
CASE NO.: CV-25-cv-05871-FLA-JPR

language they contended contradicted it, or what relief they believed was warranted.

6. None of the issues raised by Plaintiffs' counsel bear on the substance of Dr. Adams's scientific opinions or her qualifications to provide testimony as a person of ordinary skill in the art.

7. Upon receiving Mr. Cox's March 30 email identifying those contentions with specificity, I promptly prepared and transmitted the Clarifying Declaration of Dr. Adams to Plaintiffs' counsel the same day.

**B. Dr. Adams's Deposition Testimony as a Person of Ordinary Skill in the Art**

8. The Defendant retained Dr. Adams to sit for a deposition on March 18, 2026 as a person of ordinary skill in the art ("POSITA") in connection with claim construction of the term "magnesium threonate" in U.S. Patent No. 8,637,061 (the "'061 Patent"), and in view of the narrowing of the terms for construction as stipulated through agreement between the Parties effectuated in the Joint Notice of Narrowed Issues for Claim Construction. (Dkt. 111).

9. Attached hereto as **Exhibit B** are true and correct copies of relevant excerpts from the certified transcript of the deposition of Dr. Sara Adams, Ph.D., taken on March 18, 2026, and reported by Carol S. Nygard, a Certified Shorthand Reporter, of Veritext Legal Solutions. The full transcript spans 238 pages. The excerpts attached include the cover page, index, and pages described below, which contain the testimony cited in this declaration. The complete transcript is available and can be lodged with the Court upon request.

10. Dr. Adams' role was narrowed for her deposition on March 18, 2026

DECLARATION OF RAJ ABHYANKER IN SUPPORT OF CLARIFYING
DECLARATION OF SARA ADAMS
CASE NO.: CV-25-cv-05871-FLA-JPR

(noticed by both the Plaintiffs counsel and the Defendant's counsel) to provide an independent scientific opinion on how a person of ordinary skill in the art would understand the disputed claim term "magnesium threonate" in light of the intrinsic record and the relevant scientific literature.

11. At deposition, Dr. Adams confirmed that her role was to explain scientific principles, not to interpret patent claims or offer legal opinions. See Depo. Tr. 172:6–18 ("Q. Dr. Adams, you're not offering any legal opinions about anything in this right now; right? A. No, absolutely not. Q. You're not a lawyer;? A. No. Q. And your role here is to explain scientific principles; correct? . . . Q. As opposed to interpret patent claims? A. Yes, that would be the case."). *Id.*

12. Dr. Adams further confirmed at deposition that she considers herself a person of ordinary skill in the art with respect to the subject matter at issue. See Depo. Tr. 63:20–23 ("Q. You consider yourself a person of that skill; right? A. Yes."). Defendant framed the deposition as an inquiry into what "an ordinary person skilled in the art would understand 'magnesium threonate' to mean." Depo. Tr. 18:23–25.

13. Dr. Adams testified that she was not directly construing patent claims in her work for this case. See Depo. Tr. 123:21-24 ("Q. Is there anything in this letter about construing the terms of those claims? A. Not directly construing them, not — not me personally. . . . I took it as I provide the sort of scientific understanding and insight, and then it's essentially my experience in the past is on the lawyer to identify that which is relevant to their case."). See Depo. Tr. 124:1-4.

14. When shown the Joint Claim Construction Statement, Dr. Adams stated: "I have to say this seems to be a little bit — beyond my bandwidth. It's such legalese

. . it doesn't really mean anything to me scientifically, and I don't have an opinion on it. That's not what I was doing." Depo. Tr. 141:8-20.

15. Consistent with her limited role, Dr. Adams has no formal patent law training. Depo. Tr. 90:19–20. Her engagement letter described her assignment as providing an independent scientific opinion with "work will focus on scientific and technical opinions relevant to validity and invalidity". Depo. Tr. 116:1-21; Tr. 117:18-23).

**C. Dr. Adams's Academic Credentials and Ph.D. Status**

16. At no time did I have reason to question Dr. Adams's academic qualifications. Dr. Adams's curriculum vitae, attached as Exhibit A to her prior Declaration (ECF No. 95-2), reflects a Ph.D. in Biochemistry from the University of Cambridge (2010–2015), and her publications are independently verified through her Cambridge-administered ORCID ID. Depo. Tr. 156:15-25; 159:18–160:7.

17. At deposition, Dr. Adams testified at length about the Cambridge Ph.D. process and her academic standing. She explained that her viva voce examination took place in approximately January 2015, and that her corrections were submitted in approximately January or February 2017. Depo. Tr. 10:9–11; 11:7–9; 160:14–15. She further testified that the corrections were acknowledged and approved by her examiners at the time of submission. See Depo. Tr. 11:5-15.

18. **Exhibit C** is a true and correct copy of an email chain with Cambridge reflecting resolution of these corrections from 2017.   Personal information unrelated to this matter has been redacted in **Exhibit C**.

19. Dr. Adams testified that there are three possible outcomes from a Cambridge

viva: pass outright, pass with corrections (major or minor), or fail with no possibility of recovery. Depo. Tr. 11:16 to Tr:12:6. She stated that she "met all the criteria in that scope" of the required corrections. Depo. Tr. 11:1–2. She testified unequivocally that her thesis work "satisfied Cambridge Ph.D. requirements," stating: "Absolutely." Depo. Tr. 11:4–6.

20. Dr. Adams further testified that the University of Cambridge, through the Degree Committee—which she identified as "the granting authority within the university of Cambridge"—formally acknowledged completion of all academic and examination requirements in April 2025. Depo. Tr. 12:9–17; 13:16–17; 161:3-7; 163:17-20. She confirmed that the only remaining step is a formal degree ceremony, which she described as "administrative and ceremonial only." Depo. Tr. 13:12–14. She explained that she has been unable to attend the in-person ceremony required by Cambridge due to immigration-related travel constraints. Depo. Tr. 12:3–9.

21. Dr. Adams testified that the timing of the formal degree ceremony "does not change the university's determination that [she] satisfied the Ph.D. requirements" and "doesn't affect anything about [her] scientific training or expertise." Depo. Tr. 13:23 to 14:9. She noted that at Cambridge, individuals who have passed their viva are "referred to as 'Doctor.'" Depo. Tr. 13:16–21.

22. Dr. Adams also explained that the delay between her 2017 submission of corrections and the April 2025 acknowledgment was caused by an administrative failure: she submitted her corrections to her internal advisor, Brian Hendrick, who "did not then send them back to the Degree Committee." Depo. Tr. 161:19–22. Upon discovering this lapse, Dr. Adams contacted Cambridge directly to initiate

DECLARATION OF RAJ ABHYANKER IN SUPPORT OF CLARIFYING
DECLARATION OF SARA ADAMS
CASE NO.: CV-25-cv-05871-FLA-JPR

the resolution. Depo. Tr. 161:11–14, **Exhibit C**.

**D. Context for Prior Testimony Regarding Ph.D. Completion**

23. Plaintiffs' counsel questioned Dr. Adams at deposition about testimony she gave in a November 2017 family law proceeding, in which she was asked "When do you expect to complete your Ph.D.?" and answered "I don't know. As soon as I can." Depo. Tr. 163:11–15. Dr. Adams explained that at the time she gave that answer, she had already submitted her corrections (in January or February 2017), and that her divorce attorney had advised her that the court's finding of an incomplete Ph.D. would result in a more favorable spousal support. Depo. Tr. 164:6–11.

24. When asked whether the April 2025 Degree Committee acknowledgment indicated that she had "now completed" her Ph.D., Dr. Adams answered: "I would say so." Depo. Tr. 163:17–20. In context, this answer referred to the finalization of the Degree Committee's administrative process, not to the underlying academic merit of her work, which the record shows was established years earlier. That distinction is consistent with Dr. Adams's earlier testimony on the same day that her thesis work "satisfied Cambridge Ph.D. requirements" (see Depo. Tr. 12:4–6) and that the remaining step was "administrative and ceremonial only" (see Depo. Tr. 13:12–14).

**E. Dr. Adams's Scientific Qualifications Are Not in Dispute**

25. Regardless of the administrative status of the degree conferral ceremony, Dr. Adams's scientific qualifications to serve as a POSITA declarant in this matter are not in dispute. She testified to completing all Ph.D. research by 2015, defending her dissertation at Cambridge, publishing peer-reviewed papers with her

DECLARATION OF RAJ ABHYANKER IN SUPPORT OF CLARIFYING
DECLARATION OF SARA ADAMS
CASE NO.: CV-25-cv-05871-FLA-JPR

collaborator Professor Jeanne LaSalle at U.C. Davis, working as a biotech consultant and founder since 2018, and spending ten years in drug discovery and development. Depo. Tr. 14:10–15; 152:2–5; 133:14–17.

26. Dr. Adams testified that she considers herself an expert in pharmaceutical formulations and dosage forms based on her decade of drug discovery experience, and she confirmed that her published thesis has a submission date of May 2014, demonstrating that her research was "completed over a decade ago now." Depo. Tr. 133:12–17; 14:14–15.

**F. Contemporaneous Cambridge Email Corroborating Dr. Adams's Testimony**

27. Attached hereto as **Exhibit D** are true and correct copies of two email communications from the University of Cambridge provided to me by Dr. Adams:

(1) An email dated April 28, 2025, from Miriam Rice, Student Registry Administrator, University of Cambridge, to Dr. Adams, with the subject line "Confirmation of Approval for the PhD Degree - Sarrita Adams - 300381456," stating that on the recommendation of her Examiners the Degree Committee for her Faculty agreed to approve her for the PhD Degree. The email further notes that the degree will not be formally received until it has been conferred at a Congregation of the Regent House, either in person or in absentia; and

(2) An email dated April 30, 2025, from Christine Thulborn, Postgraduate Administrator, Department of Biochemistry, University of Cambridge, to Dr. Adams, with the subject line "Approval for the PhD Degree - Sarrita Adams - 300381456," congratulating Dr. Adams on the approval of her PhD Degree.

DECLARATION OF RAJ ABHYANKER IN SUPPORT OF CLARIFYING
DECLARATION OF SARA ADAMS
CASE NO.: CV-25-cv-05871-FLA-JPR

28. The April 2025 emails in **Exhibit D** predates the commencement of this litigation by several months and were not generated in response to this dispute. It reflects the University of Cambridge's contemporaneous notification to Dr. Adams of the Degree Committee's approval of her PhD.

29. The existence of this document, provided to me by Dr. Adams, is consistent with and corroborates the testimony she gave during the morning examination on March 18, 2026. (See **Exhibit C**, Depo. Tr. 12:9-13:17.)

**G. Cambridge Degree Process, Conferral Status, and Immigration Travel Constraints, Expected Conferral on May 2, 2026.**

30. Attached hereto as **Exhibit E** is a true and correct copy of the University of Cambridge's publicly available webpage titled 'Degree Approval and Conferment,' as it appeared on March 31, 2026 at

https://www.cambridgestudents.cam.ac.uk/graduation/degree-approval-and-conferment.

31. As reflected in **Exhibit E**, Cambridge publicly distinguishes between unconditional approval of a degree - which occurs when the Student Registry formally confirms it in writing - and formal conferral at a Congregation of the Regent House. The page further confirms that following approval, a student may choose to delay conferral or receive the degree in absentia by contacting their college's Praelector or Tutorial Office, which is precisely the process Dr. Adams initiated as reflected in **Exhibit E**. This public documentation independently corroborates Dr. Adams's deposition testimony and the distinction between academic approval and formal administrative conferral at issue in this matter.

32. Attached hereto as **Exhibit F** is a true and correct copy of an emails dated

DECLARATION OF RAJ ABHYANKER IN SUPPORT OF CLARIFYING
DECLARATION OF SARA ADAMS
CASE NO.: CV-25-cv-05871-FLA-JPR

March 31, 2026 between Dr. Adams the Tutorial Office of Caius College, University of Cambridge, forwarded to me by Dr. Adams. In that emails, Dr. Adams states that she is attempting to arrange for the conferral of her degree in absentia and requests guidance on completing the process, noting that she had been unable to sign up online via Camsis. This email reflects Dr. Adams's active effort to complete the conferral process.

33. Dr. Adams informed me today on March 31, 2026 that she selected the preferred Congregation Date of May 2, 2026, which is approximately one month from now, at which the degree will be conferred.

34. Dr. Adams informed me that she was unable to travel to Cambridge to attend a degree ceremony in person during the period from March 2025 through approximately early 2026 because her green card had been lost and her renewal application was pending during that time. As reflected in Dr. Adams's Clarifying Declaration, despite wishing to complete the degree conferral process in person, she has now initiated the in-absentia conferral process, as she does not wish for the incorrect assertions made by Plaintiff's counsel to continue to be a focal point.

35. Attached hereto as **Exhibit G** is a true and correct copy of the USCIS online case history for Dr. Adams's Form I-90, Application to Replace Permanent Resident Card, as displayed on her USCIS online account on March 30, 2026, provided to me by Dr. Adams. Certain identifying numbers have been redacted. As reflected in **Exhibit G**, Dr. Adams filed her I-90 application on March 26, 2025, and her replacement card was produced on December 12, 2025, reflecting a renewal period of approximately nine months during which international travel carried the risk of being unable to re-enter the United States.

DECLARATION OF RAJ ABHYANKER IN SUPPORT OF CLARIFYING DECLARATION OF SARA ADAMS
CASE NO.: CV-25-cv-05871-FLA-JPR

36.I am providing these materials to ensure that the record before this Court accurately and fully reflects the documentary basis for Dr. Adams's academic standing, the circumstances surrounding the pending formal conferral of her degree, and the timeline of events relevant to Plaintiffs' allegations.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 31, 2026

/s/ Raj V. Abhyanker
Raj V. Abhyanker
Attorney for Defendant:
Mando International, LLC

DECLARATION OF RAJ ABHYANKER IN SUPPORT OF CLARIFYING
DECLARATION OF SARA ADAMS
CASE NO.: CV-25-cv-05871-FLA-JPR