Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:       (650) 965-8731
Facsimile:       (650) 989-2131


Attorney for Defendant,
Mando International, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC., a California corporation, and THREOTECH LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS, a Texas limited liability company<br><br>Defendant.<br><br>v.<br>AIDP, INC.,<br>Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT**<br><br>Hearing:       April 17, 2026<br><br>Time:          1:30 p.m.<br><br>Courtroom:  6B, 6th Floor<br><br>Hon. Fernando L. Aenlle-Rocha |

# TABLE OF CONTENTS

**I. INTRODUCTION**   **1**

**II. PERSONAL JURISDICTION: NO WAIVER OR CONSENT EXTENDS TO THREOTECH'S NEW CLAIMS**   **1**

**III. THREOTECH DOES NOT HOLD THE PATENT RIGHTS NECESSARY FOR STANDING**   **1**

A. The FAC Cannot Be Rescued by Recharacterizing "Assignment" as "License"   1

B. The MCA's Own Terms Defeat ThreoTech's Ownership Claim   2

C. The APEX Agreement Is a Direct Admission Against Interest   3

D. WiAV Does Not Save ThreoTech's Exclusive Licensee Standing Under These Facts   4

**V. THE '061 PATENT IS INELIGIBLE UNDER 35 U.S.C. § 101**   **4**

A. Patent Ineligibility Under 35 U.S.C. § 101 Is Properly Resolved at the Pleading Stage   4

B. No Factual Dispute Precludes Early Resolution Here   6

C. Conventional Application of a Natural Phenomenon Supplies No Inventive Concept   7

D. Dismissal With Prejudice Is Appropriate Where Amendment Would Be Futile   8

**VI. THREOTECH'S INDEPENDENT PLEADING FAILURES**   **9**

**VII. TRADEMARK STANDING FAILS ON CHAIN-OF-TITLE GROUNDS**   **10**

A. The Recorded Assignment History Identifies a Gap ThreoTech Does Not Fill   10

B. ThreoTech's Own Pleading Confirms Its Licensee Status   11

C. AIDP's Authority to Act as Licensor Under the TMLA Is Not Established   12

D. The Post-Termination Trademark Claims Require a Valid Termination ThreoTech Has Not Pleaded   12

**VIII. THE FALSE-ADVERTISING COUNTS LACK A PLAUSIBLY PLEADED OBJECTIVE FALSITY BENCHMARK**   **13**

A. ThreoTech Has Abandoned the TMLA Benchmark - But the Replacement Is Conclusory   13

B. The Patent Cannot Serve as the Falsity Benchmark   14

C. Count VIII Cannot Survive Without the TMLA   14

**IX. THE UCL AND COMMON-LAW UNFAIR-COMPETITION COUNTS**

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT

Case No. 2:25-cv-05871-FLA-JPR

**FAIL WITH THEIR PREDICATE CLAIMS**                                    **15**

**X. THE TMLA IS NOT PLAUSIBLY ENFORCEABLE BY THREOTECH 15**

A. AIDP Lacked Authority to Execute the TMLA as Licensor              15

B. Kappa's Alternative Pleading Positions Are Entirely Consistent     16

C. The Fraud Counterclaim Creates an Independent Bar to Enforcement   17

D. ThreoTech's Authority to Terminate Was Not Established When Exercised 17

**VIII. CONCLUSION**                                                  **18**

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Absorb Health*, 2:17-cv-07031 (C.D. Cal. filed Sept. 22, 2017) .................... 11

*AIDP, Inc. v. Nutriland Group, Inc.*, No. 2:21-cv-04621 .................... 11

*AIDP, Inc. v. Teraputics*, 1:18-cv-6334 (E.D.N.Y. Nov. 7, 2018) .................... 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) .................... 5

*Ashcroft v. Iqbal, 556 U.S. 662 (2009)* .................... 10, 18

*Dialware ,v. Hasbro, Inc.*, No. CV 16-9012-R (C.D. Cal. Mar. 22, 2017) .................... 5, 7

*Mayo CollabServs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012) .................... 6, 9

*Morrow v. Microsoft Corp., 499 F.3d 1332, 1340 (Fed. Cir. 2007)* .................... 3

*Neurocentria v. Green Jeeva 2:24-cv-06919-MWC-JPR (C.D. Cal.)* .................... 11

*Relevant v. MindGeek*2:21-cv-03174-MCS-KES (C.D. Cal. Aug. 30, 2021) .................... 5

*Sanderling v. Snap Inc.*, 2021 U.S. Dist. LEXIS 141110 (C.D. Cal. 2021) .................... 4,6,7

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) .................... 2

*Wolf v. Capstone Photography*, 2:13-CV-09573 (C.D. Cal. Oct. 28, 2014) .................... 6, 7

## I. INTRODUCTION

1. ThreoTech's opposition rests on recharacterizing its alleged "assignment" as an exclusive license, but the Court must evaluate the FAC as pleaded, not as reinterpreted. The FAC still fails to establish a plausible patent rights structure, a coherent chain of title or enforcement authority, and any objective falsity standard for its false advertising claims. Accordingly, the FAC should be dismissed as to ThreoTech.

## II. PERSONAL JURISDICTION: NO WAIVER OR CONSENT EXTENDS TO THREOTECH'S NEW CLAIMS

2. The Consent Notice was a case-specific litigation statement, not a blanket waiver of jurisdiction for new claims. The FAC introduces new causes of action, and Kappa expressly preserved its Rule 12 defenses. The prior Northern District action does not create ongoing jurisdiction, especially for unrelated patent claims. Finally, ThreoTech cannot invoke the TMLA forum clause without plausibly alleging a valid assignment, and in any event, that clause does not apply to independent patent claims.

## III. THREOTECH DOES NOT HOLD THE PATENT RIGHTS NECESSARY FOR STANDING

**A. The FAC Cannot Be Rescued by Recharacterizing "Assignment" as "License"**

3. ThreoTech's opposition concedes the operative facts and asks only that the Court interpret them differently: "Neurocentria owns the '061 Patent; ThreoTech

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

holds, at most, an exclusive license." ThreoTech Opp. at page 14. That is exactly what Kappa argued. But the FAC does not say that. FAC ¶8 says ThreoTech "holds by assignment all rights, title, and interest" in the patents. Both propositions cannot be true at once, and Plaintiffs cannot cure that contradiction by rewriting the FAC in opposition. On that ground alone, ThreoTech has failed to plead a coherent patent-rights theory.

4.  ThreoTech's opposition attempts to give this phrase a novel meaning, that it merely signals "holder of certain rights granted to it by another party" without citing a single case construing that phrase to mean something less than complete assignment. The phrase means what it has always meant. Plaintiffs used it deliberately. Plaintiffs cannot plead full assignment in the FAC and then, once challenged, recharacterize that allegation as an exclusive license in opposition. Opposition briefing cannot amend the complaint.

**B. The MCA's Own Terms Defeat ThreoTech's Ownership Claim**

5.  The MCA ThreoTech's own exhibit, ECF 110-D, contains three provisions that independently defeat ThreoTech's claim of patent ownership: Section 3.4: "Neurocentria will retain ownership of the Licensed IP." The operative agreement governing the parties' relationship expressly provides that Neurocentria retains ownership of the patents. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit". See *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

6. Section 7.4(b): Neurocentria "shall have overall control over the enforcement and defense of any Licensed Patents." The Lead Party may initiate

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

suit only if "Neurocentria agrees to the initiation of such suit," must keep Neurocentria "fully informed of the status and strategy," must afford Neurocentria the opportunity to review all material filings, and may not settle without Neurocentria's prior consent. An exclusive licensee whose licensor retains ultimate enforcement control, settlement veto authority, and supervisory oversight over litigation strategy does not hold all substantial rights. "When a party holds all rights or all substantial rights, it alone has standing to sue for infringement." *See Morrow v. Microsoft Corp., 499 F.3d 1332, 1340 (Fed. Cir. 2007).*

7. Section 1.17 and 1.15: "Licensed Patents" means patents owned or Controlled by Neurocentria." ThreoTech's enforcement rights depend entirely on Neurocentria's continued ownership. Rights that are conditioned on and flow through the licensor's ownership are the structure of a license, not an assignment. Plaintiffs' own *Green Jeeva* complaint captured this precisely, describing ThreoTech as holding rights "through its assignor, Magceutics" derivative rights language, not ownership language.

**C. The APEX Agreement Is a Direct Admission Against Interest**

8. On February 12, 2026, three weeks after the proposed FAC was filed as Dkt. 94-1 ThreoTech's CEO Edward Lee executed the APEX Agreement identifying Neurocentria as patent owner and ThreoTech as "exclusive licensee." He did so under the APEX program's express representation and warranty requirements, with full knowledge of what the proposed FAC claimed on ThreoTech's behalf. He said the opposite.

9. ThreoTech's attempt to reconcile this with other evidence fails, as standing

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

must be established from the pleadings. The contemporaneous, sworn APEX characterization, now unrebutted, undermines any claim that ThreoTech holds all substantial rights.

**D. WiAV Does Not Save ThreoTech's Exclusive Licensee Standing Under These Facts**

10. ThreoTech relies on WiAV, which permits an exclusive licensee to have standing where it holds exclusionary rights, but clearly distinguishes that only a party with all substantial rights may sue alone. While ThreoTech has joined Neurocentria as co-plaintiff-consistent with an exclusive licensee structure- the FAC improperly alleges that ThreoTech owns "all rights, title, and interest by assignment." This creates a direct contradiction with the governing agreements and the actual ownership structure. Simply adding Neurocentria does not cure a complaint premised on a false ownership theory. The FAC must be amended to accurately reflect ThreoTech's status as an exclusive licensee, not the assignee of all rights.

**V. THE '061 PATENT IS INELIGIBLE UNDER 35 U.S.C. § 101**

**A. Patent Ineligibility Under 35 U.S.C. § 101 Is Properly Resolved at the Pleading Stage**

11. Courts routinely resolve patent eligibility as a matter of law at the pleading stage, without the need for claim construction, discovery, or a full merits proceeding. As the Federal Circuit confirmed in *Sanderling Management Ltd. v. Snap Inc.*, 2021 U.S. Dist. LEXIS 141110 (C.D. Cal. 2021), aff'd, No. 21-2173

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

(Fed. Cir. Apr. 12, 2023), § 101 disputes "may be resolved on a Rule 12(b)(6) motion when there are no factual allegations that, taken as true, prevent resolving the eligibility as a matter of law." Similarly, in *Dialware Communications, LLC v. Hasbro, Inc.*, No. CV 16-9012-R (C.D. Cal. Mar. 22, 2017), the court granted dismissal under Rule 12(b)(6) on § 101 grounds, affirming that patent eligibility "is an issue of law" that courts may properly decide on a motion to dismiss. *See also Relevant Holdings, LLC v. MindGeek USA Inc.*, No. 2:21-cv-03174-MCS-KES (C.D. Cal. Aug. 30, 2021) (granting judgment on the pleadings on § 101 grounds where no material factual dispute precluded the eligibility determination).

12. The Supreme Court's two-step framework from *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), applies equally at this early stage. There is no requirement that a court await claim construction before ruling. As the *Sanderling* Federal Circuit panel expressly held, "claim construction is not an inviolable prerequisite to a validity determination under § 101." If the claims are directed to ineligible subject matter under all plausible constructions, the court may proceed directly to resolution. A party seeking to delay a § 101 ruling through a claim construction request must provide an actual proposed construction, demonstrate it is not frivolous, and articulate how it would materially change the Alice analysis — mere invocation of future construction arguments is insufficient. *Sanderling*, No. 21-2173, slip op. at 8-9.

13. Under step one of *Alice*, the Court asks whether the claims are "directed to" a patent-ineligible concept - including laws of nature and natural phenomena. If so, step two asks whether the claim elements, considered individually and as an

5

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS THREOTECH LLC'S FIRST
AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

ordered combination, add enough to supply an "inventive concept" that transforms the claim into a patent-eligible application. *Alice*, 573 U.S. at 217. Critically, "a claim reciting an abstract idea [or natural phenomenon] does not become eligible merely by adding the words 'apply it.'" *Wolf v. Capstone Photography*, No. 2:13-CV-09573 (C.D. Cal. Oct. 28, 2014) (citing *Alice*). The same principle applies with full force to claims directed at naturally occurring phenomena or laws of nature. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012) (claims that merely apply a natural law without adding significantly more are patent ineligible).

14. The claim construction hearing is scheduled for the same date as this motion hearing, April 17, 2026. The sole disputed term is "magnesium threonate." Kappa's proposed construction "a pre-formed ionic salt compound, the chemical identity of which may occur naturally in the human body, and excluding mixtures of separate magnesium and threonate sources" is derived directly from the specification and prosecution history. ThreoTech's position that the term requires no construction because its "plain meaning" governs does not help Plaintiffs.

## B. No Factual Dispute Precludes Early Resolution Here

15. The cases before this Court confirm that a plaintiff cannot defeat a § 101 motion simply by invoking the specter of future factual disputes. In *Sanderling*, the district court rejected the plaintiff's "generalized assertions that factual considerations about the state of the art preclude a decision at the pleadings stage," and the Federal Circuit affirmed that this was proper because the plaintiff "failed to

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

timely identify . . . any specific fact disputes." Likewise, in *Relevant Holdings*, the court dismissed with prejudice where the plaintiff "fail[ed] to allege, let alone speculate about, what those 'fundamental facts' might be" that would present a material dispute. And in *Wolf v. Capstone Photography*, the court found that claim construction was unnecessary where "plaintiff offers no argument as to how claim construction would aid the court in applying § 101 to these non-technical terms."

16. Here, Plaintiffs has not identified any specific factual dispute or proposed claim construction that would change the § 101 analysis. The claims on their face are directed to the naturally occurring phenomenon at issue. No amendment to the complaint can alter what the patent itself discloses, and "no amendment to a complaint can alter what a patent itself states." *Sanderling*, No. 21-2173.

## C. Conventional Application of a Natural Phenomenon Supplies No Inventive Concept

17. Even assuming arguendo that Plaintiff could point to some additional claim element beyond the naturally occurring subject matter, that element must do more than "simply state the [natural phenomenon] while adding the words 'apply it.'" *Dialware*, No. CV 16-9012-R at 5. In *Dialware*, the court found no inventive concept where the patents relied on "generic descriptors rather than technical elements" and the components recited were "common" and well-understood. In *Wolf*, the court similarly found that "the addition of generic computers and a web site does not . . . meaningfully limit the claimed subject material." And in *Relevant Holdings*, the court dismissed claims built around a mathematical formula where

7

"the underlying concept remains" a fundamental practice and the computer implementation was "well-understood, routine, [and] conventional."

18. Where, as here, the only thing added to a naturally occurring phenomenon is conventional, well-understood implementation - whether a generic computer, a standard laboratory process, or routine data analysis - that addition cannot transform ineligible subject matter into a patent-eligible invention. *Mayo*, 566 U.S. at 73; *Alice*, 573 U.S. at 217.

**D. Dismissal With Prejudice Is Appropriate Where Amendment Would Be Futile**

Courts have consistently dismissed § 101 claims with prejudice where no amendment could cure the fundamental deficiency. In *Sanderling*, dismissal with prejudice was affirmed because the proposed amendment "merely sought to add conclusory statements that the claimed steps were not well-known, routine, and conventional," and courts "are not required to credit such conclusory allegations." In *Relevant Holdings*, the court dismissed with prejudice where the plaintiff "neither suggested any amendments nor requested leave to amend generally." Similarly, in *Wolf*, the court dismissed with prejudice upon finding that plaintiff's arguments failed to identify any inventive concept and that the patents as written were irretrievably directed to abstract or ineligible subject matter.

19. At Alice Step One: The applicants told the USPTO that the claimed benefit is "intrinsic to the compound magnesium threonate" and that "[t]his superior

8

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

property is not observed by mixing magnesium and threonate from different salt complexes." This statement locates the alleged invention in a natural property of the compound, its bioavailability, and neurological effect. A natural property of a naturally occurring compound is a natural phenomenon that falls within the product-of-nature exception to § 101.

20. At Alice Step Two: The Examiner's Statement of Reasons for Allowance identifies only "the additional step to form it into a specific dosage form" as the distinguishing feature. "Solid, semi-solid, semi-liquid, or gel" encompasses every conceivable oral delivery format, tablets, capsules, powders, gel caps, and gummies. A limitation covering all possible oral delivery forms adds nothing substantive. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,566 U.S. 66 (2012)*. at 79–80.

21. ThreoTech cannot simultaneously argue at Step One that the claims are really about magnesium threonate's superior properties and argue at Step Two that the dosage form adds an inventive concept, because the prosecution history commits ThreoTech to the opposite position at both steps. The benefit is intrinsic to the compound; the dosage form is conventional.

## VI. THREOTECH'S INDEPENDENT PLEADING FAILURES

22. The patent infringement pleading defects as to ThreoTech mirror those addressed in the Neurocentria Reply and are incorporated here by reference. Three points merit emphasis in ThreoTech's context.

23. First, the Plant-Based Product infringement allegation, relying on a single "same trusted formula" marketing slogan, is deficient as to ThreoTech for the same

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS THREOTECH LLC'S FIRST
AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

reasons it is deficient as to Neurocentria. An advertising slogan is not a technical description of composition.

24. Second, ThreoTech's contributory infringement allegation is self-defeating because the FAC simultaneously describes the products' broad general wellness applications and alleges they have no substantial noninfringing use.

25. Third, ThreoTech's induced infringement allegations lack specific intent. The claim that general cognitive health marketing constitutes specific intent to cause consumers to practice every limitation of a composition patent is precisely the kind of legal conclusion that *Iqbal* forbids.

## VII. TRADEMARK STANDING FAILS ON CHAIN-OF-TITLE GROUNDS

### A. The Recorded Assignment History Identifies a Gap ThreoTech Does Not Fill

26. The publicly recorded USPTO assignment history for the Magtein marks shows: (1) a name change from Magceutics to Neurocentria in 2015; and (2) a direct assignment from Neurocentria to ThreoTech, executed May 29, 2024, recorded July 20, 2024. Dkt. 121-1, Abhyanker Decl. ¶¶ 9–10, Exs. 6–7. AIDP does not appear in the recorded chain at any point.

27. Plaintiffs explain this by arguing that AIDP held only a license, not an ownership interest, and therefore, there was nothing to record before the 2024 assignment. But that explanation creates a direct conflict with AIDP's own prior Rule 11 representations to three federal courts, including this one, that AIDP held "all rights, title, and interest" in the Magtein marks "by assignment." Those

10

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

representations were made in 2017 (*Absorb Health*, C.D. Cal.), 2018 (*Teraputics*, E.D.N.Y.), and 2021 (*Nutriland*, C.D. Cal.). Under Rule 11, counsel certified they had a reasonable basis to believe those ownership allegations were factually accurate.

28. Plaintiffs' current position,  that AIDP was always only a licensee, means those Rule 11 representations were false, which raises its own serious concerns. The Court should not accept, without explanation, a chain-of-title narrative that requires concluding that AIDP's prior counsel repeatedly made false Rule 11 ownership certifications across three federal courts over four years.

**B. ThreoTech's Own Pleading Confirms Its Licensee Status**

29. The most recent prior complaint filed by these same plaintiffs in this district in *Green Jeeva*, filed August 2024, one year before this action, simultaneously described ThreoTech as holding "the exclusive license to market, sell, and distribute Magtein" and as holding rights "through its assignor, Magceutics." ECF 110, Ex. F, ¶14. Those are mutually exclusive legal characterizations. A true assignee of all rights does not also hold "an exclusive license" and does not hold rights "through" the original owner divestment is complete. The "through its assignor" language is the language of derivative rights exactly what an exclusive licensee would say, and exactly what ThreoTech is.

30. ThreoTech's opposition also relies on FAC ¶122, which refers to "ThreoTech's licensed Magtein Marks." The word "licensed" is ThreoTech's own word in ThreoTech's own pleading. Having described the Magtein marks as "licensed" in Count V, ThreoTech cannot maintain in its brief that it owns those

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

marks outright as a registered trademark owner.

## C. AIDP's Authority to Act as Licensor Under the TMLA Is Not Established

31. ThreoTech argues that AIDP held an exclusive license in the Magtein marks under the MCA, and therefore could sublicense them to Kappa through the TMLA. But MCA Section 2.1(c) describes AIDP's role as "exclusive distributor and licensee of MgT as an ingredient," not as the owner of the marks or as a party authorized to sublicense them to finished-product companies like Kappa. TMLA Exhibit A requires licensees to describe Magtein® as "a trademark of Magceutics®, Inc. distributed exclusively by AIDP, Inc." identifying AIDP as distributor, not owner or authorized licensor.

32. TMLA Section 5(a)'s hedge, that AIDP "owns, or has been given the license to" the marks, is an implicit acknowledgment built into the contract itself that AIDP's title was uncertain at the moment it executed the TMLA. If AIDP truly held the marks by assignment as it had represented to three federal courts, there would be no need for the alternative formulation "or has been given the license to." That hedge is a concession of uncertainty that the FAC never resolves.

## D. The Post-Termination Trademark Claims Require a Valid Termination ThreoTech Has Not Pleaded

33. Counts IV and V are partly premised on Kappa's alleged post-termination use of marks confusingly similar to the Magtein marks. That theory requires: (1) a valid TMLA; (2) a valid assignment of the TMLA to ThreoTech predating the May 8, 2024, breach notice; (3) a valid breach notice; and (4) a valid termination.

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS THREOTECH LLC'S FIRST
AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

34. ThreoTech was incorporated on February 21, 2024, only 77 days before it sent the May 8 breach notice. The FAC pleads the TMLA assignment in a single conclusory sentence. No instrument is identified. No date of assignment is alleged. No Kappa consent is pleaded. "Trademark licenses are not assignable in the absence of a clause expressly authorizing assignment." See *In re XMH Corp.*, 647 F.3d. None is pleaded here.

35. Without a valid assignment predating May 8, 2024, ThreoTech had no authority to send the breach notice, no authority to terminate in July 2024, and no post-termination restrictions to enforce. The post-termination theory fails independently of the underlying trademark ownership deficiency.

## VIII. THE FALSE-ADVERTISING COUNTS LACK A PLAUSIBLY PLEADED OBJECTIVE FALSITY BENCHMARK

**A. ThreoTech Has Abandoned the TMLA Benchmark - But the Replacement Is Conclusory**

36. ThreoTech's opposition now disavows reliance on the TMLA as the falsity benchmark for Counts VI and VII, arguing those counts instead allege that "no studies exist supporting the claims Kappa makes on its products. ThreoTech Opp. at 21. That recharacterization, if accepted, requires the Court to evaluate whether "no studies exist" is adequately pleaded as a false advertising theory. It is not. The allegation that "no studies proving efficacy exist for products containing that level of Magnesium L-Threonate" (FAC ¶¶ 128, 142) is a legal conclusion masquerading as a factual allegation. *Iqbal*, 556 U.S. at 678. The FAC does not

13

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

identify: which studies are claimed to be absent; what universe of clinical literature was searched; what dosage threshold is scientifically established as the minimum for cognitive benefit; which specific health claims Kappa made are asserted to be false; and what objective, peer-reviewed standard establishes that 43–44 mg per capsule is proven inefficacious. Without this specificity, the allegation that "no studies exist" is an assertion that any court applying *Twombly* would be justified in treating as a naked conclusion.

## B. The Patent Cannot Serve as the Falsity Benchmark

37. ThreoTech disclaims reliance on the '061 Patent, but Count VIII still depends on a "clinically effective" standard derived from the patent specification and GRAS framework.

38. More importantly, Dr. Liu testified that ThreoTech's actual product does not match the patented formula. Dkt. 121, *Liu Dep*. 266:14–16, Decl. of Raj Abhyanker, ⁋ 8, Ex. 5. ThreoTech cannot rely on a patent-based benchmark it does not itself follow, rendering the alleged falsity standard inconsistent and unreliable.

## C. Count VIII Cannot Survive Without the TMLA

39. Count VIII's falsity theory depends on the TMLA's dosage standards. If the TMLA is void or unenforceable, there is no governing standard, and the claim collapses. A false advertising claim cannot rely on a void contract, so without the TMLA, Count VIII lacks any falsity benchmark and must be dismissed.

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

## IX. THE UCL AND COMMON-LAW UNFAIR-COMPETITION COUNTS FAIL WITH THEIR PREDICATE CLAIMS

40. ThreoTech's UCL (Count X) and common law unfair competition (Count IX) claims are derivative of the trademark infringement, TMLA breach, and false advertising theories. While the UCL's unlawful prong borrows from underlying violations, if those predicate counts are inadequately pleaded, as they are here, the derivative UCL claim fails for lack of a surviving predicate. Therefore, the UCL and unfair competition counts should be dismissed along with the dependent claims.

## X. THE TMLA IS NOT PLAUSIBLY ENFORCEABLE BY THREOTECH

### A. AIDP Lacked Authority to Execute the TMLA as Licensor

41. The publicly recorded USPTO trademark assignment history shows the Magtein marks passing from Magceutics/Neurocentria in 2015, with no recorded transfers until the May 2024 direct assignment from Neurocentria to ThreoTech. AIDP does not appear in the recorded chain. The TMLA's own Exhibit A identifies AIDP as "distributor" of the marks, not owner. TMLA Section 5(a) hedges whether AIDP "owns, or has been given the license to" the marks.

42. AIDP's authority to act as licensor to Kappa in August 2022 depended entirely on some undisclosed authorization from Neurocentria. ThreoTech's opposition argues the MCA provides this authorization through AIDP's exclusive license. But the MCA describes AIDP as exclusive distributor-licensee of the

15

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

ingredient, not as a party authorized to sublicense the marks to finished-product companies with independent trademark compliance obligations. MCA Section 3.3 provides specific requirements for sublicenses, including Neurocentria's advance approval and the sublicensee's agreement to be bound by the MCA's restrictions. ThreoTech does not allege that Neurocentria approved the TMLA or that Kappa agreed to be bound by the MCA. A license granted without the licensor's authority is a legal nullity, regardless of the licensee's reliance.

**B. Kappa's Alternative Pleading Positions Are Entirely Consistent**

43. ThreoTech argues Kappa cannot simultaneously claim the TMLA is void while seeking a declaration it did not breach it. Rule 8(d)(3) expressly permits pleading alternative and even inconsistent defenses. Kappa's positions are in fact not inconsistent: (1) if void, there is nothing to breach; (2) if valid, Kappa complied with all its terms; and (3) even if valid, it is voidable for fraudulent inducement, entitling Kappa to rescission and return of royalties paid. These are three legally compatible theories that Rule 8 explicitly permits to be asserted simultaneously.

44. Moreover, ThreoTech's own position is internally contradictory in a way Kappa's is not. ThreoTech seeks to enforce the TMLA's post-termination restrictions against Kappa while simultaneously arguing the TMLA was validly executed by AIDP as licensor. But ThreoTech also argues AIDP held only a license, not ownership, in the marks. A party can only sublicense what it has. If AIDP held only a license to use the marks for ingredient distribution, it could not

16

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

grant Kappa a trademark license with post-termination obligations running to ThreoTech, a party that did not exist when the TMLA was executed and had no privity with Kappa at that time.

## C. The Fraud Counterclaim Creates an Independent Bar to Enforcement

45. Kappa's Second Amended Counterclaims allege in detail that Counterclaim-Defendants represented Magtein® products were "Manufactured in the USA" and fully GRAS-compliant, while Certificates of Analysis identified China as the country of origin for the primary active ingredient. These misrepresentations were made beginning in 2022, the year Kappa entered the TMLA and began paying royalties. SACC ¶¶ 76–78.

46. These proven misrepresentations constitute fraudulent inducement, entitling Kappa to rescind the TMLA and recover royalties paid. Kappa would not have entered the Agreement, paid royalties, or structured its business around Magtein® knowing the active ingredient was Chinese-sourced, routed through third countries with inconsistent origin declarations, and violated GRAS filing conditions. ThreoTech ignores this independent fraudulent inducement claim, which completely bars TMLA enforcement, regardless of whether the agreement was void *ab initio*.

## D. ThreoTech's Authority to Terminate Was Not Established When Exercised

47. The breach notice was sent on May 8, 2024, 77 days after ThreoTech's February 21, 2024, incorporation. The FAC pleads the TMLA assignment in one

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS THREOTECH LLC'S FIRST
AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

conclusory sentence with no instrument, no date, and no Kappa consent. Without a valid assignment predating May 8, ThreoTech had no licensor authority when it sent the breach notice, no licensor authority when it sent the July 2024 termination notice, and therefore no valid termination. Without a valid termination, there are no post-termination restrictions to enforce. ThreoTech's Count XI breach claim depends on a series of legally operative acts, assignment, breach notice, and termination, none of which is adequately pleaded. *Iqbal*, 556 U.S. at 678.

## VIII. CONCLUSION

48. The Court should dismiss all claims by ThreoTech. The patent claims (Counts I–III) fail for lack of standing and patent ineligibility; the trademark and contract claims (Counts IV, V, XI) fail due to defects in chain of title, authority, and assignment; the false advertising claims (Counts VI–VIII) lack a clear objective falsity standard; and the unfair competition claims (Counts IX–X) are derivative and likewise fail.

Dated: April 3, 2026

Respectfully submitted,
LEGALFORCE RAPC WORLDWIDE P.C.


/s/ Raj V. Abhyanker__
Raj V. Abhyanker
Attorney for Defendant:
Mando International, LLC

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Mando International, LLC, certifies that this brief contains approximately 4166 words, which complies with the word limit of L.R. 11-6.1. In addition, the page length complies with Judge Rocha's standing order Section III on Replies - General Requirements, which states "Replies shall not exceed 4,200 words **or** fifteen (15) pages for handwritten briefs and briefs prepared using a typewriter."

Dated: April 3, 2026                    Respectfully submitted,
                                        LEGALFORCE RAPC WORLDWIDE P.C.


                                        /s/ Raj Abhyanker
                                        Raj V. Abhyanker
                                        Attorney for Defendant:
                                        Mando International, LLC

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THREOTECH LLC'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR