Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:       (650) 965-8731
Facsimile:       (650) 989-2131


Attorney for Defendant,
Mando International, LLC


# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC., a California corporation, and THREOTECH LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS, a Texas limited liability company<br><br>Defendant.<br><br>v.<br><br>AIDP, INC.,<br>Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT**<br><br>Hearing:     April 17, 2026<br><br>Time:        1:30 p.m.<br><br>Courtroom:  6B, 6th Floor<br><br>Hon. Fernando L. Aenlle-Rocha |

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

1

## TABLE OF CONTENTS

**I. INTRODUCTION** — **1**

A. The TMLA forum-selection clause does not reach Neurocentria — 6

B. The Consent Notice Did Not Constitute Blanket Submission to Jurisdiction Over Neurocentria's New Claims — 7

**II. THE '061 PATENT IS INELIGIBLE UNDER 35 U.S.C. § 101** — **7**

A. 35 U.S.C. § 101 Is Properly Resolved at the Pleading Stage — 7

B. No Factual Dispute Precludes Early Resolution Here — 9

C. Conventional Application of a Natural Phenomenon Supplies No Inventive Concept — 11

D. Dismissal With Prejudice Is Appropriate: Amendment Would Be Futile — 10

E. The Pending USPTO Reexamination Supports Early Resolution — 12

F. The Court Should Not Defer the § 101 Question to Summary Judgment — 12

**III. NEUROCENTRIA'S INDEPENDENT PLEADING FAILURES REQUIRE DISMISSAL OF COUNTS I-III** — **13**

A. Count I Direct Infringement: Plant-Based Product Is Inadequately Alleged — 13

B. Count II -Contributory Infringement: Allegation Is Self-Defeating — 14

C. Count III Induced Infringement: Specific Intent Is Not Alleged — 14

**IV. NEUROCENTRIA LACKS STANDING TO ASSERT COUNTS VI-X** — **15**

A. Neurocentria does not satisfy Lexmark's zone-of-interests requirement — 15

B. The FAC itself ThreoTech, not Neurocentria, as the commercial actor — 15

C. The False Advertising Counts Are Deficient as to Neurocentria — 16

D. California UCL Standing Requires Economic Injury Not Alleged — 17

E. Kappa's Argument Is Not Internally Inconsistent — 18

**V. CONCLUSION** — **18**

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

# TABLE OF AUTHORITIES

*Aatrix Software. v. Green Shades* 882 F.3d 1121, 1125–29 (Fed. Cir. 2018)   12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014)   7-11

*Ashcroft v. Iqbal, 556 U.S. 662 (2009)*   14

*Dialware v. Hasbro, Inc.*, No. CV 16-9012-R (C.D. Cal. Mar. 22, 2017)   7

*Genetic Technologies v. Merial*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016)   13

*Global-Tech Appliances v. SEB SA*, 563 U.S. at 766   14

*Lexmark v. Static Control Components, Inc.,* 572 U.S. 118 (2014)   2

*Mayo CollabServs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012)   8, 11

*Manetti-Farrowv. Gucci Am., Inc.,* 858 F.2d 509, 514 n.5 (9th Cir. 1988)   4

*Relevant v. MindGeek* 2:21-cv-03174-MCS-KES (C.D. Cal. Aug. 30, 2021) 7

*Sanderling v. Snap Inc.*, 2021 U.S. Dist. LEXIS 141110 (C.D. Cal. 2021)   7

*TC Heartland LLC v. Kraft*, 137 S. Ct. 1514 (2017)   5

*Wolf v. Capstone Photography*, 2:13-CV-09573 (C.D. Cal. Oct. 28, 2014)   8-9

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

## I. INTRODUCTION

1. Neurocentria's opposition confirms what Mando's motion identified from the outset: Neurocentria is a patent-owning entity with no direct commercial relationship with Mando, no competing product sales in the relevant market, and no plausible commercial injury of its own. Neurocentria's own CEO testified that Neurocentria "does not regard Mando as a competitor," has "no direct relationship with Mando," and that "Neurocentria's part is really about the patent infringement." Dkt. 121, Liu Dep. 241:5–8; 21-24. *Decl of Abhyanker.* Ex. 5 Those admissions set the boundary of what Neurocentria can plausibly allege.

2. Three points now stand out. First, the Court lacks personal jurisdiction over Mando as to Neurocentria's claims. Neurocentria never signed the TMLA, and the forum-selection clause in that contract cannot be used to manufacture jurisdiction for a non-signatory plaintiff asserting claims that exist independently of the agreement. Second, the intrinsic record confirms that the '061 Patent is directed to a naturally occurring chemical association and its asserted natural properties, with only routine dosage-form limitations layered on top. Third, Neurocentria's non-patent claims fail because Neurocentria is not a commercial market actor and has not plausibly alleged the commercial injury required by *Lexmark* and the California UCL.

3. The opposition does not cure those defects. It reframes the FAC, glosses over contradictions in the pleaded ownership structure, and asks the Court to infer commercial injury from conclusory references to "goodwill." That is not enough. The FAC should be dismissed as to Neurocentria..

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED
COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

**A. The TMLA forum-selection clause does not reach Neurocentria**

4. The FAC's sole basis for personal jurisdiction over Kappa as to Neurocentria's claims is the mandatory California forum-selection clause in the TMLA. FAC ¶12. The TMLA was executed between AIDP and Kappa on August 29, 2022. AIDP later purportedly assigned its rights to ThreoTech. FAC ¶3. The FAC nowhere alleges that Neurocentria was a signatory, an assignee, or a third-party beneficiary of the TMLA.

5. Plaintiffs' opposition does not dispute these facts. Instead, it argues that Kappa consented to jurisdiction through the November 2025 Consent Notice and the Northern District Action. Those arguments address jurisdiction in the abstract; they do not establish that a forum-selection clause in a contract Neurocentria never signed can supply personal jurisdiction over Kappa as to claims Neurocentria asserts independently of that contract.

6. A forum-selection clause may bind closely related non-signatories whose conduct is inextricably intertwined with the contractual relationship. *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 n.5 (9th Cir. 1988). But "closely related" requires that the non-signatory's claims arise from and depend upon the contract. Neurocentria's patent claims exist entirely independently of the TMLA, patent infringement under 35 U.S.C. §271 requires no contract. Neurocentria's Lanham Act claims, if they have any basis, rest on general statutory principles, not the TMLA's dosage or labeling requirements. Because Neurocentria's claims do not arise from, depend on, or require interpretation of the

TMLA, the clause cannot supply personal jurisdiction over Kappa as to those claims.

7. Under 28 U.S.C. § 1400(b), venue is proper where the defendant resides (state of incorporation) or has a regular, established place of business and committed acts of infringement.  The Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) reaffirmed that the patent venue is governed exclusively by § 1400(b) and is much narrower than ordinary venues in other civil cases. Under § 1400(b), a domestic corporate Mando can be sued for patent infringement only (1) in a judicial district where it "resides" (meaning its state of incorporation) or (2) in a district where the Mando both has a "regular and established place of business" and has committed acts of infringement.  For this Defendant, that is in Texas.

**B. The Consent Notice Did Not Constitute Blanket Submission to Jurisdiction Over Neurocentria's New Claims**

8. The Consent Notice was a case-specific litigation statement, not a blanket waiver of jurisdiction for new claims. The FAC introduces new causes of action, and Kappa expressly preserved its Rule 12 defenses.  The prior Northern District action does not create ongoing jurisdiction, especially for unrelated patent claims. Finally, Neurocentria cannot invoke the TMLA forum clause because it has never had any relationship with the Defendant, and in any event, that clause does not apply to independent patent claims.

## II. THE '061 PATENT IS INELIGIBLE UNDER 35 U.S.C. § 101

### A. Patent Ineligibility Under 35 U.S.C. § 101 Is Properly Resolved at the Pleading Stage

9. Courts routinely resolve patent eligibility as a matter of law at the pleading stage, without the need for claim construction, discovery, or a full merits proceeding. As the Federal Circuit confirmed in *Sanderling Management Ltd. v. Snap Inc.*, 2021 U.S. Dist. LEXIS 141110 (C.D. Cal. 2021), aff'd, No. 21-2173 (Fed. Cir. Apr. 12, 2023), § 101 disputes "may be resolved on a Rule 12(b)(6) motion when there are no factual allegations that, taken as true, prevent resolving the eligibility as a matter of law." Similarly, in *Dialware Communications, LLC v. Hasbro, Inc.*, No. CV 16-9012-R (C.D. Cal. Mar. 22, 2017), the court granted dismissal under Rule 12(b)(6) on § 101 grounds, affirming that patent eligibility "is an issue of law" that courts may properly decide on a motion to dismiss. *See also Relevant Holdings, LLC v. MindGeek USA Inc.*, No. 2:21-cv-03174-MCS-KES (C.D. Cal. Aug. 30, 2021) (granting judgment on the pleadings on § 101 grounds where no material factual dispute precluded the eligibility determination).

10. The Supreme Court's two-step framework from *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), applies equally at this early stage. There is no requirement that a court await claim construction before ruling. As the *Sanderling* Federal Circuit panel expressly held, "claim construction is not an inviolable prerequisite to a validity determination under § 101." If the claims are directed to ineligible subject matter under all plausible constructions, the court may proceed

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED
COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

directly to resolution. A party seeking to delay a § 101 ruling through a claim construction request must provide an actual proposed construction, demonstrate it is not frivolous, and articulate how it would materially change the Alice analysis — mere invocation of future construction arguments is insufficient. *Sanderling*, No. 21-2173, slip op. at 8-9.

11. Under step one of *Alice*, the Court asks whether the claims are "directed to" a patent-ineligible concept - including laws of nature and natural phenomena. If so, step two asks whether the claim elements, considered individually and as an ordered combination, add enough to supply an "inventive concept" that transforms the claim into a patent-eligible application. *Alice*, 573 U.S. at 217. Critically, "a claim reciting an abstract idea [or natural phenomenon] does not become eligible merely by adding the words 'apply it.'" *Wolf v. Capstone Photography*, No. 2:13-CV-09573 (C.D. Cal. Oct. 28, 2014) (citing *Alice*). The same principle applies with full force to claims directed at naturally occurring phenomena or laws of nature. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012) (claims that merely apply a natural law without adding significantly more are patent ineligible).

12. The claim construction hearing is scheduled for the same date as this motion hearing, April 17, 2026. The sole disputed term is "magnesium threonate." Kappa's proposed construction "a pre-formed ionic salt compound, the chemical identity of which may occur naturally in the human body, and excluding mixtures of separate magnesium and threonate sources" is derived directly from the specification and prosecution history. ThreoTech's position that the term requires no construction

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

8

because its "plain meaning" governs does not help Plaintiffs.

### B. No Factual Dispute Precludes Early Resolution Here

13. The cases before this Court confirm that a plaintiff cannot defeat a § 101 motion simply by invoking the specter of future factual disputes. In *Sanderling*, the district court rejected the plaintiff's "generalized assertions that factual considerations about the state of the art preclude a decision at the pleadings stage," and the Federal Circuit affirmed that this was proper because the plaintiff "failed to timely identify . . . any specific fact disputes." Likewise, in *Relevant Holdings*, the court dismissed with prejudice where the plaintiff "fail[ed] to allege, let alone speculate about, what those 'fundamental facts' might be" that would present a material dispute. And in *Wolf v. Capstone Photography*, the court found that claim construction was unnecessary where "plaintiff offers no argument as to how claim construction would aid the court in applying § 101 to these non-technical terms."

14. Here, Plaintiffs has not identified any specific factual dispute or proposed claim construction that would change the § 101 analysis. The claims on their face are directed to the naturally occurring phenomenon at issue. No amendment to the complaint can alter what the patent itself discloses, and "no amendment to a complaint can alter what a patent itself states." *Sanderling*, No. 21-2173.

### C. Conventional Application of a Natural Phenomenon Supplies No Inventive Concept

15. Even assuming arguendo that Plaintiff could point to some additional claim element beyond the naturally occurring subject matter, that element must do more than "simply state the [natural phenomenon] while adding the words 'apply it.'" *Dialware*, No. CV 16-9012-R at 5. In *Dialware*, the court found no inventive concept where the patents relied on "generic descriptors rather than technical elements" and the components recited were "common" and well-understood. In *Wolf*, the court similarly found that "the addition of generic computers and a web site does not . . . meaningfully limit the claimed subject material." And in *Relevant Holdings*, the court dismissed claims built around a mathematical formula where "the underlying concept remains" a fundamental practice and the computer implementation was "well-understood, routine, [and] conventional."

16. Where, as here, the only thing added to a naturally occurring phenomenon is conventional, well-understood implementation - whether a generic computer, a standard laboratory process, or routine data analysis - that addition cannot transform ineligible subject matter into a patent-eligible invention. *Mayo*, 566 U.S. at 73; *Alice*, 573 U.S. at 217.

**D.  Dismissal With Prejudice Is Appropriate Where Amendment Would Be Futile**

Courts have consistently dismissed § 101 claims with prejudice where no amendment could cure the fundamental deficiency. In *Sanderling*, dismissal with prejudice was affirmed because the proposed amendment "merely sought to add

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

conclusory statements that the claimed steps were not well-known, routine, and conventional," and courts "are not required to credit such conclusory allegations." In *Relevant Holdings*, the court dismissed with prejudice where the plaintiff "neither suggested any amendments nor requested leave to amend generally." Similarly, in *Wolf*, the court dismissed with prejudice upon finding that plaintiff's arguments failed to identify any inventive concept and that the patents as written were irretrievably directed to abstract or ineligible subject matter.

17. At Alice Step One: The applicants told the USPTO that the claimed benefit is "intrinsic to the compound magnesium threonate" and that "[t]his superior property is not observed by mixing magnesium and threonate from different salt complexes." This statement locates the alleged invention in a natural property of the compound, its bioavailability, and neurological effect. A natural property of a naturally occurring compound is a natural phenomenon that falls within the product-of-nature exception to § 101.

18. At Alice Step Two: The Examiner's Statement of Reasons for Allowance identifies only "the additional step to form it into a specific dosage form" as the distinguishing feature. "Solid, semi-solid, semi-liquid, or gel" encompasses every conceivable oral delivery format, tablets, capsules, powders, gel caps, and gummies. A limitation covering all possible oral delivery forms adds nothing substantive. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,566 U.S. 66 (2012).* at 79–80.

19. ThreoTech cannot simultaneously argue at Step One that the claims are

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

11

really about magnesium threonate's superior properties and argue at Step Two that the dosage form adds an inventive concept, because the prosecution history commits ThreoTech to the opposite position at both steps. The benefit is intrinsic to the compound; the dosage form is conventional.

**E. The Pending USPTO Reexamination Supports Early Resolution**

20. The USPTO's January 13, 2026, grant of ex parte reexamination of all 19 claims of the '061 Patent, finding that CN1200366A raises "substantial new questions of patentability" as to every claim, confirms that the patent's validity is legitimately contested on the same prior art Kappa relies upon for § 103 invalidity. Allowing costly discovery to proceed on claims the USPTO has already flagged as potentially invalid, based on prior art that discloses the compound, its oral dosage forms, and dosage ranges that encompass the "at least 10 mg" limitation, serves no legitimate judicial interest.

**F. The Court Should Not Defer the § 101 Question to Summary Judgment**

21. Plaintiffs invoke *Aatrix* Software for the proposition that § 101 questions with factual underpinnings should not be resolved at the pleading stage. But *Aatrix* addressed cases where the factual question was whether specific claim limitations were "well-understood, routine, and conventional" a question that could require extrinsic evidence about industry practice. The § 101 question here turns on the patent's own intrinsic record: the specification's disclosure of in vivo reconstitution, the prosecution history's characterization of the claimed benefit as

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

12

intrinsic to the compound, and the face of Claim 1. These are pure questions of law resolvable on the intrinsic record without any extrinsic factual development. *Genetic Technologies v. Merial*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016) expressly holds that § 101 may be resolved at the pleading stage when the relevant facts are clear from the intrinsic record. They are here.

## III.    NEUROCENTRIA'S INDEPENDENT PLEADING FAILURES REQUIRE DISMISSAL OF COUNTS I-III

### A. Count I Direct Infringement: The Plant-Based Product Is Inadequately Alleged

22. The FAC provides laboratory testing for the "Magnesium 3 in 1 L-Threonate Advanced Complex" product. For the separate Plant-Based Product, the FAC's entire infringement allegation consists of a single Amazon marketing statement that both products use the "same trusted formula." FAC ¶74. An advertising slogan is not a technical description of composition. It does not establish that the Plant-Based Product contains at least 10 mg of magnesium threonate in a solid, semi-solid, semi-liquid, or gel form. *Twombly*, 550 U.S. at 570.

23. Plaintiffs' opposition argues that the FAC also recites Kappa's website statements describing dosage and uses. But those statements are directed to the first product, not the Plant-Based Product. The FAC cannot establish infringement of a separate product by incorporating allegations about a different product linked

only by a marketing slogan.

## B. Count II -Contributory Infringement: The Non-Staple Allegation Is Self-Defeating

24. The FAC alleges that Kappa's products are marketed for general magnesium supplementation, including muscle cramps, bone health, energy, and relaxation. FAC ¶¶ 44–61. Each of those uses is a substantial noninfringing use. A plaintiff cannot simultaneously describe a product's broad array of general wellness applications and then allege the product has no substantial noninfringing use. The conclusory allegation in ¶86 that the products "are not staple articles or commodities suitable for substantial noninfringing use" is directly contradicted by the FAC's own characterization of the products' advertised purposes. *Iqbal*, 556 U.S. at 678.

## C. Count III Induced Infringement: Specific Intent Is Not Alleged

25. Induced infringement requires specific intent to cause infringement of the particular patent claims. *Global-Tech Appliances*, 563 U.S. at 766. The FAC identifies general cognitive health marketing but does not identify any instruction, label direction, or communication directing consumers to administer the product in a manner that specifically practices each limitation of an identified claim. General health supplement marketing does not constitute specific intent to induce patent infringement.

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

## IV. NEUROCENTRIA LACKS STANDING TO ASSERT COUNTS VI-X

### A. Neurocentria does not satisfy *Lexmark's* zone-of-interests requirement

26. Plaintiffs argue that *Lexmark* rejected the direct-competitor requirement for Lanham Act standing, and that FAC ¶137's reference to erosion of "Neurocentria's goodwill" is sufficient. *Lexmark* held that the zone-of-interests test requires an injury to a commercial interest in reputation or sales. 572 U.S. at 132–33. A plaintiff must plausibly allege not just any goodwill, but a commercial interest in reputation or sales that is proximately damaged by the defendant's advertising in the relevant market.

27. Neurocentria does not sell dietary supplement products. It does not compete with Kappa for consumer sales. It has no identified customers who could be diverted to Kappa. Its own CEO testified that it has no direct relationship with Kappa and does not regard Kappa as a competitor. Liu Dep. 241:5–24. A patent licensor with no product sales in the relevant market has not plausibly alleged a "commercial interest in reputation or sales" in that market. Lexmark's zone-of-interests test is not satisfied.

### B. The FAC itself identifies ThreoTech, not Neurocentria, as the commercial actor

28. The FAC's own structure confirms the standing defect. All allegations of competitive harm from false advertising, lost sales, eroded brand value, diverted

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

15

customers, and goodwill damage are pleaded in paragraphs describing ThreoTech's commercial injuries. The parenthetical addition of "and Neurocentria" to ThreoTech's damages paragraphs is precisely the conclusory pleading by association that *Twombly* forbids.

29. Moreover, Dr. Liu himself made the structural distinction explicit: "ThreoTech's the one who signed the contract with Mando" and "the one who actually looks at the false advertisement." Liu Dep. 233:5–16. "Neurocentria's part is really about the patent infringement." Id. at 233:11–12. Neurocentria's own CEO testified that Neurocentria's commercial role is patent enforcement, not market competition. A party that its own CEO describes as having no commercial relationship with the defendant, no competitive role in the market, and no stake in the defendant's advertising cannot satisfy *Lexmark's* zone-of-interests test regardless of how its damages allegations are worded.

## C. The False Advertising Counts Are Independently Deficient as to Neurocentria

30. Each false advertising count fails independently as to Neurocentria. Count VI concerns the Non-Licensed Product whose dosage standard derives from the TMLA, a contract Neurocentria never signed. Count VII concerns the Plant-Based Product. Neurocentria has no commercial stake in that market and has suffered no identified injury. Count VIII concerns products sold while the TMLA was in effect. Neurocentria was not an authorized licensor, was not a party to the TMLA, and

had no commercial relationship with Kappa during the licensing period. All three counts should be dismissed as to Neurocentria.

## D. California UCL Standing Requires Economic Injury Not Alleged

31. California Business and Professions Code § 17200 requires that a plaintiff have "suffered injury in fact and has lost money or property as a result of the unfair competition." *Kwikset Corp.*, 51 Cal. 4th at 321–23. The FAC contains no allegation that Neurocentria sells dietary supplements, has lost identified sales or customers, or has suffered any quantified economic loss from Kappa's conduct. Abstract references to eroded goodwill, untethered to any commercial activity, are insufficient. *Id.* Counts IX and X should be dismissed as to Neurocentria.

## E. Kappa's Argument Is Not Internally Inconsistent

32. Plaintiffs argue that Kappa cannot challenge Neurocentria's standing on Counts VI–X without also challenging their sufficiency as to ThreoTech. That argument misunderstands standing doctrine. Standing is plaintiff-specific, claim-specific, and injury-specific. The fact that ThreoTech, as the commercial entity selling competing products in the marketplace, may have standing to assert Lanham Act claims based on diverted sales says nothing about whether Neurocentria, a patent licensor with no product sales, independently satisfies the same requirements. Different plaintiffs with different roles and different alleged injuries must independently establish their right to sue.

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

17

## V. CONCLUSION

33. The Court should dismiss all claims by Neurocentria.

Specifically, the Court should:

1. Dismiss all claims asserted by Neurocentria for lack of personal jurisdiction under Rule 12(b)(2);

2. Alternatively, dismiss Neurocentria's non-patent claims for lack of standing under *Lexmark* and the UCL standing requirement;

3. Dismiss Counts I-III because the '061 Patent is ineligible under 35 U.S.C. § 101; and

4. If any dismissal is without prejudice, require any amendment to plead a coherent ownership structure, a claim-specific basis for personal jurisdiction, and concrete facts showing Neurocentria's own commercial injury.

Dated: April 3, 2026                     Respectfully submitted,
                                         LEGALFORCE RAPC WORLDWIDE P.C.


                                         /s/_ Raj V. Abhyanker__
                                         Raj V. Abhyanker
                                         Attorney for Defendant:
                                         Mando International, LLC

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Mando International, LLC, certifies that this brief contains 3296 words, which complies with the word limit of L.R. 11-6.1. In addition, the page length complies with Judge Rocha's standing order Section III on Motions - General Requirements, which states "Replies shall not exceed 4,200 words **or** fifteen (15) pages for handwritten briefs and briefs prepared using a typewriter."

Dated: April 3, 2026                    Respectfully submitted,
                                        LEGALFORCE RAPC WORLDWIDE P.C.


                                        /s/ Raj Abhyanker
                                        Raj V. Abhyanker
                                        Attorney for Defendant:
                                        Mando International, LLC

DEFENDANT MANDO INTERNATIONAL, LLC'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS NEUROCENTRIA, INC.'S FIRST AMENDED
COMPLAINT
Case No. 2:25-cv-05871-FLA-JPR

5