Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994


John W. Cox
  (Admitted *Pro Hac Vice*)
  John.Cox@btlaw.com
Lauren U. Baker
  (Admitted *Pro Hac Vice*)
  Lauren.Baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile: 404-264-4033

Jeffrey Gavenman
  (Admitted *Pro Hac Vice*)
  jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
  (Admitted *Pro Hac Vice*)
  jeremy.schulman@hugheshubbard.com
James Schaller
  (Admitted *Pro Hac Vice*)
  jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I STREET, N.W., 6th Floor
Washington, D.C. 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and THREOTECH LLC and Third-Party Defendant AIDP, Inc.[1]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC, <br><br>     Plaintiffs/Counterclaim Defendants, <br><br>     v. <br><br> MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION, <br><br>     Defendant/Counterclaim Plaintiff, <br><br>     v. <br><br> AIDP, INC., <br><br>     Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR <br><br> **NOTICE OF MOTION AND MOTION FOR SANCTIONS** <br><br> Hearing: May 15, 2026 <br> Time: 1:30 pm <br> Courtroom: 6B, 6th Floor <br> Judge: Hon. Fernando L. Aenlle-Rocha |

---

[1] Counsel appear on behalf of AIDP, Inc. on a limited basis solely to contest this Court's jurisdiction over AIDP, Inc.

**TO THE COURT AND TO ALL PARTIES AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Friday, May 15, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Fernando L. Aenlle-Rocha of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Courtroom 6B, 6th Floor, Plaintiffs/Counterclaim Defendants Neurocentria, Inc. and Threotech, LLC ("Plaintiffs") will and hereby do move the Court, pursuant to 28 U.S.C. § 1927, Local Rule 83-7, and the Court's inherent power, for sanctions against Defendant/Counterclaim Plaintiff Mando International, LLC d/b/a Kappa Nutrition ("Kappa") and its counsel, Raj Abhyanker ("Abhyanker," collectively, "Respondents"), for their conduct during the claim construction proceedings in this action.

Sanctions are appropriate here under 28 U.S.C. § 1927, which provides that an attorney who so multiplies the proceedings in an unreasonable and vexatious manner may be required to personally satisfy the fees incurred because of such conduct. Abhyanker, through multiple unnecessary filings, advancement of frivolous arguments and false testimony, and objectively unreasonable claim construction positions, has multiplied the present matter in a manner rendering sanctions entirely appropriate.

Moreover, sanctions are also warranted under Local Rule 83-7, which addresses the failure of a party or its counsel to comply with this District's Local Rules. Respondents have failed to satisfy the Local Rules' requirements—including that of Local Rule 11-9—in a manner that constituted abuse of the judicial process to Plaintiffs' detriment. More specifically, Respondents have presented frivolous motions to the Court in violation of Local Rule 11-9.

Finally, the Court should grant sanctions under its inherent authority. Respondents, and Abhyanker particularly, have illustrated a pattern of willful and vexatious behavior that necessitates deterrence. Respondents' conduct during claim

- 1 -

construction demonstrates bad faith, both in Respondents' pattern of conduct and Respondents' willful abuse of judicial process.

This Motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of John W. Cox (the "Cox Decl.") and exhibits attached thereto filed herewith; the pleadings and papers on file in this matter; and such other matters as may be presented to the Court at the hearing.

## L.R. 7-3 Statement of Compliance

On April 3, 2026, the parties held a meet and confer on this Motion. The details of the meet and confer are contained in the Cox Decl., ¶ 3.

Dated: April 13, 2026

By:    */s/ John W. Cox*
John W. Cox (admitted *pro hac vice*)
Counsel for Plaintiffs/Counterclaim Defendants

- 2 -

NOTICE OF MOTION AND MOTION FOR SANCTIONS

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   RELEVANT FACTUAL BACKGROUND .............................................2

    A.    Kappa's Untimely and Evolving Claim Construction Positions................2

    B.    Respondents' Misconduct Related to Kappa's Witnesses .........................4

    C.    Respondents' Unnecessary and Frivolous Claim Construction Filings ..........................................................................6

III.  LEGAL STANDARDS ...........................................................................7

IV.   ARGUMENT ........................................................................................10

    A.    Respondents Raised Frivolous Arguments Throughout Claim Construction, Unreasonably and Vexatiously Multiplying the Proceedings in Bad Faith....................................................10

        1.    Respondents' Improper Shifting Sands Approach to Claim Construction ...........................................................10

        2.    Respondents' Reliance on Litigation-Driven Expert Testimony.........................................................................13

        3.    Respondents' Reliance on False Expert Testimony .......................17

    B.    RESPONDENTS' FRIVOLOUS CLAIM CONSTRUCTION ARGUMENTS ....................................................................18

        1.    Respondents' Misapplication of 35 U.S.C. § 101 and Bad Faith Insistence That It Controls Claim Construction ...................19

        2.    Respondents' Untimely Injection of Inapplicable Estoppel Arguments ......................................................20

    C.    ABHYANKER'S WANTON DISREGARD FOR ACCEPTABLE LITIGATION CONDUCT........................................................20

V.    CONCLUSION......................................................................................22

NOTICE OF MOTION AND MOTION FOR SANCTIONS

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)............................................................................................9

*Erickson v. Newmar Corp.*,
  87 F.3d 298 (9th Cir. 1996) ............................................................................8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002)........................................................................................20

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) .................................................................8, 9, 10

*GovernmentGPT Inc. v. Axon Enter. Inc.*,
  No. CV-24-01869-PHX-SMB, 2025 WL 4080457 (D. Ariz. Apr. 3,
  2025) ...............................................................................................................21

*In re Girardi*,
  611 F.3d 1027 (9th Cir. 2010) .........................................................................8

*Hunt v. County of El Dorado*,
  No. 2:10-CV-01367 JAM, 2012 WL 4862362 (E.D. Cal. Oct. 11,
  2012) ...............................................................................................................18

*iLOR, LLC v. Google, Inc.*,
  631 F.3d 1372 (Fed. Cir. 2011) ......................................................................11

*In re Keegan Mgmt. Co., Sec. Litig.*,
  78 F.3d 431 (9th Cir. 1996) .............................................................................8

*LegalForce RAPC Worldwide P.C. v. MH Sub L LLC*,
  No. C 24-00669 WHA, 2025 WL 27 3675365 (N.D. Cal. Dec. 18,
  2025) ...............................................................................................................21

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) ........................................................................11

- ii -

*Medversant Techs., LLC v. Morrisey Associates, Inc.*,
   No. CV 09-05031 MMM, 2011 WL 13124039 (C.D. Cal. Mar. 11, 2011) ..............................................................................................9

*Miranda Tecnologia De La Informacion S.C. v. Endava PLC*,
   25-cv-06393 (EKL), ECF 53 (N.D. Cal. Feb. 4, 2026) ...........................21

*Montgomery v. Etreppid Techs., LLC*,
   No. 3:06-CV-00056-PMP-VPC, 2010 WL 1416771 (D. Nev. Apr. 5, 2010) ............................................................................................18

*Moser v. Bret Harte Union High Sch. Dist.*,
   366 F. Supp. 2d 944 (E.D. Cal. 2005) .............................................*passim*

*Mostowfi v. I2 Telecom Int'l, Inc.*,
   No. C-03-5784 VRW, 2005 WL 8162688 (N.D. Cal. Mar. 14, 2005).......................8

*Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*,
   918 F.3d 1338 (Fed. Cir. 2019) .................................................20

*Nextdoor, Inc. v. Abhyanker*,
   Case No. 12-cv-05667-EMC, 2021 WL 1263973 (N.D. Cal. April 6, 2021) ..............................................................................................21

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................13

*Pratt v. California*,
   11 F. App'x 833 (9th Cir. 2001) ..............................................13

*PureCircle USA Inc. v. SweeGen, Inc.*,
   No. SACV-18-01679 JWS (JDEx), 2020 WL 4258658 (C.D. Cal., July 2, 2020) ...............................................................................10

*Raylon, LLC v. Complus Data Innovations, Inc.*,
   700 F.3d 1361 (Fed. Cir. 2012) ...............................................11

*Roger v. First Health Corp.*,
   No. 09-1206 VAP, 2010 WL 11509054 (C.D. Cal. Mar. 26, 2010) .........................9

*Rowland v. Watchtower Bible*,
   No. CV 20-59-BLG-SPW, 2022 WL 3596827 (D. Mont. Aug. 23, 2022) ..............................................................................................17

- iii -

*Trulis v. Barton*,
    107 F.3d 685 (9th Cir. 1995) ............................................................................. 7

*Vedatech, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    No. C 04-1249 VRW, 2005 WL 1513130 (N.D. Cal. June 22, 2005) ........... 8, 12, 19

*Werner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ............................................................................. 20

**Federal Statutes**

28 U.S.C. § 1927 ............................................................................. *passim*

35 U.S.C. § 101 ............................................................................. 19, 20

**Other Authorities**

C.D. Cal. L.R. 11-9 ............................................................................. 9, 12

C.D. Cal. L.R. 83-7 ............................................................................. 1, 7, 9, 12

Fed. R. Civ. P. 11 ............................................................................. 4, 13, 16

Fed. R. Civ. P. 83 ............................................................................. 9

NOTICE OF MOTION AND MOTION FOR SANCTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs/Counterclaim Defendants Neurocentria, Inc. and ThreoTech LLC (collectively, "Plaintiffs") hereby file this Motion for Sanctions Against Defendant/Counterclaim Plaintiff Mando International, LLC d/b/a Kappa Nutrition ("Kappa") and its counsel, Raj Abhyanker ("Abhyanker"), and state as follows:

## I.    PRELIMINARY STATEMENT

This Court previously ordered Kappa and Abhyanker (collectively "Respondents") to show cause as to why they should not be sanctioned "for engaging in improper, harassing, and bad-faith conduct that has caused unnecessary delay and increased the cost of litigation needlessly." ECF 107 ("OSC") at 3-4. While the OSC identified conduct that has unnecessarily delayed and needlessly increased the cost of litigation, Respondents' conduct during claim construction provides an independent basis for sanctions. As much as Plaintiffs would prefer to be focusing on the merits, Respondents' misconduct has further burdened Plaintiffs and increased their litigation costs. Now that claim construction briefing has closed, Plaintiffs bring the present Motion to recoup some of those costs.

Respondents' claim construction tactics far surpassed procedural gamesmanship and directly violated the Scheduling Order, the Court's Patent Standing Order, governing law, and any semblance of proper litigation conduct. Most troubling, Abhyanker has continued the exact litigation misconduct that led the Court to enter the OSC in the first place, making clear that even the OSC has not and will not deter his vexatious behavior. Accordingly, sanctions are warranted under at least 28 U.S.C. § 1927, Local Rule 83-7, and the Court's inherent power. Until Respondents, particularly Abhyanker, are sanctioned, Plaintiffs will continue to be harassed, burdened with unproductive litigation tactics, and forced to incur unnecessary expenses, all hampering Plaintiffs' (and the Court's) ability to get to the merits of this action.

- 1 -

## II. RELEVANT FACTUAL BACKGROUND

### A. Kappa's Untimely and Evolving Claim Construction Positions

Pursuant to Section 3(a) of the Court's Patent Standing Order (ECF 33), the parties' proposed terms for construction were due on December 8, 2025. ECF 27-1. On that date, Plaintiffs identified a single term from the '061 Patent for construction: magnesium threonate. ECF 95 at 3. Respondents did not serve their proposed terms for construction until 11 days later, on December 19, 2025, when Respondents identified the same, single term for construction (magnesium threonate) and proposed that it be given its plain and ordinary meaning. *Id.*

On January 14, 2026—five days before the parties' exchange of preliminary claim constructions and supporting extrinsic evidence were due[2]—Plaintiffs requested that the parties submit a Joint Claim Construction Statement ("JCCS") informing the Court that the parties agreed the term magnesium threonate was the sole term requiring construction and should be given its plain and ordinary meaning. ECF 116-2. The parties met and conferred with supposed counsel for Kappa, Mr. Jakob Speert, on January 16 when Mr. Speert informed Plaintiffs for the first time (and without explanation) that Kappa intended to construe **ten terms** from the '061 Patent.[3] **Ex. A** at 1-2 (explaining that Kappa believed "multiple claim terms within [the '061 Patent] warrant interpretation").[4] Plaintiffs objected and served their Preliminary Claim Construction on January 19 identifying magnesium threonate as the only term requiring construction and proposing

---

[2] On January 8, 2026, the parties submitted a stipulation dismissing causes of action for four patents originally asserted in the Complaint (the "Withdrawn Patents"), narrowing the dispute to only the '061 Patent. ECF 87.

[3] Mr. Speert was counsel of record for Kappa for only three weeks before withdrawing from the case and was not counsel of record during the parties' meet and confers. Declaration of John W. Cox ("Cox Decl.") at ¶ 4.

[4] All exhibits are attached to the Declaration of John W. Cox filed herewith.

-2-

its plain and ordinary meaning. ECF 95 at 3. On January 19, Respondents served their Preliminary Claim Constructions identifying ten terms for construction, including two terms not found in the Asserted Claims, along with supporting declarations from two purported experts (Naveed Ziari and Sara Adams (collectively, "Kappa's Witnesses")). ECF 116-3 at 5-8. In contrast to their December 19 plain and ordinary meaning construction, Respondents' January 19 construction required, *inter alia*, that magnesium threonate "occur[] naturally in the human body." *Id.* at 5-6. Plaintiffs objected to Respondents' untimely disclosure and attempted to meet and confer with Mr. Speert on January 22 to narrow the disputed issues for the JCCS, to no avail. Cox Decl. ¶ 7.

The parties filed the JCCS on January 23, 2026, with Respondents including the ten terms they contended required construction and the declarations of Kappa's Witnesses purportedly as support for those constructions, and Plaintiffs including only the term magnesium threonate along with a proposal that it be given its plain and ordinary meaning. ECF 95 at 2-3.[5] According to the Patent Standing Order (ECF 33) and Scheduling Order (ECF 32), there were no other claim construction exchanges until the deadline for Plaintiffs to file their opening claim construction brief on March 9, 2026. ECF 32 at 4. Despite this, Respondents proposed **another construction** for magnesium threonate in correspondence on March 2, just days before Plaintiffs' opening brief was due, followed by **another construction** in its responsive brief filed on March 23 (bringing the total number of Respondents' proposed constructions to **four**), after the depositions of Kappa's Witnesses and just days before Plaintiffs' reply brief was due. Each of Respondents' new constructions introduced additional limitations not found in their previous constructions and not supported by the intrinsic (or extrinsic) evidence.

---

[5] On February 27, the parties filed a Joint Notice narrowing the claim construction dispute to only magnesium threonate. ECF 111.

- 3 -

*See* ECF 150 ("CC Reply") at 6-7 (outlining Respondents' proposed constructions served on December 19, 2025, January 19, 2026, March 2, 2026, and March 23, 2026).

### B. Respondents' Misconduct Related to Kappa's Witnesses

Respondents first identified Kappa's Witnesses in connection with Respondents' ill-advised Rule 11 Motion on January 19 (ECF 93-3; ECF 93-4) before recycling their same declarations in support of Respondents' claim construction positions in the JCCS. *See* **Ex. B**; *see also* ECF 95-2; ECF 95-3.

On February 13, 2026, Plaintiffs served deposition notices for Kappa's Witnesses. **Ex. C** at 4-5. Abhyanker refused to accept service and demanded that Plaintiffs instead "[s]end proof of service" of the "third parties." *Id.* at 4. Abhyanker's response was completely at odds with his demand when disclosing Kappa's Witnesses on January 19 that "[e]ach expert **may be contacted only through counsel for Defendants**." **Ex. B** at 1 (emphasis added). After a series of emails during which Plaintiffs pointed out this contradiction, Abhyanker finally agreed to "coordinate their depositions and work with you to schedule mutually convenient dates." **Ex. C** at 1.

On February 23, 2026, Plaintiffs informed Abhyanker that it had identified concerns impacting the credibility of Ms. Adams, including evidence demonstrating that she did not have (i.e., hold) a Ph.D. as sworn in her declaration and that she had been the subject of court opinions ruling her incompetent,[6] along with a request that Respondents withdraw her declaration in support of their claim construction positions and further reserving the right to seek sanctions based on Respondents' reliance on her testimony. **Ex. D** at 3-4. Abhyanker refused and, hours later, asserted that "**Ms. Adams confirms** that there are no court opinions adjudicating her qualifications or finding her incompetent as an expert" and her "academic credentials are publicly verifiable." *Id.* at

---

[6] To the extent the Court finds knowing the specific opinions helpful, Plaintiffs will provide copies at the Court's request.

- 4 -

1-3 (emphasis added). Plaintiffs reiterated their request and reserved their right to pursue "all remedies available" if forced to proceed with her deposition. *Id.* at 1.

Not backing down, Abhyanker proceeded to provide correspondence between himself and Ms. Adams, which made clear that Abhyanker **did not conduct his own investigation** into Ms. Adams' qualifications, including her academic credentials or prior testimony, before twice submitting her sworn declaration to the Court (*see* ECF 93-4; ECF 95-2), and relied entirely on Ms. Adams' self-serving representations regarding the conferral of her degree and her extensive personal litigation history. *See* **Ex. E**. [7] Instead, Abhyanker repeatedly demanded that **Plaintiffs' counsel** send Abhyanker information about Ms. Adams' credentials "so we can evaluate and make a determination to avoid wasting our time and ours by accepting service on her behalf," unreasonably projecting his responsibilities and misconduct onto Plaintiffs' counsel. **Ex. G** at 1 (accusing Plaintiffs' counsel of "gamesmanship and hiding the ball"); *see also* **Ex. H** at 1 (acknowledging that Respondents "will not use Ms. Adams as an expert **if you demonstrate** she does not hold a degree from Cambridge or this is admitted to" (emphasis added)). But as Mr. Cox noted, Abhyanker is "capable of investigating her qualifications (submission of a dissertation does not mean a degree was awarded) and finding those court opinions; **it is all public information** . . . we are not required to do such an investigation for you." **Ex. H** at 1-2 (emphasis added).

Unbeknownst to Plaintiffs, on March 3—fifteen days before Ms. Adams' deposition—Abhyanker received unequivocal confirmation from the University of Cambridge that Ms. Adams' Ph.D. "degree **has not yet been conferred and until such time [she] does not hold the degree**." Dkt. 151-1 at 2-3 (emphasis added). Abhyanker failed to provide the response to Plaintiffs when it was received and, instead, represented

---

[7] On February 24, Abhyanker also sent Plaintiffs' counsel a copy of correspondence purportedly sent to the University of Cambridge seeking confirmation of the conferral of Ms. Adams' degree. *See* **Ex. F**.

NOTICE OF MOTION AND MOTION FOR SANCTIONS

during Ms. Adams' deposition on March 18 that he had received confirmation from the University of Cambridge that Ms. Adams had received her Ph.D. Cox Decl. ¶ 15. Despite Plaintiffs' repeated requests—during Ms. Adams' deposition and through correspondence on March 20, 24, 26, and 27—Abhyanker refused to provide Plaintiffs with that correspondence until March 30, the day Plaintiffs' CC Reply was due. *Id.* ¶¶ 15-16; **Ex. I** (attaching correspondence from University of Cambridge and including Plaintiffs' March 20, 24, 26, and 27 requests for the correspondence). And despite irrefutable evidence that Ms. Adams does not have a Ph.D., Abhyanker continues to refuse to withdraw her declaration or Kappa's reliance on it; to the contrary, Respondents attempted to **bolster** her credibility by filing untimely and improper declarations (ECF 151; ECF 152) after the parties completed briefing claim construction. *See* **Ex. J** at 1.

### C.    Respondents' Unnecessary and Frivolous Claim Construction Filings

Respondents have also unnecessarily multiplied the proceedings by unilaterally filing frivolous claim construction papers that were neither approved or requested by the Court nor helpful for resolution of the issues. For example, on February 24, Abhyanker proposed "a stipulation to narrow the dispute to just magnesium threonate" (**Ex. K** at 1)—which would have put the parties in the same position they were in before Respondents added nine new claim terms for construction on January 19. Tellingly, Abhyanker's proposal came only **after** Plaintiffs identified issues with Ms. Adams' credentials and threatened to seek sanctions for Respondents' changing claim construction positions. Cox Decl. ¶ 19. Even then, Abhyanker refused to revert to Respondents' December 19 plain and ordinary meaning construction of magnesium threonate and insisted on presenting extrinsic evidence to support Kappa's proposed construction, necessitating the depositions of Kappa's Witnesses. **Ex. L** at 1, 3.

On March 8, **the day before Plaintiffs' opening claim construction brief was due**, Abhyanker filed an *ex parte* motion styled as a Notice Requesting Clarification of Claim Construction Briefing Schedule asking for the Court's guidance on briefing for the Withdrawn Patents. ECF 113. Plaintiffs were forced to respond (ECF 114), only to

-6-

have Abhyanker file **another** *ex parte* motion (again improperly styled as a notice) that same day purportedly seeking "to ensure that the parties proceed consistently with the Court's Patent Standing Order" and agreeing to "comply with whatever schedule the Court directs" (ECF 115). Respondents' injection of the Withdrawn Patents in its Second Amended Counterclaims provided no basis to disturb the briefing schedule set by the Court on **September 24, 2025** (ECF 32).

Abhyanker filed a flurry of other unnecessary "clarifications" while the parties were briefing claim construction, including a supplemental brief in support of Respondents' responsive claim construction brief (ECF 145), which Abhyanker subsequently withdrew "[i]n light of the Court's Standing Order regarding supplemental briefing" (ECF 148)—an Order that has been available to Respondents on the Court's website throughout this action. And, as noted above, Abhyanker filed the improper Clarifying Declaration of Sara Adams on March 31 (ECF 151) just hours after disclosing the correspondence he received weeks earlier that confirmed Ms. Adams had signed— and Respondents had relied on and submitted to the Court in support of their claim construction positions (ECF 95-2)—a false declaration, as well as a declaration of his own adopting the same false testimony (ECF 152; *see* § IV.C, *infra*).

## III.   LEGAL STANDARDS

District courts have broad discretion "in determining whether and how much sanctions are appropriate." *See, e.g.*, *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995). Courts in this district have power to impose sanctions from several sources, including, *inter alia*, (i) 28 U.S.C. § 1927, which addresses attorney conduct that "unreasonably and vexatiously" multiplies proceedings; (ii) Local Rule 83-7, which addresses the failure of a party or its counsel to comply with the District's local rules; and (iii) the court's inherent power, which addresses willful or bad faith conduct in litigation. *See Fink v. Gomez*, 239 F.3d 989, 991-92 (9th Cir. 2001); *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996) (noting that the court has "clear statutory authority" to supervise the conduct of attorneys appearing before it).

- 7 -

First, Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.[8] Section 1927 applies to unnecessary filings and tactics, *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996), including the bringing of motions and the "failure[] to withdraw moot motions," *Mostowfi v. I2 Telecom Int'l, Inc.*, No. C-03-5784 VRW, 2005 WL 8162688, at *2 (N.D. Cal. Mar. 14, 2005). For Section 1927 to apply, the court must make a finding of bad faith or recklessness. *In re Keegan*, 78 F.3d at 436 (noting that "[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent" (citation omitted)); *see also Vedatech, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. C 04-1249 VRW, 2005 WL 1513130, at *16-17 (N.D. Cal. June 22, 2005) (finding attorneys acted recklessly and in bad faith by raising frivolous arguments regarding legal precedent); *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (noting that "a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927 . . . and a finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient" (citations omitted)). Bad faith may be inferred "[w]hen an attorney repeatedly and vexatiously presents 'facts' and 'law' to the Court that are plainly wrong or misleading, which needlessly prolong and multiply the [] proceedings and materially increase the burden on the Court." *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 979 (E.D. Cal. 2005).

---

[8] Section 3(g) of this Court's Patent Standing Order requires that the parties "make a good faith effort to narrow the instances of disputed terms or otherwise participate in the meet and confer process" and notes that the failure to do so "may expose counsel to sanctions, including under 28 U.S.C. § 1927." ECF 33 at 15.

NOTICE OF MOTION AND MOTION FOR SANCTIONS

Second, Local Rule 83-7 allows for the imposition of sanctions for failure to comply with the Local Rules:

> i. The violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to:
>> (a) monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless;
>> (b) the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or
>> (c) for any of the conduct specified in (a) and (b) above, such other sanctions as the Court may deem appropriate under the circumstances.

C.D. Cal. L.R. 83-7. Local Rule 83-7 and Section 1927 "address the same collateral issue," which is "whether the attorney has abused the judicial process." *Medversant Techs., LLC v. Morrisey Associates, Inc.*, No. CV 09-05031 MMM (FFMx), 2011 WL 13124039, at *5 (C.D. Cal. Mar. 11, 2011) (citation omitted); *see also Roger v. First Health Corp.*, No. 09-1206 VAP (JCx), 2010 WL 11509054, at *6 (C.D. Cal. Mar. 26, 2010) (noting Local Rule 83-7 derives from both "the trial court's inherent power" and Federal Rule of Civil Procedure 83 (citation omitted)). Local Rule 11-9 provides "[t]he presentation to the Court of frivolous motions or oppositions to motions (or the failure to comply fully with this rule) subjects the offender at the discretion of the Court to the sanctions of L.R. 83-7." C.D. Cal. L.R. 11-9.

Third, the court has the inherent authority to "impose sanctions for bad faith, which includes a broad range of willful improper conduct" and "willful abuse of judicial processes." *Fink*, 239 F.3d at 992. The court's inherent authority to impose sanctions "can be invoked even if procedural rules exist which sanction the same conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49-50 (1991). "[A] finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Fink*, 239

-9-

NOTICE OF MOTION AND MOTION FOR SANCTIONS

F.3d at 992; *id.* at 994 (finding "reckless misstatements of law and fact, when coupled with an improper purpose . . . are sanctionable under a court's inherent power").

## IV.  ARGUMENT

### A.  Respondents Raised Frivolous Arguments Throughout Claim Construction, Unreasonably and Vexatiously Multiplying the Proceedings in Bad Faith

#### 1.  Respondents' Improper Shifting Sands Approach to Claim Construction

Claim construction in this case should have been uncontentious, simple, and completed in December without any need for adversarial briefing. Indeed, the single claim term at issue then and now, magnesium threonate, can easily be understood by a person of ordinary skill in the art based on the intrinsic evidence alone. *See, e.g.*, ECF 116 at 13-16. At most, and as suggested by Plaintiffs, the parties could have submitted a JCCS informing the Court there were no disputed terms that required formal construction. Instead, Respondents changed their initial plain and ordinary meaning construction—provided 11 days late on December 19, 2025—with no warning or explanation on January 19, 2026, and changed it again on March 2, 2026 before advancing a fourth and seemingly final construction on March 23, 2026. Plaintiffs summarized this shifting sands approach in Plaintiffs' CC Reply (ECF 150 at 2-3),[9] all while the law prohibiting such an approach has remained unambiguous (*id.* at 8 (citing, *inter alia*, *PureCircle USA Inc. v. SweeGen, Inc.*, No. SACV-18-01679 JWS (JDEx), 2020 WL 4258658, at *3-4 (C.D. Cal., July 2, 2020) (finding defendants changing claim construction positions would prejudice plaintiffs and sanctioning defendants for their "shifting sands" approach to claim construction))).

---

[9] Respondents also purported to "supplement" the support for their claim construction positions on March 7 by sending Plaintiffs "Supplemental Intrinsic Evidence" (Cox Decl. ¶ 21) and uploading documents into folders designed for Kappa's Witnesses on the days leading up to, and on the days of, their depositions (*id.* ¶ 22).

- 10 -

Respondents' claim construction positions—particularly those on January 19, 2026, March 2, 2026, and March 23, 2026—have also been objectively unreasonable and, therefore, sanctionable. Reasonable minds can differ as to claim construction, and losing constructions can nonetheless be nonfrivolous. But Respondents, and Abhyanker in particular, have shown they are far from reasonable and a threshold exists below which a **claim construction** is "so unreasonable that no reasonable litigant could believe it would succeed." *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011); *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1369 (Fed. Cir. 2012) (finding the plaintiff's proposed claim construction to be unsupported by the record and so frivolous as to warrant **sanctions**); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) (finding the plaintiff's proposed **claim construction** "so lacking in any evidentiary support that assertion of this construction was **unreasonable** and reflects a **lack of good faith**").

As Plaintiffs made clear in their CC Reply, Respondents' claim constructions are wholly unsupported by and utterly at odds with the intrinsic evidence to the point that they lack good faith. *See, e.g.*, ECF 150 at 6-10. Respondents' reliance on extrinsic evidence is objectively unreasonable given the unambiguous nature of the Asserted Claims and specification of the '061 Patent and, in any event, Respondents' extrinsic evidence is unsupportive of Respondents' January 19, March 2, and March 23 constructions. *See, e.g.*, *id.* at 9-14. Respondents knew, and have known all along, that their myriad proposed constructions of magnesium threonate since January 19 are frivolous and without merit. Indeed, this is the precise reason Plaintiffs and, seemingly, Respondents, advanced plain and ordinary meaning as their proposed construction on December 19 in the first place.

Respondents have also refused to engage in the claim construction meet and confer process in good faith (in violation of Section 3(g) of this Court's Patent Standing Order, ECF 33 at 15) and continued to advance baseless—and changing—constructions;

- 11 -

misconduct that is compounded by Respondents' steadfast refusal to revert to their December 19 proposal. *See* § II, *supra*. These tactics have unnecessarily multiplied these proceedings, including at least through Respondents' filing of the Joint Notice of Narrowed Issues for Claim Construction (ECF 111), Respondents' service of "Supplemental Intrinsic Evidence" on March 7, the March 8 and March 9 "Notices" requesting clarification of claim construction briefing schedule (ECF 113; ECF 115), the March 24 "Supplemental Brief – Clarification of Patent Family Lineage" (ECF 145), the Clarifying Declaration of Sara Adams (ECF 151), and the Declaration of Raj Abhyanker in Support of Clarifying Declaration of Sara Adams (ECF 152), each of which required Plaintiffs' attention and response. These filings, both individually and collectively, raised arguments that Respondents have known since at least December 19 lack merit. By repeatedly submitting these arguments and steadfastly refusing to withdraw them despite warnings from Plaintiffs, Respondents have needlessly prolonged claim construction, increasing the burden on Plaintiffs and the Court.

Bad faith can be inferred based on the totality of these circumstances, and Respondents' vexatious conduct is sanctionable under Section 1927, LR 83-7 (for a violation of LR 11-9), and the Court's inherent power. *See, e.g.*, *Moser*, 366 F. Supp. 2d at 984-85 (finding counsels' "submissions of multiple misleading pleadings" and "steadfast refusal to address any of Plaintiffs' repeated complaints about its malfeasance" constituted "a bad faith attempt to mislead the Court about the facts and the law" and "to harass the Plaintiff and to obstruct the ascertainment of truth in this case" and awarding sanctions under, *inter alia*, 28 U.S.C. § 1927 and the court's inherent power); *Vedatech, Inc.*, 2005 WL 1513130, at *17 (awarding sanctions under Section 1927 where counsel "recklessly and in bad faith multiplied the legal proceedings . . . by recklessly raising frivolous arguments," forcing defendants to defend themselves against "vexatious, frivolous, legally deficient claims" that "should have been dismissed from the outset"); *Pratt v. California*, 11 F. App'x 833, 835-36 (9th Cir. 2001) (noting bad

NOTICE OF MOTION AND MOTION FOR SANCTIONS

faith can be found when an attorney knowingly or recklessly raises a frivolous argument or raises an argument only to harass an opponent).

### 2. Respondents' Reliance on Litigation-Driven Expert Testimony

As explained above, Respondents relied on and submitted testimony from its so-called experts (i.e., Kappa's Witnesses) to support Respondents' second (01/19/26), third (03/02/26), and fourth (03/23/26) claim construction positions. *See* ECF 95-2 ("Adams Decl."); ECF 95-3 ("Ziari Decl."). But as Respondents' own documents conclusively show, Respondents engaged Kappa's Witnesses to opine on issues of validity to support Respondents' Rule 11 Motion; Kappa's Witnesses **were not engaged to provide** and **did not provide** proposed constructions of magnesium threonate. *See* ECF 150 at 12-14. Indeed, Kappa's Witnesses' engagement letters and declarations are **silent as to claim construction**, including its standards (such as starting with the language of the claims and the patent specification and assessing the meaning of claim terms in view of the claims and specification from the perspective of a person of ordinary skill in the art), and devoid of any claim construction analysis, including any mention of the language of the Asserted Claims or the '061 Patent specification. *Id.*; *see also, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

This is not surprising given that Respondents engaged Kappa's Witnesses at the eleventh hour to offer opinions in support of Respondents' Rule 11 Motion (ECF 93-3; ECF 93-4), which posited only invalidity arguments, before repurposing those exact same declarations to support Respondents' claim construction positions (ECF 95-2; 95-3). Tellingly, almost every conclusion in Kappa's Witnesses' declarations were provided, often verbatim, in a Sample Declaration (**Ex. M**; "Sample Decl.") provided to the Witnesses by Abhyanker on January 10, 2026 (i.e., nine days before their declarations were filed with Respondents' Rule 11 Motion and thirteen days before the declarations were resubmitted with the JCCS). As illustrated below, the assignments from the Sample Declaration are parroted in Kappa's Witnesses' declarations:

- 13 -

> 4. I have been retained by counsel for Defendant to provide expert analysis regarding:
>
> (a) the biochemical properties of magnesium salts and complexes;
>
> (b) the scientific validity of structure/function claims commonly used in the dietary supplement industry;
>
> (c) whether magnesium L-threonate is a naturally occurring substance;
>
> (d) whether mixtures of magnesium with threonate precursors or threonate-releasing compounds can form magnesium L-threonate in vivo; and
>
> (e) whether Plaintiffs' assumptions regarding dosage, mechanism, and bioavailability are scientifically correct.

.

*Compare* **Ex. M**, Sample Decl. at ¶ 4 (above), *with* Adams Decl., ECF 95-2, ¶ 1 (below, top) and Ziari Decl., ECF 95-3, ¶ 1 (below, bottom):

> 1. I have been retained by Mando International LLC to provide expert analysis including, but not limited to:
>
> i. the biochemical properties of magnesium salts and complexes;
>
> ii. the scientific basis of structure/function claims commonly used in the dietary supplement industry;
>
> iii. whether magnesium L-threonate is a naturally occurring substance;
>
> iv. whether magnesium and threonate or threonate-producing compounds can combine in vivo; and
>
> v. whether certain dosage, mechanism, or bioavailability of magnesium L-threonate are scientifically supported.

* * *

> 1. I have been retained by Mando International LLC to provide expert analysis including, but not limited to:
>
> a. whether magnesium L-threonate is a naturally occurring substance; and
>
> b. whether mixtures of magnesium with threonate precursors or threonate-releasing compounds can form magnesium L-threonate in vivo.

.

- 14 -

Kappa's Witnesses' Declarations likewise repeat the same conclusions as the Sample Declaration, as illustrated below:

> 28. Based on my training, research, and review of the scientific evidence, it is my expert opinion that:
>
> ○ **Magnesium L-threonate occurs naturally in the human body.**
>
> ○ **Magnesium and L-threonic acid can and do form magnesium L-threonate in vivo, even when not pre-bonded before ingestion.**

> ○ Plaintiffs' claim that only proprietary, pre-bonded magnesium L-threonate is biologically meaningful is **scientifically incorrect.**
>
> ○ The structure/function claims challenged in the Complaint are **consistent with accepted scientific understanding of magnesium's roles and are not false or misleading.**
>
> ○ There is **no scientific basis** for Plaintiffs' assertion that cognitive benefits require the exact proprietary form or dosage referenced in their marketing materials.

*Compare* **Ex. M**, Sample Decl. at ¶ 28 (above), *with* Adams Decl., ECF 95-2, ¶ 7 (below, top) and Ziari Decl., ECF 95-3, ¶ 52 (below, bottom):

> 7. Based on my training, research, and review of the scientific evidence, it is my expert opinion that:
>
> A. Magnesium L-threonate occurs naturally in the human body.
>
> B. Magnesium and L-threonic acid can and do form magnesium L-threonate in vivo, even when not pre-bonded before ingestion.
>
> C. Any claim that only proprietary, pre-bonded magnesium L-threonate is more bioavailable and consequently more effective is scientifically incorrect.
>
> D. There is no scientific basis for any statement that cognitive benefits require the exact proprietary form or dosage referenced in their marketing materials.

* * *

- 15 -

52. Based on my training, research, and review of the scientific evidence, it is my expert opinion that:

   a. Magnesium L-threonate occurs naturally in the human body.

   b. Magnesium and L-threonic acid can and do form magnesium L-threonate in vivo, even when not pre-bonded before ingestion.

   c. Any claim that only proprietary, pre-bonded magnesium L-threonate is more bioavailable and consequently more effective is scientifically incorrect.

   d. There is no scientific basis for any statement that cognitive benefits require the exact proprietary form or dosage referenced in their marketing materials.

Respondents, and particularly Abhyanker, knew the opinions in Kappa's Witnesses' declarations were baseless and did not support any of Respondents' claim construction positions because Abhyanker drafted them to support Respondents' Rule 11 invalidity arguments. Cloaking attorney-argument regarding validity as independent expert testimony allegedly directed to claim construction—and doing it poorly and willfully—evidences both the objective baselessness of Respondents' claim construction positions and an abuse of the claim construction process. Despite this, Respondents, and particularly Abhyanker, have continued to proffer Kappa's Witnesses as purported experts for claim construction, forcing Plaintiffs to engage their own independent, rebuttal expert witness and depose Kappa's Witnesses on an accelerated basis (i.e., during claim construction briefing) on opinions not included in their declarations. Respondents' continued insistence on relying on unsupported expert opinions for claim construction unnecessarily prolonged the proceedings and is, itself, sanctionable. *See, e.g.*, *Rowland v. Watchtower Bible*, No. CV 20-59-BLG-SPW, 2022 WL 3596827, at *5 (D. Mont. Aug. 23, 2022) (sanctioning attorney for his "conscious decision to provide only a limited depiction" of the relevant facts in a declaration and exhibiting "a reckless disregard of documents and other evidence" to the contrary, which had the effect of multiplying the proceedings unnecessarily); *Moser*, 366 F. Supp. 2d at 953  (sanctioning

- 16 -

counsel for "consistently presenting untruths and half-truths" and "obstruct[ing] the fair, just, and expeditious resolution of the proceedings").

### 3.    Respondents' Reliance on False Expert Testimony

Putting aside that the opinions of Kappa's Witnesses are completely untethered to claim construction, Respondents should be sanctioned because Abhyanker knowingly submitted multiple false declarations to this Court despite Plaintiffs' repeated warnings.

At least by February 23, Abhyanker was **on notice** that there was clear, publicly available information calling into question Ms. Adams's credentials, including whether she was—as she stated under penalty of perjury—a Ph.D.-credentialed expert. From February 23 and onward, Plaintiffs attempted to get Respondents to properly investigate their own witnesses and withdraw their reliance on Ms. Adams' testimony as purported support for Respondents' claim construction positions. *See* § II.B, *supra*. Respondents steadfastly refused and continued to proffer her as a Ph.D.-credentialed expert including in sworn, false statements filed with this Court with the JCCS and in Respondents' claim construction brief. *See* ECF 93-4; ECF 95-2.

At least by March 3, Abhyanker received **unequivocal confirmation** from the university purportedly conferring her degree that Ms. Adams **does not hold a Ph.D.** and thus statements in her declaration stating that she "hold[s] a Ph.D. in Natural Sciences (Biochemistry) from the University of Cambridge" are indisputably false. ECF 93-4 at 2; ECF 95-2 at 2. Despite his pronouncements that "[w]e will not use Ms. Adams as an expert in this case if you are able to support your allegation that she did not obtain a degree from Cambridge" (**Ex. H** at 1), Abhyanker not only failed to withdraw her declaration when he received conclusive evidence that Plaintiffs' concerns were true, he **concealed** that evidence for nearly a month and then attempted to **cover it up** by submitting a further declaration from Ms. Adams (ECF 151) and one from himself (ECF 152), purporting to "clarify" statements regarding her (lack of) credentials. But two or even three wrongs do not make a right.

Putting aside that Respondents should have conducted a diligent investigation of their own expert in the first instance, at a minimum Respondents should have withdrawn Ms. Adams' declaration the moment Plaintiffs raised their concerns about her qualifications, and later when Respondents confirmed that the statements in her declaration were false. Plaintiffs should never have had to depose Ms. Adams or respond to the baseless opinions in her declarations. Respondents' continued reliance on Ms. Adams, **even today**, evidences a reckless disregard for their duties of truth and candor to the Court, which itself is sanctionable. *See, e.g.*, *Moser*, 366 F. Supp. 2d at 978 (sanctioning counsel for "repeated misstatements of the facts, frivolous objections, and mischaracterizations of law, when combined with the fact that she was placed on notice of her transgressions **no less than four times** by Plaintiff's counsel" and noting that such conduct "cannot be interpreted as anything other than a bad faith attempt to mislead the Court, obscure the real facts of the case, to obstruct, and/or harass the Plaintiff" (emphasis added)); *Hunt v. County of El Dorado*, No. 2:10-CV-01367 JAM, 2012 WL 4862362, at *3-4 (E.D. Cal. Oct. 11, 2012) (finding bad faith and sanctioning counsel for "knowingly submit[ing] a declaration with a false and misleading signature" not once, but twice, thereby "needlessly prolong[ing] the proceedings"); *Montgomery v. Etreppid Techs., LLC*, No. 3:06-CV-00056-PMP-VPC, 2010 WL 1416771, at *18 (D. Nev. Apr. 5, 2010) (noting that "[p]erjury is sufficient grounds for a bad faith finding to support a sanction under the Court's inherent power").

### B.   RESPONDENTS' FRIVOLOUS CLAIM CONSTRUCTION ARGUMENTS

In addition to circuitous and unreasonable claim construction tactics—starting, and then returning, to the plain and ordinary meaning of the single term at issue—Respondents have burdened Plaintiffs with having to respond to inapposite legal doctrines injected into the claim construction process. First, Respondents have repeatedly advanced a misguided argument that the Asserted Claims are invalid (i.e., patent ineligible) under 35 U.S.C. § 101; in doing so, Respondents blatantly misapply or

- 18 -

outright ignore binding Section 101 case law, including from the Supreme Court and the Federal Circuit, and openly mischaracterize the Asserted Claims. Second, Respondents have attempted to recast a defense to infringement as somehow applicable (it is not) to claim construction. In both instances, Respondents' positions are objectively unreasonable and offered in bad faith, warranting sanctions. *See, e.g.*, *Moser*, 366 F. Supp. 2d at 979 (sanctioning counsel for "repeatedly and vexatiously presents 'facts' and 'law' to the Court that are plainly wrong or misleading, which needlessly prolong and multiply the [] proceedings and materially increase the burden on the Court" and for "steadfast[ly] refus[ing] to correct these errors when faced with repeated objections and explicit notice that her papers were inaccurate and misleading"); *Vedatech, Inc.*, 2005 WL 1513130, at *17 (awarding sanctions under Section 1927 for counsel's "recklessly raising frivolous arguments" regarding legal precedent and noting that counsel's ignorance or "personal beliefs" about the merits of an argument was not a defense).

### 1. Respondents' Misapplication of 35 U.S.C. § 101 and Bad Faith Insistence That It Controls Claim Construction

Respondents have recycled an incomplete and inapplicable argument that the Asserted Claims are invalid under § 101 throughout the claim construction process. *See, e.g.*, ECF 95 at 7, 10-11. Plaintiffs have repeatedly explained the impropriety of Respondents' § 101 positions, even providing controlling caselaw assessing claims similar to the Asserted Claims (e.g., directed to dosage forms and methods comprising dietary supplements). *See, e.g.*, ECF 103 at 16 (citing, *inter alia*, *Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338 (Fed. Cir. 2019)); *see also* ECF 101 at 4; ECF 116 at 22-23; ECF 147 at 15-19. Respondents have persisted in repeating the same, objectively inapplicable arguments despite these clear admonitions. *See, e.g.*, ECF 95 at 10-11; ECF 95-2, 95-3; ECF 143 at 11-13. As Plaintiffs made clear in the CC Reply, Respondents' "litigation-driven Section 101 arguments disguised as claim construction positions" based on attorney argument and improper testimony from

- 19 -

Kappa's Witnesses are meritless. *See* CC Reply at 16-17. Respondents should not have taken this position once in the context of claim construction and should be sanctioned for maintaining it for **four months** at Plaintiffs' substantial expense.

### 2.    Respondents' Untimely Injection of Inapplicable Estoppel Arguments

As Plaintiffs explained in the CC Reply, Respondents presented an argument—based on a doctrine that does not apply to claim construction—for the first time in their responsive brief. *See* CC Reply at 14-16. Specifically, Respondents belatedly argued that the construction of the one disputed claim term was subject to prosecution history estoppel. *Id.* But that doctrine would apply, if at all, to an infringement analysis under the doctrine of equivalents; it does not apply to claim construction. *Id.* at 15 (*citing Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Werner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17 (1997)). Respondents' inclusion of this objectively baseless argument, particularly at the eleventh hour of claim construction briefing, is just another example of Respondents' bad faith litigation conduct. Respondents either knowingly raised this frivolous argument or did so for the singular purpose of harassing Plaintiffs. In any event, Plaintiffs should never have had to assess and respond to this unfounded argument.

### C.    ABHYANKER'S WANTON DISREGARD FOR ACCEPTABLE LITIGATION CONDUCT

Precedent shows that Respondents, Abhyanker in particular, will not stop his aggressive and inappropriate litigation tactics absent this Court imposing sanctions. Indeed, Abhyanker has a long history of sanctionable litigation misconduct, including a blatant disregard for deadlines and court procedures. In addition to the summary provided in Plaintiffs' Reply to Defendant's Response to the OSC (*see, e.g.*, ECF 139 at 7-8 (describing recent instances of Abhyanker's misconduct and citing *GovernmentGPT Inc. v. Axon Enter. Inc*., No. CV-24-01869-PHX-SMB, 2025 WL 4080457 (D. Ariz. Apr. 3, 2025); *LegalForce RAPC Worldwide P.C. v. MH Sub L LLC*,  No. C 24-00669

WHA, 2025 WL 27 3675365 (N.D. Cal. Dec. 18, 2025); *Nextdoor, Inc. v. Abhyanker*, Case No. 12-cv-05667-EMC, 2021 WL 1263973 (N.D. Cal. April 6, 2021))), Abhyanker was even more recently sanctioned in February 2026 in the Northern District of California for his conduct related to a missed deadline. *See Miranda Tecnologia De La Informacion S.C. v. Endava PLC*, 25-cv-06393 (EKL), ECF 53 (N.D. Cal., Feb. 4, 2026).

Abhyanker's untimely declaration in support of Ms. Adams' purported "clarifying" declaration is a prime example of his pervasive attempts to explain away his misconduct—which he believes is entirely acceptable even in the face of the OSC and Plaintiffs' admonitions—through unreasonable interpretations. In it, Abhyanker attempts to recast **indisputable facts** related to Ms. Adams' false statement in her January 19 declaration by making his own false statement, specifically:

> It was not until Plaintiffs' counsel Mr. Cox's email of yesterday, March 30, 2026 that Plaintiffs first identified with any specificity the particular statement they contend was false and the basis for that contention. Prior to that date, Plaintiffs had made general requests for Cambridge correspondence, but had not identified which statement in Dr. Adams's declarations they contended was false, which Cambridge language they contended contradicted it, or what relief they believed was warranted.

ECF 152, ¶ 5. No reasonable reading of Mr. Cox's emails one month earlier (i.e., **Ex. G** at 1, 3-4) could support Abhyanker's sworn statement. To be clear, Ms. Adams' declaration references her Ph.D. in only one place, paragraph 4: "I hold a Ph.D. in Natural Sciences (Biochemistry) from the University of Cambridge." ECF 95-2, ¶ 4. The email from Cambridge that Abhyanker withheld from March 3 to March 30 proved this sworn statement to be false. *See* ECF 151-1. Given the benefit of the doubt, Abhyanker could conceivably be guilty of willful blindness. But his pattern of litigation misconduct and pervasive untruths makes clear that Abhyanker has no trouble purposefully misrepresenting indisputable facts to serve his tortured approach to litigation. This alone is evidence of his bad faith approach to litigation.

NOTICE OF MOTION AND MOTION FOR SANCTIONS

One further example of Abhyanker's disregard for the norms of discovery is his insistence that Plaintiffs' amended deposition notices for Kappa's Witnesses (which merely changed the date of the deposition to reflect the parties' mutual agreement) were untimely and his insistence on taking direct testimony from Kappa's Witnesses **before** Plaintiffs' cross examination. **Ex. N** at 4 (stating that "I will be taking their depositions first, you can take their depositions after I am done"). Indeed, as Plaintiffs detailed in their CC Reply, Abhyanker for the first time during these direct examinations attempted to elicit opinions related to claim construction, including the level of ordinary skill and references to the specification and Asserted Claims, which neither deponent mentioned let alone analyzed in their declarations (*see* ECF 95-2, 95-3). Such a departure from acceptable and well-established procedures has been Abhyanker's *modus operandi* throughout other cases as here, and seems designed for the sole purpose of multiplying the proceedings, harassing Plaintiffs and their counsel, unnecessarily driving up Plaintiffs' litigation costs, and delaying resolution of this case. Plaintiffs should not be forced to bear the burden of Abhyanker's malfeasance, nor should they be required to police every litigation tactic taken by Abhyanker, including pursuing Court intervention for each of Respondents' (many) transgressions.

## V.    CONCLUSION

Respondents' vexatious approach to this action has had significant consequences. Guided by Abhyanker—a repeatedly sanctioned counsel known for bad-faith litigation tactics—Respondents have failed to follow acceptable, court ordered, and/or Congressionally mandated rules that govern procedures in federal court, and advanced changing claim construction positions objectively at odds with well-settled caselaw, all designed to significantly and improperly drive-up Plaintiffs' expenses. The Court should sanction Respondents for their misconduct specific to the claim construction process and order them to pay Plaintiffs' attorneys' fees and costs incurred due to Respondents' misconduct. Should the Court grant Plaintiffs' Motion, Plaintiffs will submit an

- 22 -

accounting of such fees and costs, which Plaintiffs currently estimate to be at least $200,000 plus the cost of briefing this Motion.

Dated: April 13, 2026

By:    /s/ John W. Cox
        John W. Cox (admitted *pro hac vice*)
        Counsel for Plaintiffs/Counterclaim Defendants

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,986 words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order (ECF No. 16).

Dated: April 13, 2026        By:    /s/ John W. Cox
        John W. Cox (admitted *pro hac vice*)
        Counsel for Plaintiffs/Counterclaim Defendants

- 23 -

NOTICE OF MOTION AND MOTION FOR SANCTIONS

## CERTIFICATE OF SERVICE

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626. On April 13, 2026, I served the following document(s):

**NOTICE OF MOTION AND MOTION FOR SANCTIONS**

on the parties stated on attached service list

| | |
|---|---|
| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

☒ **BY COURT'S CM/ECF SYSTEM.** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.
**BY E-MAIL.** By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 13, 2026, at Costa Mesa, California.

/S/ SALVATORE PICARIELLO
Salvatore Picariello