Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:  (650) 965-8731
Facsimile:  (650) 989-2131

Attorney for Defendant,
Mando International, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC., a California corporation, and THREOTECH LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS, a Texas limited liability company<br><br>Defendant.<br><br>v.<br>AIDP, INC.,<br><br>Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>Hearing**:**    May 15, 2026<br><br>Time:        1:30 p.m.<br><br>Courtroom:  6B, 6th Floor<br><br>Hon. Fernando L. Aenlle-Rocha |

1

# TABLE OF CONTENTS

**TABLE OF CONTENTS**                                                        **2**

**I.  INTRODUCTION**                                                          **4**

**II. FACTUAL BACKGROUND**                                                    **5**

A. The December 23, 2025, Stipulation                                         5

B. The Claim Construction Timeline                                            6

C. The February 27 Narrowing Stipulation                                      7

D. Dr. Adams's Credentials                                                    8

E. The April 3, 2026 Meet and Confer                                         9

**III. LEGAL STANDARDS**                                                      **9**

**IV. ARGUMENT**                                                             **10**

A. The Parties' Own Stipulation Authorized "Proposed Constructions"          10

B. The February 27 Stipulation Resolved the Narrowing Issue                 11

C. Refining Claim Construction Positions Is Normal Patent Practice           12

D. Defendant's Use of Scientific Declarants Was Proper                       13

E. Ms. Adams's Credentials Were Adequately Addressed                         15

F. Defendant's Legal Arguments Were Not Frivolous                           18

G. Plaintiffs' Reliance on Prior Litigation History Is Improper and
Prejudicial                                                                  19

H. Plaintiffs' Motion Fails Threshold Requirements                          20

**V.  CONCLUSION**                                                          **21**

# TABLE OF AUTHORITIES

DEFENDANT'S OPP. TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

**Cases**

*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991) ........................................... 11

*Fink v. Gomez,* 239 F.3d 989 (9th Cir. 2001) ........................................11, 22

*Galderma v. TolmaR* 737 F.3d 731 (Fed. Cir. 2013) ...................................16

*iLOR, LLC v. Google, Inc.,* 631 F.3d 1372 (Fed. Cir. 2011) ................... 12, 21

*In re Keegan Mgmt, Sec. Litig.,* 78 F.3d 431 (9th Cir. 1996) ..................... 11

*PureCircle USA v. SweeGen,* SACV-18-01679 (C.D. Cal. 2020) ............... 15

*Tech Pharm. Servs.v. Alixa Rx,* 2017 U.S. Dist. LEXIS 122231 ........... 8-9, 16

**Statutes**

28 U.S.C. § 1927 ................................................................................. 11, 21

35 U.S.C. § 101 ......................................................................................5, 21

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ......................................................................... 12

**Other Authorities**

ECF No. 33, Patent Standing Order § 3(a) ......................................... 7, 8, 17

ECF No. 33, Patent Standing Order § 3(b) ............................................ 4, 13

Dkt. 86 ¶ 8 .......................................................................................... 5, 6, 15

Dkt. 88 ............................................................................................... 7, 13, 23

Dkt. 111 § C ........................................................................................8, 13, 14

3

# I. INTRODUCTION

1.      Plaintiffs' Motion for Sanctions asks this Court to impose over $200,000 in sanctions for ordinary patent claim construction practice. Stripped of its rhetoric, the Motion challenges Defendant for **(1)** serving proposed constructions on the deadline the parties jointly stipulated to; **(2)** refining a claim construction position during the course of adversarial briefing; **(3)** providing scientific declarants with a template identifying the topics on which opinions were sought; **(4)** relying on a declarant whose Ph.D. was approved by the University of Cambridge but not yet ceremonially conferred; and **(5)** raising legal arguments - including under 35 U.S.C. § 101 and prosecution history estoppel - that Plaintiffs consider incorrect. None of this constitutes sanctionable conduct.

2.      The central irony of the Motion is this: on December 23, 2025, the parties entered into a stipulation (Dkt. 86) that extended the Preliminary Claim Construction deadline to January 19, 2026, for the exchange of "**proposed constructions** and supporting intrinsic and extrinsic evidence." (Dkt. 80, 86, ¶ 8 (emphasis added).) The parties' own stipulation used the plural - "proposed constructions" reflecting the shared understanding that the claim construction process would involve multiple proposed constructions, not a single fixed position. Plaintiffs now seek sanctions because Defendant did exactly what the stipulation contemplated: it served proposed constructions on January 19.

3.      Notably, Plaintiffs' Motion is limited to claim construction. In advance

4

of the April 3 meet and confer, Mr. Cox identified ten examples of purportedly sanctionable conduct. (Abhyanker Decl. ¶ 5, **Ex. A**.)  Most of those examples, including the preservation letter, the alleged Local Rule 7-3 violation, the Local Rule 7-9 deadline, the Dr. Gu deposition, the service declaration, and discovery conduct have been abandoned. They were abandoned because, as documented during the meet and confer, Mr. Cox was unable to identify governing rules, locate underlying communications, or articulate any prejudice with respect to any of them. (Abhyanker Decl. ¶¶ 7–8, **Ex. B**.)

4.    What remains is a motion that recharacterizes ordinary claim construction practice as vexatious misconduct. The Motion should be denied in its entirety.

## II. FACTUAL BACKGROUND

**A. The December 23, 2025, Stipulation**

5.    On December 23, 2025, the parties entered into a Stipulation and [Proposed] Order Regarding Preliminary Claim Construction Deadlines (Dkt. 80, refiled 86), signed by both Mr. Gavenman and undersigned counsel. The stipulation extended the deadline for Preliminary Claim Construction Disclosures from December 29, 2025, to January 19, 2026. (Abhyanker Decl. ¶ 9, **Ex. C**.)

6.    Paragraph 8 of the stipulation describes the scope of the extended deadline: "the deadline for the exchange of Preliminary Claim Construction

5

Disclosures, including **proposed constructions** and supporting intrinsic and extrinsic evidence, as to U.S. Patent No. 8,637,061, is extended by three (3) weeks." (Dkt. 86, ℙ 8 (emphasis added).) The stipulation uses the plural - "proposed constructions" - not "a single proposed construction." Both parties understood and agreed that the January 19 exchange would involve multiple proposed constructions and supporting evidence, which is precisely what the Patent Standing Order contemplates. (ECF 33, § 3(b).)

7.    The Court itself adopted this language. In its January 8, 2026 Order Approving Stipulation to Extend Preliminary Claim Construction Deadline (Dkt. 88), the Court found "good cause" and ordered that the deadline be extended for disclosures "including **proposed constructions** and supporting intrinsic and extrinsic evidence." (Dkt. 88 at 1 (emphasis added).) Plaintiffs are asking this Court to sanction Defendant for complying with this Court's own Order. (Abhyanker Decl. ℙ 10)

**B. The Claim Construction Timeline**

8.    On December 8, 2025, Plaintiffs identified a single term for construction: "magnesium threonate." On December 19, 2025, Defendant identified the same term and proposed the plain and ordinary meaning. (ECF 95 at 3.)

9.    On January 19, 2026 - the deadline established by the parties' own stipulation - Defendant served its Preliminary Claim Construction identifying additional terms for potential construction and providing supporting scientific

6

declarations. This was the date required for the exchange of preliminary constructions and supporting extrinsic evidence, including expert testimony. (ECF 33, § 3(b).) Defendant's disclosures conformed to both the stipulation and the Patent Standing Order. (Abhyanker Decl. ¶¶ 11–13.)

**C.The February 27 Narrowing Stipulation**

10.    The parties cooperated to narrow the issues. The email correspondence leading to the Joint Notice demonstrates that the narrowing was initiated by Defendant and accomplished collaboratively. Plaintiffs' own lead counsel, Mr. Gavenman, acknowledged: "[W]e find the parties are not in a dispute as to the substance of the stipulation and, instead, agree that the issues should be narrowed such that claim construction proceed only with respect to one term, magnesium threonate." Mr. Cox similarly confirmed that Defendant "raised the issue of narrowing." (Abhyanker Decl.   15, Ex. D.) On February 27, 2026, the parties filed the Joint Notice (Dkt. 111) narrowing claim construction to a single term. (Abhyanker Decl. ¶ 16, **Ex. D**.)

11.    The Joint Notice reserved "all rights with respect to infringement, invalidity, and other defenses or arguments **not inconsistent with this narrowing of claim construction issues**." (Dkt. 111, § C (emphasis added).) The Patent Standing Order's meet-and-confer process (§ 3(a)) is designed for precisely this outcome: parties identify terms, discuss them, and narrow the dispute. That is what happened. (Abhyanker Decl. ¶¶ 16–18.)

DEFENDANT'S OPP. TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

**D. Dr. Adams's Credentials**

12.    Dr. Sara Adams's deposition was taken as a person of ordinary skill in the art, not as a testifying expert under Rule 26(a)(2)(B). She pursued doctoral studies in Natural Sciences (Biochemistry) at the University of Cambridge, completed all academic and examination requirements, and received formal approval from the Degree Committee, "the granting authority within the University of Cambridge," in April 2025. (Adams Depo. Tr. 12:16–17; Abhyanker Decl. ¶¶ 26-27.)

13.    Under Cambridge's administrative procedures, a degree is formally conferred only after attendance at an in-person graduation ceremony. Dr. Adams testified that this step is "administrative and ceremonial only" and that she has been unable to attend due to immigration-related travel constraints. (Adams Depo. Tr. 13:1–14; Abhyanker Decl. ¶¶ 28-32, **Ex. E**.)

14.    Upon receiving the Cambridge correspondence on March 3, 2026, counsel evaluated the issue, determined that clarification was appropriate, and filed the Clarifying Declaration of Sara Adams (ECF 151) and a supporting Declaration (ECF 152) on March 31, 2026--transparently disclosing the Cambridge correspondence and explaining the distinction. The Cambridge correspondence was provided to Plaintiffs on March 30, 2026, voluntarily and without any outstanding discovery request requiring its production. (Abhyanker Decl. ¶¶ 31-32.)  Dr. Adams is scheduled for the Congregation Date of May 2, 2026, which is approximately two weeks from now, at which

8

the degree is scheduled be conferred.  (Abhyanker Decl. ₱₱ 33, **Ex. F**.)

**E. The April 3, 2026 Meet and Confer**

15.    Mr. Cox's declaration describes the meet and confer in a single conclusory paragraph. (Cox Decl. ₱ 3.) As documented in Defendant's contemporaneous memorandum, the actual discussion was far more substantive--and far less productive--than Mr. Cox's characterization suggests. Mr. Cox raised seven categories of sanctions, was unable to identify governing rules or locate underlying communications for several of them, refused to discuss any potential resolution, and made remarks inconsistent with the civility this Court expects. (Abhyanker Decl. ₱₱ 4–9) Mr. Cox's subsequent written response to the memorandum did not identify a single specific factual inaccuracy. (Abhyanker Decl. ₱ 9, **Ex. C**)

**III. LEGAL STANDARDS**

16.    Sanctions are an extraordinary remedy that should be "exercised with restraint and discretion." *Chambers v. NASCO, Inc*., 501 U.S. 32, 44 (1991). The Court should deny sanctions where the conduct at issue reflects ordinary litigation practice, even aggressive litigation practice, absent bad faith. Under 28 U.S.C. § 1927, sanctions require a finding of "recklessness or bad faith" and that the attorney "so multiplies the proceedings in any case unreasonably and vexatiously." *In re Keegan Mgmt. Co., Sec. Litig*., 78 F.3d 431, 436 (9th Cir. 1996). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing

9

an opponent." *Id*. A losing argument is not necessarily a frivolous one.

17.    "The district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). The inherent power must be "exercised with restraint and discretion" because of the risks of abuse. *Chambers*, 501 U.S. at 44.

18.    In the claim construction context, a position is sanctionable only where it is "so unreasonable that no reasonable litigant could believe it would succeed." *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011).

## IV. ARGUMENT

**A. The Parties' Own Stipulation Authorized "Proposed Constructions"**

19.    The foundation of Plaintiffs' Motion collapses under the weight of the parties' own stipulation. On December 23, 2025, the parties agreed to extend the Preliminary Claim Construction deadline to January 19, 2026, for the exchange of "proposed constructions and supporting intrinsic and extrinsic evidence." (Dkt. 86, ₱ 8.) The stipulation uses the plural: "**proposed constructions**." Not "a proposed construction." Not "a single, final position." *Proposed constructions*.

20.    This language was not accidental. The Patent Standing Order's multi-stage process exists because claim construction is iterative. Parties identify terms, exchange preliminary positions, review each other's evidence,

10

meet and confer, and refine their positions through adversarial briefing. The stipulation reflects both parties' understanding of this process. Plaintiffs' counsel signed the stipulation agreeing that the January 19 exchange would involve "proposed constructions" and now seeks sanctions because Defendant served proposed constructions on January 19.

21.    Plaintiffs cannot stipulate to a process, participate in it, and then seek sanctions for the other party's participation. The stipulation is dispositive of Plaintiffs' argument that Defendant's January 19 disclosures were "untimely" or "improper." They were neither. They were served on the date both parties agreed to, containing exactly what both parties agreed would be exchanged.

22.    Indeed, the Court itself adopted this language when it approved the stipulation. In its January 8, 2026 Order (Dkt. 88), the Court found "good cause" and extended the deadline for disclosures, including **proposed constructions** and supporting intrinsic and extrinsic evidence." (Dkt. 88 at 1 (emphasis added).) Plaintiffs are thus asking this Court to sanction Defendant for complying with this Court's own Order--an Order that authorized the exchange of "proposed constructions" on the very date Defendant served them. No court will sanction a party for doing what the court ordered it to do. (Abhyanker Decl. ¶ 12.)

**B. The February 27 Stipulation Resolved the Narrowing Issue**

23.    Plaintiffs devote substantial space to Defendant's identification of ten terms on January 19. But this issue was resolved cooperatively. On February

11

27, 2026, the parties filed a Joint Notice (Dkt. 111) narrowing claim construction to a single term. Plaintiffs' own counsel consented. The system worked exactly as the Patent Standing Order contemplates: parties identify terms, discuss them, and narrow the dispute through the meet-and-confer process required by § 3(a). (Abhyanker Decl. ¶¶ 43-45.)

24.    Plaintiffs cannot both stipulate to narrow the issues and then seek sanctions for the conduct that preceded the stipulation. The Joint Notice's reservation clause preserves rights "not inconsistent with this narrowing of claim construction issues." (Dkt. 111, § C.) Seeking sanctions for the narrowing process itself is, by definition, inconsistent with it. The stipulation is itself evidence of good-faith participation in the Patent Standing Order's meet-and-confer process--the opposite of the bad faith Plaintiffs allege. (Abhyanker Decl. ¶ 36.)

**C. Refining Claim Construction Positions Is Normal Patent Practice**

25.    Plaintiffs characterize Defendant's evolving claim construction positions as a sanctionable "shifting sands" approach. This mischaracterizes both the record and patent practice.

26.    The Patent Standing Order establishes a structured, multi-stage process for claim construction precisely because the Court expects positions to evolve. The process moves from identification of terms (§ 3(a)), to exchange of preliminary constructions and supporting extrinsic evidence (§ 3(b)), to the Joint Claim Construction Statement (§ 3(c)), and finally to adversarial briefing

12

(§ 3(e)). Each stage contemplates that positions will be refined. The parties' own stipulation (Dkt. 86) used the plural "proposed constructions," reflecting the shared understanding that this is an iterative process. (Abhyanker Decl. ¶¶ 17–18.)

27.    A claim construction that is ultimately rejected is not for that reason alone, frivolous. *Id*. at 1378. Sanctions are appropriate only where a position is "so unreasonable that no reasonable litigant could believe it would succeed." *Id*. Plaintiffs do not and cannot make that showing.

28.    *PureCircle USA Inc. v. SweeGen, Inc*., No. SACV-18-01679 (C.D. Cal. 2020), which Plaintiffs cite repeatedly, is distinguishable. In *PureCircle*, defendants changed their claim construction position after the Court issued its claim construction order. Here, no claim construction order has been issued. The parties are still in the briefing stage. Refining positions during briefing is the norm, not the exception.

**D. Defendant's Use of Scientific Declarants Was Proper**

29.    Plaintiffs argue that Defendant's declarants parroted a "Sample Declaration" drafted by counsel. This argument misunderstands how declarations are prepared in litigation.

30.    Federal Rule of Civil Procedure 26(a)(2)(B) requires that "an expert report be prepared and signed by the witness, but an attorney may assist the expert in drafting the report." See *Tech Pharm. Servs., LLC v. Alixa Rx LLC,*

13

2017 U.S. Dist. LEXIS 122231. The rule "does not preclude counsel from providing assistance to experts in preparing the reports," *Id* The template identified subject matter areas; it did not dictate conclusions. Both declarants reviewed the relevant scientific literature and patent materials independently before forming and expressing their opinions. (Abhyanker Decl. ¶¶ 37-40.)

31.    Dr. Adams confirmed at deposition that her opinions were her own and her role was "to explain scientific principles" as opposed to "interpret patent claims." (Adams Depo. Tr. 171:6–18; Abhyanker Decl.    37.) Mr. Ziari similarly testified that the sample declaration "did not inspire anything that I put in the actual Declaration," that the scientific literature he relied upon was assembled "on my own volition through my own search," and that he was given a "skeleton" which he independently validated with scientific literature—disagreeing with some portions. (Ziari Depo. Tr. 90:4–6; 94:5–6; 106:18–21; 107:7–9; Abhyanker Decl.    38, Ex. G.) When asked whether his role was to explain the chemistry as a person of ordinary skill, he confirmed "Correct," and that "[t]hat chemistry is independent of any legal definition." (Ziari Depo. Tr. 122:1–10.) (Abhyanker Decl. ¶¶ 37-40.)

32.    Moreover, Dr. Adams and Mr. Ziari were retained as persons of ordinary skill in the art—not as testifying experts under Rule 26(a)(2)(B). The Patent Standing Order expressly contemplates the use of witness testimony at this stage, requiring parties to "designate any supporting extrinsic evidence including, without limitation… testimony of percipient and expert witnesses" and to provide "a description of the substance of that witness' proposed

14

testimony." (ECF 33, § 3(b).) Defendant's use of scientific declarants was directly authorized by the Court's own rules. (Abhyanker Decl. . ‖ 40.)

33.    Plaintiffs chose to depose Dr. Adams and Mr. Ziari. As Mr. Cox confirmed in a February 26 email: "[W]e agree to proceed with the depositions of all three witnesses." (Abhyanker Decl.    40, Ex. D.) No one compelled them to do so. The costs Plaintiffs now seek to recover were incurred by their own litigation choices. (Abhyanker Decl. ‖‖ 41–42, Ex. C to Cox Decl.)

**E. Ms. Adams's Credentials Were Adequately Addressed**

34.    Plaintiffs' Motion rests heavily on the assertion that Dr. Adams's declaration contained a "false" statement that she "holds a Ph.D." The Cambridge correspondence states that her "degree has not yet been conferred." But the full record tells a different story.

35.    Dr. Adams testified at length under oath regarding the Cambridge degree process:

A.    She completed all academic and examination requirements, including her viva and corrections. (Depo. Tr. 11:1–6.)

B.    Her corrections were approved by her examiners in 2017. (Depo. Tr. 11:8–15.)

C.    The Degree Committee, which is "the granting authority within the University of Cambridge" formally approved her Ph.D. in April 2025. (Depo. Tr. 11:9–17; 12:16–17.)

D.    The only remaining step is attendance at an in-person graduation

15

ceremony, which she described as "administrative and ceremonial only." (Depo. Tr. 13:12–14.)

E.  At Cambridge, individuals who have passed their viva are referred to as 'Doctor.' (Depo. Tr. 13:20–21.)

F.  The ceremony does not change the university's determination that [she] satisfied the Ph.D. requirements. (Depo. Tr. 13:24-25, 14:1–9.)

G.  She has been unable to attend due to immigration-related travel constraints. (Depo. Tr. 13:3–9.)

(Abhyanker Decl. ¶ 33, **Ex. E**.)

36.  The distinction between academic approval and formal conferral is real. Cambridge's use of "does not hold the degree" refers to the absence of ceremonial conferral—not to any academic deficiency. Dr. Adams's statement that she "holds a Ph.D." reflected her understanding that she had completed all requirements and received formal approval. This is not perjury; it is a reasonable characterization of her academic status that, at most, required clarification.

37.  The clarification was provided. The Clarifying Declaration of Sara Adams (ECF 151) and supporting Declaration (ECF 152) transparently disclosed the Cambridge correspondence, explained the distinction, and provided the full context. The Cambridge correspondence was provided to Plaintiffs voluntarily on March 30 without any outstanding discovery request requiring it. (Abhyanker Decl. ¶¶ 31–32.)

16

DEFENDANT'S OPP. TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

38.    Plaintiffs' Motion also asserts that counsel "did not conduct his own investigation into Ms. Adams' qualifications." (Mot. at 5.) The contemporaneous correspondence tells a different story. As Defendant's counsel stated in a February 26, 2026 email: "We did vet our experts. We identified corroborating evidence including the links we provided, and from her directly." Counsel further stated: "We asked Ms. Adams about credentials prior to her declaration, reviewed the publicly available information, asked her about what we found online, and received both an explanation and public links confirming her credentials." Counsel also committed: "If we later determine that reliance on her credentials was misplaced, we will withdraw her declaration." (Abhyanker Decl. ¶¶ 20–21, **Ex. D**.) This is not the conduct of an attorney acting in bad faith-it is the conduct of an attorney who investigated, relied in good faith on the results, and committed to reassessing if warranted.

39.    Regardless of the conferral ceremony, Dr. Adams's scientific qualifications to serve as a POSITA declarant are not in dispute. She has over ten years of experience in biotechnology research, published peer-reviewed research at Cambridge, and testified under oath to extensive scientific training. Her ability to explain the scientific meaning of "magnesium threonate" is wholly unaffected by whether she has attended a graduation ceremony. (Abhyanker Decl. ¶ 34.)

40.    Moreover, Dr. Adams has booked her formal graduation through Gonville & Caius College at the University of Cambridge for a Congregation

DEFENDANT'S OPP. TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

Date of May 2, 2026. On April 3, 2026, Cambridge confirmed her booking for "Graduation in absence"—a procedure that permits formal degree conferral without physical attendance, resolving the immigration-related travel constraint Dr. Adams testified about. (Abhyanker Decl. ¶¶ 35–36, **Ex. F**.) The Congregation Date is approximately two weeks before the hearing on this Motion, scheduled for May 15, 2026. By the time the Court hears this Motion, Dr. Adams will formally hold the degree in every sense -- academic, administrative, and ceremonial -- and Cambridge will have issued her degree certificate and transcript. Plaintiffs' central accusation of a "false" declaration will have been rendered moot by the very ceremony Plaintiffs contend was missing. This confirms what the record has shown all along: the distinction was always administrative, never academic, and Dr. Adams's scientific qualifications were never in question.

**F. Defendant's Legal Arguments Were Not Frivolous**

41.    Plaintiffs argue that Defendant's § 101 invalidity arguments and prosecution history estoppel arguments had no place in claim construction. Both arguments were raised in good faith. (Abhyanker Decl. ¶¶ 24-25.)

42.    The Court's own Patent Standing Order contemplates invalidity contentions based on § 101 as part of the claim construction framework. (ECF 33, § 2(c)(iv) ("Any grounds of invalidity based on 35 U.S.C. § 101").) The prosecution history is intrinsic evidence central to claim construction. *Phillips v. AWH Corp., 415 F.3d 1303* ("the prosecution history can often inform the

18

meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.")

43. That Plaintiffs disagree with these positions does not make them frivolous. The standard is whether "no reasonable litigant could believe it would succeed." *iLOR, LLC v. Google, Inc., 631 F.3d 1372*. These are colorable legal arguments supported by caselaw. Even still, a losing argument is not a sanctionable argument.

## G. Plaintiffs' Reliance on Prior Litigation History Is Improper and Prejudicial

44. Section IV.C of Plaintiffs' Motion is devoted entirely to attacking Defendant's counsel's litigation history in unrelated cases. This is improper. Prior litigation history is not an element of any sanctions standard. Section 1927 asks whether the attorney "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927 (emphasis added). The focus is on conduct in this case. The cited cases--*GovernmentGPT* (missed hearing date), Miranda Tecnologia (procedural deadline), Nextdoor (five-year-old case with different issues)--are factually inapposite. None involved claim construction. Using prior history to bootstrap a sanctions finding in an unrelated case is the kind of "vindictiveness" and "obduracy" that sanctions standards are designed to prevent. *Fink*, 239 F.3d at 992. If the conduct in this case does not independently warrant sanctions, prior cases

DEFENDANT'S OPP. TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

cannot supply the missing element of bad faith. (Abhyanker Decl. ¶ 35.)

**H.Plaintiffs' Motion Fails Threshold Requirements**

45.    The meet and confer underlying this Motion was inadequate. Mr. Cox's declaration describes it in a single paragraph--"I explained… Abhyanker disagreed,"--which is precisely the kind of "pro forma or perfunctory" exchange that Magistrate Judge Rocconi's Standing Order warns is inadequate. (Standing Order on Discovery Disputes, §2.) Local Rule 7-3 requires discussion of "the substance of the contemplated motion and any potential resolution." Mr. Cox refused to discuss a resolution on any issue. The Court "may strike or deny a motion if counsel fail to meet and confer in good faith." (Standing Order at 6, § III.B; Abhyanker Decl. ¶ 8.)

46.    Plaintiffs did not serve a Rule 11 safe harbor letter. While § 1927 does not formally require one, the absence is relevant: a party genuinely concerned about frivolous filings would typically give the opposing party an opportunity to withdraw. Plaintiffs instead threatened sanctions repeatedly in correspondence and then filed this Motion, suggesting the purpose is punitive rather than corrective. As the Ninth Circuit explained, "warnings were not motions, however, and the Rule requires service of a motion." *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998).

47.    Finally, Plaintiffs seek over $200,000 for claim construction proceedings involving a single patent with a single disputed term that the parties agreed

20

upon in December 2025 and narrowed by stipulation in February 2026.

48.    This amount is facially disproportionate and raises the question of whether Plaintiffs' own counsel's choices-- identifying but not using rebuttal expert, taking accelerated depositions, filing this Motion--are driving costs. (Abhyanker Decl. ⁋ 42.)

## V.  CONCLUSION

49.    The parties stipulated to a process involving "proposed constructions." The Court approved that stipulation and adopted the same language in its Order (Dkt. 88). Defendant served proposed constructions on the Court-ordered deadline. The parties narrowed the dispute to a single term by stipulation. Defendant refined its position during adversarial briefing, as patent litigants routinely do. Defendant provided scientific declarants with a template identifying topics for analysis--as litigation counsel routinely do. Defendant's declarant had a Ph.D. approved but not ceremonially conferred--and the distinction was transparently clarified. Cambridge has confirmed Dr. Adams's graduation for May 2, 2026, and her degree certificate will be issued before this Motion is heard. Defendant raised legal arguments that Plaintiffs disagree with--as opponents in patent cases routinely do.

50.    None of this is sanctionable. Plaintiffs are asking this Court to sanction Defendant for complying with this Court's own Order. The Motion should be denied in its entirety.

Dated: April 16, 2026

Respectfully submitted,
LEGALFORCE RAPC
WORLDWIDE P.C.


/s/ Raj V. Abhyanker
Raj V. Abhyanker
Attorney for Defendant:
Mando International, LLC

22

DEFENDANT'S OPP. TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1**

1.      The undersigned counsel certifies that this Opposition To Motion for Sanctions complies with the type-volume limitation of Local Rule 11-6.1.

2.      This memorandum contains approximately 3,979 words, excluding the caption, tables, signature block, and certificates of service.

Dated: April 16, 2026                    Respectfully submitted,
                                         LEGALFORCE RAPC
                                         WORLDWIDE P.C.


                                         /s/_Raj V. Abhyanker__
                                         Raj V. Abhyanker
                                         Attorney for Defendant:
                                         Mando International, LLC

23

DEFENDANT'S OPP. TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR