Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone: (650) 965-8731
Facsimile: (650) 989-2131

Attorney for Defendant,
Mando International, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC., a California corporation, and THREOTECH LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS, a Texas limited liability company<br><br>Defendant.<br><br>v.<br><br>AIDP, INC.,<br><br>Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS**<br><br>Hearing: May 15, 2026<br><br>Time: 1:30 p.m.<br><br>Courtroom: 6B, 6th Floor<br><br>Hon. Fernando L. Aenlle-Rocha |

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION
TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

I, Raj V. Abhyanker, declare as follows:

**Background**

1. I am an attorney licensed to practice law in the State of California (SBN 233284) and am a principal of LegalForce RAPC Worldwide, P.C. I am counsel of record for Defendant/Counterclaimant Mando International, LLC d/b/a Kappa Nutrition Labs ("Kappa" or "Defendant") in this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would competently testify thereto.

2. I submit this declaration in opposition to Plaintiffs' Motion for Sanctions (ECF 161), filed April 13, 2026.

3. I am the sole attorney representing Defendant in this action. Plaintiffs are represented by at least seven attorneys at three law firms: Hughes Hubbard & Reed LLP, Barnes & Thornburg LLP, and Fortis LLP.

**The April 3, 2026 Meet and Confer**

4. On April 3, 2026, I participated in a meet and confer with Mr. Cox, Ms. Baker, and Ms. Kornilova regarding Plaintiffs' anticipated motion for sanctions. The call lasted approximately 30 minutes.

5. In advance of the meet and confer, Mr. Cox's April 2, 2026 email identified nine separate examples purportedly sanctionable conduct including: (a) claim construction filings; (b) Ms. Adams's credentials; (c) the March 31 preservation letter; (d) the alleged Local Rule 7-3 violation in connection with

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO
PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

the motions to dismiss; (e) the failure to file Defendant's opposition by the Local Rule 7-9 deadline; (f) the alleged threat to depose Dr. Gu; and (g) Defendant's withdrawal of discovery requests. A true and correct copy of Mr. Cox's April 2 email is attached hereto as **Exhibit A**.

6. During the meet and confer, I took contemporaneous notes of the discussion while also reviewing relevant correspondence and filings in real time. Following the call, I promptly prepared a detailed written memorandum memorializing the substance of each issue discussed and sent it to Mr. Cox the same day. A true and correct copy of the memorandum is attached hereto as **Exhibit B**.

7. Of the nine examples raised by Mr. Cox on April 2, Plaintiffs' Motion for Sanctions (ECF 161) addresses primarily only claim construction conduct. The remaining categories--the preservation letter, the alleged Local Rule 7-3 violation, the Local Rule 7-9 deadline, the Dr. Gu deposition, the service declaration, and discovery conduct--were abandoned. As documented in my memorandum, Mr. Cox was unable to identify governing rules, locate underlying communications, or articulate any prejudice with respect to those issues during the meet and confer.

8. Mr. Cox's declaration describes the meet and confer in a single conclusory paragraph (Cox Decl. ¶ 3), stating only that he "explained" Plaintiffs' position and that I "disagreed." This omits that I repeatedly asked Mr. Cox to identify specific rules and legal standards supporting Plaintiffs' positions, proposed

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

practical resolutions including stipulations, and that Mr. Cox refused to discuss any resolution on any issue.

9. Mr. Cox's subsequent written response to my memorandum did not identify a single specific factual inaccuracy; instead, he called it "self-serving, incomplete, and inaccurate" without specifying which statements he contends are false. A true and correct copy of that response is attached hereto as **Exhibit C**.

**The Claim Construction Process and the December 23, 2025 Stipulation**

10. On December 23, 2025, the parties entered into a Stipulation and [Proposed] Order Regarding Preliminary Claim Construction Deadlines (Dkt. 80, 86). The stipulation was signed by both parties and extended the deadline for the exchange of Preliminary Claim Construction Disclosures from December 29, 2025 to January 19, 2026.

11. Paragraph 8 of the stipulation states that the extended deadline applies to "the exchange of Preliminary Claim Construction Disclosures, including **proposed constructions** and supporting intrinsic and extrinsic evidence." (Dkt. 86,    8 (emphasis added).) The use of the plural "proposed constructions" reflects both parties' understanding and agreement that the claim construction process would involve the exchange of *multiple* proposed constructions--not a single, fixed position. This is consistent with the Patent Standing Order's multi-stage process, which contemplates that positions will be refined as parties review each other's evidence and authorities.

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

12. On January 8, 2026, the Court approved the stipulation and adopted the same language. In its Order Approving Stipulation to Extend Preliminary Claim Construction Deadline (Dkt. 88), this Court found "good cause" and extended the deadline for disclosures "including **proposed constructions** and supporting intrinsic and extrinsic evidence." (Dkt. 88 at 1 (emphasis added).) The Court's own Order thus authorized Defendant to serve proposed constructions on January 19, 2026--which is exactly what Defendant did.

13. Plaintiffs now characterize Defendant's submission of proposed constructions on the agreed-upon January 19 deadline--the very deadline Plaintiffs stipulated to--as sanctionable. This is untenable. Defendant served its Preliminary Claim Construction on the date both parties agreed to, disclosing proposed constructions and supporting extrinsic evidence exactly as the stipulation and the Patent Standing Order contemplated.

14. On December 8, 2025, Plaintiffs identified a single term for construction: "magnesium threonate." On December 19, 2025, Defendant identified the same term and proposed plain and ordinary meaning. Plaintiffs characterize the eleven-day gap as a basis for sanctions; however, the parties were engaged in discussions during that period, and the disclosure was made well before the next deadline under the Patent Standing Order.

15. On January 19, 2026 - the deadline established by the parties' own stipulation (Dkt. 86) and the Court's Order (Dkt. 88) - Defendant served its Preliminary Claim Construction identifying additional terms for potential construction and providing supporting scientific declarations. The Patent

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

Standing Order, § 3(b), expressly requires the exchange of "proposed constructions" and "supporting extrinsic evidence including, without limitation… testimony of percipient and expert witnesses" at this stage. Defendant's disclosures conformed to the Patent Standing Order, the stipulation, and the Court's Order.

**The February 27 Joint Notice Narrowing Claim Construction**

16. The narrowing of claim construction to a single term was initiated by Defendant and accomplished cooperatively. The email correspondence leading to the February 27 Joint Notice (Dkt. 111) demonstrates that both parties engaged constructively in this process. Plaintiffs' own lead counsel, Mr. Gavenman, acknowledged in a February 27 email: "[W]e find the parties are not in a dispute as to the substance of the stipulation and, instead, agree that the issues should be narrowed such that claim construction proceed only with respect to one term, magnesium threonate." Mr. Cox's email of February 26 similarly confirmed that Defendant "raised the issue of narrowing the parties' claim construction disputes to a single term." A true and correct copy of the email chain leading to the Joint Notice is attached hereto as **Exhibit D.**

17. On February 27, 2026, the parties filed the Joint Notice (Dkt. 111) narrowing claim construction to a single term: magnesium threonate. The Joint Notice was signed with the consent of Mr. Gavenman and stated: "[P]ursuant to the Court's Patent Standing Order, and following further meet and confer efforts, the parties have agreed to narrow the scope of claim construction issues presented to the Court for consideration."

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

18. The Joint Notice further provided in Section C: "The parties reserve all rights with respect to infringement, invalidity, and other defenses or arguments **not inconsistent with this narrowing of claim construction issues**." (Dkt. 111, § C (emphasis added).) The Patent Standing Order's meet-and-confer process (§ 3(a)) is designed for precisely this outcome: parties identify terms, discuss them, and narrow the dispute. That is what happened here.

19. Plaintiffs now seek sanctions for the claim construction conduct that preceded and was resolved by this stipulation. The parties agreed to narrow to one term; the narrowing occurred; and the parties proceeded to brief that single term. Seeking sanctions for the conduct that the stipulation resolved is, by definition, inconsistent with the stipulation's reservation clause.

**Defendant's Investigation of Dr. Adams's Credentials**

20. Plaintiffs' Motion asserts that I "did not conduct [my] own investigation into Ms. Adams' qualifications." (Mot. at 5.) This is false. As reflected in the email correspondence attached as **Exhibit D**, when Plaintiffs raised concerns about Dr. Adams's credentials, I responded on February 26, 2026: "We did vet our experts. We identified corroborating evidence including the links we provided, and from her directly." I further stated: "We asked Ms. Adams about credentials prior to her declaration, reviewed the publicly available information, asked her about what we found online, and received both an explanation and public links confirming her credentials before and after your concerns. Based on

6

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

that, we have conducted a reasonable investigation and have no basis at this time to question her competency."

21. I also stated in that correspondence: "If we later determine that reliance on her credentials was misplaced, we will withdraw her declaration." This is not the conduct of an attorney acting in bad faith; it is the conduct of an attorney who investigated, relied in good faith on the results, and committed to reassessing if warranted.

**Defendant's Claim Construction Positions**

22. Defendant's initial plain-and-ordinary-meaning position on December 19, 2025 reflected a preliminary assessment based on the information available at that time. As I developed the factual record--including through scientific analysis, review of the prosecution history, and consultation with scientific advisors--my understanding of the claim term "magnesium threonate" and its proper construction evolved.

23. The Patent Standing Order establishes a structured, multi-stage process precisely because the Court expects positions to evolve. The process moves from identification of terms (§ 3(a)), to exchange of preliminary constructions and extrinsic evidence (§ 3(b)), to the Joint Claim Construction Statement (§ 3(c)), and finally to adversarial briefing (§ 3(e)). The parties' own stipulation (Dkt. 86) used the plural "proposed constructions," reflecting the shared understanding that this is an iterative process.

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

24. Defendant's Section 101 arguments were raised in good faith based on my analysis of the asserted claims and applicable caselaw. The Court's Patent Standing Order itself contemplates invalidity contentions based on § 101 as part of the claim construction framework. (ECF 33, § 2(c)(iv) ("Any grounds of invalidity based on 35 U.S.C. § 101").) Whether the Court agrees with Defendant's § 101 position is a separate question from whether the position was frivolous.

25. Defendant's prosecution history arguments were similarly raised in good faith. The prosecution history is intrinsic evidence central to claim construction, and the narrowing amendments made during prosecution are relevant to the meaning of claim terms. This is a legitimate legal position even if contested.

**Dr. Adams's Credentials and the Cambridge Correspondence**

26. The Defendant retained Dr. Sara Adams for the deposition to provide scientific analysis as a person of ordinary skill in the art ("POSITA") in connection with claim construction of the term "magnesium threonate." Dr. Adams was not designated or retained as a testifying expert witness under Federal Rule of Civil Procedure 26(a)(2)(B). Her role was limited to providing an independent scientific opinion on how a person of ordinary skill in the art would understand the disputed claim term during her deposition.

27. At the time Dr. Adams was retained, I reviewed her curriculum vitae, which reflects a Ph.D. in Biochemistry from the University of Cambridge (2010–2015), and her publications are independently verified through her

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

Cambridge-administered ORCID ID. I had no reason to question her academic credentials.

28. On February 24, 2026, in response to Plaintiffs' concerns about Dr. Adams's credentials, I sent a letter to the University of Cambridge Academic Registry requesting confirmation of Dr. Adams's degree status.

29. On March 3, 2026, I received a response from Jesmin Haq of the University of Cambridge stating that Dr. Adams's "degree has not yet been conferred and until such time [she] does not hold the degree."

30. Upon receiving this correspondence, I evaluated the issue. I determined that the Cambridge correspondence referred to the administrative step of formal degree conferral through an in-person graduation ceremony--not to any deficiency in Dr. Adams's academic qualifications. This understanding was based on: (a) Dr. Adams's representations regarding the Cambridge degree process; (b) the fact that the Degree Committee--which Dr. Adams identified as "the granting authority within the university of Cambridge" (Depo. Tr. 12:16–17)--had approved her Ph.D. in April 2025; and (c) the well-known distinction at Cambridge between academic completion and ceremonial conferral.

31. I filed the Clarifying Declaration of Sara Adams (ECF 151) and my supporting Declaration (ECF 152) on March 31, 2026. These declarations transparently disclosed the Cambridge correspondence, explained the distinction

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

between academic approval and formal conferral, and provided the full context of Dr. Adams's deposition testimony.

32. I provided the Cambridge correspondence to Plaintiffs' counsel on March 30, 2026. There was no outstanding discovery request that encompassed this correspondence. I repeatedly informed Plaintiffs' counsel of this fact. The correspondence was provided voluntarily, in the interest of transparency and to avoid unnecessary motion practice.

33. At her deposition on March 18, 2026, Dr. Adams testified at length regarding the Cambridge Ph.D. process. Relevant excerpts include her testimony that: (a) she completed all academic and examination requirements (Depo. Tr. 11:1–6); (b) the Degree Committee approved her Ph.D. in April 2025 (Depo. Tr. 11:9–17); (c) the remaining step was a formal ceremony she described as "administrative and ceremonial only" (Depo. Tr. 12:1–14); (d) at Cambridge, individuals who have passed their viva "are referred to as 'Doctor'" (Depo. Tr. 12:20–21); and (e) the ceremony "does not change the university's determination that [she] satisfied the Ph.D. requirements" (Depo. Tr. 13:1–9). True and correct copies of relevant excerpts from the certified deposition transcript of Dr. Adams are attached hereto as **Exhibit E**.

34. Regardless of the administrative status of the degree conferral ceremony, Dr. Adams's scientific qualifications to serve as a POSITA declarant are not in dispute. She has over ten years of experience in biotechnology research and development, published peer-reviewed research at Cambridge, and testified under oath to her extensive scientific training. (ECF 152 ¶¶ 17–19.) Her ability

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

to explain the scientific meaning of "magnesium threonate" to a person of ordinary skill is wholly unaffected by whether she has attended a graduation ceremony.

35. On March 31, 2026, Dr. Adams informed me that she had selected a Congregation Date of May 2, 2026 at the University of Cambridge for the formal conferral of her Ph.D. in Biochemistry. On April 3, 2026, Dr. Adams received a confirmation from Gonville & Caius College's Education and Tutorial Office confirming her booking for "Gonville & Caius Graduation in absence" on the selected Congregation Date of May 2, 2026. The confirmation states that her "Degree certificate and transcript will be posted to the mailing address on your CamSIS record." A true and correct copy of the graduation booking confirmation (with sensitive personal information redacted) is attached hereto as **Exhibit F**. The degree to be conferred is identified as "PhD in Biochemistry."

36. The Congregation Date of May 2, 2026 is approximately two weeks before the hearing on Plaintiffs' Motion for Sanctions, which is scheduled for May 15, 2026. By the date of the hearing, Dr. Adams will formally hold the degree in every sense - academic, administrative, and ceremonial. Cambridge's "in absence" graduation procedure resolved the immigration-related travel constraint that had prevented Dr. Adams from attending an in-person ceremony. This confirms what the record has shown throughout: the sole remaining issue was the scheduling of the conferral ceremony, not any deficiency in Dr. Adams's academic qualifications or the substance of her scientific opinions.

**The Sample Declaration and Declarant Independence**

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

37. In connection with retaining Dr. Adams and Mr. Ziari, I provided each declarant with a template document identifying the topics on which their scientific opinions were sought. This is standard practice in litigation. The template identified subject matter areas; it did not dictate conclusions. Both declarants reviewed the relevant scientific literature and patent materials independently before forming and expressing their opinions.

38. At her deposition, Dr. Adams confirmed that her scientific opinions were her own and that her role was "to explain scientific principles" as opposed to "interpret patent claims." (Adams Depo. Tr. 171:6–18.) She testified: "You're not offering any legal opinions about anything in this right now; right? A. No, absolutely not." (*Id.*)

39. Mr. Ziari's deposition testimony similarly confirms that his opinions were independently formed. At his deposition on March 17, 2026, Mr. Ziari testified that: (a) he understood his role as an "independent contractor" (Ziari Depo. Tr. 63:2–4); (b) when asked what he was retained to do, he stated: "They wanted a scientific expert on nutritional biochemistry, and — like independent scientific expert" (Ziari Depo. Tr. 95:13–14); (c) when asked whether the sample declaration "provide any opinions that you ultimately adopted in your Declaration," he answered: "That did not inspire anything that I put in the actual Declaration" (Ziari Depo. Tr. 95:5–6); (d) he was given a "skeleton," and "under these claims I wrote — if I agree, I validated it with scientific literature, if I disagreed or I wanted to amend it" (Ziari Depo. Tr. 107:18–21); and (f) when asked whether his role was to explain how a person of ordinary skill would

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO
PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

understand the chemistry, he confirmed: "Correct," and confirmed that "[t]hat chemistry is independent of any legal definition" (Ziari Depo. Tr. 123:1–10). He also stated: "I'm not constructing any claims. I'm simply here to interpret them" (Ziari Depo. Tr. 77:19–21). True and correct copies of relevant excerpts from the certified deposition transcript of Mr. Ziari are attached hereto as **Exhibit G**.

40. The Patent Standing Order expressly contemplates the use of witness testimony to support claim construction positions. Section 3(b) requires parties to "designate any supporting extrinsic evidence including, without limitation… testimony of percipient and expert witnesses" and to provide "a description of the substance of that witness' proposed testimony." (ECF 33, § 3(b).) Defendant's use of scientific declarants to explain the meaning of "magnesium threonate" to a person of ordinary skill was directly authorized by the Court's own rules.

**Plaintiffs' Litigation Choices and Costs**

41. Plaintiffs' decision to depose Dr. Adams and Mr. Ziari was Plaintiffs' own choice. Plaintiffs served deposition notices on February 13, 2026 (Ex. C to Cox Decl.). No one compelled Plaintiffs to take these depositions; Plaintiffs elected to do so as part of their litigation strategy. The costs associated with those depositions were incurred by Plaintiffs' own choice, not by any conduct of Defendant.

42. Plaintiffs seek over $200,000 in sanctions for claim construction proceedings involving a single patent with a single disputed term that the parties

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO
PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

agreed upon in December 2025 and narrowed by stipulation in February 2026. This amount is facially disproportionate and raises the question of whether it is Plaintiffs' own counsel's choices--including identifying a rebuttal expert (who never later submitted a rebuttal), taking depositions, and filing this Motion--that are driving litigation costs.

**Response to Plaintiffs' Characterization of Prior Litigation History**

43. Plaintiffs devote an entire section of their Motion (Section IV.C) to attacking my litigation history in unrelated cases. The cited cases are factually inapposite to the claim construction issues in this case. *GovernmentGPT* involved different issues. *Miranda Tecnologia* involved a procedural deadline. *Nextdoor* involved a different case with different issues more than five years ago. None involved claim construction conduct. Prior litigation history is not an element of any sanctions standard under § 1927, Local Rule 83-7, or the Court's inherent power.

**Good Faith Participation in Claim Construction**

44. At all times during the claim construction proceedings, I engaged in good faith, sought to advance legitimate legal positions on behalf of my client, and attempted to cooperate with opposing counsel. The February 27 stipulation narrowing the dispute to a single term (Dkt. 111) is itself evidence of good-faith participation in the meet-and-confer process required by the Patent Standing Order, § 3(g).

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

45. The conduct described in Plaintiffs' Motion reflects ordinary claim construction practice in patent litigation--not the bad faith, recklessness, or willful misconduct required for sanctions under 28 U.S.C. § 1927, Local Rule 83-7, or the Court's inherent power.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this Wednesday, April 15, 2026 in Santa Clara County, California.

Dated: April 16, 2026          LEGALFORCE RAPC WORLDWIDE P.C.


                               /s/ Raj V. Abhyanker_____
                               Raj V. Abhyanker
                               Attorney for Defendant:
                               Mando International, LLC

DECLARATION OF RAJ ABHYANKER ISO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS
CASE NO.: CV-25-cv-05871-FLA-JPR

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1

1.   The undersigned counsel certifies that this Opposition To Motion for Sanctions complies with the type-volume limitation of Local Rule 11-6.1.

2. This memorandum contains approximately 3305 words, excluding the caption, tables, signature block, and certificates of service.

Dated: April 16, 2026                    Respectfully submitted,
                                         LEGALFORCE RAPC WORLDWIDE P.C.


                                         /s/ Raj V. Abhyanker__
                                         Raj V. Abhyanker
                                         Attorney for Defendant:
                                         Mando International, LLC