# Exhibit B

4/15/26, 2:21 PM LegalForce RAPC Worldwide Mail - Detailed Summary of Sanctions meet April 3, 2026 Meet and Confer – Neurocentria v. Mando (…

Case 2:25-cv-05871-FLA-MAR Document 166-3 Filed 04/16/26 Page 2 of 13 Page ID #:6606

 **LegalForce**                                                    Raj Abhyanker <raj@legalforcelaw.com>

## Detailed Summary of Sanctions meet April 3, 2026 Meet and Confer – Neurocentria v. Mando (2:25-cv-05871)

**Raj Abhyanker** <raj@legalforcelaw.com>                                      Fri, Apr 3, 2026 at 11:53 AM
Reply-To: raj@legalforcelaw.com
To: "Cox, John W." <John.Cox@btlaw.com>, "Sang Dang (Fortis LLP)" <sdang@fortislaw.com>, "Schulman, Jeremy"
<jeremy.schulman@hugheshubbard.com>, "Sal Picariello (Fortis LLP)" <spicariello@fortislaw.com>
Cc: "Gavenman, Jeff" <jeffrey.gavenman@hugheshubbard.com>, "Schaller, Jake" <jake.schaller@hugheshubbard.com>, "Kornilova, Anna"
<anna.kornilova@hugheshubbard.com>, "Baker, Lauren" <Lauren.Baker@btlaw.com>

Counsel:

Please find attached herewith a Detailed Summary of Sanctions meet April 3, 2026 Meet and Confer – Neurocentria v. Mando (2:25-cv-05871) between
10 AM PST and 10:30AM PST.

Raj

--

**Raj Abhyanker**
Partner



call:       1-650-390-6461
email:      raj@legalforcelaw.com
Linkedin: https://www.linkedin.com/in/thepatentattorney/

Connect: https://meetings.hubspot.com/raj-abhyanker

LegalForce RAPC Worldwide
Professional Law Corporation
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040 United States

www.legalforcelaw.com

About **LegalForce RAPC Worldwide** - LegalForce RAPC Worldwide is a leading general practice law firm specializing in serving the diverse needs of
individuals, businesses, and institutions worldwide.   The firm created the Trademarkia.com website.

This electronic transmission contains information which is confidential and/or privileged. The information is intended for use only by the individual or
entity named above. If you are not the intended recipient (or the employee or agent responsible for delivering this information to the intended
recipient), you are hereby notified that any use, dissemination, distribution, or copying of this communication is prohibited. If you have received this
information in error, please notify me by electronic mail and delete all copies of the transmission. Thank you.

📄 **Sanctions - Meet&Confer- April 3, 2026.pdf**
   167K



**LEGALFORCE RAPC WORLDWIDE, P.C.**
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone: (650) 965-8731
Facsimile: (650) 989-2131
raj@legalforcelaw.com


April 3, 2026


**VIA EMAIL AND U.S. MAIL**

John W Cox
Barnes and Thornburg LLP
3340 Peachtree Rd NE, Suite 2900
Atlanta, GA 30326
404-264-4092
Email: John.Cox@btlaw.com

Neurocentria, Inc., ThreeoTech LLC, and AIDP, Inc.


**Re:** *Neurocentria, Inc. et al. v. Mando International, LLC*, Case No. CV-25-cv-05871-FLA-JPR (C.D. Cal.)

**Sanctions Meet and Confer Memorandum  --  April 3, 2026 Conference**

Dear Mr. Cox:

I write to memorialize the meet and confer held earlier today, April 3, 2026, at approximately 10:00 a.m., concerning the issues outlined in your April 2 email. As you acknowledged during the call, this conference was attended by you (Mr. Cox), Ms. Baker, Ms. Kornilova, and me.

As you indicated at the outset, Plaintiffs intend to move for sanctions under Local Rule 83-8, 28 U.S.C. § 1927, and Rule 37, and identified multiple categories of alleged conduct in support of those anticipated motions. You stated you would proceed "in order of [your] email string from yesterday."

Given that these anticipated motions are governed by Local Rule 7-3 and the Court's Standing Order -- which require counsel to "engage in a pre-filing conference to discuss thoroughly… the



substance of the contemplated motion and any potential resolution" (Standing Order at 6, § III.B; L.R. 7-3) -- as well as Local Rule 37-1 and Magistrate Judge Rocconi's Standing Order on Discovery Disputes, § 2 (requiring that "[e]mails and written correspondence may supplement, but shall not replace, required telephonic and/or in-person conferences of counsel to resolve discovery disputes" and that "[p]ro forma or perfunctory" exchanges shall not be considered adequate pre-filing conferences), I summarize below the discussion of each issue.

Additionally, the Court's Standing Order expressly provides: "Professional courtesy dictates, and the court fully expects, the parties will accommodate each other's schedules, including vacations and holidays, whenever possible." (Standing Order at 5, § III.A.) As detailed below, Plaintiffs' counsel's conduct during this conference fell short of the Court's expectations for good-faith engagement aimed at resolution.

## 1. Claim Construction Issues (Items (A) and (B))

Mr. Cox stated that Defendant's recent filings were untimely and improper and that Plaintiffs had previously identified concerns regarding Ms. Adams. Specifically, Mr. Cox referenced filings made on the Tuesday before the call, stating: "You had no basis to file anything after your opposition brief" and that "claim construction briefing was closed." I clarified that the supplemental filing addressed issues arising from Plaintiffs' own counsel's failure to attach critical Exhibits A and B to their ECF filing, which Mr. Cox conceded was not at issue.

I then requested clarification as to the specific statements Mr. Cox contends were false and where those statements were identified in prior correspondence. Mr. Cox referenced an email from February 23, 2026, claiming it put Defendant on notice.

I had the February 23 email open during the call and asked Mr. Cox to identify the specific language that pointed to a declaration paragraph he believed was false. The following exchange occurred:

> Raj: "I'm looking at your email right now from February 23. There's no -- the word false doesn't exist. So tell me which line of that email indicates you put us on notice."

> Mr. Cox: "All right, if you're going to nitpick like this, this is going to be a very short call."

Mr. Cox then read from the third paragraph of the February 23 email, which states: "Regarding Ms. Adams. We are concerned with defendant's reliance on her to date, including in support of defendant's claim construction positions. It has come to our attention that she has a past that is



fatal to her credibility, including that she does not have a PhD." This language expresses a general "concern" about Ms. Adams's credentials; it does not identify any specific declaration paragraph, does not use the word "false," and does not put Defendant on notice of a purportedly false statement under oath. Asking opposing counsel to identify the specific factual and legal basis for a sanctions motion during a meet and confer is not "nitpicking" -- it is precisely what Local Rule 7-3 and the Standing Order require.

I also noted that on February 27, 2026, the parties entered into a stipulation (Dkt. 111), signed with the consent of Mr. Gavenman, in which the parties agreed to narrow claim construction to a single term and reserved "all rights with respect to infringement, invalidity, and other defenses or arguments *not inconsistent with this narrowing of claim construction issues*." I explained that seeking sanctions for conduct that preceded and was resolved by that stipulation would be inconsistent with the reservation clause. Mr. Cox responded: "You have an inability to understand what you're reading." This personal attack is inconsistent with the civility this Court expects of counsel.

## 2. Preservation Letter (Item (iii)(a))

Mr. Cox stated that Defendant's March 31 preservation letter was "improper" and constituted "harassment" and an "improper attempt at Discovery." I asked Mr. Cox to identify the rule or authority that prohibits a party from issuing a litigation hold and preservation demand to opposing counsel. The following exchange occurred:

> Raj: *"Which is a rule that you cite, that you can cite, that you claim makes you --"*

> Mr. Cox: *"You do this all the time, Raj, you ask for specific rules. Right now, I can just tell you you don't have a basis to do it. You need a rule to be able to do it."*

Mr. Cox identified no specific rule, statute, or authority that prohibits the sending or filing of a preservation demand letter. None was cited because none exists. Preservation demands are a routine and well-recognized feature of federal litigation. See, e.g., Fed. R. Civ. P. 37(e) (contemplating preservation obligations); Magistrate Judge Rocconi's Standing Order, § 8 (directing parties to "be familiar with and seek relief only as permitted by amended Rule 37(e)" regarding preservation of electronically stored information). Indeed, courts have sanctioned parties for *failing* to take adequate preservation steps, not for requesting them.

I explained the basis for the preservation demand in detail: (a) the recent passing of the CEO of AIDP, Inc.; (b) the attendant management transition at both AIDP and Threotech -- entities that,



on information and belief, are relatively small companies with fewer than fifty employees; (c) the potential loss of witnesses and institutional knowledge during that transition; and (d) evidence of labeling changes to Magtein® products during the pendency of this litigation, as documented in the Amazon purchase history attached to my declaration.

A good-faith response to a preservation demand would have been a simple confirmation that relevant materials are being preserved. Instead, Mr. Gavenman's April 2 response stated:

> *"This is just another example of your terrifically inappropriate, vexatious behavior, and we will seek sanctions against you accordingly. I highly suggest that you withdraw your request immediately."*

This response is troubling for several reasons. First, rather than confirming preservation, Plaintiffs' counsel responded with threats and a demand to withdraw the request. Second, this reaction heightens -- rather than alleviates -- Defendant's concerns about the good-faith preservation of evidence, particularly during the management transition at AIDP and Threotech. Third, the refusal to confirm preservation stands in tension with the obligations recognized by Rule 37(e) and Magistrate Judge Rocconi's Standing Order, § 8. When a party responds to a routine preservation demand with hostility rather than a straightforward confirmation, the inference is not one of diligent compliance.

### 3. Alleged Local Rule 7-3 Violation (Item (iii)(b))

Mr. Cox asserted that Defendant's motions to dismiss were filed in violation of Local Rule 7-3 and that Defendant "falsely asserted" that counsel attempted to meet and confer. I explained the extensive efforts made to contact opposing counsel and the extraordinary circumstances that prevented strict compliance with the seven-day meet-and-confer window.

Local Rule 7-3 requires that the meet-and-confer conference "take place in person, by telephone, or via video conference at least 7 days prior to the filing of the motion." The Standing Order further provides that "[t]he court may strike or deny a motion if counsel fail to meet and confer in good faith." (Standing Order at 6, § III.B.) The rule's purpose is to ensure substantive discussion -- not to serve as a procedural trap where extraordinary circumstances make strict compliance impossible.

As set forth in the Declaration of Raj V. Abhyanker filed in support of the motions to dismiss:

> (a) Between February 20 and March 5, 2026, I was traveling internationally for previously scheduled professional obligations in Australia and India, with time-zone



differences of approximately 20 and 13.5 hours, respectively, making real-time meet-and-confer discussions impracticable.

(b) My return travel on March 4–5, 2026 was disrupted by a U.S. military strike on an Iranian naval vessel near Sri Lanka, triggering regional airspace closures that caused Air India to reroute my flight through Rome, resulting in approximately 40 hours of total travel time.

(c) On March 6, 2026 -- the day after my arrival -- I attempted to reach Mr. Gavenman by telephone three times. He did not answer any of those calls.

(d) Shortly before midnight on March 6, 2026, I emailed opposing counsel raising the forthcoming motion to dismiss and requesting a seven-day extension of the responsive pleading deadline to allow for a full meet-and-confer process.

(e) Plaintiffs' counsel refused to stipulate. Instead, counsel conditioned any agreement on Defendant's stipulation to an unrelated request for 3,500 additional words on Plaintiffs' response to the Court's Order to Show Cause (Dkt. 108).

(f) A substantive meet and confer nonetheless occurred on March 9, 2026, covering all issues for approximately one hour.

As I explained during the call, the motion to stay was Defendant's preferred path; the motion to dismiss was the fallback if the stay was denied. This was communicated in my March 6 email and would have been communicated telephonically had Mr. Gavenman answered any of the three calls that day.

**Mr. Cox was unable to articulate any prejudice to Plaintiffs arising from the abbreviated meet-and-confer period.** The substantive discussion occurred. All issues were addressed. No prejudice has been shown or alleged with specificity. The Standing Order recognizes that motions under Rule 12 "can be avoided if the parties confer in good faith as required by Local Rule 7-3" (Standing Order at 7, § IV.A) -- here, the parties conferred; Plaintiffs simply disagreed on the merits.

### 4. Alleged Deadline Under Local Rule 7-9 (Item (iii)(c))

Mr. Cox asserted that Defendant failed to timely file an opposition under Local Rule 7-9. During the call, Mr. Cox stated: "You missed your deadline. Raj, you don't know the local rules. Go look at rule seven nine."



I reviewed the rule during the call. Local Rule 7-9 requires that opposing papers be filed "not later than twenty-one (21) days before the date designated for the hearing of the motion in all other instances." The hearing is scheduled for April 17, 2026. Twenty-one days before April 17 is March 27, 2026. The opposition was filed on March 31, 2026 -- approximately four days late.

I acknowledged during the call that the filing may have been after the applicable deadline, stating: "You may be right on that local rule that I missed. I didn't read that second part that way, so my mistake on that." However, I also noted the following context: Plaintiffs' own motion to dismiss the Second Amended Counterclaims was filed on March 16, 2026; the opposition was filed fifteen days later, affording a full two weeks for review and response.

**Mr. Cox was unable to articulate a single way in which Plaintiffs were harmed by the four-day delay.** I asked directly: "If you believe we missed some deadline, is there prejudice to you? Then let's stipulate rather than do sanctions practice." Mr. Cox's response was: "Why would I do that?" and "Why would we stipulate to a deadline you've already missed?"

I proposed a practical resolution consistent with this Court's expectations:

> *"I think it's worthwhile for counsel between the opponents to work together to resolve issues without involving the court. So what I'm asking you for, to the extent that there's a few days off, let's stipulate to allow for that extension, because… maybe 21 days before the hearing… might have meant that it would have been needed to be filed a couple days earlier. Okay, so if I've missed that deadline, let's stipulate to allow me to file a couple days late, and I apologize for missing that. If you need a couple days extra for reply, I'll be happy to accommodate that."*

Mr. Cox responded: "I'll take it under advisement." He then concluded the call by stating that he intended to proceed with the sanctions motion regardless.

This Court's Standing Order instructs that "[p]rofessional courtesy dictates, and the court fully expects, the parties will accommodate each other's schedules" whenever possible. (Standing Order at 5, § III.A.) Plaintiffs' refusal to stipulate -- and insistence on sanctions -- in the absence of any articulable harm, after Defendant acknowledged the potential late filing, apologized, and offered reciprocal accommodations, is inconsistent with that directive and with the good-faith cooperation Local Rule 37-4 and the Court's Standing Order require.

**5. Alleged Deposition-Related Conduct Regarding Dr. Gu (Item (iii)(d))**



Mr. Cox asserted that Defendant made a conditional "threat" to depose Dr. Gu unless Plaintiffs agreed to a stay. I asked Mr. Cox to identify the specific correspondence. The following exchange occurred:

> Mr. Cox: "There was correspondence, and I will tell you, I don't know which correspondence it was… but I will tell you right now, Raj, I don't know where that correspondence is. If you're asking me to provide that correspondence, I can do that later this afternoon."

Mr. Cox was unable to locate or produce any communication supporting Plaintiffs' characterization -- despite having raised this issue in writing the day before. I suggested that we reschedule the meet and confer until Mr. Cox was better prepared, consistent with Local Rule 37-1's requirement for substantive discussion and Magistrate Judge Rocconi's Standing Order, § 2, which provides that "pro forma or perfunctory" exchanges do not constitute adequate pre-filing conferences. Mr. Cox responded:

> "The fact that you sit here reading rules and trying to figure out what in the world you're doing in this litigation on a meet and confer after I've provided you with all of the details about what we're going to talk about, and for you to throw that back at me is just completely unacceptable."

Reading and citing the applicable rules during a meet and confer is not "unacceptable" -- it is the purpose of the exercise. Local Rule 7-3 requires discussion of "the substance of the contemplated motion." A party that cannot identify the correspondence underlying its claim during the meet and confer has not satisfied that obligation.

Despite Mr. Cox's lack of preparation, I located the communication and explained its context. The actual email exchange on March 6, 2026 shows:

> (a) At 6:33 p.m. EST, I sent a routine deposition scheduling request: "Please provide several dates and times when Dr. Gu would be available for deposition. If the case is not stayed, we would like to calendar this deposition promptly."

> (b) Mr. Gavenman responded at 5:23 p.m. EST, characterizing the request as a "threat" and accusing Defendant of "bad faith, vexatious litigation tactics."

> (c) I responded at 4:37 p.m. PST, expressly clarifying: "The deposition request was made in the ordinary course of scheduling discovery given Dr. Gu's role as the former Senior Vice President of R&D and her current position as CEO. It was not intended as a threat or



as leverage regarding the stay motion." I further offered flexibility: "If Dr. Gu needs time in light of recent events, we are willing to be reasonable."

The record shows that (a) the deposition request was a routine discovery scheduling inquiry; (b) any perceived connection to the stay was expressly and promptly disclaimed; and (c) Defendant offered accommodations for Dr. Gu's personal circumstances. The "threat" Mr. Cox described during the meet and confer does not exist in the correspondence. To the extent Plaintiffs pursue this issue, it should be raised before Magistrate Judge Rocconi in accordance with her procedures for discovery disputes. (See Standing Order at 4, § II.A.)

## 6. Service-Related Issue (Item (iii)(e))

Mr. Cox raised a concern regarding a declaration relating to service, asserting Defendant "submitted a false declaration" that Edward Lee had been served. The exchange during the call was as follows:

> *Mr. Cox: "You submitted a false declaration that the defendant's process server served Edward Lee. Not possible. The man had passed away."*

I explained:

(a) The declaration was executed by the process server -- not by counsel -- and reflected substitute service on its face.

(b) The process server described the individual who was actually served in the substitute service section; the error was in listing Edward Lee as the corporate officer at the top of the form.

(c) A corrected proof of service was filed by the process server at ECF No. 141, captioned: "Corrected Substitute Proof of Service Reflecting Change in Chief Executive Officer from Edward Lee (deceased) to Jennifer Gu; Reissued Summons on Second Amended Counterclaims; Second Amended Counterclaims; and Affidavit of Due Diligence Detailing Good Faith Efforts at Service."

During the call, Mr. Cox did not have the docket number for either the original or corrected filing. I provided the docket number (141) and explained the correction. This is a routine corrective filing by a process server, not evidence of counsel misconduct.

## 7. Discovery Conduct (Item (iii)(f))



Mr. Cox stated that Defendant's withdrawal of certain discovery requests was "not proper under the discovery rules." During the call, I noted the following undisputed facts:

> *"So to be clear, your client and you have provided not a single document, not a single discovery response in a substantive way, and I don't believe it's improper, because you have expended zero to provide us any evidence so far, so in good faith to narrow the issues, we withdrew a lot of requests, and I think that minimizes the expense of the parties."*

**Mr. Cox was unable to articulate any prejudice resulting from the withdrawal of mooted discovery requests.** No specific discovery rule was identified that prohibits a party from withdrawing its own requests. The withdrawals were made in good faith to narrow the issues and reduce the burden on both parties -- consistent with the proportionality principles emphasized in Magistrate Judge Rocconi's Standing Order, §§ 3–4, and the December 2015 amendments to the Federal Rules of Civil Procedure.

Seeking sanctions for a party's voluntary narrowing of discovery -- in a case where the opposing party has not produced a single document or substantive response -- is difficult to reconcile with the obligation of good-faith cooperation under Local Rule 37-4.

### General Observations Regarding the Conduct of the Meet and Confer

*A. Failure to Substantively Engage*

Throughout the discussion, I repeatedly requested identification of the specific rules and legal standards that Plaintiffs contend were violated. In several instances, no specific rule or authority was identified. On the preservation letter issue, Mr. Cox expressly stated Defendant "needs a rule to be able to do it," but cited no authority prohibiting the conduct. On the deposition issue, Mr. Cox could not locate the underlying correspondence. On the discovery withdrawal issue, no governing rule was cited.

Local Rule 7-3 requires discussion of "the substance of the contemplated motion." L.R. 37-1 requires that the moving party's conference letter "identify each issue and/or discovery request in dispute, state briefly as to each such issue/request the moving party's position (and provide any legal authority the moving party believes is dispositive of the dispute)." Magistrate Judge Rocconi's Standing Order, § 2, provides that "[p]ro forma or perfunctory" exchanges "shall not be considered adequate pre-filing conferences of counsel."



A meet and confer that consists of a catalogue of accusations -- unsupported by identified rules, legal authorities, or even the underlying communications at issue -- does not satisfy these requirements.

### B. Refusal to Discuss Resolution

The Standing Order requires counsel to discuss "any potential resolution" during the meet and confer. (Standing Order at 6, § III.B.) I proposed a concrete resolution on the Local Rule 7-9 issue: a stipulation with reciprocal accommodations. Mr. Cox refused to agree and stated he would proceed with sanctions. On every other issue, Mr. Cox's position was the same -- sanctions would be filed regardless of anything discussed during the call.

This approach treats the meet and confer as a formality rather than a good-faith effort to resolve disputes, which is inconsistent with Local Rule 7-3, Local Rule 37-4 ("The failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions"), and the Court's expectations as articulated in the Standing Order.

### C. Unprofessional Remarks

During the call, Mr. Cox made several remarks inconsistent with the civility expected under L.R. 83-3.1.2 and the Court's Standing Order, including:

> (a) "You have an inability to understand what you're reading, Raj." (In response to my citing the stipulation's reservation of rights clause.)

> (b) "Raj, I'm not going to explain basic procedure to you on a meet and confer." (In response to my reading Local Rule 7-9 aloud.)

> (c) "The fact that you sit here reading rules and trying to figure out what in the world you're doing in this litigation on a meet and confer… is just completely unacceptable." (In response to my noting Mr. Cox's lack of preparation on the Dr. Gu correspondence.)

Reading the applicable rules and requesting identification of supporting authority during a meet and confer is the very purpose of the exercise. Characterizing that conduct as "unacceptable" or suggesting that counsel has "an inability to understand" the rules reflects an adversarial posture inconsistent with the cooperative approach this Court's Standing Order demands.

### Conclusion and Request

To the extent Plaintiffs intend to proceed with motion practice, I request that you provide: (a) the specific rules and legal authorities supporting each basis for sanctions, as required by L.R. 7-3



and L.R. 37-1; (b) the correspondence referenced but not identified during the call regarding the deposition issue; and (c) any additional materials that were not available during the conference.

I also renew my offer of a stipulation on the Local Rule 7-9 timing issue, which can and should be resolved without burdening the Court. The Patent Standing Order, § 3(g), expressly provides that "[a] failure to make a good faith effort to narrow the instances of disputed terms or otherwise participate in the meet and confer process… may expose counsel to sanctions, including under 28 U.S.C. § 1927." That standard applies equally to the meet-and-confer process underlying any sanctions motion.

This letter is sent without waiver of any rights or defenses and is intended to satisfy the requirements of Local Rule 7-3 and the Court's Standing Order.

Respectfully,

LEGALFORCE RAPC WORLDWIDE, P.C.

/s/ Raj V. Abhyanker
Raj V. Abhyanker
Attorney for Defendant/Counterclaim-Plaintiff
Mando International, LLC

*cc:File*