# Exhibit G

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

--o0o--

NEUROCENTRIA, INC., a
California corporation, and
THREOTECH, LLC, a Nevada
limited liability company,

Plaintiffs,

Vs.          Case No. CV-25-cv-05871-FLA-JPR

MANDO INTERNATIONAL, LLC d/b/a
KAPPY NUTRITION, a Texas limited
liability company,

Defendant.

_____/

--o0o--

TUESDAY, MARCH 17, 2026

--o0o--

VIDEOTAPED DEPOSITION

OF

NAVEED ZIARI, Ph.D.

--o0o--

Reported By:  CAROL S. NYGARD
              California CSR No. 4018
              Nevada CCR 915

Page 1

APPEARANCES:

For the Plaintiffs:
BARNES & THORNBURG, LLP
BY:  JOHN W. COX, Ph.D.
3340 Peachtree Road N.D.
Suite 2900
Atlanta, Georgia  30326
404.846.1693
john.cox@bbtlaw.com


SCHULMAN BHATTACHARYA, LLC
(Via Video Conference)
BY:  JEFFREY S. GAVENMAN, ESQ.
6116 Executive Boulevard
Suite 425
North Bethesda, Maryland  20852
240.356.8550
egavenman@schulmanbh.com


For the Defendant MANDO INTERNATIONAL, LLC:

LEGALFORCE RAPC WORLDWISE, 94040
BY:  RAJ ABHYANKER, ESQ.
1580 W. El Camino Real
Suite 10
Mountain View, California  94040
650.965.8731
raj@legalforcelaw.com

Videogapher:

CAMERON TUTTLE

Also Present Via Video Conference:
ARMANDO ALFARO
JASON WEINGER

Page 2

                         UNITED STATES DISTRICT COURT

                        CENTRAL DISTRICT OF CALIFORNIA

                                  --o0o--

NEUROCENTRIA, INC., a

California corporation, and

THREOTECH, LLC, a Nevada

limited liability company,

                      Plaintiffs,

                 Vs.         Case No. CV-25-cv-05871-FLA-JPR

MANDO INTERNATIONAL, LLC d/b/a

KAPPY NUTRITION, a Texas limited

liability company,

                      Defendant.

_____/

                                  --o0o--

          BE IT REMEMBERED, that on Tuesday, March 17, 2026, at the hour of 9:41 a.m. thereof at PatentVC Trademarkia, 3000 Sand Hill Road, Suite 245, Menlo Park, California before me, Carol S. Nygard, a Certified Shorthand Reporter of the State of California, there personally appeared,

                    NAVEED ZIARI, Ph.D.,

called as a witness by the Plaintiffs and Defendants, who, being by me duly sworn, was thereupon examined and interrogated as hereinafter set forth:                  09:40

          VIDEOGRAPHER:  Good morning.                          09:40

          We are going on the record.  The time is 9:41    09:41

                                                    Page 5

a.m. on March 17th, 2026.                                    09:41

Please note that the microphones are sensitive   09:41
and may pick up whispering and private conversations.        09:41

Please mute your phones at this time.            09:41

Audio and video recording will continue to       09:41
take place unless all parties agree to go off the            09:41
record.                                                      09:41

This is media unit 1 of the video-recorded       09:41
deposition of Dr. Naveed Ziari taken by counsel for          09:41
Defendant in the matter of Neutrocentria, Inc., versus       09:41
Mando International, LLC, filed in the United States          09:41
District Court, Central District of California, Case         09:41
Number CV-25-cv-05871-FLA-JPR.                               09:41

The location of the deposition is 3000 Sand      09:42
Hill Boulevard, 245, Menlo Park, California 94040.           09:42

My name is Cameron Tuttle, representing          09:42
Veritext, and I'm the videographer.                          09:42

I am not authorized to administer an oath.       09:42
I'm not related to any party in this action, nor am I        09:42
financially interested in the outcome.                       09:42

If there are any objections to the proceeding,   09:42
please state them at the time of your appearance.            09:42

Counsel will now state their appearances and     09:42
affiliations for the record beginning with the noticing      09:42
attorney.                                                    09:42

Page 6

MR. ABHYANKER:  So I am Raj Abhyanker.  I'm    09:42
counsel for the Defendants in this case, Mando    09:42
International, LLC.    09:42

I also have our client on the Google Meet    09:42
listening in to the call, but he won't be talking,    09:42
Armando Alfaro.    09:43

MR. COX:  I'm John Cox from Barnes and    09:43
Thornburg on behalf of the Plaintiffs, and joining me is    09:43
Jeff Gavenman of the Hughes Hubbard firm.    09:43

If you could send him a link to that address,    09:43
might have to wait for the break.  And I do have an    09:43
objection.  I'm going to go ahead and state it so we can    09:43
move on.    09:43

I object because we already have a sworn    09:43
statement by the witness.    09:43

I am also taking questions of the witness    09:43
today, and we find that it's improper to elicit further    09:43
direct testimony of this witness because of the sworn    09:43
statements.    09:43

So we hope that Mr. Abhyanker can keep to the    09:43
scope of his Declaration.    09:43

VIDEOGRAPHER:  Will the Court Reporter please    09:43
introduce yourself and swear in the witness.    09:43

THE REPORTER:  My name is Carol Nygard,
California CSR Number 4018.

Page 7

Can I have you raise your right hand, please.

(Thereupon the oath was administered to the witness by the Court Reporter.)

MR. ABHYANKER:  So we'll be on the record now?

THE REPORTER:  (Nodding head)                09:43

EXAMINATION                                   09:43

BY MR. ABHYANKER:                             09:43

Q.    All right.  So, Dr. Ziari, thank you for being here today.                                    09:44

A.    My pleasure.                            09:44

Q.    So you understand you're under oath today?    09:44

A.    I am.                                   09:44

Q.    And being under oath means you're required to tell the truth?                             09:44

A.    Yes.                                    09:44

Q.    Have you been deposed before?          09:44

A.    I have not.                             09:44

Q.    Okay.  So, when you give testimony today, it's going to have the same force and effect as if it was in front of a Judge and a jury.          09:44

You understand that?                          09:44

A.    I understand.                          09:44

Q.    And you understand that the testimony that you'll be giving is under penalty of perjury?    09:44

A.    I understand.                          09:44

Page 8

A.    Yes, I have.    11:10

Q.    And you understand your role is as an    11:10
independent contractor; correct?    11:10

A.    I do.    11:10

Q.    And -- as part of this engagement letter    11:10
you're asked to review certain patents; correct?    11:10

A.    Yes.    11:10

Q.    And one of those patents include the 8,637,061    11:10
patent -- the patent?    11:10

A.    Yes, it's the one I reviewed.    11:10

MR. ABHYANKER:  Right.    11:10

So I'm going to mark the next exhibit as    11:11
Exhibit 3, and give it to the Court Reporter to mark as    11:11
Exhibit 3, give one copy to opposing counsel.    11:11

MR. COX:  Thank you.    11:11

MR. ABHYANKER:  Exhibit 3.    11:11

(Exhibit Number 3 was marked for    11:11
Identification.)    11:11

MR. ABHYANKER:  And she'll hand you Exhibit 3.    11:11

BY MR. ABHYANKER:    11:11

Q.    So take a moment to look at Exhibit 3.    11:11

I'm going to ask you some questions about    11:11
Exhibit 3, and I submit to you Exhibit 3 is a true and    11:11
accurate copy of the U.S. Patent at issue in this case    11:11
for which we are seeking claim construction ordinary    11:11

Page 63

"construe."                                                    11:40

Q.   Do you --                                                11:40

Have you heard the term "claim construction"?                 11:40

A.   Yes.                                                      11:40

Q.   Okay.  What is your understanding of "claim              11:40
construction"?                                                11:40

A.   A "claim construction" is -- well, is                    11:40
basically how you articulate or write out your claims to      11:40
warrant a patent, meaning a unique -- something that is       11:40
unique, intellectual property, over which you have            11:40
rights for, and that in and of itself is an art in legal      11:40
terms.  So that is my understanding of "claims               11:40
construction.)                                                11:41

Q.   Were you given any legal standards on how to             11:41
go about claim construction for this case?                    11:41

MR. ABHYANKER:  Objection.  He's not a lawyer.       11:41
It calls for a legal conclusion.                              11:41

THE WITNESS:  Yeah, my -- my understanding is        11:41
the claims are already there, so I'm not constructing         11:41
any claims.  I'm simply here to interpret them.               11:41

BY MR. COX:                                                   11:41

Q.   Okay.  When did you first --                             11:41

If you look, I think it's Exhibit 3 is the 061       11:41
patent?                                                       11:41

Am I right?                                           11:41

Page 77

on going until lunch.                                          12:01

BY MR. COX:                                                    12:01

Q.    So back to the -- the letter, the engagement           12:01
letter, I think it's Number 4, if you look on page 4 --      12:02
the letter.                                                   12:02

The first section on page 4 had a heading                    12:02
"Sample Declaration"?                                        12:02

And it says "A draft sample Declaration has                  12:02
been provided for reference and formatting purposes and      12:02
is available at the following link."                         12:02

Do you see that?                                             12:02

A.    Yes.                                                    12:02

Q.    Did you access the sample Declaration at the           12:02
link provided in Exhibit 4?                                  12:02

A.    No, they gave me the Declaration to work on,           12:02
so I just worked on that.                                    12:02

Q.    Okay.  So --                                           12:02

A.    And then whatever formatting was required,             12:02
then Mr. Abhyanker and his team formatted it for sub --     12:02
for final submission, and then I signed it.                  12:02

Q.    Okay.  Did the sample Declaration that counsel        12:02
provided to you provide any opinions that you ultimately    12:02
adopted in your Declaration, Exhibit 1?                      12:02

A.    Let me make sure.                                      12:03

Like I said, I purely went off of what was                  12:03

Page 94

provided with me that is only relevant to this case and    12:03

the biology of magnesium threonate, and so your question    12:03

was regarding a sample Declaration?    12:03

Q.    Yeah.    12:03

A.    That did not inspire anything that I put in    12:03

the actual Declaration.    12:03

Q.    Okay.  When you were first contacted about    12:03

this case, what were you asked to do?    12:03

And you can refer to your Declaration or that    12:03

engagement letter if you need to to answer that    12:04

question.    12:04

A.    I was asked --    12:04

They wanted a scientific expert on nutritional    12:04

biochemistry, and -- like independent scientific expert.    12:04

I was solicited to take on that role, and -- I    12:04

don't --    12:04

Is there anything more specific you want me to    12:04

say about that?    12:04

Q.    Yeah.    12:04

Let me point you to paragraph 1 of your    12:04

Declaration.    12:04

A.    This one?    12:04

Q.    Yeah.    12:04

There's a Part A and a -- or Section A and    12:04

Section B.    12:04

Page 95

12:18                        (Thereupon a recess was taken at
p.m.        12:18

and the deposition resumed at 1:18 p.m.)          01:17

(Exhibit Number 6 was marked for                  01:17

Identification.)                                  01:18

VIDEOGRAPHER:  We're back on the record.  The     01:18

time is 1:18 p.m.                                 01:18

BY MR. COX:                                        01:18

Q.    Welcome back.                               01:18

We've marked Exhibit 6, which I understand        01:18

from counsel, though correct me if I'm wrong, this is     01:18

the version of your Declaration that had literature       01:18

citations that you had added that were taken out before   01:18

your Declaration was signed and then finalized; is that   01:18

correct?                                          01:18

A.    Correct.                                    01:18

Q.    Okay.                                       01:18

A.    They --                                     01:18

I was initially given a skeleton, and under       01:18

these claims I wrote -- if I agree, I validated it with   01:18

scientific literature, if I disagreed or I wanted to      01:18

amend it.   I also wrote any claims I put a citation      01:18

underneath.                                       01:18

Q.    Okay.  Based on either Exhibit 6 or the     01:18

earlier exhibit with your signed finalized Declaration,   01:18

were there any of these paragraphs that you had to        01:19

Page 107

Q.    Your role here today is to explain how an    01:41
ordinary person skilled in the art would explain the    01:41
chemistry of biology relevant to magnesium threonate;    01:41
correct?    01:41

A.    Correct.    01:41

MR. COX:  Objection to form.    01:41

BY MR. ABHYANKER:    01:41

Q.    That chemistry is independent of any legal    01:41
definition?    01:41

A.    Correct.    01:41

MR. COX:  Objection to form.    01:41

BY MR. ABHYANKER:    01:41

Q.    The chemical identity of magnesium threonate    01:41
does not change based on how much of it is present;    01:41
correct.    01:41

MR. COX:  Objection.  Leading.    01:41

THE WITNESS:  Present where?    01:41

BY MR. ABHYANKER:    01:41

Q.    The chemical identity of magnesium threonate,    01:41
does it change based on how much of it is present in the    01:41
body.    01:41

MR. COX:  Objection to form.    01:41

THE WITNESS:  No.  No.    01:41

BY MR. ABHYANKER:    01:41

Q.    How about in a salt form?    01:41

Page 123

I, CAROL S. NYGARD, a Certified Shorthand Reporter of the State of California, duly authorized to administer oaths, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings review of the transcript [ ] was [X] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any witness or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name:

Dated: March 24, 2026

CAROL S. NYGARD CSR #4018

Page 133