Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone: (650) 965-8731
Facsimile: (650) 989-2131

Attorneys for Defendant,
Mando International, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC., a California corporation, THREOTECH LLC, a Nevada limited liability company, <br><br> Plaintiffs, <br><br> V. <br><br> MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS, a Texas limited liability company <br><br> Defendant and Counterclaimant NEUROCENTRIA, INC., a California corporation, THREOTECH LLC, a Nevada limited liability company, and AIDP, INC., a California corporation. <br><br> Counter-Defendants. | Case No. CV-25-cv-05871-FLA-JPR <br><br> Hon. Judge Fernando L. Aenlle-Rocha <br><br> MEMORANDUM OF POINTS AND AUTHORITIES ISO COMBINED MOTION TO DISMISS FIRST AMENDED COMPLAINT <br><br> **Hearing:** Friday at 1:30 p.m., May 22, 2026 <br><br> First Street U.S. Courthouse, Los Angeles <br><br> Courtroom 6B, 6th Floor <br> Hon. Fernando L. Aenlle-Rocha |

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

# TABLE OF CONTENTS

**I.  INTRODUCTION**..................................................................................................1

**II.  LEGAL STANDARD**.......................................................................................1

**III.  ARGUMENT**.................................................................................................**4**

No Patent Standing (Counts I–III)...........................................................................4

Recorded Assignment History Defeats Trademark Claims (Counts IV–V)..................5

ThreoTech Lacks Standing to Bring Any of the Claims Asserted in the FAC..............7

Amendment Cannot Cure What Testimony Can No Longer Explain............................9

ThreoTech's False Advertising Claims Fall with the TMLA (Counts VI–VIII)..........10

Unfair Competition - Predicate Claims Fail (Counts IX–X).....................................11

No Valid Contract (Count XI).................................................................................12

**IV.  IN THE ALTERNATIVE, KAPPA HAS NOT WAIVED ITS PERSONAL-JURISDICTION OBJECTION**.......................................................**13**

No Personal Jurisdiction Over Neurocentria (Rule 12(b)(2))...................................15

No Patent Standing - Contradictory Ownership Allegations (Counts I–III)..............15

The '061 Patent Is Patent-Ineligible Under § 101 (Counts I–III)............................17

The Pending Reexamination Supports Dismissal.................................................24

Neurocentria Lacks Unfair Competition Standing (Counts IX–X)...........................27

**V.  CONCLUSION**...........................................................................................**27**

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Avocent Huntsville Corp. v. Aten Int'l Co.,*
553 F.3d 1324 (Fed. Cir. 2008) ............ 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............ 3, 10, 14, 19, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............ 3, 23

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............ 25

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) ............ 24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ............ 19

*Dialware Comm. v. Hasbro, Inc.*, No. CV 16-9012-R (C.D. Cal. Mar. 22, 2017) 18

*Halicki Films, LLC v. Sanderson Sales & Marketing,*
547 F.3d 1213 (9th Cir. 2008) ............ 2

*Harris v. Cnty. of Orange*, 682 F.3d 1126 (9th Cir. 2012) ............ 3

*In re XMH Corp.*, 647 F.3d 690 (7th Cir. 2011) ............ 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014) ............ 3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............ 2

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988) ............ 24

*Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007) ............ 2, 13

*Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749 (9th Cir. 2006) ............ 11

*Rates Tech. Inc. v. Nortel Networks Corp.,*
399 F.3d 1302 (Fed. Cir. 2005) ............ 23

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
148 F.3d 1355 (Fed. Cir. 1998) ............ 25

*Sanderling v. Snap Inc.*, 2021 U.S. Dist. LEXIS 141110 (C.D. Cal. 2021) ............ 18-19

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ............ 1

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ............ 3

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ............ 16

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC,*
137 S. Ct. 1514 (2017) ............ 1

*Warth v. Seldin*, 422 U.S. 490 (1975) ............ 14

*WiAV Solutions LLC v. Motorola, Inc.,*

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

*631 F.3d 1257 (Fed. Cir. 2010)* ............................................................ 2, 13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* .................................................. 2

*Genetic Techs. Ltd. v. Merial L.L.C. 818 F.3d 1369, 1373–74 (Fed. Cir. 2016)* ..... 2

**RELATED PROCEEDINGS**

*AIDP, Inc. v. Absorb Health EU Ltd., No. 2:17-cv-07031 (C.D. Cal.)* ................ 6

*AIDP, Inc. v. Nutriland Grp., Inc., No. 2:21-cv-04621 (C.D. Cal.)* ................. 8

*AIDP, Inc. v. Teraputics Grp., Inc., No. 1:18-cv-06334 (E.D.N.Y.)* ............... 8, 12

*Guangzhou Shuimo v. Neurocentria, No. 1:26-cv-01929 (N.D. Ill.)* ................ 4–5

*Neurocentria, Inc. v. Green Jeeva, LLC,*
*No. 2:24-cv-06919-MWC-JPR (C.D. Cal.)* ...................................... 6, 10, 11

**FEDERAL STATUTES**

15 U.S.C. § 1114 (Lanham Act – Trademark Infringement) ........................ 13, 24

15 U.S.C. § 1125(a) (Lanham Act – False Designation of Origin / False
Advertising) ............................................................................ 4, 14

28 U.S.C. § 1400(b) (Patent Venue Statute) ........................................... 1

35 U.S.C. § 271 (Patent Infringement) ............................................... 24

35 U.S.C. § 101. ...................................................................... 5

28 U.S.C. § 1400(b) (Patent Venue Statute) ........................................... 1

35 U.S.C. § 271 (Patent Infringement) ...................................... 14,15,16,21

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 (Unfair Competition Law) ........................... 19

**RULES**

Fed. R. Civ. P. 12(b)(2) ............................................................. 1, 25

Fed. R. Civ. P. 12(b)(6) .............................................................. 3

Fed. R. Civ. P. 12(h)(1) ........................................................... 22, 23

Fed. R. Civ. P. 118 .................................................................. 3

Fed. R. Evid. 201(b)(2) .............................................................. 5, 7

**CONSTITUTIONAL PROVISIONS**

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

U.S. Const. art. III (Standing / Case-or-Controversy Requirement)    4, 13

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

1.  Both Plaintiffs ask this Court to adjudicate claims they lack standing to bring. ThreoTech LLC seeks to enforce patents it does not own, trademarks already assigned to another entity, and a contract executed by a licensor with no authority to sign it, defects established not by Kappa, but by ThreoTech's own CEO's signed documents, its prior federal court pleadings in this district, and the publicly recorded USPTO assignment history. Neurocentria, Inc. seeks to pursue patent infringement, false advertising, and unfair competition claims against a Texas company, its own CEO testified that it does not compete with, under a contract it never signed, while simultaneously representing to another federal court that it still owns the very patents asserted here. On the record Plaintiffs themselves created, including their CEO's deposition testimony, the FAC's internally contradictory ownership allegations, the '061 Patent's own specification, and a pending USPTO reexamination - every count of the FAC fails and should be dismissed.

## II. LEGAL STANDARD

2.  **Personal Jurisdiction.** Under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate". See *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Under *TC Heartland*, "The patent venue statute, 28 U.S.C.S. § 1400(b), provides that any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and Highlight starts here has a regular and established place of business". *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). Kappa preserved its personal-jurisdiction

1

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

defense in its first responsive pleading under Fed. R. Civ. P. 12(h)(1) (Dkt. 55) *Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307–08 (Fed. Cir. 2005).

3. **Standing.** "Article III requires, as an irreducible minimum, that a plaintiff allege (1) an injury that is (2) "fairly traceable to the defendant's allegedly unlawful conduct" and that is (3) "likely to be redressed by the requested relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In patent cases, only a party holding all substantial rights may sue. *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010); *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007). For trademark claims, "a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark". *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008).

4. **Rule 12(b)(6).** A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts" and "documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents."*Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

5. **Patent Eligibility Under § 101.** It is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016). Under the *Alice/Mayo* two-step framework, claims directed to laws of nature, natural phenomena, or abstract ideas are ineligible unless they contain an inventive concept beyond the ineligible

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

subject matter itself. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).

6. **15 U.S.C. § 1125(a).** A false advertising plaintiff must plead: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its product". *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). The plaintiff must also plead an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–34 (2014), and the falsity allegation must rest on an objective, cognizable standard, not a disputed contractual term or legal conclusion.

## III. ARGUMENT

**No Patent Standing (Counts I–III)**

7. FAC paragraph 8 states that "ThreoTech holds by assignment all rights, title, and interest in the below-described patents" (Dkt. 110) and goes on to describe the '061 Patent, but this allegation is refuted by multiple independent sources, including ThreoTech's own CEO's sworn admissions, USPTO records, and prior federal court pleadings.

8. First, the USPTO assignment records show no recorded ownership interest by ThreoTech in the '061 Patent at any point. Decl. of Raj Abhyanker, ¶4, Ex. 1. Second, FAC paragraph 13 simultaneously alleges that "Neurocentria... owns" those same

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

patents, a mutually exclusive claim that cannot coexist with ThreoTech's alleged assignment.

9. Third, and most damaging, ThreoTech's own CEO, Edward Lee, executed an Amazon APEX Agreement on February 12, 2026, just three weeks after Plaintiffs had already filed the proposed FAC asserting ThreoTech's ownership. That agreement, now part of the federal court record in *Guangzhou Shuimo Jiahe Trading Co. v. Neurocentria*, No. 1:26-cv-01929 (N.D. Ill.), identifies the Patent Owner as Neurocentria, Inc. and describes ThreoTech's status as "exclusive licensee of USPN 8,637,061." ReqJudNot, Ex. A (Dkt. 120). One cannot simultaneously hold title by assignment and hold only an exclusive license. Dr. Lee made this representation under express warranty requirements, with full knowledge of the FAC's contrary ownership theory already on the public record, and said the opposite anyway. The resulting declaratory judgment complaint in *Guangzhou Shuimo Jiahe Trading Co. v. Neurocentria*, No. 1:26-cv-01929 (N.D. Ill.), filed eight days later, sued Neurocentria, not ThreoTech, as the patent owner, confirming how the market understood ownership. ReqJudNot, Ex. B (Dkt. 120). Tellingly, the contemporaneous, sworn APEX characterization, was unrebutted in the Plaintiff's opposition as late as March 27, 2026 (Dkt. 146), which undermines any claim that ThreoTech holds all substantial rights.

10. Fourth, AIDP's Rule 11 representations across three prior federal actions, including before this Court in *Neurocentria v. Green Jeeva*, No. 2:24-cv-06919 (C.D. Cal. 2024), consistently described ThreoTech's rights as held "through its assignor, Magceutics." That is the language of a licensee, not an outright owner, and Plaintiffs said so to this Court less than two years ago. ReqJudNot, Exs. C, F (Dkt. 120).

11. This record cannot now be explained or cured. Dr. Lee, the only witness with

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

firsthand knowledge of the ownership structure, who simultaneously served as CEO of both AIDP and ThreoTech, passed away on March 2, 2026. Decl. of Raj Abhyanker, ¶5-6, Exs. 2–3. His written admission identifying ThreoTech as a mere licensee, made after the FAC's ownership theory was already public, stands unrebutted and unretractable. Counts I–III should be dismissed for lack of standing.

**Recorded Assignment History Defeats Trademark Claims (Counts IV–V).**

12. ThreoTech's trademark counts fail for the same reason as its patent counts: it has not plausibly established ownership of the Magtein® marks. The FAC's bare ownership assertion is directly refuted by AIDP's own prior Rule 11 representations. In *AIDP v. Teraputics Group*, No. 1:18-cv-6334 (E.D.N.Y. 2018), and again before this Court in *AIDP v. Nutriland Group*, No. 2:21-cv-04621 (C.D. Cal. 2021), critically, one year before the TMLA was even signed, AIDP alleged under Fed. R. Civ. P. 11 that it held "by assignment all rights, title, and interest" in both the '061 Patent and the Magtein® trademark. ReqJudNot, Exs. D, E (Dkt. 120).

13. This creates an insurmountable chain-of-title problem the FAC never addresses. If ThreoTech received its rights through the TMLA, the FAC must explain how AIDP's prior assignment was lawfully unwound. If ThreoTech received rights directly from Neurocentria, then AIDP's four years of Rule 11 representations to three federal courts were false. There is no version of the chain of title in which both can be true. The FAC identifies no instrument terminating AIDP's prior interest and no account of how rights AIDP claimed before this Court in 2021 ended up with ThreoTech. A bare conclusory allegation of assignment cannot bridge that gap. *Iqbal*, 556 U.S. at 678.

14. Plaintiffs' own 2024 *Green Jeeva* complaint compounds the problem, simultaneously describing ThreoTech as holding an "exclusive license" from

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

Magceutics while also claiming it held "all rights" by assignment, mutually exclusive legal relationships that confirm ThreoTech's interest is that of a licensee. Edward Lee, who was CEO of both AIDP and ThreoTech throughout this period, was personally aware of AIDP's prior ownership representations when he made contrary ones on ThreoTech's behalf. To establish standing on a trademark infringement claim, "presumption of validity may be rebutted" by showing that the "registrant had not established valid ownership rights in the mark at the time of registration." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006). Counts IV and V should be dismissed.

**ThreoTech Lacks Standing to Bring Any of the Claims Asserted in the FAC.**

15. The record presents a consistent and irreconcilable picture across every available source. On the patent side, ThreoTech's own CEO identified Neurocentria as patent owner and ThreoTech as a mere "exclusive licensee" in his February 12, 2026, APEX Agreement, made under express warranty requirements, three weeks after the FAC asserting full ownership was already on the public record. ReqJudNot, Ex. A. A concurrent federal lawsuit confirms it. ReqJudNot, Ex. B.(Dkt. 120) USPTO records corroborate it. Decl. of Raj Abhyanker, ¶7 Ex. 4. And Plaintiffs' own *Green Jeeva* complaint before this Court simultaneously described ThreoTech as holding an "exclusive license" and claiming rights "through its assignor," the language of derivative rights, not outright ownership. ReqJudNot, Ex. C. Dr. Liu's deposition confirms the same: "Neurocentria's part is really about the patent infringement," while "ThreoTech's the one who signed the contract." Liu Dep. 233:11–14. Decl. of Raj Abhyanker, ¶7 Ex. 5.

16. On the trademark side, AIDP's Rule 11 representations to three federal courts establish a defective assignment chain that the FAC never untangles. ThreoTech,

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

formed in April 2024, cannot claim rights that AIDP asserted under Rule 11 as far back as 2018 without identifying the instrument that unwound AIDP's prior ownership. The FAC identifies none.

17. Neurocentria's joinder as co-plaintiff compounds rather than cures these defects. If ThreoTech truly held all rights by assignment, there would be nothing left for Neurocentria to contribute. The FAC's own language betrays the truth: FAC 122 refers to "ThreoTech's *licensed* Magtein Marks,"  a concession that ThreoTech is a licensee, not an owner. *Iqbal*, 556 U.S. at 678.

18. The USPTO's recorded chain further undermines Counts IV and V: the Magtein® marks passed from Magceutics to Neurocentria in 2015 and were not assigned to ThreoTech until May 29, 2024, with AIDP never appearing in the recorded chain at any point. The TMLA's own Section 5(a) hedges whether AIDP even "owns, or has been given the license to" the marks, and Exhibit A identifies AIDP as a distributor, not an owner. A license granted by an entity lacking authority to grant it is a nullity.

19. Finally, Counts IV and V also fail because the post-termination theory they rest on requires a valid TMLA termination, which in turn requires a valid assignment predating the May 2024 breach notice, neither of which is adequately pleaded. ThreoTech did not exist until February 21, 2024, and the FAC pleads the assignment in a single conclusory sentence with no instrument, no date, and no Kappa consent. Without a valid assignment, ThreoTech had no authority to send the breach or termination notices, and a void contract generates no enforceable post-termination obligations. Counts I–V and Count XI should be dismissed for lack of standing. *WiAV Solutions*, 631 F.3d at 1264; *Morrow*, 499 F.3d at 1340; *Warth v. Seldin*, 422 U.S. 490,

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

502 (1975).

20. ThreoTech may attempt to rely on *WiAV*, which permits an exclusive licensee to have standing where it holds exclusionary rights, but clearly distinguishes that only party with all substantial rights may sue alone. While ThreoTech has joined Neurocentria as co-plaintiff-consistent with an exclusive licensee structure- the FAC improperly alleges that ThreoTech owns "all rights, title, and interest by assignment." This creates a direct contradiction with the governing agreements and the actual ownership structure. Simply adding Neurocentria does not cure a complaint premised on a false ownership theory. The FAC must be amended to accurately reflect ThreoTech's status as an exclusive licensee, not the assignee of all rights.

**Amendment Cannot Cure What Testimony Can No Longer Explain.**

21. The ownership confusion and chain-of-title defects that pervade every patent and trademark count in this FAC - each of which was filed under Fed. R. Civ. P. 11 - cannot now be explained, reconciled, or cured through testimony that can never be given. The one person who sat at the center of every ownership transaction at issue - who led AIDP when it represented to three federal courts that it held the Magtein® patents and trademarks by assignment, who executed the TMLA as AIDP's purported licensor, who signed the May 2024 trademark assignment receiving those same marks directly from Neurocentria as ThreoTech's CEO, and who executed the APEX Agreement three weeks after the proposed FAC was filed, identifying Neurocentria as patent owner and ThreoTech as mere licensee - was Edward Lee. Dr. Lee served simultaneously as CEO of both AIDP and ThreoTech throughout the period during which these contradictory ownership representations were made. He was the only witness with firsthand knowledge capable of explaining how AIDP's prior claimed interest was unwound, what authority AIDP had to act as licensor under the TMLA,

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

and how ThreoTech came to assert ownership rights that AIDP had been claiming in federal court for seven years. Dr. Lee passed away on March 2, 2026. He is unavailable to testify at deposition or trial. *See* ReqJudNot, Exs. A, C, D, E, H; Dkt. 94-1; Dkt. 110-1 § 5(a); Liu Dep. 265:21-24; Decl. of Raj Abhyanker, ₱ 8, Exs. 5.

**ThreoTech's False Advertising Claims Fall with the TMLA (Counts VI–VIII).**

22. ThreoTech's false advertising theory rests entirely on the TMLA's 2-gram dosage specification as the benchmark for falsity. That benchmark collapses with the TMLA. As set forth above, AIDP executed the TMLA without any recorded ownership interest in the Magtein® marks and without authorization from Neurocentria to act as licensor. A license granted by an entity lacking that authority is nullity, and an unenforceable contract cannot supply a cognizable falsity standard.

23. ThreoTech cannot substitute the '061 patent as an independent benchmark. Dr. Liu, the patent's named inventor, testified that ThreoTech's own preferred formulation is "not" the formula in the patent, and that he "never patent[ed] a combination." Liu Dep. 266:14–16. Decl. of Abhyanker, Ex. 5. ThreoTech cannot fault Kappa for failing standard its own inventor acknowledges ThreoTech itself does not meet.

24. The FAC's remaining allegation, that "no studies proving efficacy exist" for Kappa's dosage, is a legal conclusion, not a factual allegation. The FAC identifies no peer-reviewed study, FDA regulation, or industry consensus supporting it. Without the TMLA as its anchor, ThreoTech's false advertising theory has no benchmark, no falsity, and no claim. Counts VI–VIII should be dismissed. *Iqbal*, 556 U.S. at 678.

**Unfair Competition - Predicate Claims Fail (Counts IX–X).**

25. ThreoTech's common law unfair competition claim (Count IX) and California Business and Professions Code § 17200 claim (Count X) are wholly derivative of the

9

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

trademark, contract, and false advertising claims addressed above. Both counts allege that Kappa's use of the Magbrain marks and its marketing of the non-licensed and plant-based products constitute unlawful, unfair, or deceptive business practices. FAC ¶¶ 165-177. But neither count identifies any wrongful conduct independent of the trademark infringement, TMLA breach, and false advertising theories that form their predicate.

26. Under California law, a UCL claim predicated on unlawful conduct borrows its violation from an underlying statute or legal duty. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The common law unfair competition claim fails for the same reason, it depends on ThreoTech establishing valid trademark ownership and a cognizable competitive injury flowing from Kappa's conduct, neither of which ThreoTech has plausibly pleaded for the reasons set forth above.

27. Because ThreoTech's trademark claims fail for lack of standing and valid ownership, its TMLA claim fails for lack of a valid contract, and its false advertising claims fail for lack of an enforceable dosage benchmark, Counts IX and X have no surviving predicate and should be dismissed.

**No Valid Contract (Count XI).**

28. ThreoTech's breach-of-contract claim depends entirely on the TMLA being valid and enforceable. It is neither.

29. The publicly recorded USPTO assignment history is dispositive. The Magtein® word and logo marks passed from Magceutics to Neurocentria in 2015, and were assigned directly from Neurocentria to ThreoTech on May 29, 2024. Decl. of Raj Abhyanker, ¶¶ 10-11, Exs. 6-7. AIDP does not appear anywhere in that recorded

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

chain. When AIDP executed the TMLA as licensor in August 2022, it held no recorded ownership interest in either mark and had received no recorded authorization from Neurocentria to license them.

30. The TMLA's own text confirms the problem. Section 5(a) represents only that AIDP "owns, *or has been given the license to*" the marks, a deliberate hedge inconsistent with the unqualified ownership AIDP had been asserting to federal courts for four years. Exhibit A to the TMLA further identifies AIDP as a distributor, not an owner, and identifies Magceutics (now Neurocentria) as the trademark owner. A license granted by an entity lacking authority to grant it is a legal nullity. ThreoTech, which stepped into AIDP's shoes "through assignment" per FAC ¶179, inherits whatever rights AIDP had, and AIDP had none. Decl. of Raj Abhyanker, ¶12 Ex. 8.

31. Count XI fails for an additional independent reason: ThreoTech did not exist until February 21, 2024, yet the FAC pleads no assignment instrument, no date of transfer, and no facts establishing it held licensor rights when it sent the May 8, 2024, breach notice or the July 15, 2024, termination notice. A party that cannot plausibly allege it held licensor rights on the dates it purported to exercise them cannot establish valid termination. Count XI should be dismissed. *Iqbal*, 556 U.S. at 678.

## IV.   IN THE ALTERNATIVE, KAPPA HAS NOT WAIVED ITS PERSONAL-JURISDICTION OBJECTION.

32. Kappa preserved its personal-jurisdiction defense in its first responsive pleading, satisfying Fed. R. Civ. P. 12(h)(1), and the Court's February 24, 2026 order preserved it further. *Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307–08 (Fed. Cir. 2005). The consent first the responsive pleading under Fed. R. Civ. P. 12(h)(1) (Dkt. 55) was a case-specific litigation statement, not a blanket waiver

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

of jurisdiction for new claims. The FAC introduces new causes of action, and Kappa expressly preserved its Rule 12 defenses.    The prior Northern District action does not create ongoing jurisdiction, especially for unrelated patent claims. Finally, ThreoTech cannot invoke the TMLA forum clause without plausibly alleging a valid assignment, and in any event, that clause does not apply to independent patent claims.

33. ThreoTech's sole jurisdictional theory, the TMLA's California forum-selection clause, fails on three independent grounds. First, ThreoTech was not a signatory; it did not exist when the TMLA was executed in August 2022 and cannot invoke a clause that was never contemplated by. Second, the assignment is inadequately pleaded: FAC ¶3 pleads it in a single conclusory sentence with no instrument, no date, and no Kappa consent. "Trademark licenses are not assignable in the absence of a clause expressly authorizing assignment." *In re XMH Corp.*, 647 F.3d 690, 695 (7th Cir. 2011). Third, AIDP lacked authority to execute the TMLA in the first place. Kappa's prior statement that it conceded to proceed in this District did not constitute blanket consent to jurisdiction over a different plaintiff filing a new amended complaint.

34. Even if enforceable, the forum clause reaches only claims requiring interpretation of the TMLA. Patent and trademark infringement claims exist independently of any contract and cannot be anchored to a forum clause whose validity ThreoTech has not plausibly established. *Manetti-Farrow*, 858 F.2d at 514.

35. Without the forum clause, neither Neurocentria nor ThreoTech can establish that Kappa purposefully directed activities toward California. The FAC alleges only nationwide e-commerce availability and a single plaintiff-arranged test purchase, neither of which establishes purposeful availment. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1331–32 (Fed. Cir. 2008); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). Kappa is a Texas

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

LLC with no California offices, employees, property, or bank accounts. Decl. of Armando Alfaro, Dkt. 20-5. Exercising jurisdiction would also be unreasonable because Kappa's witnesses and operations are in Texas. As to Neurocentria specifically, its CEO testified that there is 'no direct relationship with Mando' and that Neurocentria does not regard Kappa as a competitor. Liu Dep. 241:5–24. Decl. of Raj Abhyanker, ¶7 Ex. 5. Accordingly, all claims by Neurocentria and ThreoTech should be dismissed under Rule 12(b)(2) or, alternatively, transferred to the Northern District of Texas.

**No Personal Jurisdiction Over Neurocentria (Rule 12(b)(2)).**

36. The FAC's entire jurisdictional theory rests on the TMLA's California forum-selection clause, but that theory is unavailable to Neurocentria. The TMLA was executed between AIDP and Kappa and later assigned to ThreoTech. The FAC nowhere alleges that Neurocentria was a signatory, assignee, or third-party beneficiary. While forum-selection clauses can bind closely related non-signatories, that principle applies only where "the alleged conduct of the non-parties is closely related to the contractual relationship that the forum selection clause applies to all defendants". *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). Neurocentria's claims arise independently of the TMLA, its patent claims exist without reference to any contract, and its false advertising claims rest on general Lanham Act principles, not the TMLA's dosage requirements. The clause cannot reach Neurocentria's claims. Kappa's prior statement conceding to proceed in this District cannot be bootstrapped into blanket consent to jurisdiction over a different plaintiff asserting different claims in a new amended complaint.

**No Patent Standing - Contradictory Ownership Allegations (Counts I–III).**

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

37. Article III standing requires a plaintiff to hold all substantial rights in the asserted patent. *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264–65 (Fed. Cir. 2010). The FAC defeats Neurocentria's standing with its own contradictory allegations: FAC ¶8 states that "ThreoTech holds by assignment all rights, title, and interest" in the '061 Patent, while FAC ¶13 simultaneously states that "Neurocentria... owns" the same patent. Both cannot be true.

38. ThreoTech's may attempt to give this phrase a novel meaning, that it merely signals 'holder of certain rights granted to it by another party' without citing a single case construing that phrase to mean something less than complete assignment. The phrase means what it has always meant. Plaintiffs used it deliberately. Plaintiffs cannot plead full assignment in the FAC and then, once challenged, recharacterize that allegation as an exclusive license in opposition. Opposition briefing cannot amend the complaint.

39. The MCA ThreoTech's own exhibit, ECF 110-D, contains three provisions that independently defeat ThreoTech's claim of patent ownership: Section 3.4: "Neurocentria will retain ownership of the Licensed IP." The operative agreement governing the parties' relationship expressly provides that Neurocentria retains ownership of the patents. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit". See *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

40. Section 7.4(b): Neurocentria "shall have overall control over the enforcement and defense of any Licensed Patents." The Lead Party may initiate suit only if "Neurocentria agrees to the initiation of such suit," must keep Neurocentria "fully informed of the status and strategy," must afford Neurocentria the opportunity to review all material filings, and may not settle without Neurocentria's prior consent.

14

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

An exclusive licensee whose licensor retains ultimate enforcement control, settlement veto authority, and supervisory oversight over litigation strategy does not hold all substantial rights. "When a party holds all rights or all substantial rights, it alone has standing to sue for infringement." *See Morrow v. Microsoft Corp., 499 F.3d 1332, 1340 (Fed. Cir. 2007).*

41. Section 1.17 and 1.15: "Licensed Patents" means patents owned or Controlled by Neurocentria." ThreoTech's enforcement rights depend entirely on Neurocentria's continued ownership. Rights that are conditioned on and flow through the licensor's ownership are the structure of a license, not an assignment. Plaintiffs' own *Green Jeeva* complaint captured this precisely, describing ThreoTech as holding rights "through its assignor, Magceutics" derivative rights language, not ownership language.

42. If ThreoTech holds all rights by assignment, Neurocentria has divested itself of standing. If Neurocentria retains ownership, ThreoTech's assignment claim is false. The FAC offers no reconciliation, and courts need not accept irreconcilable legal conclusions as true. Counts I–III should be dismissed as to Neurocentria on this ground alone, without prejudice to ThreoTech asserting them as the alleged assignee.

**The '061 Patent Is Patent-Ineligible Under § 101 (Counts I–III).**

43. Even if Neurocentria had standing, the '061 Patent is directed to a product of nature and is invalid under §101. The Court can resolve this on the face of the patent and intrinsic record. *Genetic Techs.*, 818 F.3d at 1373–74.

44. Claim 1 recites a dosage form for oral administration comprising at least 10 mg of magnesium threonate in solid, semi-solid, semi-liquid, or gel form. The patent's own specification forecloses any claim that magnesium threonate is man-made.

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

Column 24 identifies threonate as "a natural metabolic product of vitamin C or ascorbic acid," and Column 31 discloses that ingestion of magnesium and vitamin C "may result in the reconstitution of magnesium threonate in the body." ReqJudNot, Ex. D. The named inventor confirmed it under oath: "We did not invent the molecule." Liu Dep. 318:25–319:1.

45. Magnesium threonate thus forms naturally in vivo in virtually any person consuming a normal diet. "Ground-breaking, innovative, or even brilliant discovery does not by itself satisfy the 35 U.S.C.S. §101 inquiry." *Ass'n for Molecular Pathology v. Myriad Genetics*, 569 U.S. 576, 591 (2013). "Simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable". *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 82 (2012).

46. The cases before this Court confirm that a plaintiff cannot defeat a § 101 motion simply by invoking the specter of future factual disputes. Courts routinely resolve patent eligibility as a matter of law at the pleading stage, without the need for claim construction, discovery, or a full merits proceeding. As the Federal Circuit confirmed in *Sanderling Management Ltd. v. Snap Inc.*, 2021 U.S. Dist. LEXIS 141110 (C.D. Cal. 2021), aff'd, No. 21-2173 (Fed. Cir. Apr. 12, 2023), § 101 disputes "may be resolved on a Rule 12(b)(6) motion when there are no factual allegations that, taken as true, prevent resolving the eligibility as a matter of law." Similarly, in *Dialware Communications, LLC v. Hasbro, Inc.*, No. CV 16-9012-R (C.D. Cal. Mar. 22, 2017), the court granted dismissal under Rule 12(b)(6) on § 101 grounds, affirming that patent eligibility "is an issue of law" that courts may properly decide on motion to dismiss. *See also Relevant Holdings, LLC v. MindGeek USA Inc.*, No. 2:21-cv-03174-MCS-KES (C.D. Cal. Aug. 30, 2021) (granting judgment on the

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

pleadings on § 101 grounds where no material factual dispute precluded the eligibility determination).

47. In *Sanderling*, the district court rejected the plaintiff's "generalized assertions that factual considerations about the state of the art preclude a decision at the pleadings stage," and the Federal Circuit affirmed that this was proper because the plaintiff "failed to timely identify . . . any specific fact disputes." Likewise, in *Relevant Holdings*, the court dismissed with prejudice where the plaintiff "fail[ed] to allege, let alone speculate about, what those 'fundamental facts' might be" that would present a material dispute. And in *Wolf v. Capstone Photography*, the court found that claim construction was unnecessary where "plaintiff offers no argument as to how claim construction would aid the court in applying § 101 to these non-technical terms."

48. Here, Plaintiffs has not identified any specific factual dispute or proposed claim construction that would change the § 101 analysis. The claims on their face are directed to the naturally occurring phenomenon at issue. No amendment to the complaint can alter what the patent itself discloses, and "no amendment to a complaint can alter what a patent itself states." *Sanderling*, No. 21-2173.

49. The Supreme Court's two-step framework from *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), applies equally at this early stage. There is no requirement that a court await claim construction before ruling. As the *Sanderling* Federal Circuit panel expressly held, "claim construction is not an inviolable prerequisite to a validity determination under § 101." If the claims are directed to ineligible subject matter under all plausible constructions, the court may proceed directly to resolution. A party seeking to delay a § 101 ruling through a claim construction request must provide an actual proposed construction, demonstrate it is

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

not frivolous, and articulate how it would materially change the Alice analysis - mere invocation of future construction arguments is insufficient. *Sanderling*, No. 21-2173, slip op. at 8-9.

50. Under step one of *Alice*, the Court asks whether the claims are "directed to" a patent-ineligible concept - including laws of nature and natural phenomena. If so, step two asks whether the claim elements, considered individually and as an ordered combination, add enough to supply an "inventive concept" that transforms the claim into a patent-eligible application. *Alice*, 573 U.S. at 217. Critically, "a claim reciting an abstract idea [or natural phenomenon] does not become eligible merely by adding the words 'apply it.'" *Wolf v. Capstone Photography*, No. 2:13-CV-09573 (C.D. Cal. Oct. 28, 2014) (citing *Alice*). The same principle applies with full force to claims directed at naturally occurring phenomena or laws of nature. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012) (claims that merely apply a natural law without adding significantly more are patent ineligible).

51. Even assuming arguendo that Plaintiff could point to some additional claim element beyond the naturally occurring subject matter, that element must do more than "simply state the [natural phenomenon] while adding the words 'apply it.'" *Dialware*, No. CV 16-9012-R at 5. In *Dialware*, the court found no inventive concept where the patents relied on "generic descriptors rather than technical elements" and the components recited were "common" and well-understood. In *Wolf*, the court similarly found that "the addition of generic computers and a web site does not . . . meaningfully limit the claimed subject material." And in *Relevant Holdings*, the court dismissed claims built around a mathematical formula where "the underlying concept remains" a fundamental practice and the computer implementation was "well-understood, routine, [and] conventional."

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

52. Where, as here, the only thing added to a naturally occurring phenomenon is conventional, well-understood implementation - whether a generic computer, a standard laboratory process, or routine data analysis - that addition cannot transform ineligible subject matter into a patent-eligible invention. *Mayo*, 566 U.S. at 73; *Alice*, 573 U.S. at 217.

53. Courts have consistently dismissed § 101 claims with prejudice where no amendment could cure the fundamental deficiency. In *Sanderling*, dismissal with prejudice was affirmed because the proposed amendment "merely sought to add conclusory statements that the claimed steps were not well-known, routine, and conventional," and courts "are not required to credit such conclusory allegations." In *Relevant Holdings*, the court dismissed with prejudice where the plaintiff "neither suggested any amendments nor requested leave to amend generally." Similarly, in *Wolf*, the court dismissed with prejudice upon finding that plaintiff's arguments failed to identify any inventive concept and that the patents as written were irretrievably directed to abstract or ineligible subject matter.

54. At Alice Step One: The applicants told the USPTO that the claimed benefit is "intrinsic to the compound magnesium threonate" and that "[t]his superior property is not observed by mixing magnesium and threonate from different salt complexes." This statement locates the alleged invention in a natural property of the compound, its bioavailability, and neurological effect. A natural property of a naturally occurring compound is a natural phenomenon that falls within the product-of-nature exception to § 101.

55. At Alice Step Two: The Examiner's Statement of Reasons for Allowance identifies only "the additional step to form it into a specific dosage form" as the distinguishing feature. "Solid, semi-solid, semi-liquid, or gel" encompasses every

conceivable oral delivery format, tablets, capsules, powders, gel caps, and gummies. A limitation covering all possible oral delivery forms adds nothing substantive. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,566 U.S. 66 (2012)*. at 79–80.

56. Plaintiffs cannot simultaneously argue at Step One that the claims are really about magnesium threonate's superior properties and argue at Step Two that the dosage form adds an inventive concept, because the prosecution history commits Plaintiffs to the opposite position at both steps. The benefit is intrinsic to the compound; the dosage form is conventional.

**The Dosage Form Limitation Does Not Save the Claims.**

57. Plaintiffs will argue that Claim 1 covers a "dosage form," not the compound alone. That argument fails on four grounds.  First, the limitation is entirely generic. "Solid, semi-solid, semi-liquid, or gel" encompasses every conceivable oral dosage form. Under *Myriad*, the relevant question is whether the claimed form imparts "markedly different characteristics" from the compound's natural state. It does not the ionic chemistry of magnesium threonate in a capsule is identical to what forms in vivo. *Myriad*, 569 U.S. at 595–96.

58. Second, the prosecution history confirms the limitation is conventional. The dosage form limitation was added solely to overcome a prior art rejection, and the Examiner's Statement of Reasons for Allowance identifies only "the additional step to form it into a specific dosage form" as distinguishing the claims. ReqJudNot, **Ex. E.** That is precisely the "well-understood, routine, conventional activity" that *Mayo* holds insufficient to supply eligibility. *Mayo*, 566 U.S. at 79–80.

59. Third, the prior art already disclosed the same dosage forms. Chinese Patent Publication CN 1200366 ("Yu '366"), cited during prosecution, disclosed magnesium

L-threonate in tablets, capsules, gels, and other standard forms. The dosage form elements add nothing novel.

60. Fourth, the claim's breadth confirms impermissible preemption. Claim 1 covers any conventional oral dosage form containing at least 10 mg of a naturally occurring compound, effectively preempting all commercial uses of magnesium threonate. Plaintiffs' own infringement theory, that any product containing approximately 43–44 mg per capsule infringes, illustrates the point. *Alice*, 573 U.S. at 216.

**Step Two: No Inventive Concept Exists.**

61. Every element beyond the natural compound is conventional: oral delivery, standard dosage forms, and routine administration. Applicants' own prosecution statements confirm the alleged benefit is intrinsic to the compound magnesium threonate a natural property that cannot supply an inventive concept. A claim whose "innovation is an innovation in ineligible subject matter" fails step two. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018). Counts I–III should be dismissed with prejudice.

**The Pending Reexamination Supports Dismissal.**

62. On January 13, 2026, the USPTO granted ex parte reexamination of all 19 claims of the '061 Patent, finding that Yu '366 raised "substantial new questions of patentability" as to every claim, including Claim 1. ReqJudNot, Ex. F, (USPTO Reexamination Order.) While reexamination does not automatically invalidate the patent, the USPTO's finding confirms that serious validity questions pervade every asserted claim. Allowing this litigation to proceed through discovery on a patent the USPTO has identified as potentially invalid would impose unnecessary burdens on Kappa and the Court. Dismissal on § 101 grounds, resolvable as a matter of law on

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

the current record, is the more efficient and appropriate course.

**Independent Pleading Failures (Counts I–III)**

63. **Count I Direct Infringement (§271(a)):** The FAC provides laboratory testing only for the "Magnesium 3 in 1 L-Threonate Advanced Complex." For the separate Plant-Based Product, the entire infringement allegation rests on a single Amazon marketing statement that both products use the "same trusted formula." FAC¶ 74. An advertising slogan, without composition testing or technical analysis, does not plausibly establish that the Plant-Based Product satisfies every limitation of Claim 1. *Twombly*, 550 U.S. at 570. Count I also contains an internal inconsistency, its heading references §271(c) while its body pleads §271(a), further demonstrating the absence of a coherent infringement theory. *Iqbal*, 556 U.S. at 678.

64. **Count II Contributory Infringement (§271(c)):** Contributory infringement requires a component especially made for infringement with no substantial noninfringing use. Kappa sells finished dietary supplement capsules, not components, and the FAC's own allegations confirm these products are marketed for general uses, including muscle cramps, bone health, and relaxation all substantial noninfringing uses. The conclusory assertion that they are not staple articles is precisely the legal conclusion *Iqbal* forbids. *Iqbal*, 556 U.S. at 678.

65. **Count III Induced Infringement (§271(b)):** Induced infringement under § 271(b) required knowledge that the induced acts constituted patent infringement *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). General wellness marketing and health benefit labels do not plausibly establish that intent. Nor does the FAC allege that Kappa performs the claimed method steps or exercises sufficient direction or control over consumers to attribute their conduct to Kappa. Count III

should be dismissed.

**Neurocentria Lacks Lanham Act Standing (Counts VI–VIII)**

66. To come within the zone of interests in a suit for false advertising under §1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales.. *Lexmark*, 572 U.S. at 131–34. Neurocentria satisfies neither requirement.

67. The FAC contains no allegation that Neurocentria sells magnesium supplements, competes with Kappa, or has suffered any concrete commercial injury. Dr. Liu's testimony is unequivocal: Kappa is "No[t]" a competitor of Neurocentria, there is "no direct relationship with Mando," and "Neurocentria's part is really about the patent infringement" while ThreoTech is "the one who actually look at the false advertisement." Liu Dep. 233:5–16; 241:6–24. (Decl. of Abhyanker, Ex. 5) The FAC's own structure confirms the problem. All allegations of competitive harm from false advertising, lost sales, eroded brand value, goodwill damage, are pleaded on ThreoTech's behalf. FAC ¶¶137, 151, 164. Simply appending "and Neurocentria" to ThreoTech's damages paragraphs does not establish *Lexmark's* standing. *Twombly*, 550 U.S. at 570.

68. Each count fails independently as to Neurocentria. Count VI's dosage standard derives from the TMLA, a contract to which Neurocentria is not a party. Count VII concerns a market in which Neurocentria does not compete. Count VIII concerns the TMLA licensing period during which Neurocentria had no commercial relationship with Kappa. Across all three counts, the falsity theory collapses without the TMLA's 2-gram standard, leaving only a bare conclusory inefficacy claim unsupported by any identified scientific standard. *Iqbal*, 556 U.S. at 678. Counts VI–VIII should be dismissed as to Neurocentria.

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

69. In addition, three points merit emphasis in ThreoTech's context. First, the Plant-Based Product infringement allegation, relying on a single "same trusted formula" marketing slogan, is deficient as to ThreoTech for the same reasons it is deficient as to Neurocentria. An advertising slogan is not a technical description of composition. Second, ThreoTech's contributory infringement allegation is self-defeating because the FAC simultaneously describes the products' broad general wellness applications and alleges they have no substantial noninfringing use. Third, ThreoTech's induced infringement allegations lack specific intent. The claim that general cognitive health marketing constitutes specific intent to cause consumers to practice every limitation of a composition patent is precisely the kind of legal conclusion that *Iqbal* forbids.

**Neurocentria Lacks Unfair Competition Standing (Counts IX–X).**

70. Both counts require actual commercial injury. "To have standing under the UCL, a plaintiff must have suffered "injury in fact" and have "lost money or property" as a result of an unfair business practice." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321–23 (2011). Neurocentria meets neither standard. The FAC does not allege that Neurocentria sells dietary supplements, has lost identified customers or market share, or has suffered any quantifiable economic injury. Its conclusory references to eroded "goodwill" (FAC ¶¶ 171, 177) are contradicted by the FAC's own narrative, which consistently attributes commercial activity and competitive injury to ThreoTech. A plaintiff that is not a market participant and has not lost money or property cannot invoke §17200 or the common law of unfair competition. *Kwikset*, 51 Cal. 4th at 322. Counts IX and X should be dismissed as to Neurocentria.

**V.  CONCLUSION**

71. After nine months of revisions by nine attorneys across three law firms, the FAC still fails to identify the assignment transferring the '061 Patent to ThreoTech, address AIDP's prior federal court ownership representations, or explain the chain of title from Neurocentria to ThreoTech. These are not correctable omissions. For the foregoing reasons, Defendant Mando International, LLC d/b/a Kappa Nutrition Labs respectfully requests that the Court dismiss all eleven counts of the First Amended Complaint with prejudice, and dismiss all claims asserted by Neurocentria, Inc. (Counts I, II, III, VI, VII, VIII, IX, and X) under Rule 12(b)(2) for lack of personal jurisdiction.

Dated: April 24, 2026                    Respectfully submitted,
                                         LEGALFORCE RAPC WORLDWIDE P.C.


                                         /s/ Raj V. Abhyanker
                                         Raj V. Abhyanker
                                         Attorney for Defendant and Counterclaimant:
                                         Mando International, LLC

MEMORANDUM POINTS AUTHORITIES ISO COMBINED DISMISS FAC
CASE NO.: CV-25-cv-05871-FLA-JPR

## LOCAL RULE 7-3 CERTIFICATION

1.  Defendant respectfully files this in response to the Court's striking of the previously filed Motions to Dismiss in Dkt. 163.  The underlying previous filings Dkt. 118 and 119 included statements with respect to Local Rule 7.3.


Dated: April 24, 2026                    Respectfully submitted,
                                         LEGALFORCE RAPC WORLDWIDE P.C.


                                         /s/ Raj V. Abhyanker
                                         Raj V. Abhyanker
                                         Attorney for Defendant and Counterclaimant:
                                         Mando International, LLC

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1**

1.   The undersigned counsel certifies that this Memorandum to the Motion to Dismiss Plaintiffs' First Amended Complaint complies with the type-volume limitation of Local Rule 11-6.1.

2. This memorandum contains 7,000 words, excluding the caption, tables, signature block, and certificates of service.


Dated: April 24, 2026                Respectfully submitted,
                                     LEGALFORCE RAPC WORLDWIDE P.C.


                                     /s/ Raj V. Abhyanker
                                     Raj V. Abhyanker
                                     Attorney for Defendant and Counterclaimant:
                                     Mando International, LLC