Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John W. Cox
  (Admitted *Pro Hac Vice*)
  John.Cox@btlaw.com
Lauren U. Baker
  (Admitted *Pro Hac Vice*)
  Lauren.Baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile: 404-264-4033

Jeffrey Gavenman
  (Admitted *Pro Hac Vice*)
  jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
  (Admitted *Pro Hac Vice*)
  jeremy.schulman@hugheshubbard.com
James Schaller
  (Admitted *Pro Hac Vice*)
  jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I STREET, N.W., 6th Floor
Washington, D.C. 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs NEUROCENTRIA, INC. and THREOTECH LLC, and Third-Party Defendant AIDP, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC,<br><br>      Plaintiffs/Counterclaim Defendants,<br><br>   v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION,<br><br>      Defendant/Counterclaim Plaintiff,<br><br>   v.<br><br>AIDP, INC.<br><br>      Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO LOCAL RULES 83-7 AND 83-8, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWER, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed Concurrently with Declarations of Jeffrey Gavenman and John Cox*]<br><br>Hearing:      June 5, 2026<br>Time:         1:30 p.m.<br>Courtroom: 6B, 6th Floor<br>Judge:       Hon. Fernando L. Aenlle-Rocha |

**TO THE COURT AND TO ALL PARTIES AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on Friday, June 5, 2026, at 1:30 p.m., or as soon thereafter as this matter may be heard before the Honorable Fernando L. Aenlle-Rocha of the above-entitled Court, located at 350 W. 1st Street, Courtroom 6B, 6th Floor, Los Angeles, California 90012, Plaintiffs / Counterclaim Defendants Neurocentria, Inc. ("Neurocentria") and ThreoTech LLC ("ThreoTech" and, collectively with Neurocentria, "Plaintiffs") will and hereby do move the Court, pursuant to Central District of California Local Rules 83.7 and 83.8, 28 U.S.C. § 1927, and the Court's inherent authority, for sanctions against Defendant / Counterclaim Plaintiff Mando International LLC d/b/a Kappa Nutrition ("Defendant" or "Kappa") and its counsel, Raj Abhyanker ("Abhyanker" and, collectively with Kappa, "Respondents"). Specifically, Plaintiffs request the Court deem Respondents vexatious litigants; order Respondents to pay the costs and fees incurred by Plaintiffs in responding to two motions to dismiss that have since been stricken, as well as fees and costs associated with other vexatious actions by Respondents; order Respondents to provide security in an amount the Court determines appropriate to secure the payment of any costs, sanctions, or other amounts which may be awarded against a vexatious litigant; and preclude Kappa from filing any offensive motions without leave of Court.

As will be explained in detail in the attached Memorandum, the actions of Respondents have forced Plaintiffs to incur – unnecessarily – exorbitant fees and waste considerable time and energy. In addition to making frivolous filings and advancing untenable positions, Respondents have, in day-to-day litigation, failed to follow the Local Rules, taken wholly unsupportable positions in discovery, and generally botched simple procedural tasks. These actions have required the attention and response of Plaintiffs, forcing them to incur a significant amount of otherwise unnecessary attorneys' fees to deal with these issues rather than the merits of this case.

This Motion is based on this Notice of Motion and Motion, the accompanying

Memorandum of Points and Authorities, and the concurrently filed Declarations of Jeffrey Gavenman and John Cox. Plaintiffs bring this Motion following a pair of meet-and-confer conferences with Abhyanker. The first, on February 17, 2026, was in person and included Abhyanker, Mr. Gavenman, and Mr. Cox; the second, on April 3, 2026, involved Mr. Cox and two other attorneys for Plaintiff – Lauren Baker and Anna Kornilova – with Abhyanker. The details of these meet-and-confers (which did not resolve any disputed issues) are explained in more detail in Mr. Gavenman's Declaration and Mr. Cox's Declaration.

Dated: April 28, 2026          HUGHES HUBBARD & REED LLP

By: */s/ Jeffrey Gavenman*
Attorneys for Plaintiffs
NEUROCENTRIA, INC. and THREOTECH LLC and Third-Party Defendant AIDP, INC.

2

Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994


John W. Cox
  (Admitted *Pro Hac Vice*)
  John.Cox@btlaw.com
Lauren U. Baker
  (Admitted *Pro Hac Vice*)
  Lauren.Baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile: 404-264-4033

Jeffrey Gavenman
  (Admitted *Pro Hac Vice*)
  jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
  (Admitted *Pro Hac Vice*)
  jeremy.schulman@hugheshubbard.com
James Schaller
  (Admitted *Pro Hac Vice*)
  jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I STREET, N.W., 6th Floor
Washington, D.C. 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs NEUROCENTRIA, INC. and THREOTECH LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION,<br><br>Defendant/Counterclaim Plaintiff<br><br>v.<br><br>AIDP, INC.,<br><br>Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-JPR<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO LOCAL RULES 83-7 AND 83-8, 28 U.S.C. §1927, AND THE COURT'S INHERENT POWER**<br><br>[*Filed Concurrently with Declarations of Jeffrey Gavenman and John Cox*]<br><br>Hearing:    June 5, 2026<br>Time:    1:30 p.m.<br>Courtroom: 6B, 6th Floor<br>Judge:    Hon. Fernando L. Aenlle-Rocha |

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................1

II.  RELEVANT BACKGROUND ...............................................................4

III. ARGUMENT .........................................................................................7

    A.   Legal Standard.................................................................................7

    B.   Vexatious Positions for Perceived Tactical Advantage ...............9

        1.   Respondents' Inconsistent Positions in Discovery ...........9

        2.   Kappa's Discovery Requests to Plaintiffs.......................11

    C.   Reckless and/or Bad Faith Disregard for Rules, Law, and Facts..............13

        1.   Respondents Missed Opposition Deadline ......................14

        2.   Respondents Flout Rules by Filing Two Motions to Dismiss One Operative Pleading ...................................15

        3.   Respondents' Misrepresentations Related to L.R. 7-3 ...................17

        4.   Service Issues ..................................................................18

    D.   Kappa Forfeited Its Charter in 2022......................................20

    E.   Need for Sanctions .......................................................................21

IV.  CONCLUSION....................................................................................22

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ...................................................................8

*GovernmentGPT Inc. v. Axon Enter. Inc.*, No. CV-24-01869-PHX-SMB, 2025 WL 4080457, at \*2 (D. Ariz. Apr. 3, 2025) ...................................................3

*Graham v. Dupont De Nemours, Inc.,* No. 2:25-CV-06135-FLA (SKX), 2026 WL 40833 (C.D. Cal. Jan. 6, 2026) .............................................................8

*Hollywood v. Carrows California Fam. Restaurants*, No. 2:18-CV-02098-JGB (GJS), 2019 WL 6178807 (C.D. Cal. Sept. 17, 2019)...................................8

*Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216 (9th Cir. 2010) .........................................................................................................8

*LegalForce RAPC Worldwide P.C. v. MH Sub I, LLC*, No. C 24-00669 WHA, 2025 WL 3675365, at \*12 (N.D. Cal. Dec. 18, 2025) .............................3

*Moore v. LaHabra Relocations, Inc.*, 501 F.Supp. 2d 1278 (C.D. Cal. 2007) ........................................................................................................15

*Nextdoor, Inc. v. Abhyanker*, Case No. 12-cv-05667-EMC, 2021 WL 1263973 (N.D. Cal. April 6, 2021).................................................................4, 21

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) ..........................................................................................................10

*Tervardanyan v. Creditors Fin. Grp. LLC*, No. 2:12-CV-1223-SVW-FFM, 2012 WL 5928136 (C.D. Cal. Nov. 19, 2012) ............................................8

*Theodoropoulous v. County of Los Angeles*, No. CV 12-07938 JGB (RZX), 2014 WL 10987003 (C.D. Cal. Sept. 18, 2014) ....................................8

*Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584 (C.D. Cal. 1999) ..........................................................................................................13

**Statutes and Rules**

28 U.S.C. § 1927 ...................................................................................................8

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

Cal. Civ. Proc. Code § 415.20(a) ...............................................................................19, 20

Fed. R. Civ. P. 4(h)(1)(A) .........................................................................................19

Fed. R. Civ. P. 4(m) ..................................................................................................18

Fed. R. Civ. P. 26(d)(1)..............................................................................................20

Fed. R. Civ. P. 26(f) ..............................................................................................6, 20

Fed. R. Civ. P. 33(a)(1) ..............................................................................................13

L.R. 7-3 ...............................................................................................................17, 18

L.R. 7-9 ...............................................................................................................14, 15

L.R. 11-6.1 ..........................................................................................................15, 22

L.R. 37-1 ...................................................................................................................10

L.R. 83-7 ..............................................................................................................4, 7

L.R. 83-7(a)................................................................................................................13

L.R. 83-7(b)................................................................................................................14

L.R. 83-8 ................................................................................. 4, 7, 8, 21, 22

L.R. 83-8.1 ...................................................................................................................7

L.R. 83-8.2 ...................................................................................................................8

Local Rule 83-8.............................................................................................................8

Tex. Tax Code § 171.252..............................................................................................20

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On February 24, 2026, this Court entered an Order (the "OSC") (ECF 107) in which it *sua sponte* ordered Defendant Mando International, LLC d/b/a Kappa Nutrition ("Defendant" or "Kappa") ***and its counsel***, Raj Abhyanker ("Abhyanker" and, together with Kappa, "Respondents"), to show cause as to "why they should not be sanctioned under Fed. R. Civ. P. 11(c) and the court's inherent powers for engaging in improper, harassing, and bad-faith conduct that has caused unnecessary delay and increased the cost of litigation needlessly." OSC at 3-4. At the time, Plaintiffs/Counterclaim Defendants Neurocentria, Inc. ("Neurocentria") and ThreoTech LLC ("ThreoTech" and, collectively with Neurocentria, "Plaintiffs") believed that the OSC would alter the trajectory of the case by curbing Respondents' vexatious behavior, which had driven this case off its course. Until that point, Plaintiffs had spent the vast majority of their time and resources in this case managing Respondents' chaotic litigation behavior instead of litigating on the merits. And, unfortunately, Respondents' behavior has not improved despite Plaintiffs' best efforts and the OSC.

In the OSC, the Court identified the following vexatious, harassing, and bad-faith conduct by Respondents:

(1) dismissing certain counterclaims and reasserting them in a separate action brought in another district; (2) opposing Plaintiffs' requests for leave to add claims related to issues Defendant introduced into this action, based on Defendant's subsequent dismissal of these counterclaims and refiling of these counterclaims in a different forum; (3) making false representations and frivolous arguments to this court (including arguing [Plaintiffs' proposed First Amended Complaint] seeks to add AIDP, Inc. and Magceutics, Inc. as Defendants, when it does not, that Plaintiffs introduced new issues into the action when they were introduced by Defendant, and that Defendant somehow has standing to bring motions on behalf of opposing parties); and (4) repeatedly filing then withdrawing motions and counterclaims after Plaintiffs filed opposition briefs or otherwise incurred litigation expenses (Dkts. 54, 70, 104).

- 1 -

OSC at 4.[1] Plaintiffs briefed these issues (and others) in their Reply to Defendant Mando International, LLC's Response to Order to Show Cause ("OSC Reply") (ECF 139). Separately, due to Respondents' numerous vexatious actions during the claim construction process – including untimely and continuously evolving claim construction positions, multiple unnecessary filings, advancement of frivolous arguments and false testimony, and objectively unreasonable positions – Plaintiffs were forced to file a separate Motion for Sanctions. ECF 161 ("Sanctions Motion").[2]

Yet, to Plaintiffs' chagrin, neither the Court's OSC nor the subsequent Sanctions Motion have curbed Respondents' behavior. Respondents continue to engage in the same bad faith conduct that needlessly multiplies litigation. Specifically, such vexatious behavior manifests itself in three constantly recurring, and often overlapping forms: (1) Respondents advancing positions that are not grounded in law and/or fact and then withdrawing such positions after Plaintiffs respond; (2) Respondents repeatedly disregarding governing rules, procedures, law, and basic litigation norms, including the duty of candor, resulting in filings and assertions that require continual correction on the part of Plaintiffs; and (3) Respondents taking reflexively contrarian positions, far beyond what could be considered "zealous advocacy," in a transparent attempt to drive up

---

[1] At the time the Court entered the OSC, Plaintiffs were preparing a sanctions motion – and, in fact, already had conducted a meet and confer required by Local Rule ("L.R.") 7-3 – covering much of the behavior noted by the Court in the OSC.

[2] Plaintiffs hereby expressly incorporate the OSC Reply and Sanctions Motion as if fully set forth herein.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

Plaintiffs' attorneys' fees.[3] This conduct[4] results in an unreliable and ever-shifting litigation environment. The impact and burden of having to contend with such continuous improper behavior cannot be measured in monetary terms alone; it diverts substantial time and resources away from the merits and derails any semblance of an orderly litigation process.

Such behavior is not limited to this lawsuit. Abhyanker's vexatious and bad-faith litigation is the very hallmark of his strategy – several Courts across the country have already sanctioned, enjoined, or otherwise remarked upon Abhyanker's bad faith, dishonest behavior. In *GovernmentGPT Inc. v. Axon Enter. Inc.*, the U.S. District Court for Arizona levied sanctions against Abhyanker because of his "inundation of the docket with filings asserting incredible allegations without factual support." No. CV-24-01869-PHX-SMB, 2025 WL 4080457, at *2 (D. Ariz. Apr. 3, 2025). The U.S. District Court for the Northern District of California in *LegalForce RAPC Worldwide P.C. v. MH Sub*

---

[3] The examples are far too numerous to list, as Abhyanker takes such positions constantly. One clear example, however, is the discussion surrounding the Motion to Strike. *See* OSC Reply at 19-21 (Plaintiffs, in good faith, proposing a resolution to an alleged issue by Kappa; Kappa rejecting Plaintiffs' proposed resolution, forcing Plaintiffs to engage in motions practice; and, months later Kappa adopting the position Plaintiffs had been proposing all along). As this category has been adequately covered in other filings, it will not be discussed further herein.

[4] Abhyanker also engages in behavior that, although relatively minor, further exhibits his pattern of litigating via obstruction and nuisance. Such behavior includes Abhyanker filing repeated, improper administrative "notices," often with no clear request (ECF 71, 113, 115); forcing Plaintiffs' counsel to meet and confer with a junior attorney who was so deficient in his knowledge of the case and applicable rules that the meet and confers were wholly ineffective, only to then announce that he would only communicate with Plaintiffs' lead counsel; starting new email threads (and altering old email threads) to create records that omit exchanges he finds problematic; and repeatedly filing "clarifying" documents to correct errors (spelling, grammatical and omitted attachments) in prior filings (ECF 37, 96, 124, 154).

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

*I, LLC* found that a certain factual misrepresentation Abhyanker made to the Court was "not a half truth" but "a no truth." No. C 24-00669 WHA, 2025 WL 3675365, at *12 (N.D. Cal. Dec. 18, 2025). Most aptly, in *Nextdoor, Inc. v. Abhyanker*, Case No. 12-cv-05667-EMC, 2021 WL 1263973 (N.D. Cal. April 6, 2021), the Court, in entering an injunction against Abhyanker, specifically noted that "***it is evident that Mr. Abhyanker knows no restraint***. Given his litigious history, there is a realistic prospect that ***this proliferation will not stop on its own accord***." *Id.* at *3 (emphasis added).

As such, Plaintiffs' present Motion synthesizes the conduct previously presented to the Court in the OSC Reply and the Sanctions Motion (with additional examples set forth below), but specifically demonstrates a broader pattern of vexatious litigation behavior that has so unreasonably and vexatiously multiplied and derailed the proceedings (as the Court already noted in the OSC) and imposed unnecessary cost and burden on Plaintiffs and the Court that it is imperative to stop it promptly with the tools afforded to the Court under L.R. 83-7 and 83-8. Plaintiffs therefore respectfully request that the Court award Plaintiffs further attorneys' fees; enter an Order requiring Respondents to post a bond as security against the costs of defending against further vexatious litigation; and forbid Respondents from filing offensive motions without leave of Court.

## II.    RELEVANT BACKGROUND

To give the Court a flavor of what it is like to litigate with Respondents, Plaintiffs present the following 30-hour period in late March. During the deposition of Kappa's expert, Sara Adams, on March 18, 2026, Abhyanker represented that he had information related to the veracity of Ms. Adams' statement, sworn under the penalty of perjury, that she "hold[s] a Ph.D. in Natural Sciences (Biochemistry) from the University of Cambridge" (ECF 95-2). Yet, despite repeated requests, Abhyanker refused to produce this information until Plaintiffs were forced to threaten a motion to compel. *See* Declaration of Jeffrey Gavenman ("Gavenman Decl."), **Exhibit 1**, at 4-11. On March

- 4 -

30, 2026, at 6:23 p.m. PDT, Abhyanker produced an email exchange between Abhyanker and Jesmin Haq of the University of Cambridge from nearly four weeks earlier. Gavenman Decl., **Exhibit 2**. In that exchange, Ms. Haq stated – exactly as Plaintiffs had long suspected – that Ms. Adams' "[d]egree has not yet been conferred and until such time [Ms. Adams] ***does not hold the degree***." *Id.*, at 2 (emphasis added). Unbelievably, Abhyanker maintained the position that he did "not agree that" Ms. Adams' statement that she "hold[s] a Ph.D. in Natural Sciences (Biochemistry) from the University of Cambridge" was "false or misleading." Gavenman Decl., **Exhibit 1**, at 1.

About 24 hours later, on the evening of March 31, 2026, Abhyanker presented that wholly unsupportable position to the Court in the form of two sworn declarations. Ignoring the rules of civil procedure and the Local Rules, as he is wont to do, Abhyanker filed his email exchange with Ms. Haq as well as the "Clarifying Declaration of Sara Adams," in which Ms. Adams attempted to explain that her statement that she "hold[s] a Ph.D." did not really mean that she ***actually has*** a Ph.D. – just that she completed "all academic requirements" to be eligible for receiving a Ph.D. *See* Clarifying Declaration, ECF 151. Shortly thereafter, Abhyanker filed his own Declaration of Raj Abhyanker in Support of Clarifying Declaration of Sara Adams (ECF 152) along with several exhibits, attempting, like Ms. Adams, to explain that her claiming she had a Ph.D. when she did not was, somehow, not false or misleading.[5]

But Abhyanker was just getting started. At 6:37 p.m. PDT, Abhyanker emailed a demand letter to counsel for the Magtein Parties. *See* Gavenman Decl., **Exhibit 3** (the "Demand Letter"). The Demand Letter demanded, *inter alia*, that the Magtein Parties produce, within 10 business days (p. 5), certain information relating to Magtein products

---

[5] Both actions – Abhyanker's withholding of his correspondence with the University of Cambridge for nearly four weeks and his submission of the Clarifying Declaration of Sara Adams and his own Declaration in Support – are included in Plaintiffs' pending Sanctions Motion, which stands by itself. ECF 161.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

at the center of this case (p. 4), attempting to wholly circumvent the discovery process, devices, and timing set forth in the Federal Rules of Civil Procedure.

Sixteen minutes later, at 6:53 p.m. PDT, Abhyanker emailed a Notice of Deposition for AIDP, Inc.,[6] which Kappa had added as a party, even though Kappa had neither served AIDP with process nor conferred with it about discovery pursuant to Fed. R. Civ. P. 26(f). *See* Gavenman Decl., **Exhibit 4**. Not only was the notice procedurally improper for those reasons, it also unilaterally set the deposition date for just two weeks later – April 14, 2026 – and included a staggering 119 deposition topics. *See id.*

Then, at 9:12 p.m. PDT, Abhyanker emailed Mr. Gavenman, stating (incorrectly) that Plaintiffs' oppositions to Kappa's two motions to dismiss Plaintiffs' First Amended Complaint were "filed on March 27, 2026, one day after the applicable deadline." Gavenman Decl., **Exhibit 5**. Abhyanker added that Kappa "reserve[d] all rights with respect to the timeliness of the opposition[s]" (*id.*) – oblivious to the irony that not only were Plaintiffs' oppositions timely filed but, at that very moment, Kappa's yet-to-be filed opposition to Plaintiffs' motion to dismiss Kappa's Second Amended Counterclaims was already ***four days late***.

This 30-hours snippet is but a sampling of what it is like to litigate with Respondents day in and day out. While any of the above transgressions, on its own, might be explained away as an unintentional mistake or a mere annoyance, taken together and combined with the actions that this Court already recognized in its OSC – as well as the actions presented in Plaintiffs' Sanctions Motion and the actions other courts have admonished – they provide a microcosm of the vexatious, unreasonable, and improper behavior of a party and its attorney that has poisoned this litigation and prevented the parties and the Court from focusing on the merits of the case. Almost

[6] AIDP, Inc. is hereinafter referred to as "AIDP." AIDP, together with Plaintiffs, is hereinafter referred to as the "Magtein Parties."

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

Case 2:25-cv-05871-FLA-MAR   Document 170   Filed 04/28/26   Page 14 of 30   Page ID #:6846

entirely because of Respondents' actions, the parties remain stuck at the motion to dismiss stage nine months into litigation, with approximately 170 entries on the Court's docket.

Plaintiffs have been forced to spend the majority of their time in this case responding to Respondents' nonsense, rather than focusing on the merits. As such, Plaintiffs request the Court sanction Respondents, deem them vexatious litigants, order they pay the costs and fees Plaintiffs incurred in opposing the dual motions to dismiss and other vexatious behavior, require they post a bond that shall act as security against the costs of defending against further vexatious litigation, and forbid them from filing offensive motions without leave of Court.

## III. ARGUMENT

### A. Legal Standard

The Central District of California provides for the imposition of sanctions for "violation of or failure to conform to" any of its Local Rules. L.R. 83-7. Pursuant to that rule, an offending party or counsel may be subject to:

    (a)    monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless;

    (b)    the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or

    (c)    for any of the conduct specified in (a) and (b) above, such other sanctions as the Court may deem appropriate under the circumstances.

*Id.*

In addition, L.R. 83-8, titled, "Vexatious Litigants," "augment[s] the inherent power of the Court to control vexatious litigation" in furtherance of the Court's policy "to discourage vexatious litigation and to provide persons who are subjected to vexatious litigation with security against the costs of defending against such litigation and appropriate orders to control such litigation." L.R. 83-8.1. The referenced "inherent

---

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

power" that L.R. 83-8 augments allows the Court to "impose sanctions for bad faith, which includes a broad range of willful improper conduct" and "willful abuse of judicial processes." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

Local Rule 83-8 permits the Court to order parties to provide security for potential costs that could be awarded and to "make such other orders as are appropriate to control the conduct of a vexatious litigant," including directing "the Clerk not to accept further filings from the litigant without payment of normal filing fees and/or without written authorization of a judge of the Court or a Magistrate Judge." L.R. 83-8.2. *See Tervardanyan v. Creditors Fin. Grp. LLC*, No. 2:12-CV-1223-SVW-FFM, 2012 WL 5928136 at *2 (C.D. Cal. Nov. 19, 2012); *see also Est. of Castaneda v. L.A.S.C.*, No. CV 19-0736 FMO (SK), 2019 WL 2177247 (C.D. Cal. May 20, 2019). Posting of a bond is similarly appropriate. *See Hollywood v. Carrows California Fam. Restaurants*, No. 2:18-CV-02098- JGB (GJS), 2019 WL 6178807, at *34 (C.D. Cal. Sept. 17, 2019) (Court requiring plaintiffs to post a bond where plaintiffs' conduct had consumed an unreasonable amount of court and defense resources, and there was a likelihood that they would continue such behavior unless protective measures were taken). It is this relief that the Plaintiffs seek, for all the reasons described herein.[7]

For example, in *Graham v. Dupont De Nemours, Inc.,* No. 2:25-CV-06135-FLA (SKX), 2026 WL 40833 (C.D. Cal. Jan. 6, 2026), the court issued an order to show cause requiring the plaintiffs to explain why they should not be declared vexatious litigants under Local Rule 83-8 based on their repeated filing of substantially identical lawsuits and abusive motion practice following adverse rulings.

---

[7] The Court also may impose sanctions pursuant to 28 U.S.C. § 1927. "An attorney who unreasonably and vexatiously 'multiplies the proceedings' may be required to pay the excess fees and costs caused by his conduct,' pursuant to 28 U.S.C. § 1927." *Theodoropoulous v. County of Los Angeles*, No. CV 12-07938 JGB (RZX), 2014 WL 10987003, at *3 (C.D. Cal. Sept. 18, 2014) (quoting *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1218-19 (9th Cir. 2010)).

- 8 -

### B.    Vexatious Positions for Perceived Tactical Advantage

One of the most enduring features of Respondents' litigation strategy is the advancement of positions based on perceived tactical advantage in the moment, rather than any grounding in law or in fact. Relatedly, Respondents are also known for abandoning or reversing such positions after Plaintiffs expend time and resources responding to them.

Plaintiffs have previously briefed Respondents' frivolous Rule 11 Motion. *See* OSC Reply at 15-17. Plaintiffs have also briefed the equally vexatious Northern District Action. OSC Reply at 6-9. Briefly, Plaintiffs, after retaining new lead counsel, sought to amend their complaint. Kappa opposed Plaintiffs' revised motion for leave (ECF 64) by claiming (amongst other frivolous arguments) that Plaintiffs' proposed amended complaint would improperly expand the scope of the case – an entirely baseless argument, given that Kappa itself had already expanded the case to include in its counterclaims essentially the same issues that Plaintiffs sought to add. Once Plaintiffs pointed out that Respondents' argument was baseless (ECF 67), Respondents attempted to rectify their argument, *post hoc*, by withdrawing Kappa's counterclaims containing those issues and filing them in a new, separate case in the Northern District of California. Kappa dismissed the Northern District Action after the entry of the OSC, but this bad faith procedural gambit ended up costing Plaintiffs more than $230,000 in legal fees. *See* OSC Reply at 9.

Plaintiffs present several additional examples of Respondents' equally vexatious conduct for the Court's consideration.

### 1.    Respondents' Inconsistent Positions in Discovery

Plaintiffs served Interrogatories, Requests for Production of Documents, and Requests for Admission (collectively "Requests") on October 21, 2025. Pursuant to the Federal Rules, Kappa's responses were due on November 21, 2025. Kappa did not serve its written responses until December 8, 2025 (17 days late), without having sought an

- 9 -

extension from Plaintiffs or the Court. Putting aside that Kappa waived any objections because of its tardy replies,[8] Kappa lodged an objection to virtually every single one of Plaintiffs' Requests based upon confidentiality – claiming that no response could be provided and no documents could be produced until a protective order is entered.[9] *See, e.g.*, Gavenman Decl., ¶ 24. Remarkably, however, when Plaintiffs began negotiating the terms of a protective order with Respondents, Abhyanker suddenly took the position that ***no protective order was necessary*** because Kappa had not been asked to produce any confidential documents. *See id.,* ¶ 25; *see also id.*, **Exhibit 12** at 2 (Abhyanker stating on January 26, 2026, that Kappa is "not aware of any materials it has been asked to produce that require confidential or highly confidential treatment"); *id*. at 5.

When Plaintiffs attempted to clarify the glaring incongruity between that position and the discovery responses, Abhyanker – incredibly – continued to resist the entry of a protective order and asked Plaintiffs to direct him to the specific objections in question so he could evaluate them further, apparently unfamiliar with his own, ubiquitous, objection. Gavenman Decl., **Exhibit 12** at 1. It took numerous emails, multiple meet-and-confer conferences, and the threat of motion practice for Respondents to relent and agree to the simple step of entering a protective order, which Respondents themselves had insisted upon in Kappa's discovery responses. Gavenman Decl., ¶ 26. Still, Kappa failed to produce its documents.

Plaintiffs thus began the motion to compel procedures pursuant to L.R. 37-1. At the meet-and-confer that the parties held on March 16, 2026 (the "<u>March 16 Meet-and -</u>

---

[8] It is well-settled that serving late discovery objections constitutes a waiver of any such objection. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

[9] It has been ***six months*** since Plaintiffs served discovery requests on Kappa, yet, to date, Kappa has not produced a single document or provided amended responses to Plaintiffs' requests; this conduct will be the subject of a forthcoming motion to compel.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

Confer"), Kappa committed to producing all responsive documents by May 1, 2026. Gavenman Decl., ¶ 28. However, on April 16, 2026, Abhyanker backtracked and shifted to trying to equate Kappa's failure to provide discovery with the status of the discovery Kappa served on Plaintiffs. *See* Gavenman Decl., **Exhibit 14** at 2-3. Abhyanker then – based upon that false equivalence – suggested having "a comprehensive call … to go through all the discovery both sides are obligated to produce." *Id.* But the parties' situations with respect to discovery are not even remotely comparable. After counsel for Plaintiffs explained exactly why that is the case (*see id.* at 1-2), Abhyanker suggested engaging in "working session[s] … to go through all outstanding written discovery obligations on both sides, establish a realistic production schedule, and resolve outstanding objections collaboratively." *Id.* at 1.

This was but a smokescreen, which became clear in Abhyanker's next email, when he admitted the truth: he simply was "not in a position to complete the full production by May 1." Gavenman Decl., **Exhibit 14** at 1. Remarkably, he blamed that on being the "solo litigator on this case." *Id*. However, such an excuse gets him nowhere; Abhyanker received Plaintiffs' discovery requests more than *six months* ago, and he has not produced *a single document* in response. This excuse is particularly galling, given that Abhyanker has clearly used time that could have been spent satisfying Respondents' discovery obligations to pursue a host of vexatious and frivolous positions and tactics in bad faith.

### 2.    Kappa's Discovery Requests to Plaintiffs

On November 6, 2025, Kappa propounded on both Plaintiffs a single set of Requests for Production of Documents ("Kappa's First RPDs"), a single set of 25 Interrogatories ("Kappa's First ROGs"), and a single set of Requests for Admission ("Kappa's RFAs") (collectively, "Jurisdictional Discovery"). Gavenman Decl., ¶ 31. Importantly, Instruction No. 1 in Kappa's ROGs, Kappa's RPDs, and Kappa's RFAs ***expressly limited each request*** to "issues of personal jurisdiction, venue, and service of

- 11 -

process." Gavenman Decl., ¶ 32. At the time, Kappa had been insisting that this Court lacked personal jurisdiction over Kappa and that Plaintiffs' claims needed to be litigated in the Northern District of Texas. *Id.* at, ¶ 33. However, on November 11, 2025, five days after serving its Jurisdictional Discovery, Kappa withdrew its objections to jurisdiction, submitted to the jurisdiction of the Court (ECF 54), and, the following day, filed its answer and original counterclaims against Plaintiffs and certain third parties (ECF 55).

Despite having withdrawn all objections to jurisdiction, Kappa insisted Plaintiffs respond to its Jurisdictional Discovery. Gavenman Decl., ¶ 35. Kappa did this despite the fact that counsel for Plaintiffs advised that they were moving to amend their complaint; that the motion likely would be granted; and that – if that happened – Kappa would want to have additional discovery requests – interrogatories, in particular, as ***Kappa had used all 25 interrogatories*** with its Jurisdictional Discovery. *Id.*; *see also id.*, **Exhibit 15** at 2. Kappa would not relent, however, and insisted that Plaintiffs' "discovery responses remain due," and that Kappa "expect[ed] and demand[ed] timely responses" to its discovery. *See id.*, **Exhibit 16** at 1-2.

Because of this stance, Plaintiffs served their fulsome objections to Kappa's Jurisdictional Discovery on December 8, 2026 (the "December 8 Responses"), specifically noting, among other objections, that the Jurisdictional Discovery requests were not proportional to the needs of the case given that the jurisdictional issues were no longer relevant. Gavenman Decl., ¶ 38.

***More than three months*** went by without Kappa raising any issue with – or even mentioning – Plaintiffs' responses and objections. It was not until the March 16 Meet-and-Confer that Kappa brought up Plaintiffs' responses. Gavenman Decl., at, ¶ 39. In that same conference, Abhyanker expressed surprise at discovering that the requests Kappa had issued were limited to jurisdictional discovery. *Id.* Promptly after the March 16, 2026 Meet-and-Confer, Kappa "withdrew" Kappa's First ROGs and First RPDs and

- 12 -

purportedly reissued new discovery ("Kappa's New Discovery Requests"). Gavenman Decl., ¶¶ 40, 41.

Such attempted "withdrawal"[10] of Kappa's First ROGs to avoid the limits of Fed. R. Civ. P. 33(a)(1) – after forcing Plaintiffs to incur the time and expense of responding to the interrogatories – is entirely inappropriate. *See Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 588 (C.D. Cal. 1999) (finding that "nothing in these rules allows a propounding party to unilaterally 'withdraw' interrogatories after they are served, ***particularly after the responding party incurs the burden of preparing and serving objections***" (emphasis added)). Such an inappropriate attempt at withdrawal of the interrogatories is more of the same vexatious litigation conduct that has plagued this case from the start, here, requiring Plaintiffs to lodge objections to these inappropriate Interrogatories, which Plaintiffs timely did, along with responding to Kappa's new RPDs, on April 15, 2026. Gavenman Decl. ¶ 41.

### C.     Reckless and/or Bad Faith Disregard for Rules, Law, and Facts

An equally omnipresent feature of Respondents' litigation conduct that overlaps substantially with Kappa taking whatever position it deems most advantageous in the moment, no matter the consequences, is Respondents' complete disregard for Federal Rules of Civil Procedure, Local Rules, standing orders, caselaw, norms, and facts. With regards to violations of Local Rules discussed below, such behavior is *at least* grossly negligent, and/or reckless, such that monetary sanctions are appropriate under L.R. 83-7(a) (Plaintiffs are indeed asking for such sanctions). And, since the incidents of Local Rule violations are not isolated violations but a pattern of disregard for the Local Rules that has needlessly increased the costs of this litigation, such conduct rises above mere

---

[10] Abhyanker, again to circumvent the rule limiting his number of Interrogatories, later classified these new Interrogatories as "narrowed" and then crossed out certain Interrogatories and simply put new Interrogatories in their place. *See* Gavenman Decl., **Exhibit 20** at 2; 11-15.

- 13 -

gross negligence or recklessness and supports a finding of bad faith under L.R. 83-7(b). As such, this Court should impose costs and attorneys' fees incurred as a result of Respondents' misconduct.

Further, this conduct goes beyond blatant disregard for Local Rules – it encompasses Respondents' disregard for laws and facts *in general*, which in turn needlessly multiplies litigation by forcing Plaintiffs to respond to objectively improper arguments. In the OSC Reply, Plaintiffs discussed Respondents' bizarre Anti-SLAPP allegations (OSC Reply at 9-13), but it bears repeating herein. Briefly, Kappa argued that Plaintiffs' proposed amended complaint should be denied because it violated California's Anti-SLAPP statute because Plaintiffs were suing their own affiliates as a retaliatory measure for being sued by Kappa. ECF 99, ¶¶ 33, 37-41. Putting aside the ludicrous nature of this suggestion, Plaintiffs had not, in fact, sued those entities. Despite this, Kappa would not back off its claim, even after counsel for Plaintiffs explained the issue at a meet-and-confer. Gavenman Decl., ¶ 8. To the contrary, ***Respondents sent Plaintiffs a letter, threatening to bring a Rule 11 motion against Plaintiffs for purportedly suing Plaintiffs' own affiliates in violation of the Anti-SLAPP statute***. Gavenman Decl., **Exhibit 23**. And, of course, this was not the only frivolous Rule 11 threat made by Respondents. As discussed in the OSC Reply, Respondents filed a separate, vexatious Rule 11 Motion, forcing Plaintiffs to spend time and fees opposing it, only for Kappa to withdraw it immediately after Plaintiffs filed their opposition. OSC Reply at 15-19.

Additional examples for the Court's consideration are provided below.

### 1. Respondents Missed Opposition Deadline

Plaintiffs timely filed their Motion to Dismiss Kappa's Second Amended Counterclaims on March 17, 2026 (ECF 133) and set April 17, 2026 for the hearing on the motion. Pursuant to Local Rule 7-9, Kappa's Opposition was due "not later than twenty-one (21) days before the date designated for the hearing of the motion" – in other

- 14 -

words, March 27, 2026. Respondents, however, did not file the Opposition until March 31, 2026. Remarkably, Abhyanker appeared to be totally ignorant of L.R. 7-9, as earlier that day, he sent an email to counsel for the Magtein Parties claiming, incorrectly, that the Magtein Parties had filed their oppositions to Kappa's two motions to dismiss "one day after the deadline." Exhibit 6, at 1. This claim, of course, was entirely incorrect under L.R. 7-9. Abhyanker even admitted this fact, acknowledging in his purported summary of the parties' April 3 meet and confer that his opposition was filed "four days late" and, incredibly, pressuring Plaintiffs to stipulate to a *post hoc* extension of the deadline for Kappa's opposition so that it would be deemed timely. ECF 166-3 at 8 ("[S]o if I've missed that deadline, let's stipulate to allow me to file a couple days late").

Because of Abhyanker's late filing of Kappa's opposition to the Magtein Parties' Motion to Dismiss, the Magtein Parties had just three days to prepare a reply brief – rather than the seven they would have had if Abhyanker timely filed Kappa's opposition brief. As stated in *Moore v. LaHabra Relocations, Inc.*, 501 F.Supp. 2d 1278, 1279 (C.D. Cal. 2007), failure to comply with Local Rules "prejudices the opposing party by limiting preparation time for opposing papers."

### 2. Respondents Flout Rules by Filing Two Motions to Dismiss One Operative Pleading

On March 12, 2026, Kappa filed two separate motions to dismiss Plaintiffs' First Amended Complaint – one focused on Neurocentria (ECF 118), and the other focused on ThreoTech (ECF 119). As Plaintiffs pointed out in their oppositions to the motions, Kappa's filing of two motions forced Plaintiffs to respond to nearly 50 pages of arguments. While the Court struck the briefs for violating L.R. 11-6.1 and the Court's Initial Standing Order (ECF 16, at 6), the Court provided Defendant the opportunity "to file a single amended Motion to Dismiss." ECF 163. The Court should award Plaintiffs the entirety of their attorneys' fees for drafting oppositions to both motions, as those briefs are now moot, and Plaintiffs will now incur the expense of opposing a *third* motion

- 15 -

to dismiss the same complaint. This is especially true considering Respondents have gained a tactical advantage by being able to write the operative motion with the benefit of having read Plaintiffs' opposition arguments in advance.

Unperturbed by yet another procedural violation, Abhyanker responded on April 21, 2026 by filing a motion requesting the Court *double* the word limit for Kappa's one, consolidated motion. *See* ECF 168. Putting aside that filing one 14,000-word motion instead of two motions would defeat entirely the point of the Court's order, Abhyanker's ridiculous request[11] was notable for two other reasons. First, Abhyanker claimed counsel for the Magtein Parties would not meaningfully engage in a meet-and-confer with him on his request, but he entirely omitted the fact (including by omitting subsequent emails) that counsel for the Magtein Parties offered, in good faith gesture, to stipulate to Abhyanker receiving an additional 1,000 words for his motion.[12] *See* Gavenman Decl., **Exhibit 6**. In his declaration supporting his request for 14,000 words, Abhyanker references "[a] true and correct copy of the correspondence" he described in the declaration. *See* ECF 168-2. However, Abhyanker intentionally omitted Mr. Gavenman's email of April 18, 2026, offering an additional 1,000 words. *See* Gavenman Decl., **Exhibit 6**.

Second, and importantly, the filing of the request requires the Magtein Parties to once again expend time and incur attorneys' fees opposing something that should never have occurred, but for Respondents' refusal to follow basic rules and orders of the Court.

As a final point, Kappa has stated that "[i]f the motion for leave is not resolved before the April 24 deadline, Defendant will file its consolidated Motion to Dismiss

---

[11] In his motion requesting additional words, Abhyanker stated that his two stricken motions, combined, contained 12,012 words. ECF 168, at 9. Thus, it is entirely unclear why he needs **14,000** for one motion – especially considering, as he stated in the motion, he could "edit[] to eliminate duplicative legal standards and shared sections." *Id.*

[12] Thus, once again, forcing Plaintiffs to expend time and resources to correct the record.

- 16 -

within the existing word limits to comply with the Court's Order, and will supplement or amend if leave is subsequently granted." *See* Gavenman Decl., **Exhibit 7** at 15. Plaintiffs are currently preparing their opposition to Respondents' one, consolidated motion (ECF 169), but should the latter happen, Plaintiffs will be forced to draft a *fourth* opposition to a motion to dismiss a single complaint, further driving up Plaintiffs' litigation expenses.

### 3.   Respondents' Misrepresentations Related to L.R. 7-3

Not only did Kappa file two motions to dismiss one pleading, but it filed them without timely completing the meet and confer process mandated by L.R. 7-3. Pursuant to that rule, a party filing a motion "must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. *The conference must take place* in person, by telephone, or video conference *at least 7 days prior to the filing of the motion.*" L.R. 7-3 (emphasis added). Counsel for Kappa did not meet and confer with Plaintiffs' counsel regarding its planned motion(s)[13] on March 5, 2026, as required. Abhyanker claimed in each motion that he "attempted to initiate the meet-and-confer process on March 6, 2026" (ECF 118 at 23; ECF 119 at 27), and he claimed in his declarations in support of those motions (ECF 118-1 and 119-1, respectively[14]) that international travel prevented him from complying with his meet-and-confer obligations. Neither assertion is true.

First, it is true that Abhyanker stated he was traveling internationally between February 20, 2026 and March 5, 2026, but there is simply no evidence this travel prevented him from completing his meet-and-confer obligations. To the contrary, Abhyanker actively communicated with counsel for Plaintiffs on a variety of subjects.

---

[13] Notably, when Kappa did get around to its untimely telephonic meet-and-confer, it did not inform Plaintiffs of its intention to file two separate motions.

[14] Abhyanker filed the same declaration for both of his motions to dismiss.

- 17 -

Gavenman Decl., at ¶¶ 18-19. From February 26, 2026 (when Plaintiffs filed their first amended complaint) to March 5, 2026 (the deadline to meet and confer timely), Abhyanker sent approximately 25 emails to Plaintiffs' counsel about substantive issues. *See* Gavenman Decl., **Exhibit 8** at 4. Furthermore, during the time of Abhyanker's travel, he made several filings on behalf of Kappa, including its February 25, 2026 response (ECF 108) to the OSC; a joint notice of narrowed issues for claim construction (ECF 111) on February 27, 2026; and Kappa's Second Amended Counterclaims ("SACC"), filed on March 3, 2026 (ECF 112).

Second, Abhyanker's claim that he attempted to initiate the meet-and-confer process on March 6, 2026 is false (and, even if such were true and the parties had met and conferred on March 6, 2026, such meeting still would have been untimely pursuant to L.R. 7-3). Rather, Abhyanker called counsel for Plaintiffs three times within a matter of a few hours to discuss his proposed motion *to stay* the case – not his motion(s) to dismiss – as can be easily confirmed by both the voicemail left for Mr. Gavenman by Abhyanker on March 6 and by Abhyanker's March 6, 2026 emails. Gavenman Decl., at ¶¶ 21-22.[15]

### 4.    Service Issues

Another example of Respondents' procedural, factual, and candor failures is their failed attempts to serve third-party defendant AIDP. When Respondents first attempted to serve AIDP, after filing its SACC, it served the SACC with the summons for its original Counterclaims that was dated November 13, 2025. Such service is defective under Fed. R. Civ. P. 4(m), which states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court … must dismiss the action without prejudice against that defendant."

---

[15] Plaintiffs previously raised other issues with Kappa's compliance with L.R. 7-3 in their OSC Reply. *See* OSC Reply at 19-21.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

After Plaintiffs pointed this out in their motion to dismiss the SACC, Respondents requested a new summons. ECF 134. The clerk rejected that request (ECF 135), but after a follow-up request (ECF 136), the clerk issued a 21-day summons for AIDP. ECF 137. Respondents then tried and failed again to serve AIDP. On March 21, 2026, Respondents filed a Proof of Service in which its process server declared – under penalty of perjury – that on March 20, 2026, he served "EDWARD LEE, AGENT FOR SERVICE OF PROCESS." *See* ECF 140. But Mr. Lee had passed away **weeks earlier**. *See* Gavenman Decl., ¶ 43. The process server also declared he "served the party … by substituted service … by leaving the copies with or in the presence of: LEFT AT DOOR IN THE PRESENCE OF JANE DOE, PERSON IN CHARGE. Hispanic, Female … ." ECF 140. Thus, the affidavit was false on its face.

After Plaintiffs' counsel raised this false affidavit with Abhyanker, Respondents filed ***another*** purported Proof of Service on March 23, 2026. *See* ECF 141. This one changed the "Person Served" from the deceased Mr. Lee to Jennifer Gu, but it contained the same attestation from the process server that he served an unknown ("JANE DOE") Hispanic female (and Dr. Gu is not Hispanic). *Id.* Later that day, Respondents filed an "Affidavit of Due Diligence," in which the process server detailed three unsuccessful attempts to serve AIDP. ECF 142. However, those attempts (all in January of 2026, *see id.*) predated the filing of the SACC (ECF 112, March 3, 2026) and the issuance of the summons for the SACC.

Respondents claimed in their opposition to the Magtein Parties' motion to dismiss the SACC that this "service," followed by mailing documents, "complies with Federal Rule of Civil Procedure 4(h)(1)(A), which incorporates California law, including California Code of Civil Procedure §415.20(a)." ECF 155, p. 3. That section requires a party leave copies of the summons and complaint "in the person's office" (which Respondents' process server did not do), or leave it at a mailing address "with the person who is apparently in charge thereof … who shall be informed of the contents thereof."

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

Cal. Civ. Proc. Code §415.20(a). Respondents' process server "LEFT [the documents] AT THE DOOR IN THE PRESENCE OF" an unnamed Hispanic woman. ECF 141. The affidavit is false and defective, and it presents no reason to believe the unidentified Hispanic woman was "in charge" of the premises, was Dr. Gu, or that the process server informed her of the contents of what he left. And there has been no explanation for Respondents' process server initially attesting that he served the deceased Mr. Lee.

This service, therefore, was defective, and  Respondents admitted as much by attempting service yet again and, on April 17, 2026, filing another Affidavit of Service. ECF 167. Notably, while the "drop service" described in the Affidavit of Service arguably constituted service (AIDP does not intend to contest it), Respondents continued their entirely vexatious, bad faith litigation tactics. Along with the SACC, Respondents included in their service package a Notice of Deposition for AIDP's 30(b)(6) representative for May 4, 2026. However, pursuant to Fed. R. Civ. P. 26(d)(1), Kappa cannot seek discovery from AIDP until after it has engaged AIDP in a conference pursuant to Fed. R. Civ. P. 26(f). Indeed, that purported deposition date is two days before even AIDP's answer to the SACC would be due. To complete the vexatiousness of this deposition notice, it contained *one hundred and nineteen (119)* topics for the corporate representative, a severely overbroad and unduly burdensome set of requests that is not at all proportional to Kappa's needs in this case, made all the more problematic by the timing of the notice and the purported deposition date.

## D.      Kappa Forfeited Its Charter in 2022

As a related and final note, the Magtein Parties recently learned that Kappa forfeited its charter as a taxable entity on June 24, 2022. *See* **Exhibit 17** and **Exhibit 18** to the Gavenman Decl. This means that when Kappa filed its counterclaims in the instant action and brought the case in the Northern District of California, *it lacked any authority to do so*. With its corporate charter revoked, Kappa had no authority to bring that lawsuit or assert the affirmative claims in this action. *See, e.g.,* Tex. Tax Code § 171.252.

- 20 -

Furthermore, Respondents' representations in Kappa's pleadings that Kappa "***is*** a Texas limited liability company" (ECF 112, at ¶ 2; ECF 71-1, at ¶ 21 (emphasis added)) are demonstrably false.

This failure provides yet another example of Respondents' improper conduct, false statements, and generally problematic approach to this litigation.

### E.   Need for Sanctions

Respondents have complicated and bogged down this case with their procedural missteps and intentionally obstructive approach at every turn. Local Rules 83-7 and 83-8 exist specifically for these kinds of cases. In the OSC Reply and in the Sanctions Motion, Plaintiffs present the prominent examples of bad faith, vexatious conduct. With this Motion, Plaintiffs are formally requesting relief pursuant to L.R. 83-8 to arrest such behavior. In the OSC, this Court has already found that Respondents engaged in vexatious, harassing, and bad-faith conduct. Prior Courts in other cases have found that Abhyanker engages in bad faith litigation. *See* pp. 3-4, *supra*. Without Court intervention, "it is evident that Mr. Abhyanker knows no restraint. Given his litigious history, there is a realistic prospect that this proliferation will not stop on its own accord." *Nextdoor, Inc.*, 2021 WL 1263973, at *3. As such, amongst other relief, Plaintiffs respectfully request that this Court require Respondents to post a bond as security against the costs of defending against further vexatious litigation and forbid Respondents from filing offensive motions without leave of Court. Specifically, this Court should require Respondents to seek leave of Court prior to filing any offensive motions, so that Plaintiffs will not have to again expend resources on responding to any more frivolous motions.

Without such relief, Respondents' conduct will continue unabated, unreasonably burdening the Plaintiffs and the Court and preventing the efficient resolution of this case on the merits.

- 21 -

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant their Motion for Sanctions; (2) deem Respondents vexatious litigants pursuant to Local Rule 83-8; (3) order Respondents to pay the costs and fees incurred by Plaintiffs due to Respondents' vexatious behavior, including for responding to two motions to dismiss that have since been stricken; (4) require Respondents to post a bond in an amount the Court deems sufficient to act as security against the costs of defending against further vexatious litigation; (5) forbid Respondents from filing offensive motions without leave of Court; and (6) order such other and further relief as the Court deems just and proper.

Dated: April 28, 2026

HUGHES HUBBARD & REED, LLP

By:    /s/ Jeffrey Gavenman
Attorneys for Plaintiffs
Neurocentria, Inc. and ThreoTech LLC, and
Third-Party Defendant AIDP, Inc.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,978 words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order (ECF No. 16).

Dated: April 28, 2026

By:    /s/ Jeffrey Gavenman
Counsel for Plaintiffs
Neurocentria, Inc. and ThreoTech LLC, and
Third-Party Defendant AIDP, Inc.

- 22 -

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS

# CERTIFICATE OF SERVICE

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626.  On April 28, 2026, I served the following document(s):

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO LOCAL RULES 83-7 AND 83-8, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWER, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on the parties stated on attached service list

| | |
|---|---|
| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

☒ **BY COURT'S CM/ECF SYSTEM.**  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.

**BY E-MAIL.**  By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

**(STATE)**     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2026, at Costa Mesa, California.

/s/ SALVATORE PICARIELLO
Salvatore Picariello

- 1 -

CERTIFICATE OF SERVICE