Sang Dang, Esq. (SBN 214558)
 sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
 spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John W. Cox
 (Admitted *Pro Hac Vice*)
 John.Cox@btlaw.com
Lauren U. Baker
 (Admitted *Pro Hac Vice*)
 Lauren.Baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile: 404-264-4033

Jeffrey Gavenman
 (Admitted *Pro Hac Vice*)
 jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
 (Admitted *Pro Hac Vice*)
 jeremy.schulman@hugheshubbard.com
James Schaller
 (Admitted *Pro Hac Vice*)
 jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I STREET, N.W., 6th Floor
Washington, D.C. 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and THREOTECH LLC and Third-Party Defendant, AIDP, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>    v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION,<br><br>    Defendant/Counterclaim Plaintiff,<br><br>    v.<br><br>AIDP, INC.,<br><br>    Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**DECLARATION OF JEFFREY GAVENMAN IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO LOCAL RULES 83-7 AND 83-8, U.S.C. § 1927, AND THE COURT'S INHERENT POWER**<br><br>Hearing:    June 5, 2026<br>Time:      1:30 p.m.<br>Courtroom: 6B, 6th Floor<br>Judge:     Hon. Fernando L. Aenlle-Rocha |

DECLARATION OF JEFFREY GAVENMAN I/S/O MOTION FOR SANCTIONS

**DECLARATION OF JEFFREY GAVENMAN**

I, JEFFREY GAVENMAN, declare as follows:

1.      I am an attorney appearing *pro hac vice* in this case with Sang Dang as local counsel. *See* ECF No. 50. I am a Partner in the law firm of Hughes Hubbard & Reed, LLP, and counsel of record for Plaintiffs NEUROCENTRIA, INC. and THREOTECH LLC ("Plaintiffs") and third-party defendant AIDP, INC. ("AIDP" and, collectively with Plaintiffs, "Magtein Parties") in the above-captioned matter.

2.      I make this Declaration in support of Plaintiffs' Motion for Sanctions Pursuant to Local Rules 83-7 and 83-8, 28 U.S.C. § 1927, and the Court's Inherent Power ("Motion"). I have personal knowledge of the facts stated herein and if called as a witness, will be able to testify competently to such facts, except as to those alleged on information and belief, and to those facts, I believe them to be true.

3.      Counsel for Plaintiffs engaged in two meet-and-confer conferences with Mr. Raj Abhyanker, counsel for Mando International, LLC d/b/a Kappa Nutrition ("Kappa") regarding this Motion and also exchanged numerous emails relating to the issues addressed in the Motion.

4.      The first meet-and-confer was held on February 17, 2026. The conference was in person in California following a deposition and included Mr. Abhyanker, myself, and John Cox, another attorney for Plaintiffs. That meet-and-confer will be detailed herein.

5.      The second meet-and-confer was held via video conference on April 3, 2026, and it involved Mr. Abhyanker, Mr. Cox, and two other attorneys for Plaintiffs – Lauren Baker and Anna Kornilova. That meet-and-confer is detailed in the contemporaneously filed Declaration of John Cox.

6.      On February 17, 2026, I sent Mr. Raj Abhyanker an email requesting a meet-and-confer regarding the proposed Motion. A true and correct copy of the February 17, 2026 email is attached hereto as **Exhibit 24**.

DECLARATION OF JEFFREY GAVENMAN I/S/O REPLY I/S/O MOTION FOR SANCTIONS

7.    The February 17, 2026 conference took place later that same day, following Kappa's deposition of Dr. Guosong Liu. Notably, at the start of the meeting, Mr. Abhyanker insisted upon recording the conversation. I made clear that would be improper and stated that Mr. Abhyanker did not have my consent to record the meeting. Eventually, after raising his voice and arguing, Mr. Abhyanker represented that he had turned off the recording.

8.    We attempted to discuss a number of topics that Plaintiffs had planned to bring in a motion for sanctions, as set forth in **Exhibit 24**. However, Abhyanker was dismissive about all of our concerns. Mr. Abhyanker stood behind removing his non-patent claims to the Northern District of California and his later withdrawn Rule 11 motion, simply maintaining that neither was sanctionable.  Similarly, with respect to the anti-SLAPP allegations, I reiterated to Mr. Abhyanker that Plaintiffs ***had not*** included AIDP and Magceutics in their proposed First Amended Complaint as defendants and that, moreover, such would be ridiculous because they were affiliates of Plaintiffs. Mr. Abhyanker, however, refused to back off the claim and, incredibly, doubled down, maintaining it was a "good argument," made in good faith. As I pressed Mr. Abhyanker to explain how that could be a good argument, made in good faith, when Plaintiffs had not, in fact, included AIDP and Magceutics as defendants, Mr. Abhyanker cursed at me (as he acknowledged, in an otherwise extraordinarily inaccurate purported "summary" of the meeting (**Exhibit 24** at 1-3). I believe his exact words were "bring whatever the f**k motion you want to bring." **Exhibit 24** at 1. It was not until the Court's OSC that Mr. Abhyanker reversed his position.

9.    Before Plaintiffs brought that motion, however, the Court recognized several of those problems, and issued the Court's Order that Kappa and Mr. Abhyanker Show Cause ("OSC") as to "why they should not be sanctioned under Fed. R. Civ. P. 11(c) and the court's inherent powers for engaging in improper, harassing, and bad faith

2

conduct that has caused unnecessary delay and increased the cost of litigation needlessly." ECF 107 at 3-4.

10.    I have brought up Kappa's late and deficient responses to our discovery and bad-faith change in position on confidentiality; Mr. Abhyanker has disagreed that either issue was sanctionable or taken in bad faith.

11.    Attached hereto as **Exhibit 1** is a true and correct copy of the email sent by Mr. Abhyanker to Plaintiffs' counsel at 6:39 p.m. PDT on March 30, 2026.

12.    Attached hereto as **Exhibit 2** is a true and correct copy of the email exchange between Mr. Abhyanker and Jesmin Haq of the University of Cambridge that Mr. Abhyanker attached to his email described in Paragraph 11 above.

13.    Attached hereto as **Exhibit 3** is a true and correct copy of the Litigation Hold and Preservation Demand Letter that Mr. Abhyanker emailed to counsel for Plaintiffs on March 31, 2026.

14.    Attached hereto as **Exhibit 4** is a true and correct copy of a Notice of Deposition for AIDP that Mr. Abhyanker emailed to counsel for Plaintiffs on March 31, 2026.

15.    Attached hereto as **Exhibit 5** is a true and correct copy of the email Mr. Abhyanker sent to me at 9:12 p.m. PDT on March 31, 2026.

16.    Attached hereto as **Exhibit 6** is a true and correct copy of my email to Mr. Abhyanker on April 18, 2026, in which I offered to stipulate to a request that Kappa be permitted 1,000 extra words for its motion to dismiss.

17.    Attached hereto as **Exhibit 7** is a true and correct copy of an email chain between, among others, myself and Mr. Abhyanker from April 16-18, 2026.

18.    Mr. Abhyanker stated that he was traveling internationally between February 20, 2026 and March 5, 2026. During this time, he actively communicated with Plaintiffs' counsel on a variety of subjects.

3

DECLARATION OF JEFFREY GAVENMAN I/S/O MOTION FOR SANCTIONS

19.    In particular, from February 26, 2026 through March 5, 2026, I received more than 25 emails from Mr. Abhyanker on substantive issues.

20.    Attached hereto as **Exhibit 8** is a true and correct copy of an email I sent to Mr. Abhyanker on March 8, 2026.

21.    Mr. Abhyanker's assertion that he attempted to initiate the meet-and-confer process for his motion(s) to dismiss Plaintiffs' First Amended Complaint on March 6, 2026 is not true. As can be seen from a true and correct copy of an email chain attached hereto as **Exhibit 19** at 1 (Email from R. Abhyanker to J. Gavenman, et al. dated March 6, 2026 at 7:26 p.m.), Mr. Abhyanker called me three times within a matter of a few hours about his proposed motion to stay – not the motion to dismiss. In fact, Mr. Abhyanker left a voicemail on my phone on March 6, 2026, which I retained and can submit to the Court, stating as much.  His voicemail states:

> Hi, um, Jeff, this is Raj Abhyanker.  We are going to file a motion to stay and would like to meet and confer, um, about that and, um, sent you an email to see if you'd be willing to stay, um, so call me back, um, this is my second attempt at calling you. Thank you, bye.

Notably, his "second attempt" was to call a mere 25 minutes after he initially called me, when I was unable to answer.

22.    In a March 8, 2026 email, I reminded Mr. Abhyanker that his meet and confer attempts on March 6, 2026 were not about the motion to dismiss. *See* **Exhibit 8** at 4.

4

DECLARATION OF JEFFREY GAVENMAN I/S/O MOTION FOR SANCTIONS

23. Attached hereto as **Exhibit 9**, **Exhibit 10**,[1] and **Exhibit 11** are true and correct copies of Kappa's Responses to Plaintiffs' Interrogatories, Requests for Production of Documents, and Requests for Admission, respectively (collectively, "Kappa's Responses").

24. In each of Kappa's Responses, Kappa lodged an objection based upon confidentiality in response to virtually every interrogatory, request for production, or request for admission. *See e.g.* **Exhibit 9** at 7-8, 12-25; **Exhibit 10** at 3, 7-63; **Exhibit 11** at 8, 10-22.

25. Remarkably, however, when Plaintiffs began trying to negotiate the terms of a protective order with Kappa, Abhyanker suddenly took the position that ***no protective order was necessary*** because Kappa had not been asked to produce any confidential documents. *See* **Exhibit 12** at 2 (Abhyanker stating on January 26, 2026, that Kappa is "not aware of any materials it has been asked to produce that require confidential or highly confidential treatment"); *see also id.* at 5 (Abhyanker stating, on January 22, 2026: "There are no present issues for which discovery is open and served in which our client believes it has trade secret or confidential information that requires a protective order of any sort"). When Plaintiffs attempted to clarify the glaring incongruity between that position and the discovery responses, Abhyanker – incredibly – continued to resist the entry of a protective order and asked Plaintiffs to direct him to the specific objections in question so he could evaluate them further, apparently unfamiliar with his own, ubiquitous, objection. *See* **Exhibit 12** at 1.

---

[1] Although the caption of the responses in **Exhibit 10** states that the responses are to Interrogatories, such response are in fact responses to Requests for Production of Documents.

DECLARATION OF JEFFREY GAVENMAN I/S/O MOTION FOR SANCTIONS

26.    It took an excessive number of back-and-forth emails, multiple meet-and-confers, and several threats of motion practice for Respondents to relent and agree to the simple step of entering a protective order, which, again, Respondents themselves had insisted upon in Kappa's discovery responses. *See e.g.* **Exhibit 25**, which is a true and correct copy of a compilation of emails concerning the protective order negotiations. Given Abhyanker's proclivity for deleting emails in the email chain, no one email chain accurately reflects the full scope of the communications between the parties.

27.    On March 9, 2026, I emailed to Mr. Abhyanker a letter (dated March 8, 2026) pursuant to Local Rule 37-1, outlining the wholly deficient responses to both Plaintiffs' discovery requests as well as Kappa's failure to produce certain necessary documents in connection with this Court's Patent Standing Order ("L.R. 37-1 Letter"). A true and correct copy of L.R. 37-1 Letter is attached hereto as **Exhibit 13**.

28.    On March 16, 2026, the parties met and conferred regarding the L.R. 37-1 Letter, and Mr. Abhyanker committed that Kappa would produce all responsive documents by May 1, 2026.

29.    On April 16, 2026, however, Mr. Abhyanker wrote counsel for Plaintiffs to state that a full production was not, in fact, forthcoming on May 1, 2026. A true and correct copy of that April 16, 2026 email is attached hereto as **Exhibit 14**.

30.    Incredibly, Mr. Abhyanker attempted to equate the parties' relative positions in discovery, using Kappa's discovery requests to Plaintiffs, responses to which Plaintiffs had just served on Kappa the night before, to suggest engaging in "working session[s] … to go through all outstanding written discovery obligations on both sides, establish a realistic production schedule, and resolve outstanding objections collaboratively." **Exhibit 14**, at 1.

31.    Kappa propounded on both Plaintiffs a single set of Requests for Production of Documents ("Kappa's First RPDs"), a single set of 25 Interrogatories ("Kappa's First

6

---

DECLARATION OF JEFFREY GAVENMAN I/S/O MOTION FOR SANCTIONS

ROGs"), and a single set of Requests for Admission ("Kappa's RFAs") (collectively, "Jurisdictional Discovery").

32. Notably, Instruction No. 1 in Kappa's ROGs, Kappa's RPDs, and Kappa's RFAs expressly limited each request of "personal jurisdiction, venue, and service of process."

33. At the time, Kappa had been insisting that this Court lacked personal jurisdiction over Kappa and that Plaintiffs' claims needed to be litigated in the Northern District of Texas.

34. On November 11, 2025, however, five days after serving its Jurisdictional Discovery, Kappa withdrew its objections to jurisdiction, submitted to the jurisdiction of the Court (ECF 54), and, the following day, filed its answer and original counterclaims against Plaintiffs and certain third parties (ECF 55).

35. Despite having withdrawn all objections to jurisdiction, Kappa insisted on Plaintiffs responding to its Jurisdictional Discovery. Kappa did this despite my advising Mr. Abhyanker that we were moving to amend our complaint, that the motion likely would be granted, and that Kappa would want additional discovery requests, particularly, interrogatories, if that happened.

36. I wrote an email to Mr. Abhyanker on November 11, 2025 in which I told him that he might want to consider serving new discovery (as the scope of the case was likely to change) and that if he chose to go forward with his current interrogatories (i.e. Kappa's First ROGs), we would object to further attempts to propound interrogatories regarding our amended complaint. A true and correct copy of that email is attached hereto as **Exhibit 15**.

37. Kappa, however, refused this accommodation. Rather, Mr. Abhyanker insisted that Plaintiffs' "discovery responses remain due," and that Kappa "expect[ed]

7

and demand[ed] timely responses" to its discovery. *See* Discovery Email Chain, a true and correct copy of which is attached hereto as **Exhibit 16**.[2]

38.     Because of this stance, Plaintiffs served their fulsome objections to Kappa's Jurisdictional Discovery on December 8, 2025, specifically noting, among other objections that, the Jurisdictional Discovery requests were not proportional to the needs of the case, given that the jurisdictional issues were no longer relevant.

39.     Kappa did not make any comment – written, via phone, or in person – about Plaintiffs' responses and objections for more than three months. It was not until a March 16, 2026 meet-and-confer that Kappa brought up Plaintiffs' responses. During that same conference, Mr. Abhyanker expressed surprise when he noticed that the requests he had issued were limited to jurisdictional discovery.

40.     Promptly after that conference, Kappa purportedly "withdrew" its First ROGs and First RPDs and issued new discovery. Despite having propounded its full allotment of 25 interrogatories on both Plaintiffs via the First ROGs, Kappa improperly issued two new sets of interrogatories – one per each Plaintiff. Kappa issued ThreoTech an entirely new set of interrogatories. As to Neurocentria, Kappa issued "narrowed" interrogatories. A true and correct copy of these "narrowed" interrogatories issued by Kappa on March 16, 2026 is attached hereto as **Exhibit 20**. As can be seen from **Exhibit 20** at 2, 11-15,  Kappa had simply redlined Kappa's First ROGs issued to the Plaintiffs to purportedly "narrow" their scope, wholly replacing certain interrogatories with

---

[2] Note, Exhibit 16 is partially redacted in light of Kappa's position regarding mediation privilege. While Plaintiffs disagree with that position, for the reasons set forth in previous briefing, the redacted portions are not germane to this Motion, and thus Plaintiffs redact to avoid another ancillary, sideshow issue.

DECLARATION OF JEFFREY GAVENMAN I/S/O MOTION FOR SANCTIONS

entirely new ones, after forcing Plaintiffs to respond to such moot discovery months earlier.

41.    With respect to the RPDs, for the second set of RPDs, Kappa issued separate sets of RPDs to Neurocentria and ThreoTech. A true and correct copy of a second set of RPDs to Neurocentria is attached hereto as **Exhibit 21**. The second set of RPDs to ThreoTech is attached hereto as **Exhibit 22**. Notably, in these second RPDs, Kappa affirmatively withdrew the previous requests it had issued to the Plaintiffs. *See* **Exhibits 21** and **22** at 18. Plaintiffs responded timely to that discovery on April 15, 2026.

42.    Kappa has not served a deficiency letter pursuant to Local Rule 37-1.

43.    Kappa filed a Proof of Service on March 21, 2026, in which its process server claimed he had served Edward Lee on March 20, 2026. But such was not possible, as Mr. Lee had passed away weeks earlier.

44.    Attached hereto as **Exhibit 17** is a true and correct copy of a notice that Kappa had forfeited its title.

45.    Attached hereto as **Exhibit 18** is a true and correct copy of the result of a search that indicates Kappa's entity status was: "Forfeited Existence."

46.    Attached hereto as **Exhibit 23** is a true and correct copy of Kappa's Rule 11 "notice" regarding Kappa's anti-SLAPP allegations.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 28, 2026, in Washington, D.C.

Jeffrey Gavenman

9

DECLARATION OF JEFFREY GAVENMAN I/S/O MOTION FOR SANCTIONS

# CERTIFICATE OF SERVICE

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626.  On April 28, 2026, I served the following document(s):

**DECLARATION OF JEFFREY GAVENMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO LOCAL RULES 83-7 AND 83-8, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWER.**

on the parties stated on attached service list

| | |
|---|---|
| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

☒   **BY COURT'S CM/ECF SYSTEM.**  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.

**BY E-MAIL.**  By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

**(STATE)**   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒   **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2026, at Costa Mesa, California.

/s/ SALVATORE PICARIELLO
Salvatore Picariello

CERTIFICATE OF SERVICE

- 1 -