# **EXHIBIT 4**

Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:  (650) 965-8731
Facsimile:   (650) 989-2131

Attorney for Defendant,
Mando International, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEUROCENTRIA, INC., a California corporation, THREOTECH LLC, a Nevada limited liability company, | Case No. 2:25-cv-05871-FLA-MAR |
| Plaintiffs, | **NOTICE OF DEPOSITION OF 30(B)(6) WITNESS OF AIDP, INC.** |
| V. | |
| MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS, a Texas limited liability company | Hon. Fernando L. Aenlle-Rocha |
| Defendant and Counterclaimant NEUROCENTRIA, INC., a California corporation, THREOTECH LLC, a Nevada limited liability company, and AIDP, INC., a California corporation. | |
| Counter-Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT pursuant to Fed. R. Civ. P. 30(b), defendant Mando International, LLC will take the oral deposition of 30(b)(6) witness of Counter-Defendant, AIDP, Inc for topics identified below ("Counter-Defendant", "Deponent", "You", "Your"), in the above-entitled action before a court reporter authorized to administer oaths in federal court. The date, time and location of the deposition are set forth below:

Date:            Tuesday April 14, 2026

Time:            9:00 AM, Pacific Standard Time

Location:        PatentVC | Trademarkia

                 3000 Sand Hill Blvd 3-245, Mountain View California 94040

The deposition will not exceed seven hours of total testimony and may continue day to day, excluding Saturdays, Sundays and holidays, until up to seven hours of total testimony have been given.

YOU ARE FURTHER NOTIFIED that the deposition proceedings will be stenographically recorded, and video recorded by a court certified court reporter or by counsel.

Dated: March 31, 2026                LEGALFORCE RAPC WORLDWIDE P.C.

                                     _____/s/ Raj Abhyanker_____

                                     Raj Abhyanker

                                     Attorney for Defendant:

                                     Mando International, LLC

## DEFINITIONS

The following terms, as used herein, shall have the following meanings:

1. **"You," or "Your" or "Counter-Defendant"** means you, AIDP, Inc. or any 30(b)(6) witness for AIDP, Inc. on topics defined here, believed to be Mark Thurston.

2. **"Counter-Defendants"** means AIDP, Inc., Neurocentria, Inc. and ThreoTech LLC, individually and collectively.

3. **"Plaintiffs"** means Neurocentria, Inc. and ThreoTech LLC, individually and collectively.

4. **"Defendant"** means Mando International LLC d/b/a Kappa Nutrition, including its officers, directors, employees, agents, representatives, and counsel.

5. **"Agreement"** means the Trademark License Agreement executed on or about August 29, 2022, between AIDP, Inc. (and its affiliates) and Defendant, as well as any amendments, assignments, renewals, terminations, extensions, or modifications thereto — including any document Plaintiffs allege assigned rights to ThreoTech LLC.

6. **"Amendment" or "MCA Amendment"** means the October 24, 2024 Amendment to the Master Collaboration Agreement (MCA) referenced in Plaintiffs' Opposition to Defendant's Motion to Dismiss, and any related agreements or correspondence concerning the transfer of rights from Neurocentria or its affiliates to ThreoTech.

7. **The term "Person"** means any natural individual human being, living or deceased, and includes all current and former employees, agents, representatives,

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

officers, directors, partners, members, attorneys, or other individuals acting or purporting to act on behalf of that individual.

8. **"Patents-in-Suit" or "Magtein Patents"** means U.S. Patent Nos. 8,637,061; 8,142,803; 8,178,132; 8,178,118; and 8,163,301, together with all related patent applications, continuations, divisionals, reissues, reexaminations, foreign counterparts, and any documents referring to those patents.

9. **"Asserted Claims"** means any patent claim or claims Plaintiffs contend are infringed by Defendant, whether identified in the Complaint, Plaintiffs' Infringement Contentions, or any supplemental disclosure.

10. **"Accused Product(s)"** means any product Plaintiffs allege infringes one or more of the Patents-in-Suit, including but not limited to Defendant's "Magnesium L-Threonate 3-in-1 Advanced Complex" and any other dietary supplement or formulation containing Magnesium L-Threonate or related compounds.

11. **"Magtein"** refers to the branded ingredient Magtein®, comprising Magnesium L-Threonate, as alleged in the Complaint, including any formulations, compositions, or uses described by Plaintiffs as proprietary or patented.

12. **"Magbrain Marks"** means any trademarks or applications filed by Defendant that Plaintiffs allege infringe their intellectual property rights, including but not limited to the four USPTO applications for "Magbrain" mentioned in the Complaint and Infringement Disclosures.

13. **"Notice(s) of Infringement"** means all communications, written or oral, by which Plaintiffs (or their agents) purportedly notified Defendant of alleged infringement, including the November 4, 2024 and January 10, 2025 letters referenced in the pleadings.

4

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

14. **"USPTO"** means the United States Patent and Trademark Office, including any examiner, agent, or representative thereof.

15. **"Litigation"** means this action pending in the U.S. District Court for the Central District of California, Case No. 2:25-cv-05871-FLA-MAR, and includes all pleadings, motions, disclosures, and discovery responses exchanged therein.

16. **"Time Period"** unless otherwise specified, means January 1, 2019, to the present, which encompasses the negotiation, execution, performance, and alleged breach of the 2022 License Agreement and all alleged acts of infringement.

17. **"2022 Agreement" or "Trademark License Agreement"** means the August 29, 2022 Trademark License Agreement between Defendant Mando International, LLC d/b/a Kappa Nutrition and AIDP, Inc., as later referenced in the Complaint and all related pleadings. This term includes all attachments, schedules, exhibits, amendments, and assignments related thereto, including any communications concerning its termination or interpretation.

18. **"Forum-Selection Clause"** means the clause contained in Paragraph 15 of the 2022 Agreement providing for "exclusive jurisdiction and venue for any legal proceedings related to this Agreement... in the Superior Court for Los Angeles County, California or in the United States Federal Court for the State of California." This clause and its applicability to the present claims are specifically referenced in Plaintiffs' Opposition and Defendant's Reply.

19. **"Method Claims"** means any claims within the Patents-in-Suit directed to the administration or method of use of Magnesium L-Threonate or compositions containing the same, including but not limited to Claim 14 of the '061 Patent and Claim 17 of the '132 Patent, as described in Defendant's Reply.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

20. **"Personal Jurisdiction Allegations"** means all allegations, statements, or evidence offered by Plaintiffs purporting to establish this Court's personal jurisdiction over Defendant, including references to Amazon sales, website activity, or prior licensing relationships with entities based in California.

21. **"Laboratory Reports" or "Lab Test Results"** means any scientific testing, chemical analysis, or laboratory documentation Plaintiffs rely upon to demonstrate that Defendant's products allegedly contain Magnesium L-Threonate or otherwise infringe the Magtein patents. This term includes the reports mentioned in Plaintiffs' Opposition and criticized as unreliable or inconclusive in Defendant's Reply.

22. **"GRAS Notice"** means GRAS Notice No. 499 submitted to the U.S. Food and Drug Administration on behalf of Magceutics, Inc. (now Neurocentria, Inc.) by Dr. Guosong Liu, including all attachments, supporting data, expert panel statements, and any related correspondence with the FDA.

23. **"Certificates of Analysis" or "COAs"** means any certificates of analysis, batch records, quality control documentation, or product specification sheets associated with Magtein® products or Magnesium L-Threonate hydrate, including those identifying country of origin, manufacturing date, expiration date, and analytical test results.

24. **"Country of Origin"** means the geographic location where the primary active ingredient in Magtein® products—Magnesium L-Threonate hydrate—is manufactured, synthesized, or produced, as distinguished from the location where final encapsulation, bottling, or packaging occurs.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

25. **"Label Change"** means any modification, alteration, or removal of country-of-origin designations, "Manufactured in the USA" claims, GRAS compliance representations, or any other product labeling on Magtein® products occurring at any time, including but not limited to the removal of the "Manufactured in the USA" designation discovered between August 2025 and March 2026.

26. **The term "Document"** shall mean and include any items described in Federal Rule of Civil Procedure 34(a) and any "writings" within the meaning of Federal Rule of Evidence 1001, and all preliminary and final drafts of any such items.

27. **The term "Communication"** means any transmission or exchange of information, data, opinions, or thoughts, whether in writing, orally, or otherwise, including but not limited to statements, reports, notes, inquiries, dialogues, discussions, conversations, interviews, meetings, correspondence, mailings, letters, consultations, negotiations, agreements, understandings, telegrams, facsimiles, advertisements, computer mail, e-mail, and all other documents memorializing or embodying any verbal or non-verbal interaction between persons.

28. **The term "Media Files"** means any photograph, audio file, video file, transcript, or presentation.

29. **The terms "relate to," "relates to," "related to," "relating to," "refer to," "referring to," "reflecting" and "regarding"** mean constitute, include, comprise, consist of, refer, reflect, discuss, show, state, explain, contradict,

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

provide context to, evidence, concern, demonstrate, or be in any way logically or factually connected with the matter discussed or identified.

30. **The terms "or" and "and"** shall be construed in the conjunctive and in the disjunctive when they appear, and neither of these words shall be interpreted to limit the scope of these requests.

31. **The terms "any" or "each"** shall be construed to include and encompass "all."

32. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

33. The singular form of any word shall be construed to include the plural. The plural form of any word shall be construed to include the singular.

34. The term "all" means any and all.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

## <u>TOPICS OF DEPOSITION</u>

Topics asked in this deposition will include, but shall not be limited to:

**1.Succession and Governance Following the Death of Edward Lee**

**1.** The date, circumstances, and manner of notification to AIDP, Inc. of Edward Lee's death.

**2.** Edward Lee's roles, titles, and authority at AIDP, Inc. immediately prior to his death, including whether he served as CEO, founder, controlling principal, sole decision-maker, or in any other executive capacity.

**3.** The identification of all persons who have assumed Edward Lee's roles, responsibilities, or authority at AIDP, Inc. following his death.

**4.** The date(s) on which any interim or permanent management appointments were made, and the corporate authority under which such appointments were made (e.g., operating agreement provisions, board vote, shareholder or member consent, bylaws, or otherwise).

**5.** Any amendments to AIDP's articles of incorporation, operating agreement, bylaws, or governance documents following Edward Lee's death.

**6.** The ownership structure of AIDP, Inc. immediately before and immediately after Edward Lee's death, including whether any ownership interests, membership interests, or shares were transferred, assigned, inherited, or otherwise redistributed.

**7.** Any probate proceedings, estate administration, or trust instruments affecting ownership or control of AIDP, Inc., its assets, or its intellectual property.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

8.  Whether Edward Lee held any personal ownership interest in the Magtein® trademark, the Magtein Patents, or any related intellectual property, and if so, the current disposition of those interests.

## 2. Litigation Control and Decision-Making Following Edward Lee's Death

9.  The individual(s) currently authorized to make litigation decisions on behalf of AIDP, Inc. in this action, including decisions regarding settlement, dismissal, amendment of pleadings, discovery strategy, and continuation of claims.

10. The process by which litigation authority was transferred or confirmed after Edward Lee's death, including any written authorization, board resolution, or member consent.

11. Any internal deliberations regarding dismissal, settlement, amendment, or continuation of claims in this action following Edward Lee's death.

12. Whether any attorney—including counsel of record—has received new written authorization from a duly authorized representative of AIDP, Inc. to continue prosecuting or defending claims in this litigation following Edward Lee's death.

13. Any material operational changes at AIDP, Inc. resulting from Edward Lee's death, including changes in budgeting, revenue projections, damages calculations, or enforcement activities related to Magtein®.

## 3. Preservation of Edward Lee's Records and Knowledge

14. Steps taken to preserve Edward Lee's files, communications, electronic devices (including phones, laptops, tablets, and cloud accounts), and business records following his death.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

15. Identification of all custodians who have assumed responsibility for Edward Lee's documents and electronic data.

16. Any deletion, loss, inaccessibility, or disposal of documents or data previously in Edward Lee's possession, custody, or control since the commencement of this litigation.

17. Whether AIDP's litigation hold was updated or reissued following Edward Lee's death, and if so, the scope and recipients of the updated hold.

18. Whether any of Edward Lee's personal devices, email accounts, or cloud storage accounts have been accessed, preserved, or imaged in connection with this litigation.

4. **Ownership, Assignment, and Standing to Assert the TMLA**

19. The factual basis for AIDP's authority to execute the Trademark License Agreement on August 29, 2022, including whether AIDP held any recorded ownership interest in the Magtein® marks at that time and whether AIDP received written authorization from Neurocentria or any other entity to license them.

20. The complete chain of title for the Magtein® trademark from Neurocentria (formerly Magceutics, Inc.) through any intermediary to AIDP and then to ThreoTech.

21. All documents evidencing the alleged assignment of the TMLA from AIDP to ThreoTech, including the date of assignment, the assignment instrument, whether Defendant's consent was obtained, and the contractual basis for substituting a new licensor.

22. Whether the TMLA contained an assignment clause permitting AIDP to assign its rights and obligations without the consent of the other party.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

23. Any communications between AIDP, Neurocentria, and/or ThreoTech regarding the assignment of the TMLA, including internal deliberations about the legal effect of any such assignment.

24. The factual basis for AIDP's representations in prior litigation and in this action concerning its ownership, control, or authority over the Magtein® trademark and the Patents-in-Suit.

**5. Patent Ownership, Chain of Title, and Standing**

25. The complete chain of title for each of the five Patents-in-Suit, from the original inventors through any assignment to Neurocentria, AIDP, ThreoTech, or any other entity.

26. The 2024 MCA Amendment and its effect, if any, on patent ownership, licensing rights, or enforcement authority as between Neurocentria, ThreoTech, and AIDP.

27. Whether AIDP at any time held any ownership interest, exclusive license, or enforcement rights in any of the Patents-in-Suit, and if so, the nature and duration of those rights.

28. How the FAC's allegation that "ThreoTech holds by assignment all rights, title, and interest" in the patents can be reconciled with the simultaneous allegation that "Neurocentria owns" those same patents.

29. Any communications, agreements, or internal deliberations concerning which entity—Neurocentria, ThreoTech, or AIDP—has the right to assert infringement claims.

**6. Corporate Structure and Relationships**

12

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

30. The relationship between AIDP, Inc., Neurocentria, Inc., and ThreoTech LLC, including any common ownership, shared officers or directors, shared office space, shared employees, or overlapping management.

31. Corporate history and organizational structure of each entity, including dates of formation, states of incorporation, and principal places of business.

32. Mr. Thurston's role, title, and responsibilities at AIDP, Inc., and his involvement in the business development and distribution strategy for Magtein®.

33. Whether AIDP, Neurocentria, and ThreoTech operate as independent entities with separate management, finances, and decision-making, or whether they share control in a manner suggesting unified operation.

7. **Country of Origin, Sourcing, and Supply Chain**

34. The identity and location of all manufacturers, synthesizers, or producers of Magnesium L-Threonate hydrate supplied to AIDP for use in Magtein® products, including any manufacturers located in the People's Republic of China.

35. The identity and location of all entities involved in the encapsulation, bottling, packaging, and labeling of Magtein® products sold in the United States.

36. Whether AIDP has at any time sourced Magnesium L-Threonate hydrate from manufacturers or suppliers located in China, and if so, the identity of such manufacturers or suppliers, the dates and quantities of such purchases, and any related purchase orders, invoices, or contracts.

37. All Certificates of Analysis (COAs) associated with Magtein® products or Magnesium L-Threonate hydrate, including those identifying the country of origin as China.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

38. The complete supply chain for Magnesium L-Threonate hydrate from point of synthesis to final consumer product, including all intermediaries, brokers, freight forwarders, importers, and distributors.

39. Whether any shipments of Magnesium L-Threonate hydrate were routed through third countries—including but not limited to Jordan and Hong Kong S.A.R.—before entry into the United States, and the reasons for any such routing.

40. AIDP's knowledge of and involvement in any importation of Magnesium L-Threonate hydrate into the United States, including all customs declarations, Harmonized Tariff Schedule classifications, and country-of-origin declarations.

41. Any communications regarding the routing of Magnesium L-Threonate shipments through third countries, including any discussions of tariff treatment, duty rates, or JOFTA eligibility.

### 8. "Manufactured in the USA" Representations and Label Changes

42. The basis for any representation that Magtein® products are "Manufactured in the USA," including any FTC Made in USA analysis under 16 C.F.R. Part 323.

43. All versions of Magtein® product labels that have contained any "Manufactured in the USA," "Made in USA," or similar country-of-origin designation.

44. The decision to remove or modify the "Manufactured in the USA" designation, including the date the decision was made, the persons who authorized it, and the stated reason.

45. The exact date on which the revised packaging was first produced, shipped, distributed, or offered for sale in commerce.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

46. Whether any notice was provided to consumers, retailers, distributors, Amazon.com, any regulatory body, or the Court regarding the removal of the "Manufactured in the USA" designation.

47. All internal and external communications discussing, authorizing, directing, or relating to the label change.

48. All inventory records reflecting quantities of Magtein® products bearing the old label versus the revised label.

49. Whether the label change was made in response to this litigation, and specifically in response to Defendant's counterclaims.

**9. GRAS Notice No. 499 and FDA Regulatory Compliance**

50. AIDP's knowledge of and involvement in the submission of GRAS Notice No. 499 to the FDA.

51. The specific formulation, manufacturing practices, product specifications, and conditions described in GRAS Notice No. 499.

52. Whether Magtein® products sold in commerce conformed to the formulation, composition, concentration, and manufacturing origin described in the GRAS submission, and if not, the nature and extent of any deviations.

53. Whether any Magtein® products were manufactured using ingredients sourced from a different country of origin than described or assumed in the GRAS Notice.

54. Any communications with the FDA concerning GRAS Notice No. 499.

55. Any representations made to consumers, retailers, distributors, or licensees that Magtein® products were GRAS-certified, FDA-approved, or otherwise compliant with the specific conditions of GRAS Notice No. 499.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

## 10. Import Records, Customs Documentation, and Tariff Avoidance

56. All import records, bills of lading, commercial invoices, packing lists, and customs entry documents associated with shipments of Magnesium L-Threonate hydrate imported into the United States for use in Magtein® products.

57. All U.S. Customs and Border Protection (CBP) declarations, including country-of-origin declarations and Harmonized Tariff Schedule classifications.

58. Whether any shipments were declared as originating from a country other than the country of actual manufacture (e.g., declared as Jordanian origin when manufactured in China), and the basis for any such declaration.

59. Whether AIDP was aware of or participated in any practice of routing Chinese-origin Magnesium L-Threonate through third countries to obtain preferential tariff treatment or avoid duties.

60. All product descriptions used in customs declarations, including any variations for the same functional ingredient across different shipments.

61. AIDP's relationship with ImportGenius or awareness of any trade data reflecting its import history.

## 11. Termination of the Trademark License Agreement

62. AIDP's involvement in or knowledge of the May 8, 2024 correspondence from ThreoTech asserting non-compliance with the TMLA.

63. AIDP's involvement in or knowledge of the July 15, 2024 Termination Notice issued by ThreoTech.

64. AIDP's involvement in or knowledge of the November 4, 2024 demand letter from ThreoTech's counsel.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

65. Whether AIDP received or was copied on any of the foregoing communications, and what role AIDP played in the decisions to issue them.

66. AIDP's understanding of Defendant's post-termination rights under Section 10 of the TMLA, including the sell-off period and cessation of trademark use.

## 12. AIDP's Transition to Distributor Role

67. The circumstances surrounding AIDP's transition from its prior role to distributor for ThreoTech, effective approximately April 1, 2024.

68. All agreements between AIDP and ThreoTech governing AIDP's role as distributor, including terms regarding pricing, territory, exclusivity, and intellectual property.

69. Whether AIDP assigned the TMLA to ThreoTech, and the terms and circumstances of any such assignment.

70. Any communications between AIDP and ThreoTech or Neurocentria concerning the termination of the TMLA with Defendant.

## 13. Knowledge of Prior Art, Inventor Omissions, and Prosecution History

*[Relevant to Counterclaim Counts I–VI—patent invalidity and unenforceability]*

71. AIDP's knowledge of the named inventors on the Magtein Patents, including Dr. Guosong Liu and Dr. Fei Mao.

72. AIDP's knowledge of Dr. Inna Slutsky's role in the research underlying the Magtein Patents and whether Dr. Slutsky was omitted as a co-inventor.

73. AIDP's knowledge of Dr. Fei Mao's prior fluorescent probe patents from the 1990s and early 2000s, and whether those patents were disclosed to the USPTO during prosecution of the Magtein Patents.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

**74.** AIDP's knowledge of Chinese Patent Publication CN1200366A and its disclosure of Magnesium L-Threonate prior to the priority date of the Magtein Patents.

**75.** AIDP's knowledge of U.S. Provisional Application No. 60/510,945 filed by MIT in 2003 and its disclosure of methods of enhancing synaptic function using magnesium salts.

**76.** AIDP's knowledge of the 2002 Gao Sheng-Li publication, 2004 MIT article, or 2010 Neuron publication.

**77.** Whether AIDP knew of or distributed materials disclosing Magnesium L-Threonate before the filing of any asserted patent.

**78.** Any communications between AIDP and Plaintiffs regarding the validity or enforceability of the Magtein Patents in light of any prior art reference.

**79.** AIDP's knowledge of the pending USPTO ex parte reexamination of all 19 claims of the '061 Patent and the USPTO's finding that prior art raises substantial new questions of patentability.

**14. Product Knowledge and Formulation**

**80.** The chemical composition and formulation of Magtein® as distributed by AIDP.

**81.** Whether the Magtein® distributed by AIDP is identical to or materially different from the compositions claimed in the Patents-in-Suit.

**82.** Source(s) of supply for synthetic Magtein® (e.g., Magceutics, ThreoTech).

**83.** Whether Magtein® was sold or offered for sale prior to the filing of any of the Patents-in-Suit.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

**84.** Development and formulation history of Magtein® and related products, including dates and manner of first public use, sale, or marketing of any products containing Magnesium L-Threonate.

**85.** The complete chain of events relating to the alleged "plant-based" Magnesium L-Threonate supply chain referenced in the FAC, including whether Plaintiffs are aware of any genuine plant-derived L-Threonate sources, and any testing performed to verify such claims.

**15. Marketing Representations and Consumer-Facing Claims**

**86.** All marketing materials, product labeling, advertising copy, Amazon listings, website content (including magceutics.com), and promotional campaigns for Magtein® products disseminated or approved by AIDP.

**87.** Any representations made to consumers, retailers, or distributors concerning the country of origin, manufacturing location, or regulatory status of Magtein® products.

**88.** Any representations that Magtein® products are "FDA-approved," "GRAS-certified," or otherwise compliant with FDA Generally Recognized as Safe standards.

**89.** Any representations concerning patent protection of Magtein® products.

**90.** Whether AIDP was aware of any inaccuracy in any marketing representation, including representations about country of origin or regulatory compliance.

**91.** All internal trademark-confusion analyses regarding the Magbrain marks, including any consumer surveys, focus groups, confusion logs, marketplace feedback, distributor complaints, or retailer communications.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

92. The factual basis for any allegation that customer deception "actually occurred," including identification of each known confused consumer, distributor, retailer, complaint, or misdirected communication.

93. All facts relating to the partnership or promotional relationship between Magtein® and Arnold Schwarzenegger or Arnold's Pump Club, including any agreements, marketing materials, scientific claims, and impact projections.

16. **Licensing, Enforcement, and Prior Litigation**

94. AIDP's role, if any, in enforcing the Magtein® patents or trademarks.

95. Whether AIDP participated in or supported this litigation or prior legal actions (e.g., against Teraputics or Green Jeeva).

96. Revenue sharing, royalty arrangements, or sublicensing terms between AIDP and the Plaintiffs.

97. Settlement terms with Green Jeeva and/or Teraputics Group.

98. All facts relating to Amazon monitoring, reporting, takedown requests, and enforcement tools used to track and police alleged infringing listings, including any third-party vendors retained.

99. All internal analyses, discussions, emails, or memoranda regarding Kappa Nutrition's alleged non-compliance with the MAP requirements under the TMLA, including any decision-making process about enforcing or not enforcing pricing restrictions.

17. **Revenue, Financial Arrangements, and Kappa's Damages**

100.   AIDP's revenues, profits, and margins from the sale or distribution of Magtein® products during the relevant period, including all profits attributable to

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

the false "Manufactured in the USA" and GRAS compliance representations that are the subject of Kappa's counterclaims.

101.    All royalty or licensing payments received by AIDP from Defendant or any other licensee in connection with Magtein®, including the total amount of royalties Defendant paid to AIDP under the TMLA.

102.    All royalty payments made by AIDP to Neurocentria, ThreoTech, or any other entity in connection with Magtein®.

103.    MAP policies applicable to Magtein® products and AIDP's role in establishing or enforcing such policies.

104.    Whether AIDP's false representations concerning country of origin and GRAS compliance conferred any price premium, licensing leverage, or competitive advantage in the marketplace.

105.    The extent to which Defendant was induced to enter into, perform under, and pay royalties pursuant to the TMLA in reliance on AIDP's representations concerning domestic manufacture, regulatory compliance, and patent validity.

106.    Plaintiffs' knowledge, testing results, internal evaluations, or third-party data concerning the actual Magtein content found in products sold by other licensees during 2022–2025, including any instances where other licensees under-dosed or violated quality specifications.

107.    All facts relating to the alleged clinical "two grams per day" Magtein dosage standard, including who set that standard, when it was established, how it was communicated to licensees, whether it is recognized in the industry as the minimum effective dosage, and any contrary data.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

108. Internal valuations, revenue calculations, lost-profit estimates, goodwill analyses, or brand-erosion models used by AIDP, Neurocentria, or ThreoTech to calculate damages claimed against Defendant in this action.

18. Testing and Evidence of Alleged Infringement

109. All laboratory testing or chemical analyses performed on the Accused Products.

110. The basis for identifying Defendant's products as containing Magnesium L-Threonate.

111. All studies, market analyses, scientific literature, or internal research Plaintiffs relied on to assert that magnesium salts other than Magnesium L-Threonate cannot cross the blood–brain barrier, improve synaptic density, or produce cognitive benefits, including any contradictory evidence known to Plaintiffs.

19. Communications Regarding the Litigation

112. Mr. Thurston's awareness of this lawsuit, his role in supporting it, and any communications with Plaintiffs' counsel.

113. Any concerns or internal discussions about the validity or enforceability of the Magtein® patents.

114. Any internal discussions, drafts, negotiations, and strategy documents concerning Plaintiffs' decision to terminate the TMLA with Kappa Nutrition, including whether Plaintiffs considered alternative remedies, cure periods, waivers, or renegotiation before electing termination.

20. Document Preservation and Litigation Hold

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

**115.** The date on which AIDP first implemented a litigation hold in connection with this action, and the scope of that hold.

**116.** The identity of the person(s) at AIDP responsible for implementing, monitoring, and enforcing the litigation hold.

**117.** Whether AIDP has preserved all versions of Magtein® product labels, packaging artwork, and related materials, including versions bearing the "Manufactured in the USA" designation.

**118.** Whether any documents, ESI, or tangible things responsive to Defendant's preservation demands have been destroyed, lost, overwritten, or otherwise rendered unavailable since the commencement of this litigation.

**119.** Whether the litigation hold was updated following Edward Lee's death, and the steps taken to preserve his files, devices, and communications.

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

## SERVICE LIST

*Attorneys for AIDP, INC.,*
*NEUROCENTRIA, INC.,*
*and THREOTECH LLC*

James J. Schaller
Schulman Bhattacharya, LLC
6116 Executive Blvd., Suite 425
North Bethesda, MD 20852
240-356-8550
Fax: 240-356-8558
Email: jschaller@schulmanbh.com
LEAD ATTORNEY
PRO HAC VICE
ATTORNEY TO BE NOTICED

Jeffrey S. Gavenman
Schulman Bhattacharya, LLC
6116 Executive Blvd., Suite 425
North Bethesda, MD 20852
240-356-8550
Fax: 240-356-8558
Email: jgavenman@schulmanbh.com
LEAD ATTORNEY
PRO HAC VICE
ATTORNEY TO BE NOTICED

Sang N Dang
Fortis LLP
650 Town Center Drive, Suite 1530
Costa Mesa, CA 92626
714-839-3800
Fax: 714-795-2995
Email: sdang@fortislaw.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Jeff H Grant
Fox Rothschild LLP
10250 Constellation Boulevard, Suite
Los Angeles, CA 90067

24
Notice of Deposition of 30(b)(6) witness of AIDP, Inc.

310-598-4150
Fax: 310-556-9828
Email: jgrant@foxrothschild.com
ATTORNEY TO BE NOTICED

Jeremy Schulman
Schulman Bhattacharya, LLC
6116 Executive Blvd., Suite 425
North Bethesda, MD 20852
240-356-8550
Fax: 240-356-8558
Email: jschulman@schulmanbh.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard, Suite ‛
Los Angeles, CA 90067
310-228-4481
Fax: 310-556-9828
Email: jshaeffer@foxrothschild.com
ATTORNEY TO BE NOTICED

Salvatore Picariello
Fortis LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
714-418-5837
Email: spicariello@fortislaw.com
ATTORNEY TO BE NOTICED

Notice of Deposition of 30(b)(6) witness of AIDP, Inc.