Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John W. Cox
  (Admitted *Pro Hac Vice*)
  John.Cox@btlaw.com
Lauren U. Baker
  (Admitted *Pro Hac Vice*)
  Lauren.Baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile: 404-264-4033

Jeffrey Gavenman
  (Admitted *Pro Hac Vice*)
  jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
  (Admitted *Pro Hac Vice*)
  jeremy.schulman@hugheshubbard.com
James Schaller
  (Admitted *Pro Hac Vice*)
  jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I STREET, N.W., 6th Floor
Washington, D.C. 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs NEUROCENTRIA, INC. and THREOTECH LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC,<br><br>    Plaintiffs,<br><br>        v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION,<br><br>    Defendant/Counterclaimant<br><br>        v.<br><br>NEUROCENTRIA, INC., THREOTECH LLC, GUOSONG LIU AND FEI MAO,<br><br>    Counter-Defendants. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Hearing: May 15, 2026<br>Time: 1:30 pm<br>Courtroom: 6B, 6th Floor<br>Judge: Hon. Fernando L. Aenlle-Rocha |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT.......................................................................................................2

    A.    The December 23 and February 27 Stipulations Do Not Authorize Respondents' Approach to Claim Construction........................2

        1.    The December 23 Stipulation ........................................................2

        2.    The February 27 Joint Notice ......................................................3

    B.    Respondents' "Refinement" of its Positions Is Sanctionable ....................4

    C.    Respondents' Improper Reliance on Kappa's Witnesses .........................7

    D.    Abhyanker Submitted False Declarations......................................................7

    E.    Respondents' Legal Arguments Are Frivolous...........................................11

    F.    Abhyanker's Litigation History Is Relevant to the Instant Motion ....................................................................................................12

    G.    Respondents' Procedural Objections Are Meritless ................................12

III.  CONCLUSION.................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blixseth v. Yellowstone Mt. Club, LLC*,
796 F.3d 1004 (9th Cir. 2015) ................................................................................... 3

*Fernandez v. Boyle*,
No. 2:19-cv-06034-SB-AS, 2021 U.S. Dist. LEXIS 21705 (C.D. Cal.
Feb. 3, 2021) ................................................................................................................ 8

*Fernandez v. Sterik Boyle Heights, LP*,
2:19-cv-06034-SB-AS, 2021 U.S. Dist. LEXIS 76849 (C.D. Cal. Feb.
26, 2021) ...................................................................................................................... 9

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ................................................................................... 12

*Fluidigm Corp. v. IONpath, Inc.*,
No. C 19-05639 WHA, 2020 WL 5073938 (N.D. Cal. Aug. 25, 2020) ..................... 6

*Gammino v. Sprint Commc'ns Co., L.P.*,
577 F. App'x 982 (Fed. Cir. 2014) ............................................................................ 6

*Hunt v. County of El Dorado*,
No. 2:10-CV-01367 JAM, 2012 WL 4862362 (E.D. Cal. Oct. 11,
2012) ...................................................................................................................... 9, 11

*iLOR, LLC v. Google, Inc.*,
631 F.3d 1372 (Fed. Cir. 2011) ............................................................................... 11

*Indiezone, Inc. v. Rooke*,
720 Fed. App'x 333 (9th Cir. 2017) ........................................................................... 9

*Moser v. Bret Harte Union High Sch. Dist.*,
366 F. Supp. 2d 944 (E.D. Cal. 2005) .................................................... 8, 10, 11, 12

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
210 F.3d 1112 (9th Cir. 2000) ................................................................................... 3

- ii -

*PureCircle USA Inc. v. SweeGen, Inc.*,
No. SACV-18-01679 JWS, 2020 WL 4258658 (C.D. Cal. July 2, 2020) .................................................................................................. 5, 6

*Rowland v. Watchtower Bible*,
No. CV 20-59-BLG-SPW, 2022 WL 3596827 (D. Mont. Aug. 23, 2022) ...................................................................................................... 10

*Tilei v. McGuinness*,
No. 1:10-cv-00069-LJO-SKO (PC), 2017 U.S. Dist. LEXIS 61933 (E.D. Cal. Apr. 24, 2017) .............................................................................. 4

**Statutes**

28 U.S.C. § 1927 ......................................................................................... 1, 13

**Other Authorities**

C.D. Cal. L. R. 83-7 .................................................................................... 1, 13

Fed. R. Civ. P. 11 ......................................................................................... 7, 13

Fed. R.  Civ. P. 26(a)(2)(B) ............................................................................. 7

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs/Counterclaim Defendants Neurocentria, Inc. and ThreoTech LLC (collectively, "Plaintiffs") hereby file this Reply in support of their Motion for Sanctions Against Defendant/Counterclaim Plaintiff Mando International, LLC d/b/a Kappa Nutrition ("Kappa") and its counsel, Raj Abhyanker ("Abhyanker," together "Respondents"), and state as follows:

## I.      INTRODUCTION

In response to Plaintiffs' Opening Brief (ECF 161), Respondents incredibly ask this Court to accept that, *inter alia*, (i) serially changing claim construction positions after submission of the Joint Claim Construction Statement ("JCCS"), (ii) repackaging meritless attorney-drafted invalidity arguments as "expert" claim construction opinions, (iii) submitting a false declaration, concealing information regarding falsehoods in the declaration, and refusing to withdraw it once the falsehoods are revealed, and (iv) distorting joint stipulations to serve a misguided purpose, all constitute normal patent practice and are thus acceptable during litigation. To accept any of these would upend all notions of decency among counsel, render the duty of candor attorneys owe to the Court meaningless, and effectively declare "open season" on the rules guiding litigation. None of Respondents' contrived excuses withstand scrutiny, and each must be rejected.

Respondents do not and cannot dispute the central facts of Plaintiffs' Motion, which evidence that Respondents' approach to claim construction prejudiced Plaintiffs with unnecessary work, undue procedural burdens, and frivolous legal arguments. When measured against the record, Respondents' blatant mischaracterizations and omissions in their Opposition only reinforce a finding of bad faith and show that Respondents will not change their conduct absent Court intervention. Plaintiffs accordingly seek remedies specific and limited to Respondents' sanctionable conduct during claim construction pursuant to 28 U.S.C. § 1927, Local Rule 83-7, and this Court's inherent power and ask this Court to award Plaintiffs their fees and costs incurred due to Respondents' conduct.

- 1 -

## II.  ARGUMENT

### A.  The December 23 and February 27 Stipulations Do Not Authorize Respondents' Approach to Claim Construction

#### 1.  The December 23 Stipulation[1]

Respondents' opposition is grounded in their tortured misunderstanding that the December 23 stipulation's use of the phrase "proposed constructions" authorized Respondents' ever-changing claim construction positions. But any reasonable reading of the stipulation shows that it merely extended the deadline for the exchange of preliminary claim constructions pursuant to Section 3(b) of the Patent Standing Order ("PSO"); it did not permit Respondents to (i) serve their initial claim construction disclosure 11 days late on December 19 proposing a plain and ordinary meaning for one term, magnesium threonate; (ii) propose an entirely new construction for magnesium threonate on January 19; (iii) propose nine new terms, including two not found in the Asserted Claims, for construction on January 19; (iv) propose another new and unsupported construction of magnesium threonate on March 2; (v) submit, for the first time (47 days late), purported "supplemental intrinsic evidence" to support Respondents' construction of magnesium threonate on March 7; and (vi) propose a fourth construction of magnesium threonate on March 23. *See* ECF 161 at 13-14 and 17-20.[2]  Indeed, the phrase "proposed constructions" was included in the stipulation only because that

---

[1] The parties originally filed the stipulation on December 23, 2025 (ECF 80). The Court struck the stipulation (ECF 85) and the parties re-filed on January 8, 2026 (ECF 86).

[2] Respondents' interpretation of the December 23 stipulation is also inconsistent with the parties' correspondence, which shows that they were extending "only [] the preliminary claim construction deadline for the remaining patent, and leav[ing] all other deadlines and rights unchanged." *See* **Ex. A** to the Declaration of John W. Cox ("Cox Decl.") (proposing a "narrowly tailored" stipulation to extend the deadline in Section 3(b)); *see also* **Ex. B** (writing to "memorialize[] our meet-and-confer discussion" including "a short extension of th[e] deadline" for the "exchange of proposed claim constructions and supporting intrinsic/extrinsic evidence under the Local Patent Rules").

- 2 -

language is used in Section 3(b) of the PSO for the deadline the parties were stipulating to extend (*i.e.*, the "Exchange of Preliminary **Claim Constructions** and Extrinsic Evidence"). ECF 33 at 13.[3]

Respondents' suggestion that Plaintiffs are "asking this Court to sanction Defendant for complying with this Court's own Order" (ECF 166 at 6, 11, 21) is wrong. Plaintiffs do not seek sanctions for Respondents' January 19 disclosure or misconduct before the January 16 meet and confer, but for the totality of Respondents' claim construction conduct from January 16 forward. *See* ECF 161 at 17-20, 24. Respondents' attempt to recast its procedural gamesmanship and failure to approach claim construction in good faith as somehow aligned with agreements between the parties or pursuant to Court orders is unreasonable and irresponsible. *See Blixseth v. Yellowstone Mt. Club, LLC*, 796 F.3d 1004, 1007-08 (9th Cir. 2015) (awarding sanctions against attorney who, *inter alia*, had a "propensity for distortion" and failed to retract "demonstrably inaccurate" statements); *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1119-20 (9th Cir. 2000) (upholding sanctions against attorney who "made misrepresentations to the court in bad faith," which "interfered with the court's ability to enforce its orders").

### 2.    The February 27 Joint Notice

Respondents further argue that the February 27 Joint Notice narrowing claim construction to a single term is "itself evidence of good-faith participation." ECF 166 at 12. Wrong. A single instance of good faith does not excuse Respondents' misconduct, which pervaded the entire claim construction process, or alleviate the prejudice to Plaintiffs. Regardless, and more importantly, the narrowing was necessary only because Respondents improperly injected nine additional claim terms on January 19 after both parties had identified magnesium threonate as the sole term requiring construction in

---

[3] Unless otherwise noted, all emphasis is added.

- 3 -

December. ECF 161 at 10. That Respondents eventually agreed to narrow to the single term originally identified by both parties does not retroactively justify the intervening weeks of unnecessary litigation due to Respondents' course change in January.

Equally unavailing is Respondents' argument that Plaintiffs "cannot both stipulate to narrow the issues and then seek sanctions for the conduct that preceded the stipulation." ECF 166 at 12. Respondents ignore the context in which they proposed the stipulation—that it would not have been necessary but for Respondents' gamesmanship and Respondents only proposed the stipulation after Plaintiffs indicated they would seek Court intervention if Respondents did not withdraw Ms. Adams' false declaration. ECF 161-1 ¶ 19; ECF 161-12. Moreover, while Plaintiffs do not disagree that the PSO contemplates that the parties will "identify terms, discuss them, and narrow the dispute through the meet-and-confer process" (ECF 166 at 12), **that process ended** with the submission of the JCCS on January 23; Respondents cannot ignore Court-ordered deadlines only to later claim that there is no prejudice because Respondents (partly) reverted to their original position.

Plaintiffs had to expend resources solely due to Respondents' misconduct, warranting sanctions. *See Tilei v. McGuinness*, No. 1:10-cv-00069-LJO-SKO (PC), 2017 U.S. Dist. LEXIS 61933, at *2 (E.D. Cal. Apr. 24, 2017) ("Defendants' counsel, as an officer of the court, has a duty of good faith and candor to the court, and sanctions may be imposed for filing frivolous motions which serve only to unnecessarily multiply the proceedings." (citation omitted)).

### B.    Respondents' "Refinement" of its Positions Is Sanctionable

Respondents do not dispute that they serially changed their claim construction positions but characterize their shifting constructions as part of the normal "iterative" process of claim construction. ECF 166 at 10. Not true.

- 4 -

Respondents proposed a plain and ordinary meaning construction on December 19 and then reversed course three times.[4] ECF 161 at 17-20. Each new construction introduced additional and/or different limitations not found in the prior constructions and not supported by the intrinsic or extrinsic evidence. *Id.* This is the "shifting sands" approach that courts have sanctioned. *See id.* at 15-20. Not surprisingly, Respondents do not cite any cases for their arguments that "refining claim constructions positions is normal patent practice" (ECF 166 at 12, 13) or that "[t]he Court should deny sanctions where the conduct at issue reflects ordinary litigation practice . . . absent bad faith" (*id.* at 9), nor can they. As the caselaw cited in Plaintiffs' Opening Brief shows, Respondents' approach to claim construction is improper and sanctionable. *See, e.g.*, ECF 161 at 14-17.

Respondents' attempt to distinguish *PureCircle USA Inc. v. SweeGen, Inc.*, No. SACV-18-01679 JWS (JDEx), 2020 WL 4258658 (C.D. Cal. July 2, 2020) is a prime example of both Respondents' misguided attempts to rationalize their misconduct and blatant mischaracterization of caselaw. Respondents contend that *PureCircle* is distinguishable because there the defendants changed their position "after the Court issued its claim construction order," whereas "no claim construction order has been issued" here.[5] ECF 166 at 13. Wrong again. The *PureCircle* defendants materially changed their proposed constructions of two terms and sought "to add additional

---

[4] Respondents also changed the evidence they relied on to support those constructions. *See* ECF 161-1, ¶¶ 21-22.

[5] Respondents' contention that Plaintiffs "do not and cannot" show that Respondents' positions were "so unreasonable that no reasonable litigant could believe [they] would succeed" is without merit. *See* ECF 166 at 13. As Plaintiffs' opening and reply claim construction briefs showed (*see* ECF 116 at 16-19; ECF 150 at 10-14), Respondents' constructions are wholly unsupported by and contrary to the intrinsic evidence—particularly the specification and the claims of the '061 Patent—to the point that they lack good faith and, therefore, are sanctionable. *See* ECF 161 at 17-20 (citing cases).

- 5 -

limitations to these terms supported by new expert testimony" **before** claim construction briefing ended and the court had issued its claim construction order, not after. *PureCircle*, 2020 WL 4258658, at *2-3. The court **still struck** the new constructions, finding that "[t]his is the very 'shifting sands' and 'musical chairs' approach that the [Patent Local Rules] are designed to avoid." *Id.* at *3. Here, Respondents' reversal of an effectively agreed-upon construction and subsequent proposal of three different constructions with different evidence is precisely the kind of gamesmanship the court in *PureCircle* condemned. If anything, Respondents' "refinement" is even more sanctionable than the conduct admonished in *PureCircle*. *Id.*

As explained in Plaintiffs' Opening Brief (ECF 161 at 10), the PSO establishes a structured, multi-stage process requiring good faith participation throughout. Once a party has served its proposed constructions, the opposing party should be able to rely on them to frame its own positions, retain and prepare experts, conduct depositions, and brief the issues. [6] Respondents' "refinement" disturbed that reliance and wasted Plaintiffs' resources. *See PureCircle*, 2020 WL 4258658, at *3; *see also Gammino v. Sprint Commc'ns Co., L.P.*, 577 F. App'x 982, 986-87, 990-91 (Fed. Cir. 2014) (finding that "allowing Gammino to change his position on the definition of 'signal value' would be inequitable and would result in prejudice to Sprint"). Respondents instead used the process to multiply the proceedings, weaponizing their shifting constructions to generate a flurry of frivolous filings. *See* ECF 161 at 11-12.

---

[6] Reinforcing this fact, the PSO does not provide an opportunity for parties to change their constructions, nor does it provide for the disclosure of "final constructions." *See Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2020 WL 5073938, at *4 (N.D. Cal. Aug. 25, 2020) (noting that the term "preliminary" in the local rules is a "misnomer" because the rules do not provide for a "final" claim construction exchange and describing the preliminary claim construction disclosures as "case landmarks" because they "shape the course of discovery, investigation, and expert homework").

- 6 -

### C.    Respondents' Improper Reliance on Kappa's Witnesses

Respondents' defense of the Sample Declaration—that attorneys may "assist" experts in drafting reports under Rule 26(a)(2)(B) (ECF 166 at 13-14)—misses the mark.[7] Abhyanker did more than merely provide a "template identifying topics" (*id.* at 21): he drafted the Sample Declaration containing the same conclusions that Kappa's Witnesses later parroted, mostly verbatim, in their own declarations. ECF 161 at 20-24. This is not "assistance," but fabrication of purportedly independent opinions relied on to support Respondents' claim construction positions. *Id.* Abhyanker's claim that Kappa's Witnesses "were retained as persons of ordinary skill in the art" (ECF 166 at 14) is even more incredible because their so-called opinions are directed entirely to validity— initially proffered in support of Respondents' Rule 11 Motion and repackaged to support claim construction. *See* ECF 161 at 20. It is not surprising, then, that their declarations are devoid of any claim construction analysis or even mention of the requisite concept of a person of ordinary skill in the art.

Respondents' reliance on deposition testimony from Kappa's Witnesses to argue their "opinions were [their] own" (ECF 166 at 14) is similarly unavailing. The comparison of the Sample Declaration with Kappa's Witnesses' declarations that Plaintiffs provided (ECF 161 at 20-24) speaks for itself. And Abhyanker's direct examination of Kappa's Witnesses—a **first attempt** to elicit opinions related to claim construction—further confirms that neither witness had conducted any claim construction analysis in support of their declarations. *Id.* at 29.

### D.    Abhyanker Submitted False Declarations

Respondents' treatment of Ms. Adams' declaration is a troubling but unsurprising display of Abhyanker's approach to litigation. Respondents ask this Court to accept that

---

[7] Respondents elsewhere characterize Kappa's Witnesses "not as testifying experts under Rule 26(a)(2)(B)." *Id.* at 13-14. Respondents' opportunistic application of Rule 26(a)(2)(B) is another instance of their misguided reliance on legal authority.

Ms. Adams' sworn statement in her declaration that she "hold[s] a Ph.D. . . . from the University of Cambridge" (ECF 95-2, ¶ 4) was a "reasonable characterization of her academic status that, at most, required clarification" (ECF 166 at 16-18). This is more than just semantics: the University of Cambridge—the only institution with authority to confer Ms. Adams' degree—definitively stated that Ms. Adams' "degree has not yet been conferred and until such time [Ms. Adams] **does not hold the degree**." ECF 161-10 ("Cambridge Letter") at 8-9. Abhyanker received the Cambridge Letter on March 3, 2026, 15 days before Ms. Adams' deposition and eight days after Plaintiffs' counsel first raised questions about her credentials. ECF 161 at 24. Abhyanker knowingly and falsely represented during her deposition on March 18 that Cambridge had confirmed Ms. Adams received her degree. *Id.* at 12-13, 24-25. Respondents' characterization of their disclosure of the Cambridge Letter as "voluntarily" is also false (*see* ECF 166 at 8, 16): it took **four written requests** from Plaintiffs between March 20 and March 27 (after a verbal request during her deposition) for Abhyanker to reluctantly produce it on March 30. ECF 161 at 12-13, 24-25. Abhyanker's intentional concealment and affirmative misrepresentations of the Cambridge Letter are the epitome of bad faith.

It is axiomatic that "counsel who assists in the preparation of the declaration must take care to comply with his or her duty of candor to the court." *Fernandez v. Boyle*, No. 2:19-cv-06034-SB-AS, 2021 U.S. Dist. LEXIS 21705, at *6 (C.D. Cal. Feb. 3, 2021) (citation omitted); *see also Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 977 (E.D. Cal. 2005) ("Every time a party submits a filing, the attorney personally certifies the contents both as to reasonable factual investigation and legal research"). When confronted with the falsehoods in Ms. Adams' declaration, Abhyanker was required—consistent with the duty of candor he owes the Court and his own professional obligations—to withdraw her declaration and disclaim any reliance on it, which he repeatedly stated he would. *See, e.g.*, ECF 166 at 17 ("If we later determine that reliance on her credentials was misplaced, we will withdraw her declaration" (citing ECF 166-1

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS

¶¶ 20-21, ECF 166-5)). Abhyanker did the **opposite**, attempting to obfuscate his malfeasance by submitting Ms. Adams' "Clarifying Declaration" and his own declaration in support (ECF 151, 152) without prior authorization from the court.

This is precisely the conduct the court found sanctionable in *Fernandez v. Sterik Boyle Heights, LP*, 2:19-cv-06034-SB-AS, 2021 U.S. Dist. LEXIS 76849 (C.D. Cal. Feb. 26, 2021). There, Plaintiff's counsel submitted a declaration that contained false statements; once discovered, rather than seek leave from the court to withdraw the declaration, counsel "made matters worse by drafting a revised declaration that was evasive and [] submitt[ed] it without approval." *Id.* at *5. The court imposed sanctions, finding that counsel "neglected to discharge her professional obligations" and violated her duty of candor to the court. *Id.* at *3-5 (noting that "it is reasonable to expect a lawyer in a 'difficult position' to exercise great care to avoid providing further false or misleading information" to the court); *see also Indiezone, Inc. v. Rooke*, 720 Fed. App'x 333, 337 (9th Cir. 2017) (upholding sanctions award where the plaintiffs "had submitted multiple misleading and false declarations and fraudulent documents in bad faith"); *Hunt v. County of El Dorado*, No. 2:10-CV-01367 JAM, 2012 WL 4862362, at *3-4 (E.D. Cal. Oct. 11, 2012) (finding that an attorney acted in bad faith because he knowingly submitted a "false and misleading" declaration to the court not once but twice, thereby "needlessly prolong[ing] the proceedings"). Abhyanker's untimely and improper efforts to cure his ethical and professional failures are not only futile but are sanctionable.

Abhyanker's claim that he conducted an adequate or good faith "investigation of Dr. Adams's credentials" also strains credulity. ECF 166-1 ¶ 20. As is made clear by his declaration and Respondents' brief, Abhyanker's "investigation" relied primarily on Ms. Adams' own self-serving statements (*see* ECF 166 at 17), which are entitled to no weight. His claim is further belied by the evidence: a simple Google search of Ms. Adams—whose real name is Sarrita Adams—returns results, *inter alia*, with the title "Sarrita Adams has publicly admitted **she does not hold the title phD**" (*see* Cox Decl.

- 9 -

¶ 5).[8] These findings, together with Plaintiffs' repeated warnings, should have (and would have to any reasonable attorney) raised a red flag and, at a minimum, warranted further investigation. *See, e.g.*, ECF 161-5; *Rowland v. Watchtower Bible*, No. CV 20-59-BLG-SPW, 2022 WL 3596827, at *5 (D. Mont. Aug. 23, 2022) (sanctioning attorney and noting that, "[b]y seemingly failing to investigate and provide a more accurate description . . . Brumley's actions demonstrate, at a minimum, a reckless disregard for providing an accurate and truthful accounting"); *Moser*, 366 F. Supp. 2d at 979 (sanctioning attorney who had a "steadfast refusal to correct [] errors when faced with repeated objections and explicit notice that her papers were inaccurate and misleading, in violation of her duty of truth and candor to the Court").

Finally, Respondents' argument that the upcoming "Congregation Date" will render Plaintiffs' claims "moot" (ECF 166 at 8, 17-18) is irrelevant. The relevant questions are whether:

1) Ms. Adams' declaration was false when it was filed,

2) Abhyanker concealed facts proving the falsity of Ms. Adams' declaration, and

3) Respondents' continued reliance on Ms. Adams' declaration is unjustified and has unnecessarily multiplied the proceedings.

All yes. Put more simply, a party cannot submit a false declaration, conceal evidence proving its falsity, and argue that future events will cure the problem while continuing to rely on it. If this were the standard, no false statement could ever be sanctioned so long as the declarant promised to make it true later.

---

[8] These findings are in addition to the myriad personal litigations involving Ms. Adams, including court rulings finding her incompetent and appointing a guardian *ad litem*, of which Plaintiffs' counsel also made Abhyanker aware. ECF 161 at 11; Cox. Decl. ¶ 6.

- 10 -

## E.        Respondents' Legal Arguments Are Frivolous

Respondents contend that their § 101 arguments and prosecution history estoppel arguments were "raised in good faith" and were "colorable legal arguments supported by caselaw." ECF 166 at 18-19. Not so.

Regarding section 101, Respondents argue that the PSO "contemplates invalidity contentions based on § 101 as part of the claim construction framework." *Id.* at 18. But the PSO's reference to § 101 is in the context of **invalidity contentions**, a phase of patent litigation wholly separate from claim construction. As explained in Plaintiffs' opening brief, Respondents' § 101 arguments blatantly misapply and/or ignore binding case law, including controlling authority assessing claims similar to the Asserted Claims. *See* ECF 161 at 25-27. Regarding prosecution history estoppel, Respondents improperly raised this argument—which, like § 101, does not apply to claim construction—for the first time in their responsive claim construction brief. *See id.* at 27. Respondents either knew these arguments were baseless or raised them solely to burden Plaintiffs. Either way, sanctions are warranted. *See Hunt*, 2012 WL 4862362, at *3 ("Bad faith can be found when an attorney knowingly or recklessly raises a frivolous argument or raises an argument only to harass an opponent.").

Respondents' argument that "a losing argument is not a sanctionable argument" (Dkt. 166 at 19) is also inapposite. The issue is **not whether Respondents' arguments are losers** (they are)—it is whether they were "so unreasonable that no reasonable litigant could believe [they] would succeed." ECF 161 at 18 (quoting *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011)). Arguments that misapply legal doctrines and ignore binding authority cross that line. *See Moser*, 366 F. Supp. 2d at 978 (awarding sanctions for "repeated misstatements of the facts, frivolous objections, and mischaracterizations of the law," which constituted "a bad faith attempt to mislead the Court, obscure the real facts of the case, to obstruct, and/or harass the Plaintiff").

- 11 -

### F.     Abhyanker's Litigation History Is Relevant to the Instant Motion

Respondents argue that Abhyanker's prior litigation history is "improper and prejudicial" and "not an element of any sanctions standard." ECF 166 at 19. Wrong again. Courts can consider an attorney's pattern of conduct when evaluating bad faith. *See, e.g.*, *Moser*, 366 F. Supp. 2d at 979 (recognizing that bad faith can be inferred "[w]hen an attorney repeatedly and vexatiously presents 'facts' and 'law' to the Court that are plainly wrong or misleading"). Abhyanker's history of sanctions across multiple federal courts is directly relevant to this Court's assessment of whether the pattern of conduct in this case reflects bad faith. Indeed, that this Court has already identified a pattern of misconduct by Abhyanker (*see* ECF 161 at 27-29) makes his history of sanctions in other cases all the more probative.

Respondents' citation to *Fink* for the proposition that sanctions are designed to prevent "vindictiveness" (ECF 166 at 19) is another half-truth: *Fink* held that "reckless misstatements of law and fact, when coupled with an improper purpose . . . are sanctionable under a court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see also* ECF 161 at 14-17. Here, Respondents—not Plaintiffs—have unnecessarily multiplied the claim construction proceedings through their vexatious tactics and frivolous claim construction filings. Respondents' half-hearted complaint about **Plaintiffs'** alleged "vindictiveness" is unfounded. ECF 166 at 19.

### G.     Respondents' Procedural Objections Are Meritless

Each of Respondents' three procedural arguments lack merit. First, Respondents' assertion that the April 3 meet and confer was "inadequate" rests entirely on Abhyanker's own self-serving memorandum, which itself is bald advocacy, not evidence. Respondents' statement that "the actual discussion was **far more substantive**—and far less productive—than Mr. Cox's characterization suggests" (ECF 166 at 9) only lends further weight to the fact that Respondent's position is baseless. *See*

- 12 -

Cox Decl. ¶¶ 7-9. And Abhyanker's other allegations (*see* ECF 166 at 9) relate to categories of conduct that are addressed in Plaintiffs' April 28 Motion for Sanctions (ECF 170) and thus are of no moment here.

Second, Respondents' argument that Plaintiffs failed to serve a Rule 11 safe harbor letter (ECF 166 at 20) is frivolous—Plaintiffs brought the present Motion under 28 U.S.C. § 1927, Local Rule 83-7, and the Court's inherent power, **not** Rule 11. *Id.* at 20 (acknowledging that "§ 1927 does not formally require [a Rule 11 safe harbor letter]"). And Respondents do not dispute that Plaintiffs notified Respondents of their intent to seek sanctions related to Respondents' bad faith approach to claim construction, including as early as January 23, 2026. Cox Decl. ¶ 8; *see also* ECF 166 at 20; ECF 95 at 4-5 (in the JCCS, "reserve[ing] the right to seek sanctions against counsel for Defendant pursuant to Section 3(g) of the Court's [PSO] based on Defendant's failure to make a good faith effort to narrow the instances of disputed terms for construction"). Respondents had ample notice of Plaintiffs' allegations and chose to persist nonetheless.

Third, Respondents' argument that Plaintiffs' estimated fees are "facially disproportionate" (ECF 166 at 20-21) has no merit and is both speculative and premature. Plaintiffs have offered to submit an accounting of their fees and costs if the Court grants their Motion. ECF 161 at 29-30. And, as Plaintiffs will show, the requested amount reflects Plaintiffs' reasonable fees and costs incurred as a direct result of Respondents' vexatious approach to claim construction, not Plaintiffs' litigation choices.

## III.    CONCLUSION

For the foregoing reasons and those outlined in Plaintiffs' opening brief (ECF 161), Plaintiffs respectfully request that the Court sanction Respondents pursuant to 28 U.S.C. § 1927, Local Rule 83-7, and this Court's inherent power, and order Respondents to pay the costs and fees incurred by Plaintiffs due to Respondents' misconduct related to claim construction. Should the Court grant Plaintiffs' Motion, Plaintiff will provide a detailed accounting of their attorneys' fees and costs.

Dated: May 1, 2026

By: */s/ John W. Cox*
Attorneys for Plaintiffs
Neurocentria, Inc. and ThreoTech LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,176 words, which complies with this Court's Standing Order (ECF No. 16).

Dated: May 1, 2026

By: */s/ John W. Cox*
Attorneys for Plaintiffs
Neurocentria, Inc. and ThreoTech LLC

- 14 -

**CERTIFICATE OF SERVICE**

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626.  On May 1, 2026, I served the following document(s):

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

on the parties stated on attached service list

| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

☒     **BY COURT'S CM/ECF SYSTEM.**  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.

      **BY E-MAIL.**  By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

☐     **(STATE)**     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒     **(FEDERAL)**     I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 1, 2026, at Costa Mesa, California.

/S/ SALVATORE PICARIELLO
Salvatore Picariello