Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John Cox
(Admitted *Pro Hac Vice)*
  John.Cox@btlaw.com
Lauren U. Baker
(Admitted *Pro Hac Vice*)
  lauren.baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Rd NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile:  404-264-4033

Jeffrey Gavenman
(Admitted *Pro Hac Vice*)
jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
(Admitted *Pro Hac Vice*)
jeremy.schulman@hugheshubbard.com
James Schaller
(Admitted *Pro Hac Vice*)
jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street, N.W., Suite 600
Washington, DC 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and THREOTECH LLC and Third-Party Defendant, AIDP, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROCENTRIA, INC. and THREOTECH LLC,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION,<br><br>Defendant/Counterclaim Plaintiff,<br><br>v.<br><br>AIDP, INC.,<br><br>Third-Party Defendant. | Case No. 2:25-cv-05871-FLA-MAR<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO LOCAL RULES 83-7 AND 83-8, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWER**<br><br>[*Filed Concurrently with the Declaration of Jeffrey Gavenman*]<br><br>Hearing:    June 5, 2026<br>Time:       1:30 p.m.<br>Courtroom: 6B, 6th Floor<br>Judge:     Hon. Fernando L. Aenlle-Rocha |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 2

      A.    Plaintiffs Complied with Meet-and-Confer Requirements ...................... 3

          1.    Motion was Timely; Emails Supplemented Meet-and-Confers ..................................................................................... 5

          2.    Kappa Improperly Compares Its L.R. 7-3 Failures with Plaintiffs' Adherence to Rule ............................................... 6

      B.    Mando's Corporate Status ........................................................................ 7

      C.    Kappa Cannot Vexatiously Slow the Proceedings and Blame Plaintiffs for Noticing ............................................................................. 8

      D.    Sanctionable Actions Described in Motion .............................................. 8

          1.    The Dual Motions to Dismiss ...................................................... 8

          2.    Word-Limit Motion and Omitted Email ...................................... 9

          3.    The Parties' Respective Discovery Obligations Are Not Remotely Similar ...................................................................... 10

          4.    Service Issues ............................................................................. 11

          5.    Missed Deadline ........................................................................ 12

          6.    L.R. 7-3 Allegations .................................................................. 12

CONCLUSION .............................................................................................................. 13

REPLY I/S/O MOTION FOR SANCTIONS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of New York Mellon v. Brewer*,
No. C-12-03179 RMW, 2012 WL 3904342 (N.D. Cal. Sept. 7, 2012) .............13

*Beste v. Lewin*,
488 B.R. 663 (N.D. Cal. 2012)..................................................................................13

*LEGALFORCE RAPC WORLDWIDE P.C. v. MH SUB I, LLC*,
Case No. 24-cv-00559-JSC (N.D. Cal., May 13, 2026).......................................2

*Perdomo v. Noem*,
Case No. 2:25-cv-05605-MEMF-SPx, 2026 WL 166570 (C.D. Cal.
Jan. 16, 2026)...........................................................................................................10

*United States v. Fabricant*,
No. CR 03-01257-RSWL-1, 2015 WL 12857301 (C.D. Cal. Nov. 18,
2015) ............................................................................................................................13

**Statutes and Rules**

11 U.S.C. § 1117(a) ...........................................................................................................2

28 U.S.C. § 1927...........................................................................................................1, 13

C.D. Cal. L.R. 7-3 ........................................................................................................6, 12

C.D. Cal. L.R. 7-9 ...............................................................................................................4

C.D. Cal. L.R. 83-7 .............................................................................................................1

C.D. Cal. L.R. 83-8 .........................................................................................................1, 5

Fed. R. Civ. P. 11 ...........................................................................................................6, 7

Fed. R. Civ. P. 11(c) ...........................................................................................................8

## <u>REPLY MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and THREOTECH, LLC ("<u>Plaintiffs</u>") respectfully submit this reply brief ("<u>Reply</u>") in support of their Motion for Sanctions Pursuant to Local Rules 83-7 and 83-8, 28 U.S.C. § 1927, and the Court's Inherent Power (ECF 170) ("<u>Motion</u>").

## <u>PRELIMINARY STATEMENT</u>

The Opposition to Plaintiffs' Motion filed by Defendant/Counterclaim Plaintiff MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS ("<u>Kappa</u>") fundamentally misunderstands the nature of the relief the Motion seeks. The Motion is not directed at any single filing, an isolated misstatement, or some other discrete act. Rather, it addresses the broader pattern of litigation abuse by Kappa and its counsel, Raj Abhyanker (collectively, "<u>Respondents</u>"), viewed cumulatively and over time. Through the Motion, Plaintiffs seek prospective relief aimed at curbing tactics that have repeatedly multiplied proceedings and burdened both Plaintiffs and the Court – including conduct that this Court *already* recognized as sanctionable and vexatious in its Order to Show Cause (ECF 107). The present Motion synthesizes the numerous instances of Respondents' sanctionable behavior[1] and demonstrates that they are not disconnected episodes but part of a broader pattern of vexatious litigation conduct warranting prospective relief.

And prospective relief is especially justified here because other cases, in other courts, definitively demonstrate that the abusive litigation tactics employed by Respondents here are not unique to this case; rather, they are the *modus operandi* of Abhyanker. As cited in the Motion, several Judges across the country have already sanctioned, enjoined, or otherwise remarked upon Abhyanker's bad-faith, dishonest behavior. Motion, at 10-11. Indeed, *just last week* yet another Judge remarked on

---

[1] Including Kappa's sanctionable conduct identified by the Court in ECF 107 and by Plaintiffs in ECF 139 (the "<u>OSC Reply</u>") and ECF 161 (the "<u>Claim Construction Motion</u>"), which are incorporated herein.

REPLY I/S/O MOTION FOR SANCTIONS

Abhyanker's actions. See Declaration of Jeffrey Gavenman ("Gavenman Decl."), **Exhibit 1** (order entered on May 13, 2026, in *LEGALFORCE RAPC WORLDWIDE P.C. v. MH SUB I, LLC*, Case No. 24-cv-00559-JSC (N.D. Cal., May 13, 2026)). In her Order, Judge Jacqueline Scott Corley wrote: "Plaintiff's case became exceptional because Plaintiff alleged facts it knew to be false, discovered other facts demonstrating its case was meritless, took steps to obscure those facts, and continued to litigate its action." *Id.*, at *9. Judge Corley added that "not only did Plaintiff's complaint include overstatements and outright falsities, but so did the trial testimony of Plaintiff's only witness (Mr. Abhyanker), and trial representations by trial counsel (also Mr. Abhyanker)." *Id.* at *12. Judge Corley ordered the plaintiff, the law firm founded and wholly owned by Abhyanker, to pay more than $90,000 in fees and costs pursuant to 11 U.S.C. § 1117(a) (a statute authorizing the award of attorneys' fees to the prevailing party in "exceptional cases").

Respondents' Opposition conspicuously avoids grappling with this broader pattern. Instead, it attempts to draw the Court's attention away from Respondents' serially vexatious conduct and towards insignificant or entirely fabricated purported issues, as explained below. The result is an Opposition that reinforces – rather than refutes – why the Court should grant Plaintiffs' requested sanctions.

For all the reasons cited herein and in the Motion, the OSC Reply, and the Claim Construction Motion, and as reflected in the observations of numerous Judges in other cases, this situation cries out for a vexatious litigant designation. Plaintiffs have met the standard for securing sanctions against Respondents, and the Court should grant Plaintiffs' Motion and order the relief they seek.

## **ARGUMENT**

By drawing together Respondents' sanctionable conduct described in the Motion and ECF 107, 139, and 161, as well as other courts' findings regarding Abhyanker's sanctionable conduct in other cases, the Motion demonstrates why Respondents should

REPLY I/S/O MOTION FOR SANCTIONS

be deemed vexatious litigants. Respondents fail to address this clear pattern of behavior and, instead, offer false narratives, flimsy excuses, distractions, and gaslighting.

### A. Plaintiffs Complied with Meet-and-Confer Requirements

To start, Respondents provide a false narrative regarding Plaintiffs' meet-and-confer efforts, claiming Plaintiffs did not discuss their intention to move for an order deeming Respondents vexatious litigants (they most certainly did), and that "most" of the issues in the Motion were not discussed at the two separate meet-and-confers Plaintiffs held (they most certainly were).

As set forth in the accompanying Gavenman Declaration, Plaintiffs properly met-and-conferred with Kappa – pursuant to Local Rule ("L.R.") 7-3, the Court's Standing Order, and the Magistrate Judge's Standing Order – prior to filing their Motion. Gavenman Decl., at ¶¶4-8. Plaintiffs, in fact, met-and-conferred with Kappa *twice* – once in person and once via video conference – to discuss moving for sanctions and seeking relief pursuant to the vexatious litigant sections of the Local Rules. *Id*. Both times, prior to those meet-and-confers, Plaintiffs sent emails clearly identifying that they intended to bring such motion and explicitly setting forth the bases therefor. *Id*., at ¶¶7-8; *see also* **Exhibit 8** and **Exhibit 9** to Gavenman Decl.

Yet Kappa seeks to manufacture a violation of the meet-and-confer requirements based upon a faulty premise: that "[t]he majority of the conduct Plaintiffs cite as sanctionable occurred after April 3 and could not have been discussed at that conference" (Opposition, at ¶2). This is demonstrably false. Again, the Motion is premised not only upon the specific examples of vexatious acts discussed in the Motion, but all of Respondents' improper and vexatious conduct throughout this litigation. Indeed, Kappa concedes (*Id.*, at ¶27) that Plaintiffs expressly incorporated their OSC Reply and Claim Construction Motion for Sanctions into their Motion "as if fully set forth [t]herein." Motion, at 2, n.2.

Kappa states that "[t]he latest AIDP service attempt occurred on April 17." Opposition, at ¶12. However, the problematic behavior discussed in the Motion took place weeks prior, with Respondents' submission of false affidavits of service on March 21 and 23. Motion, at 25-27. This topic was explicitly identified for discussion for the April 3 meet-and-confer (Gavenman Decl., **Exhibit 9**). Indeed, Abhyanker acknowledged that such was, in fact, discussed on April 3 in his own "Sanctions Meet and Confer Memorandum – April 3, 2026 Conference" ("Abhyanker Memo"), a copy of which is attached to the Gavenman Decl. as **Exhibit 2**. *See id.* at §6.

Similarly, Respondents bizarrely point out that "[t]he demand letter was sent on March 31," and "[t]he missed L.R. 7-9 deadline involved a filing on March 31." Obviously, neither of those was after April 3, 2026, so they undermine, rather than support, Respondents' point. Moreover, both were discussed on April 3, were explicitly identified as topics before the April 3 meet-and-confer (Gavenman Decl., **Exhibit 9**), and Abhyanker acknowledged in the Abhyanker Memo that the parties discussed both topics – indeed, he devoted entire sections of the memo to each subject. *See* Gavenman Decl., **Exhibit 2**, at §§2, 4.

Yet, in the Opposition, Respondents falsely represent to the Court that "[n]one of these episodes was discussed in any telephonic or in-person conference." Opposition, at ¶12. Kappa also complains that the parties did not discuss the vexatious litigant designation, the bond requirement, or the pre-filing approval request. *See id.*, at ¶7. First, these are not disputed issues for discussion; rather, they are the various forms of relief that Plaintiffs sought to request from the Court based upon Respondents' vexatious behavior. But, putting that aside, Plaintiffs' counsel ***did*** address with Abhyanker – at both conferences – the fact that Plaintiffs would be seeking a vexatious litigant designation. And Abhyanker ***has admitted*** as much. In the Abhyanker Memo, Abhyanker confirms that at "the outset" of the April 3, 2026 meet-and-confer, counsel

for Plaintiffs "indicated … Plaintiffs intend to move for sanctions under Local Rule 83-8 … ." Local Rule 83-8 is the "Vexatious Litigants" rule.

Furthermore, it is of no moment that the parties did not discuss every example of Respondents' sanctionable conduct during the meet-and-confers – it would be nearly impossible, as such conduct permeates the litigation. While Abhyanker points to the stricken motions to dismiss (the filing of which predate April 3), the word-limit motion, the Texas charter, and the 119-topic deposition notice, these are merely additional examples of Respondents' vexatious and bad-faith litigation tactics. The underlying issues that these examples represent – disregarding rules, taking unsupportable positions, brazenly misrepresenting facts, and intentionally disregarding litigation norms – all were discussed, with numerous other examples, before Plaintiffs filed the Motion. That satisfies the meet-and-confer requirement.

Respondents' constant sanctionable behavior creates additional examples arising after meet-and-confers. And it continues: in the short time since Kappa filed its Opposition, it filed an opposition (ECF 188) to Plaintiffs' Motion to Compel Discovery (ECF 187), in which it falsely represented to the Court that Plaintiffs did not raise Kappa's waiver of discovery objections until March 16, 2026, despite the fact that counsel for Plaintiffs and Kappa exchanged emails on the subject months earlier (*see* **Exhibit 3** to Gavenman Decl.).

**1.    Motion was Timely; Emails Supplemented Meet-and-Confers**

Kappa's Opposition mentions several times that Plaintiffs filed their Motion "twenty-five days after" the second meet-and-confer. *See*, *e.g.*, Opposition, at ¶6. But there is no expiration date on a meet-and-confer. Rather, the Local Rules require meet-and-confers take place at least seven days ***prior*** to the filing of a motion. Plaintiffs met this requirement.

Kappa claims that "Plaintiffs may point to Mr. Gavenman's April 18, 2026 email, which offered [Kappa] 1,000 additional words for the consolidated motion to dismiss

as evidence of conferral." Opposition, at ¶13. Plaintiffs indeed point to this email, but not for evidence of conferral. Rather, the email highlights Respondents' disingenuous presentation to the Court of negotiations relating to the consolidated motion to dismiss and Kappa's planned motion requesting additional words. Specifically, in his declaration in support of Kappa's motion requesting additional words for the consolidated motion to dismiss, Abhyanker intentionally did not include Mr. Gavenman's email. Rather, he included correspondence between counsel but limited it to the correspondence that took place before Mr. Gavenman's offer. Such intentional distortion of the record is textbook bad faith.

### 2. Kappa Improperly Compares Its L.R. 7-3 Failures with Plaintiffs' Adherence to Rule

Kappa attempts to compare its egregious refusal to engage in a meet-and-confer prior to filing its ill-fated Rule 11 motion with Plaintiffs having two meet-and-confers with Kappa prior to filing Plaintiffs' Motion. The situations are not even remotely similar.

Before Kappa filed its Rule 11 Motion, ***Plaintiffs pressed Kappa*** to meet and confer on the issues Kappa raised in its letter setting forth the bases of the Rule 11 motion. Gavenman Decl., at ¶11. Abhyanker vehemently refused to engage in a meet-and-confer, stating that "Rule 11 does not require a response, a meet and confer, or an agreement by the responding party as a precondition to filing." *See* ECF 93-5, at 2. Such, of course, was entirely incorrect and worked to Respondents' detriment. Had they engaged in a meet-and-confer, they may have avoided the ignominy of what actually happened – filing the Rule 11 motion and then, mere hours after Plaintiffs filed their opposition, withdrawing it.[2]

---

[2] Kappa claims Plaintiffs previously referenced requirements of L.R. 7-3 to "*successfully argue[] for denial of Defendant's earlier Rule 11 motion.*" Opposition, at ¶16 (emphasis in original). Incorrect. Kappa withdrew the motion before it could be denied. On a related note, the fact that Kappa now claims Plaintiffs' argument was

REPLY I/S/O MOTION FOR SANCTIONS

The situation with Plaintiffs' Motion is, obviously, much different. Plaintiffs sought to meet and confer with Kappa and did so *twice*. Plaintiffs also followed up on both sessions with emails that supplemented the in-person and telephonic sessions. Gavenman Decl., at ¶5. This is not an "identical procedural failure" to Kappa's, as Kappa claims (Opposition, at ¶19); rather, it is the diametric opposite of Respondents refusing to engage in a meet-and-confer – which Plaintiffs properly described as "bad-faith and willfully uncooperative behavior" in their opposition to Kappa's Rule 11 motion. ECF 103, at 8.

### B.   Mando's Corporate Status

The Opposition confirms that Kappa was not reinstated as an entity in Texas until April 17, 2026 – days before Plaintiffs filed the Motion, and nearly *four years* after it was forfeited on June 24, 2022. Thus, Kappa had filed a lawsuit in the Northern District of California against Plaintiffs and been generally holding itself out as an operational business entity when it lacked authority to do so per Texas Tax Code. Thus, Plaintiffs' point remains valid. The Opposition itself undermines its own suggestion that Plaintiffs misled the Court on this point by noting that Plaintiffs' exhibit bore a time stamp showing the exact date of the entity status discussed. And, Mr. Gavenman's Declaration, which introduced the exhibit, explained that the exhibit "indicates Kappa's entity status *was*: 'Forfeited Existence.'" ECF 170-3, at ¶45 (emphasis added). Such statement was true, as at the time Kappa filed its Northern District Action, it had no authority to do so.

---

"successful[]" and attempts to adopt the same argument in its Opposition conflicts with its previous representation to the Court. In its Notice withdrawing the Rule 11 motion, Kappa claimed it was withdrawing the motion "in the interest of judicial economy and to avoid unnecessary expenditure of judicial and party resources on collateral matters," but "not based on any concession as to the merits of the motion, the factual record, or the propriety of Plaintiffs' conduct." ECF 104, at ¶¶2-3. Now, it appears, Kappa is conceding the merits of Plaintiffs' opposition.

7

## C.   Kappa Cannot Vexatiously Slow the Proceedings and Blame Plaintiffs for Noticing

Kappa's attempt to blame *Plaintiffs* for multiplying the proceedings in this case is the absolute height of gaslighting. According to Kappa, this case is mired in motions practice not because of Kappa's frivolous filings and vexatious behavior, but because Plaintiffs have tried to put a stop to the frivolous filings and vexatious behavior. This is not borne out by the reality reflected on the docket. *See* ECF 54, 55, 65, 68, 70, 71, 82, 93, 99, 107, 113, 118-19, 139, 151-54, 161.

Regarding the "three separate sanctions proceedings" that Kappa claims Plaintiffs "generated" (Opposition, at ¶80), the first was generated not by Plaintiffs but by this Court, *sua sponte*. *See* ECF 107. The Court ordered Respondents to show cause as to why they should not be sanctioned under Fed. R. Civ. P. 11(c) and the Court's inherent powers "for engaging in improper, harassing, and bad-faith conduct that has caused unnecessary delay and increased the cost of litigation needlessly." ECF 107 at 3-4. As for the Motion and Claim Construction Motion, it was, in reality, *Respondents* who generated those filings with their behavior. As the OSC did not cover any of Respondents' actions in the claim construction process (which had not yet been brought to the Court's attention), the Claim Construction Motion was necessary. And the instant motion was made necessary by Respondents' continued vexatious behavior and the need for specific relief (as provided by the vexatious litigant Local Rule).

As far as Plaintiffs incorporating herein their OSC Reply and Claim Construction Motion, such was done because this Motion encompasses all the acts across this entire litigation that necessitate the relief Plaintiffs seek.

## D.   Sanctionable Actions Described in Motion

### 1.   The Dual Motions to Dismiss

Respondents' arguments with respect to their filing of two motions to dismiss (one for each Plaintiff) are wholly meritless. They assert that they "filed two motions

… because [the motions] addressed two different Plaintiffs asserting different causes of action with almost no substantive overlap." Opposition, at ¶28. But complaints routinely contain multiple causes of action that are based upon different facts and legal theories. Such does not permit the filing of multiple motions to dismiss. Had Respondents wanted additional words or an additional brief, they should have made such request in advance.

At a minimum, Respondents should be sanctioned and ordered to pay the costs incurred by Plaintiffs in responding to a pair of motions that were stricken. While Kappa claims that "Plaintiffs' substantive arguments are recyclable" (Opposition, ¶30), Respondents made new arguments, and condensing two nearly 7,000-word oppositions into one is not without challenges.[3]

### 2. Word-Limit Motion and Omitted Email

Respondents' discussion of the word-limit motion declaration and related emails lacks context. Respondents claim Plaintiffs refused "to engage on the substance of the word-limit request while posing unrelated questions." Opposition, ¶31. Not true. As the email chain that Respondents attach as Exhibit B to Abhyanker's Declaration in support of the Opposition shows, counsel for Plaintiffs asked (repeatedly) two questions that absolutely were related to Respondents' request. Specifically, counsel for Plaintiffs wanted an answer as to whether Abhyanker had been recording meet-and-confers without authorization – something Plaintiffs had long suspected but that seemed fairly certain after the April 3, 2026 meet-and-confer. *See* Gavenman Decl., at ¶14. In addition, counsel for Plaintiffs inquired as to why Abhyanker was requesting that Plaintiffs stipulate to an increase in the word limit for a motion when Abhyanker had refused Plaintiffs' identical request a month earlier on the basis that he did "not have the power" to do so. *Id.*, at ¶12.

---

[3] Indeed, Respondents cannot fairly complain about the difficulty of filing a combined motion to dismiss and lament resulting prejudice while claiming Plaintiffs required "minimal additional work" at "negligible" cost to combine oppositions.

REPLY I/S/O MOTION FOR SANCTIONS

Abhyanker refused to answer either question directly, over numerous emails. *See* ECF 185-3. Eventually, despite this refusal, counsel for Plaintiffs offered to stipulate to Kappa receiving an additional 1,000 words for its combined motion to dismiss; Abhyanker, however, never responded to that offer and failed to describe it in his presentation to the Court. Gavenman Decl., at ¶13.

### 3. The Parties' Respective Discovery Obligations Are Not Remotely Similar

Kappa's attempt to equate the parties' respective actions in discovery to date is beyond disingenuous, as Plaintiffs explained in detail in their Motion to Compel (ECF 187), which they incorporate herein by reference. In short, Plaintiffs served discovery on Kappa on October 21, 2025, making responses due November 21, 2025. Gavenman Decl., at ¶15. Kappa, which did not seek or receive an extension of its deadline, did not respond until December 8, 2025 – 17 days late. *Id.* at ¶17. While Kappa waived all objections to the discovery because of its tardy responses (*see*, *e.g.*, *Perdomo v. Noem*, Case No. 2:25-cv-05605-MEMF-SPx, 2026 WL 166570, at *3 (C.D. Cal. Jan. 16, 2026)), it still asserted blanket confidentiality (and other) objections to virtually all of Plaintiffs' discovery requests and refused to provide documents or information without a protective order. Gavenman Decl., at ¶18. Abhyanker later asserted no protective order was necessary because Kappa had not been asked to produce confidential documents, but he eventually relented, and the parties stipulated to a protective order on February 3, 2026. *Id.*, at ¶19; ECF 100. Respondents, however, did not produce any documents until May 12, 2026, when they provided eight documents in a single .pdf that consisted almost entirely of documents that originated with Plaintiffs or that were public information. Gavenman Decl., at ¶20. This transparent attempt to feign compliance with discovery did not fulfill Kappa's obligations. *Id.*, at ¶21.

Meanwhile, Kappa served discovery requests on November 6, 2025, that were ***expressly limited*** to "issues of personal jurisdiction, venue, and service of process." *Id.*,

REPLY I/S/O MOTION FOR SANCTIONS

at ¶22. Yet even after abandoning its position that jurisdiction in this Court was improper, Kappa insisted Plaintiffs answer that jurisdictional discovery. *Id.* at ¶23. Plaintiffs did so timely and objected to the fact that the discovery was limited to jurisdictional issues that were no longer pending – and thus moot – and the requests were therefore disproportionate to the needs of the case. *Id.,* at ¶24. Kappa then "withdrew" those discovery requests more than three months later – when it was reminded it had issued requests limited to jurisdiction – and issued new requests.[4] *Id.,* at ¶25. Plaintiffs timely responded to those requests as well, but they noted that – as Kappa had already used up its 25 interrogatories on jurisdictional questions that it insisted Plaintiffs answer – Kappa could not issue additional interrogatories.[5] *Id.*, at ¶26. In addition, Kappa's assertions about attempting to discuss "written discovery timing, discovery obligations, and proposed production schedules" (Opposition, at ¶16) are of no moment, as those attempts came long after Abhyanker violated the Federal and Local Rules, and only after Plaintiffs gave him a last chance to produce documents before bringing a motion to compel; a chance that Respondents squandered by trying to wholly restart the conversation, rather than actually produce any documents. *See* ECF 187.

### 4.  Service Issues

Respondents blame their process server for the process server's declaration in a proof of service filed March 21, 2026 (ECF 140) (under penalty of perjury) that he had served Edward Lee, as agent for AIDP – when Mr. Lee had died weeks earlier.

---

[4] Kappa's statement that Plaintiffs have not produced a document in response to requests "outstanding since November 5, 2025" (Opposition, at ¶16), is, thus, nonsensical. Kappa **withdrew those requests**. Kappa cannot claim it has withdrawn its initial requests but complain that Plaintiffs have not produced documents responsive thereto.

[5] Indeed, it is quite something that Abhyanker could issue interrogatories related only to jurisdiction; insist Plaintiffs answer the interrogatories even after Kappa had abandoned its jurisdictional argument; and then, after being reminded that their interrogatories were limited to jurisdiction, unilaterally award himself a do-over.

Specifically, Kappa states the proof of service "was prepared by a process server, not by counsel." Opposition, at ¶38. But the process server did not *file* the proof of service; Abhyanker did. And Abhyanker was aware as of March 3, 2026 – nearly three weeks earlier – that Mr. Lee had died. *See* **Exhibit 4** to Gavenman Decl.

### 5.   Missed Deadline

Continuing his strategy of shifting blame, Abhyanker states his filing an opposition to Plaintiffs' motion to dismiss Kappa's second amended counterclaims four days late was due to "a calendaring error by a solo practitioner litigating against seven attorneys at three law firms." Opposition, at ¶39. But such is no excuse. First, Abhyanker's constant reference to "seven attorneys at three law firms" is wholly disingenuous, as Respondents have found the resources to file the Northern District Action and a host of vexatious, frivolous papers. Moreover, it is unclear how the number of attorneys copied on emails somehow prevents Respondents from correctly calendaring a deadline. Additionally, Abhyanker's laments about being an underdog, solo practitioner are belied by his law firm's website, which lists other attorneys and boasts that it "represent[s] businesses and entrepreneurs of all sizes from 180+ countries around the world," including "celebrities, multinational corporations, venture-funded startups, movie studios, musicians, record labels, artists, universities, investment banks, and venture capital firms." *See* **Exhibit 5** to Gavenman Decl.

Respondents also claim that "[n]o prejudice resulted: the hearing proceeded as scheduled, and Plaintiffs filed their reply within the time permitted." Opposition, at ¶39. However, Plaintiffs had to scramble to prepare a reply brief in less than half the time they would have had if Kappa filed a timely opposition.

### 6.   L.R. 7-3 Allegations

Regarding Plaintiffs' allegation that Defendant's March 6, 2026 phone calls concerned a motion to stay and not the motions to dismiss, Kappa states: "In fact, the motion to stay and the motions to dismiss were interrelated; the proposed stay was

premised on the pending motions to dismiss, and the March 6 calls were intended to discuss both." Opposition, at ¶40. Wrong. Again. On March 6, Abhyanker emailed counsel for Plaintiffs and linked Kappa's proposed motion to stay not to the motions to dismiss but to "the outcome of the USPTO reexamination." *See* **Exhibit 6** to Gavenman Decl. In a separate March 6 email, Abhyanker wrote that Kappa was "willing to stipulate to a stay of the case in light of the pending USPTO reexamination of U.S. Patent No. 8,637,061." *See* **Exhibit 7** to Gavenman Decl. Clearly, the meet-and-confer dealt with the motion to stay (not the motions to dismiss), and the motion to stay was connected to the USPTO reexamination (not the motions to dismiss).

Finally, Respondents' assertion that Kappa is exempt from a vexatious litigant label because it is a defendant is without merit. Courts routinely declare defendants to be vexatious litigants. *See United States v. Fabricant*, No. CR 03-01257-RSWL-1, 2015 WL 12857301, at *8 (C.D. Cal. Nov. 18, 2015); *Beste v. Lewin*, 488 B.R. 663, 672 (N.D. Cal. 2012) (finding meritless defendant's argument that defendants cannot be declared vexatious litigants); *Bank of New York Mellon v. Brewer*, No. C-12-03179 RMW, 2012 WL 3904342, at *5 (N.D. Cal. Sept. 7, 2012). Abhyanker is certainly not exempt from such a label. *See* 28 U.S.C. §1927.

## CONCLUSION

For the foregoing reasons, and those in Plaintiffs' Motion, the Court should grant Plaintiffs' Motion.

Dated: May 22, 2026

**HUGHES HUBBARD & REED LLP**

By: /s/ Jeffrey S. Gavenman
Jeffrey S. Gavenman (admitted *pro hac vice*)

*Counsel for Plaintiffs/Counterclaim Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,040 words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order (ECF No. 16).

Dated: May 22, 2026     **HUGHES HUBBARD & REED LLP**

            By: /s/ Jeffrey S. Gavenman
             Jeffrey S. Gavenman (admitted *pro hac vice*)

            *Counsel for Plaintiffs/Counterclaim Defendants*

REPLY I/S/O MOTION FOR SANCTIONS

## CERTIFICATE OF SERVICE

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626. On May 22, 2026, I served the following document(s):

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO LOCAL RULES 83-7 AND 83-8, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWER**

on the parties stated on attached service list

| | |
|---|---|
| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

☒ **BY COURT'S CM/ECF SYSTEM.** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.

**BY E-MAIL.** By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

**(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 22, 2026, at Costa Mesa, California.

/s/ SALVATORE PICARIELLO
Salvatore Picariello