Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John Cox
(Admitted *Pro Hac Vice)*
  John.Cox@btlaw.com
Lauren U. Baker
(Admitted *Pro Hac Vice*)
  lauren.baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Rd NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile:  404-264-4033

Jeffrey Gavenman
(Admitted *Pro Hac Vice*)
jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
(Admitted *Pro Hac Vice*)
jeremy.schulman@hugheshubbard.com
James Schaller
(Admitted *Pro Hac Vice*)
jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street, N.W., Suite 600
Washington, DC 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and
THREOTECH LLC and Third-Party Defendant, AIDP, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

NEUROCENTRIA, INC. and
THREOTECH LLC,

    Plaintiffs/Counterclaim Defendants,

    v.

MANDO INTERNATIONAL, LLC d/b/a
KAPPA NUTRITION,

    Defendant/Counterclaim Plaintiff,

    v.

AIDP, INC.,

    Third-Party Defendant.

Case No. 2:25-cv-05871-FLA-MAR

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY AND FOR ATTORNEYS' FEES**
[*Filed Concurrently with the Supplemental Declaration of Jeffrey Gavenman*]

**DISCOVERY MATTER**

Hearing:    June 17, 2026
Time:    11:00 a.m. PST
Courtroom: 790, 7th Floor
Judge:    Hon. Margo A. Rocconi
Discovery Cutoff: September 11, 2026
Pretrial Conference: February 5, 2027
Trial Date: March 9, 2027

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 4

    A.    Plaintiffs' New Claims Are Irrelevant to the Motion ................................. 4

    B.    Kappa Waived Its Objections ...................................................................... 6

    C.    Kappa's May 12, 2026 Production is Wholly Deficient .............................. 8

    D.    Kappa Fails to Explain Why it Has Not Produced Documents Required by the Patent Rules ......................................................................... 9

    E.    Kappa Must Be Ordered to Produce a Privilege Log ............................... 10

    F.    Attorneys' Fees Are Warranted ................................................................. 10

CONCLUSION.............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*LegalForce RAPC Worldwide P.C. v. MH Sub I, LLC,*
   Case No. 24-cv-00559-JSC, 2026 WL 1329654  (N.D. Cal., May 13, 2026) ......................................................................................................1

*Perdomo v. Noem,*
   Case No. 2:25-cv-05605-MEMF-SPx, 2026 WL 166570 (C.D. Cal. Jan. 16, 2026)........................................................................................7

*Richmark Corp. v. Timber Falling Consultants,*
   959 F.2d 1468 (9th Cir. 1992) ..........................................................6, 7

*Talbots Pharms. Fam. Prods. LLC v. Skanda Grp. of Indus., LLC,*
   No. 2:24-cv-09007-TJH-MAR, 2025 WL 2092810 (C.D. Cal. Mar 18, 2025) ......................................................................................................7

**Statutes and Rules**

11 U.S.C. § 1117(a) ......................................................................................2

Fed. R. Civ. P. 37(a)(5)(A) .........................................................................12

Fed. R. Civ. P. 37(a)(5)(A)(ii) ....................................................................11

Fed. R. Civ. P. 37(a)(5)(A)(iii) ...................................................................11

FRCP 33 .........................................................................................................3

Local Rule 37-1 ..........................................................................3, 4, 10, 11

LR 37-2.1 and 37-2.2 ....................................................................................4

Rule 26(b)(1)..................................................................................................8

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and THREOTECH, LLC ("Plaintiffs") respectfully submit this reply brief ("Reply") in support of their Motion to Compel Discovery and for Attorneys' Fees (ECF 187) ("Motion").

## PRELIMINARY STATEMENT

The Opposition to the Motion (the "Opposition") (ECF 188) filed by Defendant/Counterclaim Plaintiff MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS ("Kappa") is riddled with the exact same type of bad-faith arguments that led Judge Aenlle-Rocha to issue an Order to Show Cause (ECF 107) in this case and which, among other sanctionable behavior, prompted Plaintiffs to file two separate sanctions motions.[1] And, as cited in the Motion, several Judges across the country have already sanctioned, enjoined, or otherwise remarked upon the bad-faith, dishonest behavior and arguments of Kappa's counsel, Mr. Raj Abhyanker. Motion, at 2. Indeed, *just last month* yet another Judge remarked on such actions by Abhyanker. *See* Supplemental Declaration of Jeffrey Gavenman ("Gavenman Supp. Decl."), **Exhibit 22** (opinion and order entered on May 13, 2026, in *LEGALFORCE RAPC WORLDWIDE P.C. v. MH SUB I, LLC*, Case No. 24-cv-00559-JSC, 2026 WL 1329654 (N.D. Cal., May 13, 2026)). In her Order, Judge Jacqueline Scott Corley wrote: "Plaintiff's case became exceptional because Plaintiff alleged facts it knew to be false, discovered other facts demonstrating its case was meritless, took steps to obscure those facts, and continued to litigate its action." *Id.*, at *9. Judge Corley added that "not only did Plaintiff's complaint include overstatements and outright falsities, but so did the trial testimony of Plaintiff's only witness (Mr. Abhyanker), and trial representations by trial counsel (also Mr. Abhyanker)." *Id.* at *12. Judge Corley ordered the plaintiff, the

---

[1] *See* ECF 161 (the "Claim Construction Motion") and ECF 170 (the "Vexatious Litigant Motion") (collectively, the "Sanctions Motions"), which are incorporated herein along with the OSC Reply (ECF 139).

law firm founded and wholly owned by Abhyanker, to pay a substantial amount in fees and costs pursuant to 11 U.S.C. § 1117(a) (a statute authorizing the award of attorneys' fees to the prevailing party in "exceptional cases").

The Opposition contains more of the same bad-faith, disingenuous arguments that many other judges, including Judge Aenlle-Rocha, have already remarked upon.[2] One sentence perfectly illustrates this point: "Defendant timely served written responses on December 8, 2025 – 17 days after the original deadline." Opp., ¶ 38. To any ordinary litigant, a response served seventeen days after the deadline is the opposite of "timely." Yet Kappa casually presents both propositions in the same breath as though they are entirely consistent (and that Kappa did nothing wrong), perhaps trying to mislead the Court into thinking that the deadline was later moved, by calling it the "original deadline." To be clear, Kappa served its responses 17 days after *the* deadline, not after any "original deadline." As such, Kappa's responses were, in no way, "timely."

These same disingenuous contentions and arguments permeate the Opposition. For example, Kappa argues that the FAC[3] added non-patent claims to the existing patent claims, thus, Kappa should somehow be absolved from producing patent-related discovery. In addition, in its Opposition, Kappa asserts trade-secret objections to the new non-patent claims in the FAC and then somehow invokes those objections to avoid

---

[2] Kappa argues that the "cited out-of-circuit cases involve different conduct in different litigation. They are not relevant to whether discovery should be compelled on the record presented here." Opp., ¶ 48. Kappa does not state how the conduct is different – because it cannot. These cases, and indeed this case, all demonstrate the same underlying conduct on the part of Kappa and its counsel – taking unsupportable positions, brazenly misrepresenting facts, and ignoring the law. Such conduct is directly relevant to the Court's assessment of Kappa and Abhyanker's lack of credibility in this dispute.

[3] All capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion.

producing the patent-related discovery that is the subject of this Motion.[4] If those arguments are hard to follow, it is because they do not make sense.

Moreover, Kappa disingenuously explains its (improper) purported "narrowing" of discovery requests to Plaintiffs (Opp., ¶ 13) to give the false impression that the parties somehow negotiated new sets of requests at the March 16 Meet-and-Confer. Not true. The March 16 Meet-and-Confer was about the present Motion, and not about Kappa's discovery it propounded upon Plaintiffs. Kappa attempted to stave off this Motion by appealing to its own prior discovery requests to Plaintiffs, only to be reminded that such requests were limited to moot, jurisdictional discovery. ECF 187-2, ¶¶ 19-26. Kappa then withdrew Kappa's document requests and issued entirely new ones, and – knowing Kappa had used all of Kappa's interrogatories – purported to "narrow" those interrogatories but, in reality, issued new ones in violation of FRCP 33. *Id.*, ¶¶ 27-29.  In any event, that discovery is not the subject of this Motion.

In addition, Kappa's statement that "[f]ollowing the FAC, Defendant requested a renewed conference on the operative posture" (Opp., ¶ 4) is wholly disingenuous. The FAC was filed on February 26, 2026 (ECF 110). Thus, the FAC had already been filed well in advance of the parties' March 16 Meet-and-Confer and the corresponding Rule 37-1 process initiated by Plaintiffs.

And in that vein, the May 18, 2026 meet-and-confer was not a LR 37-1 conference, despite Kappa's statements otherwise. *See, e.g.,* Opp., ¶ 4, 17. Kappa would have had to have served a proper LR 37-1 letter first, which it did not.[5] The May 18,

---

[4] This argument truly makes no sense as Plaintiffs did not propound additional discovery concerning the new claims in the FAC until May 28, 2026 – 10 days after Kappa filed its Opposition. Gavenman Supp. Decl., ¶ 7.  So it is unclear how Kappa had any trade-secret objections to such non-existent discovery when it filed its Opposition.

[5] Kappa references a May 9, 2026 correspondence (Opp., ¶ 4), but that is not a proper LR 37-1 letter. First, it was a response to Plaintiffs' transmittal of the Joint Stipulation to Kappa (and thus Plaintiffs attached this correspondence to the Motion per Kappa's

REPLY I/S/O MOTION TO COMPEL

2026 meet-and-confer was meant to address Plaintiffs' objections to Kappa's March 16, 2026 discovery requests and a proposed ESI Stipulation. Gavenman Supp. Decl., ¶ 4. As Kappa itself acknowledges, Plaintiffs' counsel informed Kappa that the May 18, 2026 conference would not address Plaintiffs' Requests as Plaintiffs already met their meet-and-confer obligations with respect to those requests. *See* Opp., ¶ 26. And they plainly have – Plaintiffs complied with all the prerequisites of LR 37. Plaintiffs sent the LR 37-1 letter (the March 9 Letter) and held a meet-and-confer pursuant to LR 37-1 on March 16, 2026 (the March 16 Meet-and-Confer) – the meet-and-confer that Kappa *admits* happened (Opp., ¶ 12).[6] At the March 16 Meet-and-Confer, Kappa promised to produce all responsive documents by May 1, 2026. Motion at 3-4. After May 1, 2026 came and went without any production from Kappa, Plaintiffs prepared the Joint Stipulation pursuant to LR 37-2.1 and 37-2.2. Kappa refused to cooperate, thus forcing Plaintiffs to engage in motions practice. This Court must compel Kappa to comply with its discovery obligations.

## ARGUMENT

### A.   Plaintiffs' New Claims Are Irrelevant to the Motion

Kappa's explanations for its lack of production make no sense. The Motion concerns Kappa's failure to respond timely or properly to Plaintiffs' Requests concerning their patent infringement claim.[7] Plaintiffs' Requests ask for specific

---

request. *See* Motion at 13). Second, it did not contain the information that LR 37-1 requires.

[6] Kappa's arguments with respect to the meet-and-confer are internally inconsistent. Kappa argues that a Local Rule 37-1 has not occurred (Opp., ¶¶ 4, 23) but elsewhere in the Opposition admits that it plainly has. Opp., ¶ 12.

[7] Kappa admits that Plaintiffs' Requests concerned patent infringement. *See, e.g.,* Opp., ¶¶ 8, 32.

information about the patent at issue[8] and Kappa's defenses thereto. Kappa's response is, in sum, that Kappa should not have to produce documents related to trademark, unfair competition and false-advertising claims (*see, e.g.,* Opp., ¶¶ 27-31), which is nonsensical. The Motion <u>does not seek</u> discovery aimed at the new claims in the FAC, and any arguments regarding such discovery are wholly irrelevant. And, in fact, at the time that the Motion was filed, Plaintiffs had not even served discovery relating to the new, non-patent claims in the FAC (as opposed to the patent claims that: (i) were in the original complaint; (ii) stayed in as claims in the FAC; and (iii) are the subject of Plaintiffs' Requests). Gavenman Supp. Decl., ¶ 7. Thus, any hypothetical dismissal order regarding those new claims (*see, e.g.* Opp., ¶¶ 27-31) has no bearing on Plaintiffs' patent infringement claims for which discovery is sought in the Motion. Moreover, it is entirely unclear what "narrowing" Kappa expects for the definition of "Accused Products" (Opp., ¶¶ 32-34) before it can produce responsive documents, as the definition in Plaintiffs' Requests has not changed. Similarly, it is entirely unclear what additional "narrowing [of] the subject-matter scope keyed to the FAC" (Opp., ¶ 33) is needed. Plaintiffs' Requests are limited to their patent infringement claims on the '061 patent that were present in the original complaint as well as the FAC, and such is the discovery Plaintiffs are seeking to compel.

Yet Kappa advances a red herring argument that the Motion seeks every document that might conceivably relate to every claim in the FAC (*see, e.g.* Opp., ¶ 27). It certainly does not, as can be seen from the Plaintiffs' Requests themselves, the March 9 Letter, the Joint Stipulation, and as discussed at the March 16 Meet-and-Confer. Instead of providing some explanation for its discovery failures that are actually the

---

[8] As Kappa admits (*see* Opp. ¶ 33), Plaintiffs explicitly informed Kappa that they were only seeking responsive information and documents with respect to the one patent at issue in the FAC (U.S. Patent No. 8,637,061).

REPLY I/S/O MOTION TO COMPEL

subject of the Motion, Kappa instead addresses a discovery dispute that does not actually exist (yet).

### B. <u>Kappa Waived Its Objections</u>

Kappa's "arguments" for why it did not waive objections similarly make no sense. Kappa withheld information and documents on confidentiality grounds. Motion at 6-7. It later contradicted itself by stating that Kappa is "not aware of any materials it has been asked to produce that require confidential or highly confidential treatment." *Id.* at 8-9. In the Opposition, Kappa appears to double down by stating that "the categories of Defendant's materials genuinely warranting trade-secret protection in a pure patent-infringement defense were correspondingly narrow." Opp., ¶ 35. It is thus *entirely* unclear why, then, these documents have not been produced, as this is the material at which the Motion is aimed. Kappa must be ordered to produce these documents.

Kappa attempts to reconcile its contradictory position with an argument that, on its face, does not work chronologically, evidencing bad faith. *See, e.g.,* Opp., ¶ 36. Kappa's confidentiality objections were asserted in its untimely December 8, 2025 Responses. Motion at 6-7. Kappa's various representations that Kappa was not asked to produce any confidential materials were made between January 22-26, 2026. *Id.* at 8-9. The FAC was filed on February 26, 2026. ECF 110. Whether the FAC later introduced additional categories of potentially confidential information is wholly beside the point. It cannot explain why Kappa simultaneously maintained in January 2026 that no confidential materials were implicated while relying on confidentiality objections to withhold information.

Kappa's sole remaining attempt to argue against waiver is to factually distinguish Plaintiff's cited cases. Opp., ¶¶ 37-39. But Kappa, once again, misses the point. Plaintiffs cited those cases for the unremarkable and well-settled proposition that untimely discovery responses result in waiver of objections. *Richmark Corp. v. Timber*

REPLY I/S/O MOTION TO COMPEL

*Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see also Talbots Pharms. Fam. Prods. LLC v. Skanda Grp. of Indus., LLC*, No. 2:24-cv-09007-TJH-MAR, 2025 WL 2092810, at *1 (C.D. Cal. Mar 18, 2025) (Judge Rocconi holding that a party who failed to timely respond or object to discovery "waived all objections"). Kappa does not meaningfully dispute this principle and instead spends several paragraphs distinguishing the cases on their facts: that *Talbots* involves post-judgment discovery and that *Richmark* arose in a different procedural context. But Kappa does not identify how such factual distinctions affect the waiver analysis. Thus, such distinctions are distinctions without a difference. The 2015 amendments to the Federal Rules of Civil Procedure did not alter the waiver principle. *See, e.g.*, *Perdomo v. Noem*, Case No. 2:25-cv-05605-MEMF-SPx, 2026 WL 166570, at *3 (C.D. Cal. Jan. 16, 2026).

Instead, Kappa states, without citing to any authority, that "Courts in this circuit decline to find waiver where the responding party engaged in good-faith production negotiations and the propounding party waited months before raising the issue." Opp., ¶ 39. Even if that was accurate law (and Kappa provides no authority), Kappa is dead wrong on the facts. Plaintiffs' counsel raised the waiver issue *almost immediately* upon Kappa missing the November 21, 2025 deadline. As can be seen in **Exhibit 23** to the Gavenman Supp. Decl., in a November 26 and 27, 2025 email exchange, Plaintiffs' counsel informed Abhyanker that Kappa had waived objections by virtue of its tardy discovery responses. Gavenman Supp. Decl., ¶ 6. And Kappa failed to engage in production negotiations until the March 16 Meet-and-Confer – only after Plaintiffs sent Kappa the March 9 Letter – months after Plaintiffs first informed Kappa that Kappa had waived all its objections. Further, even after agreeing at the March 16 Meet-and-Confer to produce all relevant documents by May 1, Kappa then wholly failed to meet that commitment; indeed, it *failed to produce even a single document*. ECF 187-2, ¶ 18.

Finally, Kappa argues that "waiver of objections is not waiver of Rule 26(b)(1) proportionality" (Opp., ¶ 39) – again without citing a single authority for such a

REPLY I/S/O MOTION TO COMPEL

proposition. But, even if true, Kappa does not present any explanation to support a position that the patent-related requests at issue in the Motion are disproportionate. Thus, this argument fails.

### C.   <u>Kappa's May 12, 2026 Production is Wholly Deficient</u>

Kappa misrepresents what it produced on May 12, 2026 (Opp., ¶ 5). Again, Kappa produced eight documents (with two documents being near-duplicates) – a production that consisted almost entirely of documents originating from the Plaintiffs, including Plaintiffs' own cease-and-desist correspondence, and the agreement at issue in the litigation (the TMLA). Notably, Kappa ***did not*** produce "published scientific articles and review articles supporting the structure/function label claims" as alleged in the Opposition (*see id.*). The only produced document even remotely matching that description appears to be a marketing piece summarizing general literature regarding magnesium's purported effects on brain function. *See, e.g.,* Motion at 14; *see also* Gavenman Supp. Decl., **<u>Exhibit 24</u>**. While this document does reference certain studies, those studies were not produced.

Kappa's boast that its May 12 Production is "real, responsive, and Bates-indexed" (Opp., ¶ 5) is baffling, as those are the absolute baseline requirements for any document production. The issue is not whether Kappa produced documents in the appropriate format, but whether it complied with its discovery obligations. Which it decidedly did not.

Remarkably, Kappa identifies some documents that are outstanding (Opp., ¶ 43), which are ***directly responsive*** to Plaintiffs' Requests:

| Document Mentioned in Opp., ¶ 43 | Relevant RFP(s) |
| --- | --- |
| "Complete quantitative formulations" | 4, 5, 45, 47 |
| "Master batch records and BPR's" | 4, 44 |
| "Supplier contracts and pricing" | 14, 18 |

REPLY I/S/O MOTION TO COMPEL

| "Sales and financial data broken out by month" | 26, 58 |
|---|---|
| "Amazon Seller Central experts" | 29 |
| "Pricing strategy and elasticity analyses" | N/A |
| "Business plans" | N/A |
| "QA/QC SOPs" | 16, 46 |
| "Full manufacturing facility identification" | 17 |

Gavenman Supp. Decl., ¶ 10. Kappa is, therefore, aware of at least some documents that must be produced. Nonetheless, Kappa's only attempted justification for failure to produce them in the over-seven-months since the Requests were issued is to state that the production of these materials somehow depends on the FAC and the pending Motion to Dismiss. But the FAC was not even filed until February 26, 2026, and the Motion to Dismiss was filed on April 24, 2026 (ECF 169), long after Kappa was required to respond to the Requests. Furthermore, there is no stay on discovery while the Motion to Dismiss is pending, and Kappa is not allowed to simply decide its own obligations are stayed whenever it feels so inclined.  As seen from above chart, the vast majority of the documents *identified by Kappa itself* of what it has yet to produce are documents responsive to Plaintiffs' Requests, and Kappa offers no justifiable reason for why it has not yet produced these documents, or many other responsive documents.

**D.    Kappa Fails to Explain Why it Has Not Produced Documents Required by the Patent Rules**

Kappa's sole argument for not producing documents pursuant to the Patent Rules is that the relevant authority is not spelled out in the Motion. This is, again, wholly disingenuous. Plaintiffs set forth both Kappa's obligations under the Patent Rules and the outstanding documents in their March 9 Letter and the Joint Stipulation, which is

9

incorporated by reference in the Motion. Kappa must be compelled to produce such documents.

### E.      Kappa Must Be Ordered to Produce a Privilege Log

Kappa's argument regarding the privilege log fails.  As more fully set forth in the Joint Stipulation (187-1 at 11-12), Kappa asserted an attorney-client privilege objection to numerous RPD Requests. As such, it is of no moment that its May 11 production is non-privileged – it has previously withheld documents on such grounds and must be compelled to produce a privilege log so that Plaintiffs can assess those claims. If Kappa is now contending that it is not withholding any documents on the basis of privilege, then it must be ordered to submit revised Responses to RPD Requests and produce all documents previously withheld pursuant to such an objection.

### F.      Attorneys' Fees Are Warranted

Kappa provides no basis for the Court to deny attorneys' fees. As more fully set forth in the Motion, Plaintiffs worked for months in good faith to obtain discovery without court intervention. Specifically, Plaintiffs expended substantial time and expense by first emailing back and forth with Kappa about deficient discovery responses, then drafting a LR 37-1 letter (the March 9 Letter), participating in the March 16 Meet-and-Confer, drafting a Joint Stipulation after Kappa failed to produce documents it promised to produce, and now drafting the Motion (and this Reply) after Kappa refused to cooperate in the Joint Stipulation process. Motion at 18. In response, Kappa does not acknowledge the March 9 Letter or the March 16 Meet-and-Confer. Instead, Kappa makes the same disingenuous arguments addressed above, and Plaintiffs' response remains the same. Specifically, it is unclear what "narrowing" needs to happen as the "patent-era Requests" address patents, not any claims in the FAC. Moreover, the Motion is not concerned with discovery on the new claims (and such discovery had not even been served as of the filing of the Motion and the Opposition). Gavenman Supp. Decl., ¶ 7. Next, the parties were not required to engage in any

"renewed" LR 37-1 conference – Plaintiffs followed all rules with respect to attempting to obtain discovery from Kappa and are now entitled to bring this Motion. It is unclear why a privilege log must be "keyed to the operative discovery framework" (Opp., ¶ 46) and cannot be produced now when Kappa has already responded to Plaintiffs' Requests and indicated that it was withholding allegedly privileged documents. And finally, it is unclear how a production of eight documents (two of which are duplicates) somehow "satisfies a substantial portion of Plaintiffs' Requests subject to narrowing" (*id.*) when Kappa itself identified numerous documents that have yet to be produced that are responsive to Plaintiffs' Requests. For similar reasons, Kappa's nondisclosure was not justified so as to preclude an award of attorneys' fees pursuant to Fed. R. Civ. P. 37(a)(5)(A)(ii). Kappa has not provided any justification for why it failed to produce all responsive documents to Plaintiffs' Requests nor has it provided any basis to deny an award of attorneys' fees.

Finally, Fed. R. Civ. P. 37(a)(5)(A)(iii) is also inapplicable here as Plaintiffs are not in default of any discovery obligations as Kappa alleges (Opp., ¶ 47). It is not true that "Plaintiffs have produced no documents in response to Defendant's discovery, which has been outstanding since November 2025." *Id.* As more fully set forth in the Motion, the November 2025 discovery was Jurisdictional Discovery that was rendered moot when Kappa withdrew its objections to this Court's jurisdiction prior to Plaintiffs responding to such discovery. Motion at 10-11. Nevertheless, Kappa forced Plaintiffs to respond, and Plaintiffs timely did so, specifically noting, among other objections, that Kappa's Jurisdictional Discovery requests were not proportionate to the needs of the case, given that the jurisdictional issues were no longer relevant. Kappa did not contest this position until it attempted to do so during the March 16 Meet-and-Confer in a transparent attempt to deflect from its own failures, before being reminded that its requests were limited to Jurisdictional Discovery. Kappa then ***expressly withdrew all prior requests for production*** and issued entirely new requests. *See* ECF 187-2, ¶ 32.

REPLY I/S/O MOTION TO COMPEL

So, it is false that Defendant's discovery requests have been outstanding since November 2025, and it is frivolous, bad-faith conduct to premise on argument on such false representation.

Simply put, Plaintiffs are entitled to an award of attorneys' fees pursuant to Fed. R. Civ. P. 37(a)(5)(A), and Kappa provides no good argument otherwise.

## CONCLUSION

For the foregoing reasons, and those in Plaintiffs' Motion, the Court should grant Plaintiffs' Motion.

Dated: June 3, 2026                    **HUGHES HUBBARD & REED LLP**

                                        By: /s/ Jeffrey S. Gavenman
                                            Jeffrey S. Gavenman (admitted *pro hac vice*)

                                        *Counsel for Plaintiffs/Counterclaim Defendants*

REPLY I/S/O MOTION TO COMPEL

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains **3,563** words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order (ECF No. 16).

Dated: June 3, 2026          **HUGHES HUBBARD & REED LLP**

By: /s/ Jeffrey S. Gavenman
    Jeffrey S. Gavenman (admitted *pro hac vice*)

*Counsel for Plaintiffs/Counterclaim Defendants*

REPLY I/S/O MOTION FOR SANCTIONS

# CERTIFICATE OF SERVICE

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626. On June 3, 2026, I served the following document(s):

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY AND FOR ATTORNEYS' FEES**

on the parties stated on attached service list

| | |
|---|---|
| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

☒ **BY COURT'S CM/ECF SYSTEM.** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.
**BY E-MAIL.** By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.
**(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
☒ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 3, 2026, at Costa Mesa, California.

/s/ SALVATORE PICARIELLO
Salvatore Picariello