

Sang Dang, Esq. (SBN 214558)
  sdang@fortislaw.com
Salvatore Picariello, Esq. (SBN 190442)
  spicariello@fortislaw.com
FORTIS LLP
650 Town Center Drive, Suite 600
Costa Mesa, CA 92626
Telephone: 714-839-3800
Facsimile: 714-795-2994

John Cox
(Admitted *Pro Hac Vice)*
  John.Cox@btlaw.com
Lauren U. Baker
(Admitted *Pro Hac Vice*)
  lauren.baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Rd NE, Suite 2900
Atlanta, GA 30326
Telephone: 404-264-4036
Facsimile:  404-264-4033

Jeffrey Gavenman
(Admitted *Pro Hac Vice*)
jeffrey.gavenman@hugheshubbard.com
Jeremy Schulman
(Admitted *Pro Hac Vice*)
jeremy.schulman@hugheshubbard.com
James Schaller
(Admitted *Pro Hac Vice*)
jake.schaller@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street, N.W., Suite 600
Washington, DC 20006
Telephone: 202-721-4600
Facsimile: 202-721-4646

Attorneys for Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and THREOTECH LLC and Third-Party Defendant, AIDP, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

NEUROCENTRIA, INC. and THREOTECH LLC,

    Plaintiffs/Counterclaim Defendants,

    v.

MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION,

    Defendant/Counterclaim Plaintiff,

    v.

AIDP, INC.,

    Third-Party Defendant.

Case No. 2:25-cv-05871-FLA-MAR

**PLAINTIFFS' RESPONSE TO "DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY IN CONNECTION WITH PENDING MOTIONS FOR SANCTIONS (DKTS. 161, 170), ORDER TO SHOW CAUSE (DKT. 107), AND MOTION TO COMPEL (DKT. 187)" (ECF 195)**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 6

    A.    The Notice is Procedurally Improper, and the Court Need Not Consider It ........................................................................................ 6

    B.    USPTO's Preliminary First Office Action Has No Legal Significance in This Litigation ............................................................ 7

    C.    Kappa Fails to Show the Preliminary Rejection Has Any Relevance to the Allegations in this Case ......................................... 8

    D.    Plaintiffs are Under No Duty to Disclose the First Office Action ............ 8

    E.    The Reexamination Proceedings Have no Impact on the Four Matters ................................................................................................. 9

        1.    The First Office Action in No Way Undermines the Vexatious Litigant Motion ............................................................... 9

        2.    The First Office Action Also Does Not Undermine the Court's OSC ........................................................................ 11

        3.    Claim Construction Motion ....................................................... 12

        4.    Motion to Compel ..................................................................... 13

    F.    Kappa's "Bad Faith" Argument is Baseless ........................................... 16

CONCLUSION ............................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EDJ, 2011 WL 3267768 (N.D. Cal. July 28, 2011).......................7, 9

*Cimcore Corp. v. Faro Techs., Inc.,* Civil No. 03 CV 2355–B, 2007 WL 935665 (S.D.Cal. Mar. 12, 2007) ......................................................................7, 8

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 ...............7

*GovernmentGPT Inc. v. Axon Enter. Inc.*, No. CV-24-01869-PHX-SMB, 2025 WL 4080457 (D. Ariz. Apr. 3, 2025).........................................................1

*LEGALFORCE RAPC WORLDWIDE P.C. v. MH SUB I, LLC*, Case No. 24-cv-00669-JSC, 2026 WL 1329654 (N.D. Cal., May 13, 2026)....................16

*Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995) ................................................................................2

*Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284 (S.D. Cal. 2010)..............................................................................7

*Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025 (N.D. Cal. 2011) ................................................................................7, 8

**Statutes and Rules**

28 U.S.C. § 1927.............................................................................................1

35 U.S.C. § 101.............................................................................................11

Fed. R. Civ. P. 7(b)(1) ..................................................................................2, 6

Fed. R. Civ. P. 11(c) ......................................................................................11

Fed. R. Civ. P. 26(b)(1) ...........................................................................6, 9, 15

Local Rule 7-1 *et seq*. ..............................................................................1, 2, 6

Local Rule 7-2................................................................................................6

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

Local Rule 7-3..................................................................................5, 6, 10, 12

Local Rules 83-7 and 83-8 ..............................................................................1

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs/Counterclaim Defendants NEUROCENTRIA, INC. and THREOTECH, LLC ("Plaintiffs") respectfully submit this Response ("Response") in opposition to "Defendant's Notice of Supplemental Authority in Connection with Pending Motions for Sanctions (Dkts. 161, 170), Order to Show Cause (Dkt. 107), and Motion to Compel (Dkt. 187)" (the "Notice") (ECF 195) filed by Defendant/Counterclaim Plaintiff MANDO INTERNATIONAL, LLC d/b/a KAPPA NUTRITION LABS ("Kappa") and in support thereof respectfully state as follows:

## PRELIMINARY STATEMENT

The filing of the Notice is *exactly* the type of conduct that underlies Plaintiffs' requests for sanctions and for vexatious litigant relief (*see* ECF 170). It is a frivolous filing that needlessly forces Plaintiffs to devote time and resources to yet another response to preserve their rights. Kappa is dead wrong on the law and does not credibly explain how the "supplemental authority" bears on any of the specific matters to which its Notice is directed.[1] Furthermore, the Notice is wholly improper procedurally as, among other reasons, it seeks affirmative relief without complying with any of the requirements for motions in L.R. 7-1 *et seq*. In other words, this is more of the same conduct for which Abhyanker has already been sanctioned by other Courts. *See GovernmentGPT Inc. v. Axon Enter. Inc.*, No. CV-24-01869-PHX-SMB, 2025 WL 4080457, at *2 (D. Ariz. Apr. 3, 2025) ("To be sure, the basis for sanctions was Mr.

---

[1] Specifically, Kappa directs this improper Notice at four matters before the Court: (1) Plaintiffs' motion for sanctions against Kappa and its counsel, Raj Abhyanker (collectively, the "Respondents"), for their conduct during the claim construction proceedings (the "Claim Construction Motion") (ECF 161); (2) Plaintiffs' motion for sanctions against the Respondents pursuant to Local Rules 83-7 and 83-8, 28 U.S.C. § 1927, and the Court's inherent power (the "Vexatious Litigant Motion") (ECF 170) (collectively with the Claims Construction Motion, the "Sanctions Motions"); (3) the Order to Show Cause (the "OSC") issued by this Court on February 24, 2026 (ECF 107); and (4) Plaintiffs' Motion to Compel Discovery and for Attorneys' Fees (the "Motion to Compel") (ECF 187) (collectively, "Four Matters").

1

Abhyanker's inundation of the docket with filings asserting incredible allegations without factual support").

First and foremost, the Notice is procedurally improper. Kappa seeks affirmative relief (*see* Notice, ¶¶ 1; 29-30), and it is axiomatic that affirmative relief can only be requested by a motion. *See* Fed. R. Civ. P. 7(b)(1). Indeed, this is the same misguided tactic Respondents employed before: seeking relief through a purported "Notice" (*see* ECF 113) with a blatant disregard for proper procedure (*see* ECF 114 *citing Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995)). Indeed, such a motion must meet the requirements of L.R. 7-1 *et seq.* to be considered by the Court – which the Notice decidedly does not.

It is telling that Kappa directs its Notice to only the Four Matters: the two Sanctions Motions, the OSC, and the Motion to Compel. But these matters do not comprise "every pending contested matter in this action." Notice, ¶ 1. Also pending before the Court are cross-motions to dismiss the parties' respective pleadings (*see* ECF 133; ECF 169), as well as the claim construction briefing (ECF 116; ECF 143). The fact that Kappa directs the Notice to this limited subset of matters makes clear what the Notice actually is: a last-ditch effort to avoid sanctions and discovery obligations, not a legitimate effort to apprise the Court of any "material development bearing directly on every pending contested matter in this action" (Notice, ¶ 1). As mentioned above, Kappa has pulled substantially similar stunts before. Kappa attempted to move the Court for *ex parte* relief related to its claim construction position (*see* ECF 113) the day before Plaintiffs' opening claim construction brief was due and, before that, on December 15, 2025, the week of the hearing on Plaintiffs' motion for leave to amend their complaint (which motion Kappa opposed), Kappa similarly filed a "Notice" (ECF 71) "alerting" the Court of its own, newly instituted action in the Northern District of California (the "ND Action"). Plaintiffs promptly opposed that improper filing, calling it exactly what it was – a desperate "11th hour attempt by Kappa to try to save itself from defeat on

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs' Motion for Leave to File First Amended Complaint[.]" ECF 77 at 1. Of course, Kappa's bad-faith attempts to prevent amendment were unsuccessful, as this Court ultimately allowed the Plaintiffs to amend their complaint and to file the First Amended Complaint (the "FAC"). But, more importantly, Kappa's actions in connection with bringing the ND Action, were what led this Court to issue the OSC in the first place, amongst other bad-faith, abusive litigation tactics. ECF 107 at 3-4. Similarly, the Court should see exactly what the present Notice is – Kappa's last-ditch effort to avoid responsibility for its bad-faith conduct. This Court should not countenance such efforts and should disregard and/or strike the Notice.

As to the substance of the Notice, Respondents assert that a May 4, 2026 First Office Action (the "First Office Action") issued in a USPTO reexamination proceeding (the "EPR") is a "material development bearing directly on every pending contested matter in this action." Notice, ¶ 1. This is a half-truth, at best. Most significantly, Respondents fail to mention that the First Office Action is a *non-final, interim step* in the EPR, which is not definitive or dispositive in any way. Indeed, Respondents' Notice appears to be designed to mislead the Court into misunderstanding the impact, finality, and findings of the First Office Action. And the reason Respondents do so is obvious in the context of the Notice: it is Respondents' last, desperate attempt to escape the imposition of the various sanctions that they so clearly deserve.

Fundamentally, then, the Notice rests on the false premise that a non-final First Office Action issued in a USPTO reexamination proceeding somehow affects this litigation. It does not. Indeed, it has no impact on Plaintiffs' patent infringement claims, the fully briefly claim construction for "magnesium threonate," or Plaintiffs' numerous other non-patent claims.[2]

---

[2] Specifically, in Plaintiffs' FAC, the first three counts are for patent infringement of U.S. Patent No. 8,637,061 (the "'061 Patent"). The FAC contains eight more non-patent counts – claims for trademark infringement, false designation of origin under the

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

In addition, Plaintiffs were under no obligation to apprise the Court of an interim, non-final First Office Action in a USPTO reexamination proceeding. And Plaintiffs are certainly not engaging in any bad-faith "selective disclosure" of cases involving Abhyanker. *See* Notice, ¶¶18-20. Plaintiffs cited those decisions because they go directly towards evaluating Respondents' credibility in this case and place Respondents' conduct in this case in context for the Court. There is no bad faith on the part of Plaintiffs, and Kappa's attempt to so argue, itself, is an argument made in bad faith.

Compounding the problem is Kappa's failure to explain how the non-final First Office Action bears on any of the Four Matters. It simply does not. With respect to the OSC and the Vexatious Litigant Motion, Kappa disingenuously misrepresents to the Court that the First Office Action validated the positions that Kappa took in its Rule 11 Motion (ECF 93; 104), and thus bringing the Rule 11 Motion was neither the conduct of a vexatious litigant (Notice, ¶ 13) nor done in bad faith (*id.*, ¶ 14). However, Kappa's Rule 11 Motion and the First Office Action addressed wholly separate issues and were thus premised on entirely separate grounds. *See* Response at pp. 10-11, *infra*. Thus, the First Office Action *in no way* validated any of the arguments that were made in Kappa's Rule 11 Motion. Kappa misrepresenting the record to the contrary is disingenuous and sanctionable. And, *even if* Kappa's Rule 11 Motion was somehow meritorious (it was not), it *still* would have no impact on the pending OSC or Vexatious Litigant Motion, for multiple reasons. First, the OSC and the Vexatious Litigant Motion – which is partially based upon the findings of the OSC – do not turn on whether the Rule 11 Motion was meritorious. Instead, the Court included the Rule 11 Motion as part of Respondents' broader pattern of abusive litigation conduct in "repeatedly filing then withdrawing motions. . .after Plaintiffs filed opposition briefs or otherwise incurred

---

Lanham Act, false advertising under the Lanham Act, unfair competition, and breach of contract.

litigation expenses (Dkts. 43, 70, **104**)."[3] ECF 107 at 4.[4] Second, the First Office Action certainly does not cure Respondents' clear violation of Rule 11 and Local Rule 7-3 when it filed Kappa's Rule 11 Motion. *See* ECF 103, pp. 5-9. Third, the Rule 11 Motion was but one of a litany of examples of bad-faith, abusive litigation tactics by Respondents addressed in the OSC, Plaintiffs' OSC Reply (ECF 139), and the Vexatious Litigation Motion.

Kappa's arguments with respect to the Claims Construction Motion are likewise divorced from the facts and defy common sense. Fatally, Kappa does not identify any of Plaintiffs' arguments in the Claim Construction Motion that are undermined by the USPTO's preliminary decision on validity (i.e., anticipation and/or obviousness). As Plaintiffs have repeatedly emphasized (and Respondents have consistently ignored), whether the claims of the '061 Patent are invalid over the prior art, which is the *sole question* before the USPTO in the EPR, is separate and distinct from claim construction (i.e., how the terms used in the claims of the '061 Patent would be understood by a person of ordinary skill in the art). In other words, the First Office Action has no bearing on the construction of the term "magnesium threonate" in this litigation. Critically, the First Office Action (or the EPR more generally) does not negate the fact that Kappa's pattern of misconduct during claim construction – comprising of improper shifting constructions divorced from the intrinsic evidence, improper reliance on Kappa's Witnesses, submission of false declarations, and advancement of frivolous legal arguments (*see generally* ECF 172, ECF 161) – warrants sanctions.

And with respect to the Motion to Compel, Kappa argues – without citing any authority – that the First Office Action "materially affects the proportionality analysis

---

[3] ECF 104 is the docket number of Kappa's notice withdrawing its Rule 11 Motion, which Kappa did *the same day* Plaintiffs filed their opposition in which Plaintiffs pointed out that the Rule 11 Motion was procedurally improper and frivolous. *See* ECF 103.

[4] Unless otherwise noted, all emphasis is added.

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

under Rule 26(b)(1)." Notice, ¶ 11. Tellingly, however, Kappa does not explain *how* this is so. The Notice does not identify any pending discovery request to which the First Office Action is relevant (and there is none).

Simply put, the First Office Action, or even the existence of the reexamination of the '061 Patent, has no relation to – and cannot excuse – Respondents' misconduct on which the OSC, the Motions for Sanctions, and the Motion to Compel are based.

## ARGUMENT

### A.    The Notice is Procedurally Improper, and the Court Need Not Consider It

First and foremost, Kappa's Notice is procedurally improper because it is not, in any meaningful sense, a "notice of supplemental authority." Instead, Kappa uses the filing as a vehicle to advance substantive arguments regarding the EPR proceeding and seek affirmative relief at the 11th hour for the sole purpose of avoiding sanctions and shirking its discovery obligations.

Specifically, in addition to Kappa seeking the absurd relief discussed in Section F, *infra* (such as asking the District Judge to act as a courier) and some additional relief, Kappa is improperly seeking a show cause order directed to Plaintiffs and their counsel. *See, e.g.,* Notice, ¶¶ 21-27; 29. But it is axiomatic in federal civil practice that "[a] request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). And in this District, motions must conform to L.R. 7-1 *et seq.* (*see* L.R. 7-2) in order to be considered by the Court, including the meet and confer requirement of L.R. 7-3. The Notice certainly does not conform to such requirements. If Kappa believes any relief is warranted, the proper procedure was for it to file an appropriate motion that conforms to the relevant rules. It did not. For this reason alone, the Court does not need to consider the Notice on the merits at all.

**B.      USPTO's Preliminary First Office Action Has No Legal Significance in This Litigation**

Even in the event the Court determines the Notice is procedurally proper, the USPTO's First Office Action has no legal significance in this litigation. Kappa fundamentally misunderstands (and/or attempts to intentionally mislead the Court on) *ex parte* reexamination proceedings. The USPTO examiner issued a First Office Action rejecting all claims of the '061 Patent on May 4, 2026. ECF 195-2. Critically, the examiner's rejection is "*preliminary*" and "*not probative of invalidity*." *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1042 (N.D. Cal. 2011) (citations omitted); *see also Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284, 1301 (S.D. Cal. 2010) (noting that the first office action in a reexamination proceeding "is only a *preliminary* determination by the USPTO – it is not a 'final' action . . . [a]ccordingly, any such determination is *not* persuasive evidence of anticipation or obviousness") (emphasis in original); *Cimcore Corp. v. Faro Techs., Inc.,* Civil No. 03 CV 2355–B (WMc), 2007 WL 935665, at *2 (S.D.Cal. Mar. 12, 2007) ("The office action is a first office action, not a final rejection by the USPTO"). Indeed, the USPTO is "free to reconsider its initial determinations" – including to completely reverse them – *any time* before issuing a reexamination certificate. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2007 WL 1655625, at *4 (N.D. Cal. June 7, 2007) (citation omitted). Kappa fails to acknowledge this controlling law or cite any authority distinguishing it. And Plaintiffs can (and intend to) argue against the rejections and/or amend the claims.

In short, the claims of the '061 Patent are currently *valid*. As such, the pending reexamination has *no impact* on Plaintiffs' allegations or ability to prosecute their asserted causes of action, nor will it have any impact *unless and until* a final reexamination certificate is issued. *See Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EDJ, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) ("Since the reexaminations . . . are both ex parte, the only way they will finally

7

resolve any issues of validity is if the PTO cancels some claims entirely."). *See* Response at 5, *supra*; *see also* Section E, *infra*.

**C.** **Kappa Fails to Show the Preliminary Rejection Has Any Relevance to the Allegations in this Case**

Despite its handwaving, Kappa has not established that the USPTO examiner's *preliminary* rejection of the claims of the '061 Patent bears any relevance to the allegations in this case apart from the simple fact that both actions involve the same patent and patent owner. And while it is generally true that statements made by the patent owner during reexamination form part of the prosecution history, Kappa readily acknowledges that Plaintiffs have not made any statements in the reexamination. *See* Notice, ¶ 4. In other words, "until the patentee addresses the rejections with argument or claim amendments," which Plaintiffs have yet not done, "the prosecution history is *incomplete*" and thus, not probative on the questions of validity or claim construction. *See Cimcore Corp. v. Faro Techs., Inc.*, Civil No. 03 CV 2355–B (WMc), 2007 WL 935665, at *2 (S.D. Cal. Mar. 12, 2007); *see also Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1042 (N.D. Cal. 2011) (finding the proposition that "statements made by the patentee during reexamination proceedings may be probative as to questions of claim construction" did *not* apply where the defendant did not "cite[] to any statement by the patentee" during the reexamination).

**D.** **Plaintiffs are Under No Duty to Disclose the First Office Action**

Kappa's claim that Plaintiffs were obligated to disclose the First Office Action in this litigation also misses the mark. Kappa cites no authority imposing such a duty and fails to explain how Plaintiffs' nondisclosure of ongoing proceedings before the USPTO violates that duty.[5] *See, e.g.*, Notice, ¶ 11 (arguing that "Plaintiffs' obligation to disclose

---

[5] Counsel for Kappa was aware of the initiation of the reexamination proceeding at least by December 22, 2025. *See* ECF 146-4. Thus, to the extent Plaintiffs' counsel was obligated to disclose the reexamination proceeding (which Plaintiffs dispute), the same would be true for Kappa's counsel. And, even though Plaintiffs were under no

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

this development arises from multiple sources" but citing no "sources" other than Rule 26(b)(1), which merely sets forth the *scope of discovery* in litigation).

Plaintiffs have, in fact, no duty to disclose the First Office Action in this litigation because the EPR proceedings do not yet have any impact on this litigation. Specifically, the claims of the '061 Patent are currently valid, and the pending reexamination has no impact on Plaintiffs' allegations or ability to prosecute its asserted causes of action, and there will be no such impact *unless and until* a final reexamination certificate is issued. *See Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EDJ, 2011 WL 3267768, at *5 ("Since the reexaminations . . . are both ex parte, the only way they will finally resolve any issues of validity is if the PTO cancels some claims entirely.")

### E.    The Reexamination Proceedings Have no Impact on the Four Matters

#### 1.    The First Office Action in No Way Undermines the Vexatious Litigant Motion

With respect to the Vexatious Litigant Motion, Kappa argues that the First Office Action vindicates Kappa in bringing its Rule 11 Motion and thus Kappa bringing the Rule 11 Motion was "not the conduct of a vexatious litigant." Notice, ¶ 13. The irony of this argument is that it further supports the relief that Plaintiffs seek in the Vexatious Litigant Motion – Kappa is once again advancing intentionally bad faith arguments that are not supported by the record or legal authority.

As a preliminary matter, Kappa completely misses the point regarding the purpose of the Vexatious Litigant Motion. The Vexatious Litigant Motion is not directed at any single filing, an isolated misstatement, or some other discrete act. Rather, it addresses the broader pattern of litigation abuse by the Respondents as viewed cumulatively and over time. Kappa bringing a procedurally improper and frivolous Rule 11 Motion is merely one example of that pattern – a drop in the bucket of its broader

---

obligation to disclose the EPR, they nevertheless disclosed its existence to the Court. *See* ECF 146-4.

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

campaign of litigation abuse. Thus, even if Kappa's arguments with respect to the Rule 11 Motion were somehow meritorious (they are not), it would make no difference with respect to the Vexatious Litigant Motion, as Respondents' vexatious behavior is pervasive and reflected in nearly every single one of their actions in this case, and as remarked upon (negatively) by other Courts. *See, e.g.,* ECF 170; 191.

Moreover, as noted above, the OSC and the Vexatious Litigant Motion – partially based upon the findings of the OSC – do not turn on whether the Rule 11 Motion was meritorious. Rather, the Court included the Rule 11 Motion as part of Respondents' broader pattern of abusive litigation conduct in "repeatedly filing then withdrawing motions. . .after Plaintiffs filed opposition briefs or otherwise incurred litigation expenses (Dkts. 43, 70, 104)." ECF 107 at 4. And the First Office Action does not change the fact that Respondents violated FRCP 11 and Local Rule 7-3 when it filed Kappa's Rule 11 Motion. *See* ECF 103, pp. 5-9.

As to the actual merits of its arguments, Kappa's arguments have none. Kappa states that the "USPTO's rejection of all 19 claims demonstrates that the patent was, in fact, vulnerable to challenge and that Defendant's challenges had *substantial* merit." Notice, ¶ 13. Not true. There was zero connection between the positions Kappa took in the Rule 11 Motion and the grounds relied upon by the USPTO – none. And Kappa's arguments to the contrary are made in bad faith, unsupported by the record, and made with the intent to mislead the Court.

In the First Office Action, the examiner rejected the claims based on prior art under Sections 102 and/or 103 of the Patent Act (as Kappa acknowledges). *See* Notice, ¶ 3. Kappa's Rule 11 Motion was premised entirely on Kappa's contention that Plaintiffs' patent infringement claim is "premised on the factual assertion that magnesium L-threonate does not occur naturally and that only Plaintiffs' proprietary formulation can produce the claimed biological effects," which were made pursuant to

Section 101 of the Patent Act[6] – in other words, an entirely separate statutory construct and legal doctrine. ECF 93, ¶ 13. Kappa alleged that based on its own "independent expert declarations," "magnesium L-threonate occurs naturally through ordinary biological and metabolic processes. . ." *Id.*, ¶ 14. In sum, the Rule 11 Motion was directed to an alleged factual deficiency concerning the scientific premise underlying Plaintiffs' claims, while the First Office Action addressed a wholly separate issue – whether the claims are patentable over prior art. Thus, the First Office Action and the basis for Kappa's Rule 11 Motion are apples and oranges addressing wholly separate inquiries. The First Office Action in no way "independently validated" Kappa's "litigation positions" in the Rule 11 Motion and in no way demonstrates "that Defendant's challenges had substantial merit." *Id.,* ¶ 13. Kappa misrepresenting the record is sanctionable.

**2.    The First Office Action Also Does Not Undermine the Court's OSC**

For the same reasons as stated in Section E.1 above, the First Office Action has no impact on the Court's OSC. Specifically, the First Office Action and Kappa's Rule 11 Motion addressed different issues and were premised on wholly different grounds. The USPTO *in no way* "adopted those same positions" (Notice, ¶ 14) that Kappa took in the Rule 11 Motion. Again, such blatant misrepresentation of the record to the Court is sanctionable and further supports all of Plaintiffs' requests for sanctions and related relief.

In addition, just like the Vexatious Litigant Motion, the OSC concerns a host of bad-faith conduct. Specifically, the Court ordered Respondents to show cause for:

> why they should not be sanctioned under Fed. R. Civ. P. 11(c) and the court's inherent powers for engaging in improper, harassing, and bad-faith conduct that has caused unnecessary delay and increased the cost of litigation

---

[6] As explained in earlier briefing, Respondents' Section 101 arguments are equally frivolous and irrelevant to claim construction. *See, e.g.,* ECF 172, § II.E; *see also* ECF 161 at 25-27.

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

needlessly, including by: (1) dismissing certain counterclaims and reasserting them in a separate action brought in another district; (2) opposing Plaintiffs' requests for leave to add claims related to issues Defendant introduced into this action, based on Defendant's subsequent dismissal of these counterclaims and refiling of these counterclaims in a different forum; (3) making false representations and frivolous arguments to this court (including arguing the FAC seeks to add AIDP, Inc. and Magceutics, Inc. as Defendants, when it does not, that Plaintiffs introduced new issues into the action when they were introduced by Defendant, and that Defendant somehow has standing to bring motions on behalf of opposing parties); and (4) repeatedly filing then withdrawing motions and counterclaims after Plaintiffs filed opposition briefs or otherwise incurred litigation expenses (Dkts. 54, 70, 104).

ECF 107 at 3-4. Notably, not one of those stated bases explicitly relates to the merit of Kappa's arguments in its Rule 11 Motion. Rather, the Rule 11 Motion was included in Respondents' broader pattern of abusive litigation conduct in "repeatedly filing then withdrawing motions. . .after Plaintiffs filed opposition briefs or otherwise incurred litigation expenses (Dkts. 43, 70, 104)." ECF 107 at 4. And, again, Kappa's Rule 11 Motion violated FRCP 11 and Local Rule 7-3, neither of which can be cured by the First Office Action, the EPR, or anything else. Even if, *arguendo*, the Court were to remove the Rule 11 Motion from consideration, the removal of one discrete motion from the Court's consideration would have no impact on the Court's analysis of Respondents' pervasive, bad-faith, sanctionable conduct.

Finally, it is worth noting that Kappa states that it "reserves the right to seek reasonable attorneys' fees and costs incurred in. . .responding to the Order to Show Cause (Dkt. 107)." Notice, ¶ 30. This is meritless, of course, as the need to respond to the OSC arises from a Court order (*see* ECF 107 at 3-4); Kappa incurred such fees *because the Court required a response*. Kappa cannot now use such compliance as a basis for fee-shifting.

### 3.    Claim Construction Motion

Kappa's claim that the USPTO's non-final First Office Action finding the asserted claims of the '061 Patent anticipated or rendered obvious by prior art somehow

renders Respondents' claim construction arguments reasonable (and thus not sanctionable) is a red herring. *See* Notice, ¶ 12. Most significantly, it completely ignores that Plaintiffs' Claim Construction Motion was premised on more than just Respondents' unsupported interpretation of the term "magnesium threonate" – it also encompassed Respondents' frivolous claim construction filings, Respondents' fabrication of witness testimony, and Respondents' repeated refusal to participate in claim construction negotiations in good faith. *See, e.g.*, ECF 161, §§ II, IV; ECF 172, § II. To be clear, Respondents' actions during the claim construction process would be sanctionable *even if* all asserted claims of the '061 Patent were found to be invalid by the USPTO at the conclusion of the EPR.

Furthermore, the USPTO's initial assessment on validity has no bearing on how the claims of the '061 Patent should be construed in this litigation. Claim construction and validity, while related, are separate inquiries. *See, e.g.*, ECF 116 at 23 (citing cases); ECF 150 at 17. As Plaintiffs have explained, the claim construction analysis – on which the Claim Construction Motion is partially based – is focused on the language of the asserted claims of the '061 Patent, not on the understanding of one of ordinary skill in the art would have had of the prior art cited in the First Office Action. Even putting that aside, Kappa has not pointed to any statements in the First Office Action wherein the examiner interpreted terms in the '061 Patent (because there are none), evidencing the complete irrelevance the First Office Action has on the claim construction or the Claim Construction Motion. Put simply, Kappa's claim construction arguments lack merit as much today as they did when they were first made months ago.

### 4.     Motion to Compel

The First Office Action has no impact on the Motion to Compel, and Kappa's arguments to the contrary are disingenuous. As a preliminary matter, it is interesting that Kappa is now agreeing that the "[the] discovery [sought by the Motion to Compel] is directed entirely at the patent infringement claims." Notice, ¶ 15. The bulk of Kappa's

opposition to the Motion to Compel consisted of Kappa's argument that Kappa should not have to produce documents relating to FAC's new non-patent claims (i.e., trademark infringement, false advertising, and unfair competition claims) (*see, e.g.*, ECF 188, ¶¶ 32-34) – relief that Plaintiffs *were not seeking* in the Motion to Compel. Once again, Respondents are taking opposing stances in filings and seem beholden only to whatever argument suits them in the moment, not the facts or the law. *See, e.g.,* ECF 187-2, ¶¶ 4-11. It is further concerning that in the Notice, Kappa is stating that the patent-related documents that Plaintiffs seek in the Motion to Compel are "Defendant's most sensitive trade secrets" (Notice, ¶ 17), when Kappa argued in its opposition to Motion to Compel that "[t]he categories of Defendant's materials genuinely warranting trade-secret protection in a pure patent-infringement defense were correspondingly narrow." ECF 188, ¶ 35.

In any case, in the Notice, Kappa does not and cannot credibly explain how the non-final First Office Action absolves Kappa from its discovery obligations (just as Kappa could not credibly explain in its opposition to the Motion to Compel how any new non-patent claims in the FAC impacted Kappa's ability to produce discovery as to the patent claims). Kappa states without citing to any authority that "[a] patent whose claims have been rejected by the USPTO – with no Patent Owner Statement filed in response[7] – presents a fundamentally different proportionality calculus than an

---

[7] Plaintiffs object to Kappa implying that Neurocentria failed to file a Patent Owner Statement. Neurocentria did not fail to do anything in connection with the reexamination, and Kappa's characterizations to the contrary are deliberate attempts to mislead the Court while also showing Kappa's complete failure to understand patent practice. As an initial matter, it is common practice to *not* file a Patent Owner's Statement, which is an *optional* filing in response to a petition for *ex parte* reexamination. And filing is made, if at all, *before* the PTO either issues a first office action or denies the petition. Now that the PTO has issued the First Office Action for the '061 patent, however, Neurocentria has until July 5, 2026 to file a Response to First Office Action. Kappa's mischaracterizations and complaints notwithstanding, Neurocentria has not even started the process of engaging with the USPTO on the substance of the reexamination.

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

unchallenged patent." Notice, ¶ 16; *see also id.*, ¶ 11 ("A party seeking to compel discovery on a patent whose claims have been rejected by the USPTO has an obligation to disclose that rejection because it materially affects the proportionality analysis under Rule 26(b)(1) – the very rule Plaintiffs invoke in their motion to compel"[8]). But Kappa does not explain *how*, and, again, does not cite to any authority supporting this proposition. Tellingly, the Notice does not identify any pending discovery request to which it contends the First Office Action is currently relevant (there is none).

Even more fundamentally, the Motion to Compel details Respondents' many months of failures in regard to Plaintiffs' discovery requests, from failing to timely respond, to failing to produce a single document in the nearly seven-month period after those requests were issued. *See, e.g.,* ECF 187. *None* of that is altered by the non-final, interim First Office Action, nor could it be altered by any subsequent action regarding the '061 Patent at all. Respondents' abject failure to meet their discovery obligations is immutable fact. Respondents did not seek a protective order or a stay of discovery in order to be absolved of their discovery obligations during the pendency of the EPR, despite being informed of the EPR on December 22, 2025 (*see* ECF 146-4, p. 3), and despite raising the issue of filing a motion to stay based on the EPR on March 6, 2026 (*see* ECF 146-4, pp. 2-7). Respondents simply did nothing and cite no authority (nor could they) for the novel proposition that a non-final, interim First Office Action can serve as a *post-hoc* justification for failing to meet their discovery obligations.

Simply put, the First Office Action has no impact on the Motion to Compel.

---

[8] This is a curious statement from Kappa as Plaintiffs <u>do not</u> invoke Rule 26(b)(1) anywhere in the Motion to Compel or any of the supporting documentation. This statement is yet another misrepresentation of fact by Kappa that further supports Plaintiffs' requests for sanctions in their Sanctions Motions and the OSC Reply.

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

### F.    Kappa's "Bad Faith" Argument is Baseless

Kappa's argument that Plaintiffs are engaging in some sort of "selective disclosure" in bad faith (Notice, ¶¶ 18-20) is without merit. As Plaintiffs have repeatedly stated in this Response, Plaintiffs were under no obligation to disclose the EPR (which they disclosed, in any event (*see* ECF 146-4)) or the non-final First Office Action in this proceeding. On the contrary, the referenced opinion in the *MH Sub I* case,[9] amongst the other cited cases involving Abhyanker (*see, e.g.*, ECF 187 at 2), demonstrates that Respondents' behavior in this case – disregarding rules, taking unsupportable positions, brazenly misrepresenting facts, and intentionally disregarding litigation norms – is Abhyanker's *modus operandi*. These cases demonstrate that Respondents' abusive litigation conduct in this case is intentional and will continue unabated to the detriment of the Court and Plaintiffs. Indeed, Kappa is doing so with the present Notice just as it has with previous filings (*see supra* at pp. 2-3). Plaintiffs are burdened by having to respond to Kappa's baseless arguments, and the Court is burdened with having to review the parties' submissions. In addition, Kappa is burdening this Court by making requests in the Notice, when it is improper to ask the Court for relief in the form of a notice, rather than bringing a motion. *See* Section A, *supra*. And the requests themselves are outlandish. First, Kappa requests that this Court "bring this Office Action to the attention of the Magistrate Judge in connection with the pending Motion to Compel." Notice, ¶ 29. It is entirely unclear under what authority Kappa requests the presiding District Judge to serve as a courier for arguments that a party wishes to present to another judicial officer. The Motion to Compel is already pending before the Magistrate Judge, who presumably has access to this same docket. In addition, Kappa requests that "the Court. . .(4) reserve Defendant's right to move for a stay of this action pending the outcome of the reexamination." *Id.* It is unclear why

---

[9] *LEGALFORCE RAPC WORLDWIDE P.C. v. MH SUB I, LLC*, Case No. 24-cv-00669-JSC, 2026 WL 1329654 (N.D. Cal., May 13, 2026).

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

Kappa is burdening the court with such a request. If Kappa believes a stay is warranted, Kappa may file a motion seeking such a stay (as it threatened to do months ago). *See* ECF 146-4 and 146-5. The Court's intervention is not required on this point.

Simply put, Plaintiffs cite other decisions in other cases because those decisions go directly towards evaluating Respondents' credibility in this case and place Respondents' conduct in this case in context for the Court. On the other hand, Plaintiffs were *not* required to cite to the EPR proceedings or the First Office Action.[10] Kappa's arguments to the contrary are entirely unavailing.

## CONCLUSION

For all the foregoing reasons, the Plaintiffs respectfully request that: (1) this Court disregard the Notice; (2) award Plaintiffs attorneys' fees incurred in connection with preparing this Response; and (3) order such and further relief that is necessary and just.

Dated: June 8, 2026

**HUGHES HUBBARD & REED LLP**

By: /s/ Jeffrey S. Gavenman
    Jeffrey S. Gavenman (admitted *pro hac vice*)

*Counsel for Plaintiffs/Counterclaim Defendants*

---

[10] Plaintiffs object to any insinuation that they failed to monitor the USPTO docket. *See, e.g.* Notice, ¶ 5 ("Plaintiffs' litigation counsel – seven attorneys across three firms – are responsible for managing all aspects of this litigation, including monitoring developments affecting the enforceability of the patent they are asserting"); *Id.,* ¶ 8 (stating that Plaintiffs' attaching the *MH Sub I* opinion "demonstrate[es Plaintiffs] were actively monitoring developments in other proceedings – but failed to disclose the far more material development in the reexamination of the very patent at the center of the case").

PLAINTIFFS' RESPONSE TO KAPPA'S NOTICE OF SUPPLEMENTAL AUTHORITY

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains **5,792** words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order (ECF No. 16).

Dated: June 8, 2026                     **HUGHES HUBBARD & REED LLP**

By: /s/ Jeffrey S. Gavenman
        Jeffrey S. Gavenman (admitted *pro hac vice*)

*Counsel for Plaintiffs/Counterclaim Defendants*

REPLY I/S/O MOTION FOR SANCTIONS

## CERTIFICATE OF SERVICE

I, Salvatore Picariello, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626. On June 8, 2026, I served the following document(s):

**PLAINTIFFS' RESPONSE TO "DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY IN CONNECTION WITH PENDING MOTIONS FOR SANCTIONS (DKTS. 161, 170), ORDER TO SHOW CAUSE (DKT. 107), AND MOTION TO COMPEL (DKT. 187)" (ECF 195)**

on the parties stated on attached service list

| Defendant Mando International, LLC d/b/a Kappa Nutritional Labs<br><br>Raj V. Abhyanker<br>raj@legalforcelaw.com | |

☒   **BY COURT'S CM/ECF SYSTEM.** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List.

**BY E-MAIL.** By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

**(STATE)**      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒   **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 8, 2026, at Costa Mesa, California.

/s/ SALVATORE PICARIELLO
Salvatore Picariello